UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LADDY CURTIS VALENTINE and RICHARD ELVIN KING, individually and on behalf of those similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:20-cv-01115 |
| BRYAN COLLIER, in his official capacity, ROBERT HERRERA, in his official capacity, And TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § § § § § | |
| Defendants. | § | |

## DEFENDANTS' MEMORANDUM REGARDING LACK OF AUTHORITY FOR RELEASE OF OFFENDERS TO REDUCE INMATE POPULATION

During an April 13, 2020 conference with the Parties, the Court generally inquired as to the TDCJ Defendants' ability to reduce the current inmate population at the Pack Unit by releasing some category of offenders prior to the completion of their sentences in an effort to promote social distancing in light of the current COVID-19 global pandemic. Notably, in their Class Action Complaint and Application for Temporary Restraining Order and Other Injunctive Relief Plaintiffs [Doc. 1], Plaintiffs do not seek any such relief.

Defendants accept the Court's invitation to provide further briefing in this regard and in response to Plaintiffs' Memorandum Regarding Authorities for Reduction of Inmate Population [Doc. 28]. In brief, Bryan Collier, Warden Herrera, and the Texas Department of Criminal Justice

have no legal authority to parole or otherwise release offenders. Texas has no equivalent to the release provisions under the First Step Act in the federal prison context.

## I. PLAINTIFFS' CLAIMS

Plaintiffs' attempt to assert claims under 42 U.S.C. § 1983 for alleged violations the Eighth Amendment (as applied to the States under the Fourteenth Amendment) for Defendants' alleged deliberate indifference to a serious risk of harm, as well as a discrimination claim under the ADA and Rehab Act for the alleged failure to provide reasonable accommodations. Plaintiffs seek no *habeas* relief. The foundation of Plaintiffs' claims is essentially the same: the prison setting makes Plaintiffs (and other purported class members) especially vulnerable to COVID-19 and the named Defendants' responses to the danger are insufficient or not fast enough or both. On these claims, Plaintiffs seek the "extraordinary and drastic remedy"[1] of a preliminary injunction in the form of affirmative actions to promote safety. In their live application for temporary restraining order and injunctive relief [Doc.1], Plaintiffs do not seek release from the Pack Unit either on their own behalf or for any putative class. Nevertheless, Defendants address the issue raised by the Court.

Plaintiffs are not entitled to have a federal court impose such injunctive relief on state officials. This is not the first court to address this issue in the COVID-19 context. We refer the Court to the recent opinion in *Money, et al. v. Pritzker, et al.,* Case Nos. 20-cv-2093 and 20-cv-2094, 2020 WL 1820660 (N.D. Ill. April 10, 2020), which fully addresses a federal court's lack of authority to order release of offenders from state correctional facilities on Plaintiffs' causes of

---

[1] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)

action in this case and under the current circumstances associated with the COVID-19 pandemic. A courtesy copy of the opinion is attached as Exhibit A.

## II. THE PLRA

The concept of prisoner release on any ground made the basis of the case at bar must be considered in light of the Prison Litigation Reform Act (PLRA). The PLRA, is codified at 42 U.S.C. § 1997e, encompasses the provisions of 18 U.S.C. § 3626, titled "appropriate remedies with respect to prison conditions." Section 3626 states, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). It also directs courts to "give substantial weight to any adverse impact on public safety or the operation of the criminal justice system caused by the relief." *Id.* The term "civil action with respect to prison conditions" is defined broadly to include "any civil proceeding arising under Federal law with respect to the conditions of confinement and the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2).

The statute specifically addresses preliminary injunctive relief, mandating that any such relief in a case involving prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). A "prisoner release order" "includes any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison." 18 U.S.C. § 3626(a)(3) and (g)(4). No court may enter a prisoner release order unless it "has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied" and "the

defendant has had a reasonable amount of time to comply with the previous court orders." 18 U.S.C. § 3626(a)(1)-(2).

If those strictures have been satisfied, only a three-judge court can actually consider and issue a prisoner release order—and even then only if it finds by clear and convincing evidence that "crowding is the primary cause of the violation of a Federal right" and "no other relief will remedy the violation." 18 U.S.C. § 3626(a)(3)(E)(i)-(ii). Any order "that has the purpose or effect of reducing or limiting a prison population, or that directs the release from or nonadmission of prisoners to a prison" lies exclusively within the province of three-judge courts. 18 U.S.C. § 3626(g)(4).

## III.   TEXAS AUTHORITY RAISED BY PLAINTIFFS

### A.   Texas Government Code § 501.006 – Emergency Absence

Plaintiffs refer the court to the Emergency Absence provision of the Texas Government Code, which provides:

> (a) The institutional division may grant an emergency absence under escort to an inmate so that the inmate may:
>
>   (1) obtain a medical diagnosis or medical treatment;
>
>   (2) obtain treatment and supervision at a Texas Department of Mental Health and Mental Retardation facility; or
>
>   (3) attend a funeral or visit a critically ill relative.

