IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LADDY CURTIS VALENTINE, *et al*, <br> Plaintiffs, <br><br> vs. <br><br> BRYAN COLLIER, *et al*, <br><br> Defendants. | Case No. 4:20-cv-01115 |

## POLUNSKY UNIT PLAINTIFFS' MOTION TO INTERVENE

Proposed Intervenors John Balentine, Tony Ford, Ruben Gutierrez, Travis Green, Joe Luna, and William Mason (collectively, the "Polunsky Unit Plaintiffs"), by and through the undersigned counsel, respectfully move under Federal Rule of Civil Procedure 24(b) to intervene by permission as plaintiffs in the above-captioned case. Pursuant to Local Rule CV-7(i), the Polunsky Unit Plaintiffs certify that they have conferred in good faith with the parties to the case. Defendants do not consent to this intervention. Plaintiffs take no position at this time.

### BACKGROUND

This lawsuit arises from a constitutional and statutory challenge brought by prisoners housed at the Wallace Pack Unit (collectively, the "Pack Unit Plaintiffs") against Defendants the Texas Department of Criminal Justice ("TDCJ") and its officials (collectively, the "Defendants"). *See* March 30, 2020 Compl., ECF 1. Specifically, the Pack Unit Plaintiffs allege that the Defendants have engaged, and continue to engage, in deliberately indifferent and discriminatory conduct in failing to protect the Pack Unit Plaintiffs and their fellow Pack Unit prisoners who face a high risk of severe illness from exposure to SARS-CoV-2019, the novel coronavirus that causes Coronavirus Disease 2019 (or "COVID-19"). *See id.* ¶¶ 31-43, 47-48, 73-100.

The Polunsky Unit Plaintiffs and the class they seek to represent are also in the custody of the TDCJ, and their complaint also challenges policies and conduct of the TDCJ and its personnel. The Polunsky Unit Plaintiffs are death row prisoners incarcerated in the Allan B. Polunsky Unit located near Livingston, in unincorporated Polk County, Texas. *See* May 1, 2020 Compl., *Balentine v. Collier* (Ex. 1) ¶¶ 9-14. The Polunsky Plaintiffs' class action complaint, brought under 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), alleges violations of the Plaintiffs' and putative class members' constitutional and statutory rights. *See id.* ¶¶ 122-131 (Eighth and Fourteenth Am. Claim), *id.* ¶¶ 132-140 (ADA Claim). Specifically, the Polunsky Unit Plaintiffs allege that the Defendants, in their official capacities and acting under color of state law, have acted with deliberate indifference to the serious risk COVID-19 poses to the Polunsky Unit Plaintiffs and unnamed class members. *Id.* ¶¶ 60-77, 122-131. The Defendants' deliberate indifference and failure to take action to protect the Polunsky Unit Plaintiffs is in violation of their rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and the ADA. *Id.* ¶¶ 122-140. The Polunsky Unit Plaintiffs also challenge arbitrary and unjustified restrictions the TDCJ has placed on their efforts to communicate with counsel. *Id.* ¶¶ 141-144.

## ARGUMENT

The Polunsky Unit Plaintiffs satisfy the standard for permissive intervention. Federal Rule of Civil Procedure 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." *See also Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006) ("The decision to permit intervention ... requires a threshold determination that the [intervenor's] claim or defense and the main action have a question of law or fact in common." (citation omitted)). While, "[p]ermissive intervention is wholly discretionary," *Kneeland v. Nat'l Collegiate Athletic Ass'n*,

2

806 F.2d 1285, 1289 (5th Cir. 1987) (citation omitted), "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3). *See also Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002) ("Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." (citation omitted)). Thus, in the Fifth Circuit, permissive intervention is appropriate when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989).

### A.     The Motion to Intervene Is Timely

Given the early stage of this litigation, the lack of potential prejudice to the parties, and the rapidly evolving nature of the COVID-19 outbreak, this motion is timely. To evaluate whether a Rule 24 motion is timely, the Court looks to the four factors articulated in *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977); namely, (1) "[t]he length of time during which the would-be intervenor actually know[s] or reasonably should have known of his interest in the case before he petitioned for leave to intervene," (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case," (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied," and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely."

