1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
2                   HOUSTON DIVISION

3

4   LADDY CURTIS VALENTINE AND    .  4:20-CV-01115
    RICHARD ELVIN KING,           .  HOUSTON, TEXAS
5                                 .  MAY 8, 2020
         PLAINTIFFS,              .  11:00 A.M.
6   VS.                           .
                                  .
7   BRYAN COLLIER, ET AL,         .
                                  .
8        DEFENDANTS.              .
    ................................

9

10              TRANSCRIPT OF TELEPHONE CONFERENCE
              BEFORE THE HONORABLE KEITH P. ELLISON
11                UNITED STATES DISTRICT JUDGE

12

13

14                      *APPEARANCES*

15

16

    FOR THE PLAINTIFFS:
17

18        Jeffrey S. Edwards
          THE EDWARDS LAW FIRM
          1101 East 11th Street
19        Austin, Texas  78702

20

21        John R. Keville
          Brandon W. Duke
22        Cori Hockman
          WINSTON STRAWN
23        800 Capitol Street
          Suite 2400
24        Houston, Texas  77002

25

1                              *APPEARANCES CONTINUED*

2

3

4    FOR THE INTERVENOR PLAINTIFF JOHN BALENTINE:

5         David R. Dow
          UNIVERSITY OF HOUSTON
6         4604 Calhoun Road
          Houston, Texas   77204

7

8

     FOR THE DEFENDANTS:
9
          Christin C. Vasquez and Jeffrey Farrell
10        OFFICE OF THE ATTORNEY GENERAL
          Post Office Box 12548
11        Austin, Texas   78711

12

13

14   OFFICIAL COURT REPORTER:

15        Mayra Malone, CSR, RMR, CRR
          U.S. Courthouse
16        515 Rusk
          Room 8004
17        Houston, Texas   77002
          713-250-5787
18

19

20   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
21

22

23

24

25

1                          *PROCEEDINGS*

2              THE COURT:  Good morning and welcome to all of you.

3      Let's just go through appearances of counsel one more time for

4      my benefit in Valentine versus Collier.

11:01     5          *(Simultaneous cross talk)*

6                  THE COURT:  I got Mr. Keville's name.  Who else?

7              MR. EDWARDS:  Jeff Edwards also on behalf of the

8      plaintiffs, Valentine and King.

9                  THE COURT:  Does anybody else want to speak for the

11:01    10     plaintiffs?

11          *(No response)*

12                 THE COURT:  For defendant?

13             MS. VASQUEZ:  Christin Vasquez and Jeff Farrell for

14     the defendant.

11:02    15              THE COURT:  Let me just see if we can get a progress

16     report before we get into anything else.

17                  Can you update us, Ms. Vasquez and Mr. Samuels

18     (sic) on how many inmates at the Pack Unit have now been tested

19     for the COVID-19 virus?

11:02    20              MS. VASQUEZ:  I do not have specific numbers, Your

21     Honor.

22                 THE COURT:  Who would have those numbers?

23             MS. VASQUEZ:  Someone at TDCJ.

24                 THE COURT:  Well, how many inmates at the Pack Unit

11:02    25     have tested positive for the virus?

11:02  1              MS. VASQUEZ:  I don't know, Your Honor.

2              THE COURT:  Have there been any more deaths from the

3       virus?

4              MS. VASQUEZ:  I believe there have, Your Honor.  I

11:03  5       don't know specifics.

6              THE COURT:  This is pretty basic information, isn't

7       it?

8              MS. VASQUEZ:  Yes.  My general knowledge is there have

9       been, but I don't know specifics.

11:03  10              THE COURT:  Do the plaintiffs have any knowledge of

11       any of those three things; testing, positive results or deaths?

12              MR. EDWARDS:  Your Honor, this is Jeff Edwards.  I do

13       not have the specific information, but I feel confident someone

14       on the call could at least get to the website to do that.

11:03  15              We are aware through publicly -- through public

16       documentation from TDCJ that more than a week ago, there was

17       another COVID-19 person diagnosed at the Pack Unit, and there

18       have been reports in the media that there have been others.

