UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LADDY CURTIS VALENTINE, et al., § | |
| § | |
| Plaintiffs, § | |
| § | Civil Action No. |
| v. § | 4:20-cv-1115 |
| § | |
| BRYAN COLLIER, et al., § | |
| Defendants. § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR CONTINUANCE OR FOR PROTECTIVE ORDER

The Court should deny Defendants' emergency motion seeking to arbitrarily delay or, in the alternative, hamstring the progress of, this case—similar to the relief this Court already denied on Friday, June 26, 2020—for at least five reasons.

First, this is the rare scheduling dispute that is unfortunately a matter of life and death. At least 18 inmates died after contracting COVID-19 at the Pack Unit while this case was pending. TDCJ has not told the Court or Plaintiffs how many have been hospitalized, but hundreds have contracted COVID—it infects more each day. The motion should be denied for this reason alone.

Second, Defendants have not been surprised. Plaintiffs served expert disclosures, all of their current legal theories (including a detailed request for class certification in the complaint), and all of their discovery requests within one month of filing this suit.

Third, the timing of expert disclosures is a problem of Defendants' own making. Defendants have been producing discovery slowly and in piecemeal, frustrating Plaintiffs' experts' ability to meaningfully supplement their expert disclosures.

Fourth, Defendants refused repeated attempts to confer about these issues, including discussing Plaintiffs' discovery requests, illustrating that Defendants' motion is mere subterfuge—a transparent effort to waste time and unfairly delay trial.

Fifth, Defendants' proposal to only allow Plaintiffs to depose two experts is untenable. Defendants still have not even identified their experts, and only alerted Plaintiffs to the number of their experts this week.

## I. FACTUAL BACKGROUND

Plaintiffs filed suit on March 30, 2020. Doc. 1. In addition to requesting summons, Plaintiffs emailed the complaint to the Deputy Attorney General for Civil Litigation and the Chief of the Law Enforcement Defense Division at the Texas Attorney General's Office the same day with a copy of the complaint and a request for a hearing on a temporary restraining order. Ex. 1.

In addition to an injunction, Plaintiffs' complaint details the elements of class certification and seeks class certification. Doc. 1, pp. 24–27, 35.

Three months ago, on April 2, 2020, Plaintiffs filed four expert declarations. Doc. 12–14, 16.

On April 11, 2020, Leonard Clerkly died after being sent to the hospital from the Pack Unit. On April 13, 2020, posthumous testing revealed that he had COVID-19 when he died. Defendants' position remains that Mr. Clerkly is the first confirmed case at the Pack Unit.

On April 16, 2020, the Court granted a preliminary injunction. Doc. 40. In its April 20, 2020 memorandum and order, the Court explained that the injunction was designed to protect the proposed class identified in the complaint. Doc. 51, pp. 2–3, 28–29.

On April 27, 2020, Plaintiffs served interrogatories and requests for production on Defendants. Ex. 2; Ex. 3.

On May 7, 2020, Defendants moved to stay the entire case. Doc. 81.

On May 8, 2020, the Court denied both Defendants' motion for stay and Plaintiffs' motion to enter a protective order consolidating discovery in this case with that in *Cole v. Collier* proposed by Plaintiffs. Doc. 88. The Court set the case for trial on July 13, 2020.

The parties exchanged initial disclosures on May 8, 2020. Ex. 4. Defendants' disclosures only contained grievance policies, the CMHC policy, documents filed with the Court, and documents specific to the named Plaintiffs.

On May 13, 2020, Plaintiffs moved to certify two of the same classes listed in the complaint. Doc. 94. On that day, Defendants began to conduct COVID-19 tests of the entire unit, but they did not provide any formal update to Plaintiffs about the tests or the unit's plans in dealing with the tests.

On May 20, 2020, Defendants provided additional administrative reviews and test results. That same day, minutes before the second day of Warden Herrera's deposition, Defendants revealed that 86 additional inmates had tested positive the day before.

