United States District Court
Southern District of Texas
**ENTERED**
July 06, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LADDY CURTIS VALENTINE, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-1115 |
| | § | |
| BRYAN COLLIER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are three Motions to Intervene filed by individuals incarcerated at Texas Department of Criminal Justice (TDCJ) prisons other than the Pack Unit, which is the prison at issue in the present case. The pending Motions to Intervene were filed by inmates at the Polunsky Unit ("Polunsky Intervenors") (Doc. No. 76), inmates at Ramsey Unit ("Ramsey Intervenors") (Doc. No. 140), and inmates at Allred Unit ("Allred Intervenors") (Doc. No. 154). All three groups of plaintiff-intervenors seek to intervene on behalf of themselves individually and a class of similarly situated individuals. Defendants have responded to the Polunsky Intervenors' and the Ramsey Intervenors' Motions to Intervene. After considering all three Motions, subsequent briefing, and all applicable law, the Court finds that all three Motions to Intervene must be **DENIED**.

### I.   BACKGROUND

Each of the three Motions to Intervene seeks to add classes of individuals who are incarcerated at TDCJ prisons other than Pack Unit. The Motions filed by the Polunsky Intervenors and the Ramsey Intervenors are very similar, seeking intervention on behalf of a class of individuals incarcerated at their respective units. The Motion filed by the Allred Intervenors is

1

more wide-ranging, seeking expansion of the current class to encompass all individuals incarcerated by TDCJ. All three Motions seek additional claims for relief beyond the two pled by Plaintiffs in this case.

### 1. Polunsky Intervenors (Doc. No. 76)

The Polunsky Intervenors are death row prisoners incarcerated at Polunsky Unit, near Livingston, Texas. (Doc. No. 76, at 2). They seek to represent a class of inmates incarcerated at Polunsky Unit. *Id.* The Polunsky Intervenors have brought a class action complaint under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). *Id.* Like Plaintiffs in the present case, the Polunsky Intervenors allege that TDCJ officials, by failing to protect inmates at Polunsky Unit from the spread of COVID-19, have acted with deliberate indifference in violation of the Eighth Amendment, and failed to provide reasonable accommodations in violation of the ADA. (Doc. No. 76-1 ¶¶ 22–40). The Polunsky Intervenors also bring a unique claim that TDCJ officials have violated the First and Fourteenth Amendments by unlawfully restricting inmates' right to access counsel. *Id.* ¶¶ 41–44.

### 2. Ramsey Intervenors (Doc. No. 140)

The Ramsey Intervenors are minimum-security prisoners incarcerated at the Ramsey 1 Unit, near Rosharon, Texas. (Doc. No. 140, at 2). They seek to represent a class of minimum-security inmates incarcerated at Ramsey Unit. *Id.* at 11. The Ramsey Intervenors filed their Motion pro se. Like Plaintiffs and the Polunsky Intervenors, the Ramsey Intervenors also bring claims that TDCJ officials are violating the Eighth Amendment and the ADA. Additionally, the Ramsey Intervenors allege that TDCJ officials are unlawfully restricting their access to the courts in violation of the First Amendment, by only providing copies of cases from the law library when inmates provide the exact citation. *Id.* at 52. The Ramsey Intervenors also raise additional claims under the Eighth

Amendment, alleging that TDCJ officials are restricting access to inhalers and unlawfully forcing inmates to remain in their cells in precautionary lockdown. *Id.* at 53–56.

### 3. Allred Intervenors (Doc. No. 154)

The Allred Intervenors are prisoners incarcerated at the Allred Unit in Iowa Park, Texas. (Doc. No. 154, at 4–5). They filed a Motion to Intervene pro se. The Allred Intervenors state their "unconditional right to intervene," *id.* at 2, and seek to "enlarge the class" to include "the entire class of prisoners incarcerated [i]n all TDCJ prison units," *id.* at 7. Because the Court is unaware of any statute or circumstances that allow the Allred Intervenors to intervene by right under Federal Rule of Civil Procedure 24(a), the Court will construe the Allred Intervenors' pro se Motion as seeking permissive intervention, for reasons similar to the other intervenors. To the extent that the Allred Intervenors seek to "enlarge" the class definitions in the present case to include all prisoners in TDCJ prisons, the Court finds there is no mechanism under Rule 23 by which the Allred Intervenors may change the class definition in the present case. However, the Court will understand the Allred Intervenors' Motion to be brought on behalf of a class of all prisoners in TDCJ custody. It appears that the Allred Intervenors plead an Eighth Amendment deliberate indifference claim that is similar to the Eighth Amendment claim in the present case. *See id.* at 9–11. The Allred Intervenors also allege discriminatory treatment by TDCJ officials of non-English speakers and retaliatory treatment of inmates who file grievances and lawsuits. *See id.* at 11–13.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 24(b) governs permissive intervention. Under Rule 24(b)(1)(B), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." While the decision to grant permissive intervention "is wholly discretionary," *Kneeland v. Nat'l Collegiate Athletic*

3

*Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984)), courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). It is also proper for courts to consider "whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv.*, 732 F.2d at 472 (quotations omitted).