Each inmate absent under this section is considered to be in the custody of the institutional division, and the inmate must be under physical guard during the duration of the absence. TEX.

GOV'T CODE § 501.006(c).[2] The emergency absence provision only applies in extremely limited circumstances and does not authorize TDCJ to grant parole, shorten a sentence, or release an offender. Nor does TDCJ have any authority to waive or modify any requirement under this statute.

### B.    Texas Government Code Section 508.118 – Halfway Houses

Chapter 508 of the Texas Government Code governs Parole and Mandatory Supervision. Section 508.118 comes under Subchapter D, Pardons and Paroles Division, and provides for the Division's use of halfway houses. "Division" means the pardons and paroles division of TDCJ. TEX. GOV'T CODE § 508.001(4). This Division of TDCJ is responsible for the investigation and supervision of all releasees. TEX. GOV'T CODE § 508.112. Section 508.118 directs the pardons and paroles division, together with the institutional division, to use halfway houses "to divert from housing in regular units of the institutional division *suitable low-risk inmates* and other inmates who would benefit from a smoother transition from incarceration to supervised release. *Id.* § 508.118(a) (emphasis added). Plaintiffs have not satisfied the criteria in this statute as "suitable low-risk inmates," nor have plaintiffs shown that the Division has established a presumptive parole date for either one of them as required under section 508.118(c). *Id.* § 508.118(a), (c)

### C.    Governor's Authority

Plaintiffs also refer the Court to authority resting with the Governor. The TDCJ Defendants are not granted any of the enumerated powers granted to the Governor for use during a disaster declaration.

---

[2] The plain reading of the statute negates Plaintiffs' argument that an ankle monitor could be considered being under physical guard.

### D. MRIS Program

In connection with the general discussion of the feasibility of any release of offenders, Defendants apprised the Court of the "Medically Recommended Intensive Supervision" program (MRIS). Under the MRIS program, the Texas Board of Pardons and Paroles is given authority to consider an inmate's suitability for release to parole in circumstances in which a doctor has certified that the inmate has a terminal illness or requires serious long-term care. *See* TEX. GOV'T CODE § 508.146. The MRIS program gives no decision-making authority to the TDCJ.

### E. Texas Board of Pardons and Paroles' Authority to Allow an Offender to Complete any Remaining Prerequisites Outside of the Pack Unit

Finally, Plaintiffs suggest, without any authority, that the Texas Board of Pardons and Paroles has the power to allow offenders to complete certain educational or treatment programs outside of a State prison facility. Whether or not it has such authority, Plaintiffs argue the Board and/or the Governor could waive any such requirement. Notably, Plaintiffs do not contend that the TDCJ Defendants have any such waiver authority because they do not.

## IV. CONCLUSION

As shown above, with the exception of the ability to grant permission for emergency absences under very limited conditions or the use of halfway houses for suitable low-risk inmates who have been given a presumptive parole date, TDCJ has no authority to take steps to reduce the inmate population by granting parole, shortening sentences, or releasing offenders from the Pack Unit.

    Respectfully submitted.

    **KEN PAXTON**
    Attorney General of Texas

    **JEFFREY C. MATEER**
    First Assistant Attorney General

**RYAN L. BANGERT**
Deputy First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division


*/s/ Christin Cobe Vasquez*
**CHRISTIN COBE VASQUEZ**
*Attorney-in-Charge*
Texas State Bar No. 24074047
Federal Bar No. 1125898
Assistant Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4199
Facsimile: (512) 370-9996
Christin.Vasquez@oag.texas.gov

**JEFFREY E. FARRELL**
*Of Counsel*
Texas State Bar No. 0787453
Federal Bar No. 16842
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 463-2120
Facsimile: (512) 320-0667
Jeffrey.Farrell@oag.texas.gov

**ATTORNEYS FOR TDCJ DEFENDANTS**

## NOTICE OF ELECTRONIC FILING

I, CHRISTIN COBE VASQUEZ, Assistant Attorney General of Texas, certify that I have electronically submitted a true and correct copy of the foregoing for filing in accordance with the Court's electronic filing system, on April 15, 2020.

*/ s/ Christin Cobe Vasquez*
**CHRISTIN COBE VASQUEZ**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, CHRISTIN COBE VASQUEZ, Assistant Attorney General of Texas, certify that a true and correct copy of the above and foregoing *DEFENDANTS' MEMORANDUM REGARDING LACK OF AUTHORITY FOR RELEASE OF OFFENDERS TO REDUCE INMATE POPULATION* has been served electronically upon all counsel of record *via* the electronic filing system of the Southern District of Texas, on April 15, 2020.

*/ s/ Christin Cobe Vasquez*
**CHRISTIN COBE VASQUEZ**
Assistant Attorney General