The first *Stallworth* factor "focuses on the time lapse between the applicant's receipt of actual or constructive knowledge of his interest in the litigation and the filing of his motion for

3

intervention." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996). There was no material lapse between the Polunsky Unit Plaintiffs' receipt of notice of this lawsuit—which was filed just weeks ago—and their filing of this motion. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1205-206 (5th Cir. 1994) (Rule 24 motion was timely when made within two months of becoming aware that interests were affected); *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318, 320-21 (5th Cir. 1986) (five-month lapse not unreasonable). Indeed, such a period of time was appropriate for the Polunsky Unit Plaintiffs to retain counsel and for that counsel diligently to investigate the factual and legal bases for their claims. *See Espy*, 18 F.3d at 1206 ("Courts should discourage premature intervention that wastes judicial resources.").

As to the second factor, any potential prejudice "must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Id.* Again, this factor favors the Polunsky Unit Plaintiffs given the recent filing of the underlying litigation. *See id.* ("The movants sought intervention less than three weeks after the Forest Service issued its ... letter. We therefore conclude that no prejudice to the existing parties resulted from the delay in seeking intervention.").

The third *Stallworth* factor—the potential prejudice the Polunsky Unit Plaintiffs will suffer if their motion is denied—likewise favors a finding of timeliness. This Court, having considered the Pack Unit Plaintiffs' complaint and motion for a preliminary injunction, is already well-versed in the factual and legal issues underlying the claims brought by both sets of plaintiff classes against the TDCJ. Thus, if the Court denies the motion, the Polunsky Unit Plaintiffs will surely be prejudiced, if nothing else by their continued exposure to COVID-19 while their case is reassigned to a judge who is seeing these issues for the first time.

4

Finally, under the fourth *Stallworth* factor, the Court "must ascertain whether any unusual factors weigh in favor of a finding of timeliness." *Ross v. Marshall*, 426 F.3d 745, 756 (5th Cir. 2005). To put it bluntly, it would be hard to imagine more unusual circumstances than these: the world is suffering from an unprecedented, deadly pandemic from a novel virus that originated four months ago and saw its first confirmed infection within this judicial district just six weeks ago. *See* Rebecca Hennes, *How Did We Get Here? A Timeline of the Conoravirus Pandemic in Houston*, Houston Chronicle, March 31, 2020, https://www.chron.com/coronavirus/article/Coronavirus-Houston-pandemic-timeline-events-March-15167044.php. As this Court recently observed,

> We are living in unprecedented times. The COVID-19 pandemic threatens our communities and has required us to upend our routines and assumptions. With no known vaccine or cure for COVID-19 and the highly contagious and asymptomatic nature of the novel coronavirus, as well as overwhelmed medical systems throughout our communities, our prisons, jails, and detention facilities are facing outbreaks that differ from any infectious disease outbreaks that have occurred in the past.

*Vazquez Barrera v. Wolf*, 2020 WL 1904497, at *4 (S.D. Tex. April 17, 2020). Accordingly, the fourth factor is satisfied, and the Court should find the motion timely.

### B.  The Polunsky Unit Plaintiffs' Claims Share Common Questions of Law and Fact with the Pack Unit Plaintiffs' Claims

The Polunsky Unit Plaintiffs' claims share common questions of law and fact with this litigation.[1] The "claim or defense" requirement of Rule 24(b)(2) is to be construed liberally. *Newby*, 443 F.3d at 422. But here, the Court need not liberally construe the requirement to find the common questions that warrant permissive intervention in these proceedings under Rule 24.

---

[1] Though the Defendants have not yet answered the Pack Unit Plaintiffs' complaint in this action, given its similar legal claims and fact patterns it stands to reason that the Defendants' defenses in this case will share common questions of law and fact with their defenses in the Polunsky Unit litigation.

5

*First*, the Polunsky Unit Plaintiffs' claims raise near identical questions of law to those of the Pack Unit Plaintiffs.  Specifically, a court would have to determine all of the following to resolve both classes' allegations: (1) whether the Pack Unit and Polunsky Unit Plaintiffs' Eighth and Fourteenth Amendment rights are being violated by Defendants' failure to implement adequate procedures and practices to protect the class from COVID-19; (2) whether this failure constitutes cruel and unusual punishment; (3) whether members of the Disability Subclasses, as defined by both complaints, are qualifying individuals with a disability under the meaning of the ADA and Rehabilitation Act; (4) whether the Disability Subclasses' rights under the ADA and Rehabilitation Act are violated by the TDCJ's policies and practices; and (5) whether TDCJ illegally discriminated against the Disability Class by denying the Disability Class reasonable accommodations recommended by the CDC, both in policy and in practice.  *Compare* Compl. ¶¶ 67, 73-100 *with Balentine* Compl. ¶¶ 118, 122-144.

*Second*, both Plaintiff-classes' claims share common questions of fact that stem from the TDCJ's inadequate policies and procedures in response to COVID-19.  These common questions of fact include (1) what practices and policies the TDCJ is actually implementing with respect to COVID-19 throughout the Texas state prison system; (2) whether these policies and practices are inadequate; (3) whether there is proper oversight over the implementation of these policies and practices; (4) whether members of the High Risk Subclasses, as defined in both complaints, are at a heightened health risk from COVID-19; (5) whether members of the High Risk Subclasses require heightened measures to protect them from a COVID-19 infection; and (6) whether TDCJ's policies and procedures are adequate to protect the Disability Subclasses, as defined in both complaints, from COVID-19.  *Compare* Compl. ¶¶ 31-43, 47-48 67, 73-100 *with Balentine* Compl. ¶¶ 60-77, 118, 122-140.

### C. Intervention Will Not Unduly Delay the Litigation or Prejudice the Rights of the Original Parties

The Polunsky Unit Plaintiffs' intervention will neither unduly delay the litigation nor prejudice the rights of the original parties. In fact, permitting intervention will not result in *any* delay, much less *undue* delay. On April 27, 2020, the Court ordered the parties in this litigation to "complete required disclosures under Rule 26(a) … and confer telephonically as required by Rule 26(f)" by May 7, 2020. *See* Apr. 27, 2020 Order, ECF 69. If allowed to intervene, the Polunsky Unit Plaintiffs are prepared to meet the initial disclosure deadline and to participate in any Rule 26(f) conference on the timeline set by the Court.

Nor will intervention prejudice the parties. It is well established that when a case is recently filed, there is little risk that intervention will harm the original parties to the litigation. *See, e.g.*, *Home Ins. Co. v. Hughes*, 1996 WL 109292, at *2 (E.D. La. Mar. 11, 1996) (holding that "Ford's intervention will not delay or prejudice the rights of the original parties as the suit was only recently filed"). Such a consideration readily distinguishes this case from *Cole v. Collier*, where the Court denied a series of Rule 24(b) motions filed over three years into litigation. *See Cole v. Collier*, 2017 WL 2118970, at *2 (S.D. Tex. May 16, 2017) (denying Rule 24(b) motion upon finding that "permitting intervention would cause undue delay and prejudice to the existing parties"). Indeed, unlike the *pro se* plaintiffs in *Cole*, permitting the Polunsky Unit Plaintiffs to intervene will aid the Court in deciding these important questions of law and fact, and likewise assist the Parties to achieve a just outcome for a greater number of plaintiffs.[2] Such considerations weigh in favor of

---

[2] The Fifth Circuit has instructed that when considering a Rule 24(b) motion to intervene, a district court may also consider "whether the intervenors' interests are adequately represented by other parties" and whether they "will significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (en banc) (citations omitted).

granting the Polunsky Unit Plaintiffs' motion to intervene. *See Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (observing that where greater justice can be obtained, federal courts should permit intervention).

## CONCLUSION

For the foregoing reasons, the Polunsky Unit Plaintiffs respectfully request that the Court grant their motion to intervene through the filing of Exhibit 1, the Polunsky Unit Plaintiffs' Complaint in Intervention.

Dated:  May 1, 2020  Respectfully submitted,

*/s/ David R. Dow*
David R. Dow
Texas Bar No. 06064900
Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4604 Calhoun Rd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131
Email ddow@central.uh.edu
jrnewber@central.uh.edu

*Attorneys for Polunsky Unit Plaintiffs*

9

**CERTIFICATE OF SERVICE**

    I, David R. Dow, certify that a true and correct copy of the above and foregoing POLUNSKY UNIT PLAINTIFFS' MOTION TO INTERVENE has been served electronically upon all counsel of record via the electronic filing system of the Southern District of Texas, on May 1, 2020.

                                         */s/ David R. Dow*
                                         David R. Dow
                                         *Attorney for Polunsky Unit Plaintiffs*