19              My understanding is that there have been numerous

11:04  20       deaths reported from the press and the TDCJ systemwide and

21       hundreds of -- and maybe even more than 1,000 COVID-19

22       instances amongst correctional officers and inmates.

23              THE COURT:  I saw one story in the press that put the

24       number of positive inmates at 70 percent of some of the state

11:04  25       prisons and I just -- I know there is a website, but press

11:04  1  stories and websites, nobody takes ownership of those facts.  I

2  need somebody to tell me who knows, and is willing to stand

3  behind that knowledge, how many people we have in this

4  category.  I would rather not have to go to a website with no

11:05  5  authorship or press story with --

6          MR. DUKE:  Your Honor, this is Brandon Duke.  I just

7  jumped on the call for the plaintiffs.  I just want to inform

8  the Court that the Fifth Circuit has asked for this specific

9  information by Monday from defendants.  Obviously it's

11:05  10  different counsel before the Fifth Circuit, but we understand

11  that TDCJ is supposed to be providing this in a day or a few

12  days to the Fifth Circuit, so I hope that they can provide this

13  same information to the Court.

14          THE COURT:  Yeah.  I saw that -- I saw the paperwork

11:05  15  on that.  I'm just surprised that no one came to this hearing

16  possessed with that information.

17              Okay.  We had originally set this hearing in

18  advance to see -- to have a date on the calendar at which we

19  could talk about Rule 26(f) disclosures and case management, a

11:06  20  case management plan.  We were going to pull it down if there

21  were agreement between the parties, and I see there has not

22  been an agreement of parties.  So let's talk about whatever we

23  need to discuss on the discovery case management plan.

24          MR. EDWARDS:  Your Honor, this is Jeff Edwards.  I

11:06  25  think the first issue that's most important is when the Court

11:06  1   wishes to proceed to trial.  And then the second issue is when

2   discovery can begin and, in particular, what experts would have

3   to be designated.

4          It is the plaintiffs' position that, given the

11:06  5   importance of this case and the imminence of harm, that we

6   should expedite the trial.  We proposed a July 6 trial date,

7   and in order to make that feasible, we propose that we would

8   designate our experts next week on the 15th and that the

9   defendants would designate their experts three weeks later.

11:07  10          Also, in order to make that work, we propose

11   expediting discovery.  Instead of 30 days to respond to

12   documents and interrogatory requests, we have asked that that

13   be limited to 15 days.

14          And, finally, the biggest issue -- another issue

11:07  15   that we are going to have to deal with is the defendants have

16   sought to stay discovery.  Obviously, the plaintiffs are

17   opposed to that, and I imagine we are going to be before the

18   Court trying to force people with knowledge at the highest

19   levels to testify.  That's going to bring into play the issues

11:07  20   relating to the intervention and how that demanded discovery in

21   this case.  But I think from a starting point, what the Court's

22   position on trial and when that should be will dictate, I

23   think, some of the defendant's responses.

24          We are not comfortable waiting until November to

11:08  25   try this case given the potential outcome.

11:08    1               Thank you, Your Honor.

         2          THE COURT:  Mr. Samuels or Ms. Vasquez, do you want to

         3    speak to that?

         4          MS. VASQUEZ:  Yes, Your Honor.  We propose a November

11:08    5    trial date.  That is still an expedited schedule.  Given the

         6    appeal, the motions to dismiss on file, the number of

         7    depositions and the level of officials the plaintiffs have

         8    stated that they want to depose during the height of this

         9    pandemic, it is going to take some time to pull those people

11:08   10    away.

        11               Also, there is this looming intervention and

        12    defendants -- you know, once the plaintiffs file a motion to

        13    certify a class, we think it would be appropriate to bifurcate

        14    discovery.  I think that all that needs to be done in this case

11:09   15    is going to take until November to complete.

        16               Also, with regard to the expedited discovery, I

        17    told Mr. Edwards we would be willing to expedite discovery to

        18    an extent, but without seeing the number of requests that are

        19    being propounded at any given time, we can't agree to a

11:09   20    flat-out date that we can respond by.  I think it would just

        21    have to be dependent on how much discovery they are requesting

        22    at any given time.

        23          THE COURT:  Was that the only disagreement about --

        24    that emerged from the Rule 26 discussions?  Or do we need to

11:09   25    talk about others?

11:09    1          MR. EDWARDS:  No.  There are other issues.  Well,

         2    there are issues as to whether or not the protective order in

         3    the Cole case, whether information and details can be shared

         4    with co-counsel Winston Strawn.  The defendant's position is

11:10    5    unless we specify the exact document and the exact piece of

         6    information, they are unable to agree to us sharing information

         7    with our co-counsel.  You know, I'm sorry to have to bring this

         8    to the Court, but, you know, we think it is very important that

         9    any information that we happen to have because of knowledge of

11:10   10    inmates' medical conditions at the Pack Unit and those class

        11    members, that we are able to discuss freely with co-counsel

        12    solely for use in this case.

        13          Again, I apologize to the Court that we need to

        14    involve you in this, but we do, because the refrain we get from

11:10   15    the defendants is, We will consider what you ask.  It is never

        16    no and it is never yes.  It is only, We will take that to our

        17    clients and consider it.  And, again, given the timing and the

        18    importance of that, we can't be in a position to be dealing

        19    with that anymore, which is why the request for an expedited

11:11   20    deadline of 15 days, rather than 30, as a starting point is so

        21    important.

        22          Again, this is exactly how the conversation will

        23    go in the future if we adopt Ms. Vasquez's proposal:  There's

        24    too many, we can't make the deadline, we will consider it, we

11:11   25    will get back to you.  But ultimately the decision is going to

be no.

Again, if there are voluminous requests that they need more time on, obviously reasonable extensions will be appropriate, but the starting point has to be:  This is important and it needs to be expedited.

Those are really the only extra issues though. We would ask the Court to comment though on our ability to share information with our co-counsel, Winston Strawn, without fear of violating a potential protective order.

THE COURT:  What we talking about is the information that was provided in the Cole versus Collier case?  Is that the universe of information we are talking about?

MR. EDWARDS:  Yes, Your Honor.  Just that number.

MS. VASQUEZ:  May I respond, Your Honor?

THE COURT:  Yes.  Yes.  By all means.

MS. VASQUEZ:  Thank you.

Your Honor, this isn't a motion to certify the class in this case.  Currently it only pertains to plaintiffs Valentine and King.  TDCJ would agree to give the plaintiffs their own medical records.

We have been asking since they filed their motion to modify the protective order three weeks ago to designate Bates pages that they want to duplicate for this case, and maybe we could agree.  Last night, I finally received some Bates pages, and they included some photos.  The photos -- four

11:12   1    of the photos were from UTMB.  They are not a part of this

2    protective order that the plaintiff sought to modify.  The

3    remaining photos are -- they were taken five years ago during

4    the heat litigation.  I think that at least some of them don't

11:13   5    accurately depict the Pack Unit, although I don't think that

6    TDCJ is going to argue that they are confidential.  I think

7    that they are fine with letting the other lawyers see those

8    photos, just with the understanding that they may be different

9    than the representations of the Pack now.

11:13   10         THE COURT:  Are you asking the Court -- are you asking

11   the plaintiffs to bring their motion to certify now before

12   discovery starts?

13         MS. VASQUEZ:  I'm saying that I think that a motion to

14   certify the class, if they are looking for class discovery,

11:13   15   that's what would need to be done.

16         THE COURT:  Well, I'm sure that could be done.

17              Yes.  Go ahead.

18         MR. EDWARDS:  I'm sorry.  Would defendant's counsel

19   stipulate that they will begin discovery as soon as that motion

11:14   20   is filed?

21         MS. VASQUEZ:  We still would stand on our motion to

22   stay given the pending interlocutory appeal and the 12(b)

23   motion.

24         THE COURT:  So you think that the 12(b) motion needs

11:14   25   to be resolved and the interlocutory appeal resolved before you

11:14          1    do any discovery?

               2             MS. VASQUEZ:  Yes, Your Honor, in order to narrow the

               3    issues so we know what we are moving forward on.

               4             MR. EDWARDS:  Your Honor, this is Mr. Edwards.

11:14          5                  Does that merit a response?

               6             THE COURT:  Yeah.  Go ahead.  I don't know how we are

               7    going to decide class certification without doing some

               8    discovery.

               9                  Mr. Edwards?

11:14         10             MR. EDWARDS:  To the extent it matters, the issues of

              11    class discovery and merits discovery are going to greatly

              12    overlap.  We are talking about the uniform policies in play and

              13    how they are being implemented at the Pack Unit.  The case is

              14    about deliberate indifference.  It is going to involve senior

11:15         15    leadership at TDCJ on class-wide discovery and merits

              16    discovery.  You know, the rigorous analysis that needs to be

              17    done for class certification discovery, you know, really

              18    commonality and typicality are going to be almost givens in

              19    this case and so really it's adequacy of the actual plaintiffs

11:15         20    in this case.  And the Court has already heard testimony and,

              21    you know, while my opinion may not be dispositive, you know, it

              22    will be difficult for me to imagine a situation where they

              23    weren't knowledgeable of the litigation and actively engaged in

              24    such that they are adequately representing the interests of the

11:16         25    class.

11:16   1              While class certification is obviously important,

2      we can have a motion on file very quickly, if that's necessary,

3      but it's really not because there is nothing in the law that

4      prevents discovery while a pending motion to dismiss is on file

11:16   5      in an injunctive relief case.  There simply isn't any.  And,

6      you know, we routinely litigate against the Attorney General's

7      office, TDCJ, UTMB and never are -- rarely are stays even

8      sought, let alone in a case the magnitude of this.  But if --

9      that's why I asked if they would stipulate that they would

11:16   10     begin discovery in the class certification motion.

11              What is happening here is the defendants are

12     putting up, you know, potential hurdles and then just seeking

13     to find other hurdles.  We are way past that point.  We had an

14     injunction hearing.  The Court has ruled.  While it is on

11:17   15     appeal and there are differing interpretations of what the

16     Fifth Circuit may do, no one knows what the Fifth Circuit may

17     do.  And we need to take discovery in order to prepare the case

18     for trial, and so I still think the most important issue before

19     the Court is how do we get this case tried expeditiously?  And,

11:17   20     again, we have put forward a plan to put forth designation of

21     experts without even taking full discovery to do that, to make

22     that possible, you know.  Obviously, this is a small

23     consolation, but every lawyer on here has a busy practice, and

24     we are willing to get this done by July 6th in the interest of

11:17   25     the class.

11:17    1          There will be a motion for class certification

2     filed as soon as the Court wants it to be heard.  We probably

3     will file it as an emergency motion and ask for expedited

4     relief.  But, again, if that is a hurdle that there is actually

11:18    5     something at the end of the day for jumping over it, we will

6     meet it forthwith or right away.  This, again, class

7     certification isn't really the issue here.  The issue is, you

8     know, are the policies that have been put in place, you know,

9     the epitome of deliberate indifference in that they are failing

11:18   10     to protect the inmates?  And, again, the Court has made its

11     ruling based on the available evidence.  All we are saying is

12     getting this case to trial as soon as possible is what needs to

13     happen when the consequences are this serious.  And the

14     defendants again, you know, they are raising points that, you

11:18   15     know, that fail to account for the fact that this is a case of

16     potential eminent harm.  And, you know, we need this

17     information.  Discovery has already been sent on some very key

18     issues.  We need that responded to.  And, unfortunately,

19     without the Court's intervention and some real deadlines, the

11:19   20     response is going to be, We will consider it.  Not, We agree or

21     we refuse, we will just consider it, which is kind of the

22     slow-playing way that this is happening.

23               Again, I'm happy to address any issue related to

24     class certification, any issue for how to make discovery go

11:19   25     more smoothly.  Defense counsel brought up the concern about

11:19    1   intervenors.  We are happy to consolidate discovery with the

2   potential intervenors without making a determination as to

3   whether or not ultimately the cases should be tried together.

4   Counsel for the intervenors may want to weigh in on that issue,

11:20   5   as well as maybe the Attorney General's office.  But they can't

6   on the one hand say, Well, the plaintiffs wish to depose the

7   senior leaders in TDCJ and they are busy dealing with the

8   COVID-19 virus and ask for -- you know, when we are willing to,

9   again, do whatever we can to expedite this discovery, minimize

11:20   10   the burden on those people, so that they can actually help.

11   But they are the ones who have information.  And given that the

12   case, you know, turns on deliberate indifference, what they

13   know, when they knew it and what they are doing as a

14   consequence of it, that's information that we simply have to

11:20   15   have and have to get.  And so, you know, with all due respect

16   to defense counsel, their leadership has to make some time

17   given these allegations and the Court's findings.

18            Thank you.

19       THE COURT:  Ms. Vasquez, it does seem like the Fifth

11:21   20   Circuit believes the critical issue is deliberate indifference.

21   I don't know how we are to approach that issue other than with

22   discovery.

23       MS. VASQUEZ:  Your Honor, the Fifth Circuit has not

24   stated that.

11:21   25       THE COURT:  I think they felt like that is what was

11:21  1  missing from the preliminary injunction.  There was a holding

2  that they are not -- plaintiffs actually pled there was

3  deliberate indifference.  And I think that is -- whether or not

4  the Fifth Circuit says that, I think that is the ultimate issue

11:21  5  in this case, and I don't know how we approach that other than

6  by finding facts.

7          If you want to, we can stipulate to some facts

8  and argue about whether those facts constitute deliberate

9  indifference, but absent that, we need to get some facts.

11:22  10         MS. VASQUEZ:  Well, there were facts presented in the

11  TRO hearing with the evidence attached, but I think, Your

12  Honor, the point is that the Fifth Circuit is still

13  contemplating the injunction.  And I think that it's

14  appropriate to wait for their opinion so that we can have some

11:22  15  guidelines to operate off of as well as the pending 12(b)

16  regarding exhaustion.  I think the Fifth Circuit was pretty

17  clear that the plaintiffs did not seek to exhaust before they

18  filed the lawsuit, which is dispositive.

19         THE COURT:  Well, there is a lot of law developing on

11:22  20  that issue systemwide with the COVID-19 virus and there is --

21  there are now some holdings that in the face of this emergency,

22  exhaustion is not necessary.  It seems like a common sense

23  position.  Because if we waited for the plea to go to the

24  Warden and then the appeal from the Warden, it might mean

11:23  25  serious health effects for inmates while they are waiting to

11:23    1   get the ruling.  I mean, I can't imagine a likelier case for

2   waiver of administrative exhaustion than this case.

3              How long will a complete administrative

4   exhaustion take?  It would be 30 days with the Warden and who

11:23    5   knows how much time for administrative appeal.  Right?

6       MS. VASQUEZ:  Yeah.  I think it's a little bit shorter

7   for this step too, but I would just -- if Your Honor is

8   inclined to allow some discovery to go forward, I would ask

9   that it be tailored only to the plaintiffs in this case --

11:23   10   there is no class as we sit here today -- and also tailor it to

11   issues that are relevant to the 12(b) pending.

12       THE COURT:  How are we going to judge issues of

13   commonality without some discovery?

14       MS. VASQUEZ:  Your Honor, he hasn't filed his motion

11:24   15   to certify the class yet, so I don't know what kind of class he

16   is seeking to certify, so I can't answer that.  All I know is

17   that he has two plaintiffs that are named, so I think that at

18   the very most would be appropriate for discovery with the

19   12(b)s pending.

11:24   20       THE COURT:  I would say that that would have been

21   appropriate for Rule 26 initial information, that is the basic

22   info about these named plaintiffs.  There shouldn't be a need

23   for interrogatories or requests for admissions or document

24   production with the named plaintiffs.

11:24   25        Can't the defendants just provide that

11:24   1   information?

2          MS. VASQUEZ:  Yeah.  We will -- I said earlier in the

3   call, TDCJ will provide the plaintiffs with their medical

4   records.

11:25   5          MR. EDWARDS:  Your Honor, this is Mr. Edwards.  May I

6   respond briefly?

7          THE COURT:  Yes, you may.  Yes, you may.

8          MR. EDWARDS:  That sums up the defendant's position.

9   They don't -- whether it is tactically, or for some other

11:25   10   reason, they are misunderstanding what this case is about.

11   This case concerns a contagion in the Pack Unit that affects

12   every member; therefore, discovery as to Mr. Valentine and

13   Mr. King necessarily includes discovery about who else was

14   infected, what they are doing in other areas of the prison, the

11:25   15   correctional officers, are the precautions adequate, are there

16   policies that they are adopting, primarily in the consequence

17   of this lawsuit, I might say?  Are they actually being

18   enforced?  Are the Wardens directing them properly?  Those are

19   fact issues that, again, you can't separate those out based on

11:26   20   whether there is a class certification motion filed or not.

21   But the mere fact that defense counsel is offering to give

22   medical records that actually belong to the clients, those

23   aren't the records we need.  We know what their medical

24   conditions are.  We know the effects of that.  What we need to

11:26   25   ask questions about are, Well, what do you know about their

11:26     1    medical conditions?  What do you know about generally medical

          2    conditions, how that makes you more vulnerable to the COVID-19

          3    virus?  What are you doing that's different at the Pack Unit

          4    given its elderly and vulnerable population?  These are

11:26     5    questions that we have to ask.  You know, we are planning on

          6    starting the depositions with Warden Herrera, you know, and we

          7    need to do that right away.  This isn't a cause for, well,

          8    let's give some medical records to the plaintiffs.  Again, they

          9    know our plaintiffs.  Our plaintiffs have essentially testified

11:27    10    and been subject to cross-examination already.  We are happy to

         11    put them up for a deposition.  But the idea that discovery

         12    should stop in this case, again, there is no legal support for

         13    it.  And, again, while we can all try to discern what the Fifth

         14    Circuit may or may not do, the fact of the matter is the issue

11:27    15    that was ruled upon was related to the stay.  And while the

         16    stay implicates, you know, success -- likelihood of success on

         17    the merits, it is merely advisory.  And so, you know, this

         18    Court has heard evidence and, you know, TDCJ made a conscious

         19    choice not to put up witnesses for cross-examination.  And

11:27    20    while, you know, in my opinion, that evidenced that they knew

         21    about the problem and there was ample evidence to support a

         22    finding of deliberate indifference.  Again, you know, to the

         23    extent they are going to make this argument that they weren't

         24    deliberately indifferent, we have to be permitted to question

11:28    25    them about that to show that they were, unless, as the Court,

11:28   1   you know, hinted at, the defendants are willing to stipulate

2   that they knew the COVID-19 outbreak was in the Pack Unit, they

3   knew the precautions could not stop it from spreading, and they

4   know that their policies are deficient.  Again, I don't imagine

11:28   5   that defendants would stipulate to that.  They are not really

6   willing to stipulate to anything, even benign suggestions.  So,

7   unfortunately, again, the law favors allowing discovery to the

8   extent it doesn't require us in this particular case to file a

9   class action as a motion for class certification.  All that

11:29   10   that does -- you know, once that happens, then we fall into the

11   argument from defense counsel, Well, we should bifurcate the

12   discovery.  Bifurcating discovery in this case makes no sense,

13   you know, because the same questions are going to be asked,

14   whether or not it is Laddy Valentine individually making his

11:29   15   ADA claim or 1983 claim or as a class rep or as an individual

16   plaintiff.  The same questions, the same concerns.

17           The only thing that it potentially implicates is

18   broader issues in other prisons, but even that really isn't the

19   case because one of the allegations here is that TDCJ brought

11:29   20   prisoners into the Pack Unit from other facilities and that

21   correctional officers came from other facilities.  So even

22   those other facilities as to Mr. Valentine and Mr. King's

23   individual claims are relevant.  They become especially

24   relevant when you get into the situation of class discovery and

11:30   25   all of the different inmates and all of the different

1   movements.

2           There are -- there is work to be done by defense

3   counsel in this case in terms of identifying the inmates,

4   telling us who has been infected, telling us what testing, if

5   any, has been done, and they simply don't want to do it.  They

6   won't even tell us the second confirmed, identified inmate who

7   got COVID.  Worse than that, I think their argument is going to

8   be, Well, we moved that person to another facility; therefore,

9   it's not relevant.  So there is a bit of a potential show game

10  happening here that we need to delve into.  And, so, again,

11  discovery is vital in this case.  It goes to the heart of the

12  claims under class certification principles or just individual

13  principles.  We are entitled to it, and, again, it goes to the

14  core of the case.  And we would ask that it begin immediately;

15  that their motion to stay discovery be denied and that we be

16  permitted to do discovery and that the Court seriously consider

17  the competing proposals.  Their proposal is:  Do it the same

18  way with a trial in November.  Ours is:  It's too important.

19  We need to expedite the deadlines and the designation periods

20  and move as quickly as possible.  All that being said, we are

21  happy to minimize the burden on executive leaders by, you know,

22  coordinating discovery with other cases, if that is of any

23  benefit to the other side.  But what can't be done is they

24  can't on the one hand say, The crisis is an emergency, all of

25  our leadership needs to devote 100 percent of their time to it,

11:31   1   it is so important, and then deny the obvious, which is, we

2   agree on that, but what are you doing about it?  We need to

3   have a trial about it to see if what is being done adequately

4   protects the inmates or if it is indifferent.  They want to

11:32   5   just say, Hey, it's an emergency; therefore, we don't have to

6   pursue the case.  That can't be permitted.

7                   Thank you, Your Honor.

8            THE COURT:  Can't we resolve a lot of this

9   disagreement and couldn't we save a lot of time for TDCJ

11:32   10   executives, the lawyers and those who will look at the

11   documents if we just had a few simple stipulations?

12            Couldn't we stipulate that in a prison, there is

13   no way possible to keep all the inmates at least six feet

14   apart?  Couldn't we stipulate that meals and showers and many

11:32   15   recreational activities are done in groups where some mixing

16   among inmates is inevitable?  Couldn't we likewise agree on how

17   many tests have been administered and what the results of those

18   tests are?  All of this I can see saving us a lot of time in

19   depositions and saving us a lot of time in discovery.

11:33   20            Is that not possible, Ms. Vasquez?

21            MS. VASQUEZ:  That might be possible, Your Honor.

22            THE COURT:  That's the kind of thing I was hoping --

23   go ahead.

24            MS. VASQUEZ:  I was going to say at the same time,

11:33   25   Your Honor, the plaintiffs, they are trying to get class-wide

11:33   1    discovery before they have even filed the motion to certify the

2    class.  Also, they want the protective order in Cole applied to

3    Valentine, but they won't even give us documents they want to

4    use.  They are trying to skip the entire process and -- at our

11:33   5    expense, so, I think, Your Honor, I think it would be

6    appropriate to require the plaintiffs to go through the proper

7    steps in order to get the information that they need, require

8    both of us to go through the proper steps.

9              THE COURT:  But what I'm saying is if we stipulated to

11:34   10   a few simple and, I think, self-evident facts, we could show

11   commonality, we could show numerosity, we could show adequacy

12   of representation.  I mean, it is such -- discovery is always

13   burdensome, and it is particularly burdensome when the same

14   results could be achieved by agreeing on self-evident facts.  I

11:34   15   understand no senior executive likes to be made a deponent in

16   every case that's filed.  I understand that.  I think we can

17   get to a place where depositions either could be omitted or

18   sharply curtailed if we could just agree on facts on the

19   ground.  I know producing hundreds of thousands of documents is

11:34   20   very time consuming and very expensive.  As a taxpayer, I'm not

21   inclined to put the state through that expense, but we need

22   to -- as lawyers, we need to generate some options so that we

23   can avoid all of that.

24             MS. VASQUEZ:  Yes, Your Honor.  I lost my train of

11:35   25   thought.

11:35    1          THE COURT:  Talking about stipulations, whether we

2    could avoid having to take the time of your senior executives,

3    whether we could avoid having to produce these hundreds of

4    thousands of documents.

11:35    5          MS. VASQUEZ:  Yes.  I think this whole conversation is

6    a bit premature because we don't even know what kind of class

7    or subclasses the plaintiffs want to certify.  So while this

8    conversation might be fruitful, we don't even -- there is no

9    motion to certify the Pack, Your Honor.  I don't know what they

11:35    10   are trying to certify.

11         THE COURT:  I don't think it's a mystery.  I think you

12   could look at what was alleged in the motion to certify the

13   class in the Cole versus Collier case and get a pretty good

14   idea.  We have a limited population in a certain space, subject

11:36    15   to common administration, worried about a common threat.  I

16   don't think it is going to be complicated to figure out what

17   the class allegations --

18         MS. HOCKMAN:  If I might, Your Honor?

19         THE COURT:  Who is speaking, please?

11:36    20   MS. HOCKMAN:  This is Cori Hockman for the plaintiffs.

21         THE COURT:  Yes, ma'am?

22         MS. HOCKMAN:  I can refer the defendants to page 24 of

23   our complaint which begins our class action section.  It

24   outlines who the class is, who our subclasses are, and it goes

11:36    25   through each of the four requirements for class certification

11:36    1   and gives some insight into what we plan to argue in our class

         2   certification motion.

         3            THE COURT:  I don't think we need to harbor or

         4   entertain any doubt about what the case consists of.  If we

11:37    5   need a motion -- I really don't think this dispute hinges on

         6   whether a motion has been filed.  In class action, there is

         7   always attention to, Do you try to do some discovery before you

         8   file your motion to certify and risk being met with the

         9   argument that it is premature?  Or do you wait and not do any

11:37   10   discovery before class certification and be met by the argument

        11   that you haven't shown any estimable hypothesis, any raw facts,

        12   any current data to support the request for class

        13   certification?  It is always a little bit of a dilemma when you

        14   file a motion to certify.

11:37   15            But I do believe -- from what I have heard in

        16   this hearing and others, I do believe the state is going to be

        17   ready to make an argument that there are no facts to support

        18   the class allegations, and that's what I'm trying to

        19   anticipate.

11:38   20            Are you willing to stipulate the fourth criterion

        21   for class action, that representative parties will fairly and

        22   adequately protect the interests of the class?  Is that

        23   something you can stipulate to?

        24            MS. VASQUEZ:  I'm not prepared to talk about the class

11:38   25   certification issues right now.  I was prepared to talk about

11:38  1  scheduling and the Rule 26(f).  I would be happy to have this

2  discussion, you know, when there is a proper hearing or motion

3  about it.

4          THE COURT:  Well, in terms of scheduling and Rule 26,

11:38  5  trying to find a workable schedule is contingent on how many of

6  these pretty forward factual issues can be agreed in advance.

7  I mean, if the state is going to argue every step of the way

8  against certification, I guess they are saying they need a

9  delayed trial date for that reason.  That seems to me unfair to

11:39  10  both say you can't be ready in time and do everything possible

11  to make sure plaintiffs can't be ready in time.  There is just

12  no need in this case, given the gravitas of the timing issue,

13  to be in disputes about the simple class action criteria.  And

14  I don't know how you do Rule 26 disclosures without some

11:39  15  sensitivity to what the class issues are.

16          MS. VASQUEZ:  Well, we have -- we appreciate the

17  gravity of the situation and the expedited need for a schedule,

18  and given that, we have agreed that November is a good trial

19  date for all the discovery that does need to be done, also

11:40  20  taking into account the appeal that is pending as well as the

21  12(b)s that are pending.

22          THE COURT:  Well, there is no prohibition on doing

23  discovery while a motion to dismiss is pending.  Motions to

24  dismiss are getting to be so common they are almost a feature

11:40  25  of every lawsuit now.

11:40  1          I am afraid this has not been productive.  I

2      guess I will just take under advisement rulings on issues as to

3      Rule 26, particularly the trial date.

4              Does anybody else want to say anything?

11:41  5          MR. DOW:  Judge, this is David Dow.  I'm representing

6      the aspiring intervenors.  And just for the sake of making the

7      record clear and to put a figure into Your Honor's decision,

8      the intervenors would be prepared to adhere to any discovery

9      deadlines and other deadlines that are appropriate for the

11:41  10     principal plaintiffs.

11             THE COURT:  Thank you, Mr. Dow.

12             Thank you very much, everyone, for your virtual

13     attendance.  You are excused.

14         *(Court adjourned at 11:41 a.m.)*

15                        * * * *

16     I certify that the foregoing is a correct transcript from

17     the record of proceedings in the above-entitled cause.

18

19     Date: May 12, 2020

20

21                    */s/ Mayra Malone*
                   ---------------------------------------
22                 Mayra Malone, CSR, RMR, CRR
                   Official Court Reporter

23

24

25