The next day, Defendants responded to the interrogatories—with objections only. Ex. 5. Among those was interrogatory 7, asking Defendants to describe the Pack Unit's COVID-19 precautions. Defendants also provided incorrectly encoded video files which have still not been supplemented and Clerkly's medical records.

On May 22, 2020, Plaintiffs asked Defendants to correct their responses to interrogatories no later than May 27, 2020. Ex. 6. Defendants supplemented on May 27, 2020 and filed an unsworn plan with the Court, Doc. 122, but did not answer interrogatory 7.

On May 28, 2020 and May 29, 2020, Plaintiffs took the deposition of TDCJ through its representative, Oscar Mendoza on noticed topics, including any Pack Unit training or policies

related to COVID-19. Ex. 7, Deposition Notice, pp. 6 (topic 16). Mendoza denied that there was any additional written policy regarding COVID-19 applicable to Pack beyond the CMHC policy and CDC guidelines. Ex. 8, Mendoza Deposition, Vol. 1, p. 123:22–124:8.

On June 8, 2020, on the night before Dr. Lannette Linthicum's deposition at 5:57 p.m. to 7:41 p.m., Plaintiffs received, for the first time, a written TDCJ COVID-19 policy from March 2020 and two Pack Unit plans for COVID-19, as well as Defendants' first and only response to interrogatory 7.[1] The March policy was only produced as part of a 219-page, unsorted pdf document consisting of Dr. Linthicum's emails. The plans were authenticated by affidavits predating TDCJ's May 28, 2020 deposition. As of June 8, Defendants had only produced 3,213 pages of documents.

Amidst the 11th-hour production leading up to Dr. Linthicum's deposition, Defendants proposed delaying the deposition until TDCJ had reviewed the "thousands" of documents pertinent to her. Ex. 14, Email from S. Cowles (June 9, 2020). TDCJ's proposal included the representation that those documents would be produced by the time of trial. *Id.*

In light of the delayed production, Plaintiffs indicated that expert reports would need to be supplemented based on deposition schedules. Thus, Plaintiffs repeatedly offered dates for several experts' depositions. *See* Ex. 15, Email from C. Hockman (June 23, 2020) (reflecting earlier email of June 12, 2020). Defendants did not notice them. Plaintiffs provided a supplement to Dr. Young's report on June 23, 2020 and to Eldon Vail's report on June 25, 2020.

---

[1] *See* Exs. 9 & 10, Emails from J. Rheams; Ex. 11, TDCJ Pandemic Viral Infectious Disease Policy for Novel Coronavirus (COVID-19); Ex. 12, P1 Plan; Ex. 13, Revised P1 Plan.

On June 25, 2020, Defendants produced 7,765 pages of documents, primarily emails and tables of inmates in restrictive housing. Many emails contain information specific to prisons other than the Pack Unit.

On June 26, 2020, during a hearing on class certification, Defendants represented to the Court that 18 Pack Unit inmates have died with COVID-19.

Later on June 26, 2020, Plaintiffs again offered dates for their experts' depositions and requested that Defendants supplement their discovery by July 7, 2020. Ex. 16, Email from B. Duke (June 26, 2020). Plaintiffs emphasized 6 areas of discovery in need of supplementation, and asked for daily updates on casualties from the disease and test results at Pack.

On June 27, 2020, the Court granted the motion for class certification. Doc. 160.

On June 29, 2020 at 9:43 p.m., Defendants rejected the dates for the expert depositions and claimed that the only "emergency" was Plaintiffs' "insisting on a trial three and one-half months from the filing of their Complaint" and promised to continue to produce documents but "cannot guarantee" it would be completed by July 7. Ex. 17, Email from S. Cowles (June 29, 2020). In the email, for the first time, Defendants asserted that the class certification had caused there to be "79,000" responsive documents.

On the morning of June 30, 2020, Plaintiffs responded by offering to confer by telephone on how to narrow the scope of responsive documents in order to facilitate the current schedule. Ex. 18, Email from B. Duke (June 30, 2020).

Instead of conferring further, Defendants perfunctorily emailed that they would be seeking a continuance and, in the alternative, an end to their obligation to supplement. Ex. 19, Email from C. Vasquez (June 30, 2020). They then filed the pending motion for continuance. Doc. 164.

At 11:41 p.m., Defendants emailed to ask Plaintiffs to propose limitations to their written discovery without providing any information about their new assertion that the Defendants were attempting to review "80,000" documents and without proposing a time to confer before the hearing on the subject of Defendants' emergency motion. Ex. 20, Email from S. Cowles (June 30, 2020).

## II. STANDARD OF REVIEW

The Court has discretion to deny a motion for continuance. *See United States v. Hickerson*, 489 F.3d 742, 745 (5th Cir. 2007); *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir. 1976). The Court has discretion to control the pacing of the schedule and discovery. *See Campbell v. Griffin*, 265 F. App'x 269, 271 (5th Cir. 2008).

## III. ARGUMENT AND AUTHORITIES

The Court should deny Defendants' motion for continuance and deny Defendants' motion to end their obligation to supplement discovery for at least five reasons.

First, every day of delay in this case is another day that Defendants continue to refuse to adopt reasonable protective measures for the class—and potentially contribute to another unnecessary death at Pack.[2] As this Court has previously acknowledged, Judge Davis on the Fifth Circuit panel agreed that the class is "now being held under circumstances that seriously threaten their life" and actually suggested this Court "will consider holding the trial *sooner*" than July 13, 2020. Doc. 163, p. 3 (emphasis added). The continued infection, hospitalization, and death at the Pack Unit is reason enough to deny Defendants' motion.

Second, Defendants' suggestion of unfair surprise is unfounded; in fact, the opposite is true. Plaintiffs served their expert declarations, all of their current legal theories, and all of their

---

[2] *See* Ex. 21, Supp. Dec. of Young; Ex. 22, Supp. Dec. of Vail; Ex. 23, Supp. Dec. of Cohen.

6

pending discovery requests within one month of filing this suit.[3] Plaintiffs' initial disclosures on May 8, 2020 were detailed and thorough. Ex. 4, Initial Disclosures. And even if that were not enough, every inmate Plaintiffs' counsel speaks to has to be scheduled in writing through Defendants. Every responsive document about the facts on the ground at the Pack Unit resides in Defendants' possession. All fact witnesses who are not class members are Defendants' employees or contractors. Defendants hold all of the cards, even as they refuse to show their hand. And it is inconceivable that Defendants did not anticipate that this case could be certified as a class action, as it has *always* been in the Complaint, Doc. 1; was addressed in the Court's preliminary injunction, Doc. 51, pp. 2–3, 28–29; and the motion has been on file since May 13, 2020. Doc. 94.

Third, the Court should reject Defendants' complaint about the timing of Plaintiffs' expert supplementation, as it is Defendants who withheld virtually all policies and plans other than their public policy document until they finally filed an unsworn plan with the Court on May 27, 2020. Doc. 122. Even then, Defendants were withholding written policy documents from Plaintiffs, and their 30(b)(6) representative incorrectly denied their existence on May 28, 2020—among many other problems with his preparedness to speak to the actual practices on the ground.[4] Defendants did not even provide a sworn description of their COVID-19 precautions at Pack until June 8, 2020—the same day they finally disclosed the additional policy documents. Plaintiffs then had to investigate these assertions and begin supplementation based on those new contentions, while hamstrung by Defendants' ongoing failure to supplement documents literally at their fingertips, such as the records of deceased and COVID-positive inmates, inmate tests, and Pack Unit rosters.

---

[3] Doc. 1, pp. 24–27, 35; Doc. 12; Doc. 13; Doc. 14; Doc. 16; Ex. 2, Plaintiffs' Interrogatories; Ex. 3, Plaintiffs' Requests for Production.
[4] *Compare* Ex. 7, Mendoza Deposition, Vol. 1, p. 123:22–124:8 *with* Ex. 11, TDCJ Pandemic Viral Infectious Disease Policy for Novel Coronavirus (COVID-19); Ex. 12, P1 Plan; Ex. 13, Revised P1 Plan.

Defendants' production of June 25, 2020 contains 7,765 pages—the vast majority of the mere "nearly 11,000" they boast of producing in a three-month period. Moreover, even as Defendants continued to withhold their own experts' identities and discovery, Plaintiffs repeatedly offered dates, all of which Defendants rejected or ignored, revealing that they feel it more important to preserve their grievance than to actually learn the experts' opinions.[5] Defendants' proposal to continue trial or stop supplementing discovery is merely their latest ploy to delay this case for the sake of delay alone.

Fourth, Defendants are merely seeking delay, rather than an actual resolution. Defendants ignored Plaintiffs' request to confer about the supposed impetus of this motion. Defendants' email of June 29 is the first assertion that Defendants still have "79,000" documents to review. Ex. 17, Email from S. Cowles (June 29, 2020). Instead of calling Plaintiffs to discuss how to exclude documents as Plaintiffs requested, *see* Ex. 18, Email from B. Duke (June 30, 2020), Defendants filed their motion within less than 24 hours of this revelation. A stop to supplementation is not an equitable proposal because it would leave Plaintiffs with only a handful of records about Defendants' activities in June, much less about their actions at the time of trial, and no way to prepare for trial. This proposal is also in conflict with Defendants' own consistent promises (even after filing this motion) to diligently supplement.[6] There is simply no explanation for Defendants' pattern of conduct other than a strategy of seeking delay in this case.

Finally, Defendants have access to the policymakers in this case and everyone in custody of responsive documents. Defendants also have not identified their experts. Under these

---

[5] Ex. 15, Email from C. Hockman (June 23, 2020) (offering dates for experts and reflecting earlier an email of June 12, 2020 offering dates); Ex. 16, Email from B. Duke (June 26, 2020).
[6] *See, e.g.*, Ex. 14, Email from S. Cowles (June 9, 2020); Ex. 17, Email from S. Cowles (June 29, 2020).

circumstances, Plaintiffs reasonably understood the Court's limitation of 6 depositions per side to refer to fact witnesses, not experts. Indeed, Defendants only revealed that they have 4 (as yet unidentified) experts long after Plaintiffs had already taken 4 fact depositions. Even if that was not the Court's intent at the time, Defendants' production of documents is extremely slow and reflects a need for additional leeway to conduct depositions. The Court should permit Plaintiffs to depose two additional fact witnesses and all of Defendants' experts.

## IV. CONCLUSION

The Court should deny Defendants' motion to continue trial or end discovery supplementation, and authorize Plaintiffs to take two fact depositions as well as depose Defendants' experts.

Dated: July 1, 2020.

|  |  |
|---|---|
| Jeff Edwards<br>State Bar No. 24014406<br>Scott Medlock<br>State Bar No. 24044783<br>Michael Singley<br>State Bar No. 00794642<br>David James<br>State Bar No. 24092572<br>Federal ID No. 2496580<br>EDWARDS LAW GROUP<br>The Haehnel Building<br>1101 East 11th Street<br>Austin, TX 78702<br>Tel. (512) 623-7727<br>Fax. (512) 623-7729 | WINSTON & STRAWN LLP<br><br>By:  /s/ John R. Keville<br>John R. Keville<br>*Attorney-in-Charge*<br>Texas State Bar No. 00794085<br>S.D. Tex. ID No. 20922<br>jkeville@winston.com<br>Denise Scofield<br>Texas Bar No. 00784934<br>S.D. Tex. ID No. 1529<br>dscofield@winston.com<br>Michael T. Murphy<br>Texas Bar No.<br>S.D. Tex. ID No.<br>MTMurphy@winston.com<br>Brandon W. Duke<br>Texas Bar No. 240994476<br>S.D. Tex. ID No.2857734<br>bduke@winston.com<br>800 Capital Street, Suite 2400<br>Houston, Texas 77002<br>Tel. (713) 651-2600<br>Fax (713) 651-2700<br><br>***Counsel for Plaintiffs*** |

CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Filing System of the Southern District of Texas.

By  /s/ Jeff Edwards
JEFF EDWARDS

10