## II. ANALYSIS

It is clear that the intervenors share common questions of law and fact with the Plaintiffs in this case. Because prisons are environments that are dangerously susceptible to the rapid spread of communicable diseases, inmates at all TDCJ prisons are particularly vulnerable to contracting COVID-19, which can lead to serious illness or death for many. Additionally, TDCJ appears to have implemented many system-wide policies, which impact inmates across the system in very similar ways. Thus, challenges to these policies would involve common questions of law and fact for all individuals incarcerated by TDCJ.

However, the Court also finds that allowing intervention by any of the intervenors would unduly delay and prejudice the adjudication of the original Plaintiffs' rights. Given the urgent nature of this case, the Court set the case on an expedited trial schedule. Although the three Motions would have been considered timely filed under normal circumstances, in this case, there is not enough time for intervenors and Defendants to engage in full discovery, pre-trial briefing, and trial preparation before this trial begins on July 13, 2020. Allowing intervenors and Defendants to properly prepare the intervenors' claims for trial would require delaying the trial date, which could put more lives at risk in Pack Unit.

Additionally, because of differences in issues of fact, the intervenors do not "significantly contribute to full development of the underlying factual issues in the suit." The present case has often turned on the particularities of the Pack Unit—a medium-security prison that houses primarily geriatric and infirm prisoners in open dorm-style housing. None of the other units at which intervenors are incarcerated have such a combination of conditions. These differences in population demographics, security level, and living arrangements lead to differences in questions of fact in these cases. For example, the Polunsky Unit houses inmates in individual cells, such that inmates do not share living spaces or toilets. (Doc. No. 116, at 4). Given how much of the Plaintiffs' case turns on cleaning and social distancing in shared spaces throughout Pack Unit, the Polunsky Intervenors will need to raise completely different questions of fact in their case. Inmates in the Ramsey Unit live in two-man cells, rather than open dorms like inmates in Pack Unit. (Doc. No. 175, at 4). This living arrangement also affects questions of cleaning and quarantining. Additionally, because Pack Unit is a geriatric facility, its population is primarily elderly and infirm, which makes the population much more at risk of serious illness or death if COVID-19 spreads throughout the population. None of the facilities at which intervenors are incarcerated are geriatric facilities. Because many key issues in the present case depend on the fact that the population at Pack Unit is primarily at high risk for developing complications from COVID-19, the differing demographics of the facilities at which intervenors are housed present different fact issues than the present case.

The intervenors also raise additional claims for relief, which will necessarily raise additional issues of fact and law that do not contribute to the further development of fact in Plaintiffs' case, and would delay the trial if joined to Plaintiffs' case. Plaintiffs raise only two claims: one under the Eighth Amendment and one under the ADA and the Rehabilitation Act. The

5

Polunsky Intervenors also raise a First Amendment claim relating to their access to counsel. The Ramsey Intervenors, similarly, raise a First Amendment claim, alleging that TDCJ officials are restricting their access to the courts through their restrictions on access to the law library. The Ramsey Intervenors also add Eighth Amendment claims alleging that TDCJ is not providing an adequate number of inhalers and is unlawfully restricting inmate movement to individual cells under preventative lockdown. The Allred Intervenors raise claims of discrimination and retaliation. These additional claims require separate discovery, relating to unique issues in different facilities. Thus, these additional claims do not further Plaintiffs' original case, and resolution of these claims in the present case would require delaying the trial.

For the foregoing reasons, the Court finds and holds that all three of the Motions to Intervene should be denied. While the Court is concerned about COVID-19 prevention measures and conditions in TDCJ prisons beyond Pack Unit, the current case is set to proceed on a schedule too expedited to allow for extensive development of additional facts and law in other prisons and on other claims. Although the Court denies these Motions, intervenors remain free to file their own separate cases.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 6th day of July, 2020.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE