1                    UNITED STATES DISTRICT COURT

2                     SOUTHERN DISTRICT OF TEXAS

3                          HOUSTON DIVISION

4    LADDY CURTIS VALENTINE and          .
     RICHARD ELVIN KING,                 .
5                                        .
                  Plaintiffs,            .
6                                        .   Civil Action
     VS.                                 .   No. H-20-CV-1115
7                                        .
     BRYAN COLLIER, ROBERT HERRERA, and  .   Houston, Texas
8    TEXAS DEPARTMENT OF CRIMINAL JUSTICE, .  August 5, 2020
                                         .   1:02 p.m.
9                  Defendants.           .
     . . . . . . . . . . . . . . . . . . .

10

11                  TRANSCRIPT OF PROCEEDINGS (HELD REMOTELY)

12               BEFORE THE HONORABLE KEITH P. ELLISON

13                      BENCH TRIAL - **DAY 17**

14   APPEARANCES:

15   FOR THE PLAINTIFFS:

16           Mr. John R. Keville
             Mr. Brandon W. Duke
17           Ms. Denise Scofield
             Ms. Corinne Stone Hockman
18           Mr. Michael T. Murphy
             Mr. Rob Green
19           Mr. Mark Werbner
             Mr. Kyle Terao
20           Mr. Jason Patrick Rudloff
             WINSTON & STRAWN, LLP
21           800 Capitol Street
             Suite 2400
22           Houston, Texas 77002
             713.651.2600
23           FAX:  713.651.2700
             jkeville@winston.com
24           bduke@winston.com

25        PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS REMOTELY,
          TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION

          Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
 1                        APPEARANCES

 2                       (continued)

 3   FOR THE PLAINTIFFS:

 4           Mr. Jeffrey S. Edwards
             Mr. David James
 5           Mr. Scott Medlock
             THE EDWARDS LAW FIRM
 6           1101 East 11th Street
             Austin, Texas  78702
 7           512.623.7727
             FAX:  512.623.7729
 8           jeff@edwards-law.com

 9   FOR THE DEFENDANTS:

10           Mr. Shawn E. Cowles
             Ms. Christin Cobe Vasquez
11           Mr. Ralph Molina
             Mr. Landon Wade
12           Ms. Shea Fennessey
             Mr. Jason Bramow
13           OFFICE OF THE ATTORNEY GENERAL
             PO Box 12548
14           Austin, Texas 78711
             512.936.1378
15           512.370.9996
             shawn.cowles@oag.texas.gov
16           christin.vasquez@oag.texas.gov

17

18   COURT REPORTER:

19           GAYLE L. DYE, CSR, RDR, CRR
             515 Rusk, Room 8004
20           Houston, Texas  77002
             713.250.5582
21

22

23

24

25
```

```
 1                        PROCEEDINGS
 2                      August 5, 2020
 3           THE COURT:  Are you ready, Gayle?
 4           THE COURT REPORTER:  Yes, sir.
 5           THE COURT:  Plaintiffs present?
 6           MR. KEVILLE:  Plaintiffs are present, your Honor.
 7           THE COURT:  Defendants are present?
 8           MR. COWLES:  Yes, your Honor.
 9           THE COURT:  Okay.  It's your motion, I think,
10   Mr. Keville.  You want to go first?
11           MR. KEVILLE:  Sure.  Thank you, your Honor.
12                I know your Honor has read the motion, from what
13   we read yesterday, so I won't go into that.  I do want to take
14   up some of the things that have been said in the opposition and
15   that were said yesterday.
16                And I looked at this opposition and
17   surprisingly --
18           THE COURT:  I don't think I -- I don't think I got it.
19   I checked, like, 20 minutes ago; and it wasn't there.
20                Okay.  But go ahead.
21           MR. COWLES:  We submitted it to the Court, your Honor.
22   I think -- is it possible to take a break to have the Court read
23   it?  It's, obviously, an important document in this
24   consideration.
25           THE COURT:  I need to get ahold of it.  Okay.  We'll
```

Line timestamps:
- 5: 01:02:14
- 10: 01:02:20
- 15: 01:02:32
- 20: 01:02:41
- 25: 01:02:52

 1   take a 15-minute break.

 2         (Court recessed at 1:02 p.m.)

 3         (Court resumed at 1:12 p.m.)

 4         MR. KEVILLE:  So, your Honor, I think the story

01:12:44  5   doesn't start on July 14th.  And I'd like to show you how the

 6   story actually starts.  Because a lot of what we're being told

 7   doesn't match repeated facts.

 8               On July 6th was when the Defendants took the

 9   deposition of Gary Butaud.  It was taken by Ralph Molina.

01:13:00  10  Mr. Molina showed Mr. Butaud's grievances.  And when there was a

 11  question about those grievances, he represented that he believed

 12  those had already been produced.  We asked for the Bates

 13  numbers.  And while we were waiting for that, he asked the

 14  witness, Mr. Butaud, to describe the hot dog incident, which he

01:13:21  15  did.

 16               After further objection, Mr. Molina confirmed

 17  that the documents were not produced.  But he then stated -- and

 18  this -- if your Honor wants, we can submit the depo.  At page 69

 19  he states, "He would like us to stipulate that none of

01:13:35  20  Mr. Butaud's grievances are relevant."  But he says, "These

 21  grievances, you know, by Mr. Butaud against my client that --

 22  that are at least somewhat COVID-19-related."  And that's at, I

 23  believe, 69 -- hang on a minute, and I'll get you there.

 24               70 at lines 8 through 10.

01:14:11  25         MR. COWLES:  Mr. Keville, can you make the screen

1     larger?  It's hard to read the small font.

2                     Oh, that's great.  Thank you.

3                 MR. KEVILLE:  So, these grievances that were not

4     produced and were just shown for the first time at the depo even

01:14:24    5     though we had asked for all COVID grievances in April, he says,

6     "These grievances by, you know, Mr. Butaud against my client

7     that are, at least, somewhat COVID-related.  If you will not

8     stipulate that it's irrelevant, then we do need to discuss

9     these; and we have a right to discuss these with Mr. Butaud."

01:14:44   10                 So, it was actually the Defendants who went into

11     the hot dog incident and claimed that it was COVID-19 relevant.

12                     After we noted this, that these had been

13     requested in April, Mr. Molina said at page 73, "Yeah, I just

14     want to clarify that we are going to -- you're not going to

01:15:02   15     object or are going to allow me to ask questions about this --

16     this hot dog grievance?"

17                     And Mr. Rudloff answered, "That is correct."

18                     Mr. Molina's examination on the hot dog incident

19     continued for 12 transcript pages, your Honor, including his

01:15:20   20     question of whether this was a COVID-related incident to which

21     Mr. Butaud said, "Yes, it was"; and it was retaliation for this

22     lawsuit based on statements he had heard from Sergeant Campbell

23     and Warden Herrera.

24                     So it was they themselves, your Honor, that

01:15:37   25     brought this up prior to the trial.

1           And I would note --

2           Allen, if you could go to the Exhibit 1 to

3   Mr. Butaud's depo.

4           And just focus in on the last grievance, the Step

01:15:55   5   2, which is like four pages in.

6           One more.

7           There.

8           All right.  Your Honor, this is the Step 2

9   grievance from Mr. Butaud about the hot dog incident.  And you

01:16:06  10   would see where TDCJ fills out the office-use-only part on the

11   top, they listed it under their new Grievance Code 930, which is

12   the one we heard when they changed the policy, that's how they

13   code things that are COVID-19-related.  So, they, themselves,

14   coded this as a COVID-19-related grievance.

01:16:28  15           Then we got into a week later the trial testimony

16   of Gary Butaud.  And Mr. Molina interrupted the questioning to

17   ask for a breakout room.  And he said, "Your Honor, I believe --

18   and, you know, counsel can correct me if I'm wrong -- but I

19   believe we're about to go into an extended story about an

01:16:45  20   incident that occurred that is completely unrelated to

21   COVID-19."

22           After a lengthy back and forth, the Court said,

23   "Because I'm sitting without a jury, I can sort this out, so

24   let's let the story in."

01:16:57  25           But Mr. Molina knew then and he had previously

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1  taken the position that this was relevant to COVID-19.  And

2  actually, their own document is coded as this is a COVID-19

3  grievance.

4              So, then Mr. Butaud in testimony testifies to the

01:17:14  5  threats of retaliation based on this lawsuit just as he did in

6  the depo.

7              After a side bar in the Butaud direct, Mr. Molina

8  confirmed he already had pictures of the incident.

9              Now, in their response, they quote Mr. Molina

01:17:31  10  stating, quote, "He saw the picture of the aftermath of the hot

11  dog incident."  The part they didn't put in is at 2, dash, 219

12  at lines 24 to 25.

13              Can you put that up, Allen.

14              Transcript Day 2, page 219.

01:17:57  15              I'm -- I'm told it's on 217.

16              No, it's -- the part I want is on 219.

17              Please go to lines 24 to 25.

18              There we go.

19              Mr. Molina said, "We'd be happy to show the

01:18:13  20  pictures," plural.  So, at this point, Mr. Molina represents

21  they've got multiple pictures.  "And we'd be happy to show them

22  to the Court."

23              Now, in the opposition they omit that; and they

24  say that Mr. Molina stated he saw the picture.  And then, they

01:18:29  25  say, "Herrera sent the photograph to Defendants' counsel that

1   day; and Defendants' counsel assumed the photograph had been

2   taken by Herrera."

3            If Molina had already seen not just -- even if it

4   was just this picture -- but Molina represented he had seen

01:18:48   5   multiple pictures -- why were these not collected and produced?

6            The next thing they go to is July 16th.  And they

7   say -- to rebut the allegations made by Gary Butaud regarding

8   the hot dog incident, Defendants' counsel questioned Herrera

9   about the incident and offered the photograph Defendants had

01:18:58   10  seen into evidence.

11            Now, admittedly, your Honor, at this point, they

12  had the photograph for 48 hours; and yet, the first time we see

13  it is during their examination of Warden Herrera.  We only

14  asked -- we sent an e-mail after it was shown during the

01:19:20   15  examination of Warden Herrera and said, "Hey, did you produce

16  that photo?"  And they produced it after Warden Herrera had

17  testified.

18            Now, as we stated in our motion, we had assumed

19  in good faith that this was a photo of the Pack Unit.  We hadn't

01:19:33   20  seen it.  We assumed it was in their production.  It turns out

21  they didn't produce it until after they had put it into

22  evidence.  They didn't produce any of the pictures, plural, that

23  Mr. Molina said he had.  And even this photo, when they said

24  they had it 48 hours before, they waited until after the witness

01:19:50   25  testified to put it up.

1          Now, after they had that photo, they collected

2     that, they said, according to this opposition they just filed,

3     on July 14th.

4          On July 27th, they represented to the Court in a

01:20:09    5     brief -- and that's ECF Number 264 -- Defendants have no

6     intention to use any content from the phones of Collier,

7     Mendoza, Herrera, or Davis.  Defendants had already, at that

8     point, twice, used photos from Herrera.  Once, admittedly, that

9     they got on July 14th and presumably others that Molina was

01:20:32   10     referencing and also in response to the preliminary injunction.

11          They had submitted a declaration with photos from

12     Herrera and never, apparently, collected any of the photos,

13     certainly never produced them other than what they wanted to

14     use.

01:20:50   15          So, then, your Honor, we get to this thing about

16     it's Wilder's photo, right?  And so, on Tuesday, July 28th, we

17     have the argument on the motion to compel.  Mr. Cowles

18     represents:  These two photos, they're, obviously, predicting --

19     depicting the same event to me; but they appear to be different.

01:21:11   20     So, I don't know, your Honor, as we sit here today, if Warden

21     Herrera took a photo of the same event and Paul Wilder took a

22     photo of the same event.  To me, it may be the same.  It may be

23     the two different photos.  If Warden Herrera received that from

24     Wilder, I don't know about it.  If the two of them both took

01:21:30   25     photos of the same instance, that would make sense to me.

1          At this point, your Honor, no question, the

2    attorneys had to ask their clients what is the real story of

3    these photos.  But apparently, not until August 2nd, after we

4    had a forensic examination done, did they then find out, oh,

01:21:46   5    yes, these are the same photos, long after there was a motion

6    pending, long after this Court had ordered produce two photos

7    from two phones; and they sent them to us and said, "Here they

8    are."  And yet, apparently, no one had asked their clients to

9    say, "Hey, are there two photos?  Did Herrera really take a

01:22:08  10    separate photo?"

11          And then, we get worse.  Now, we get to Tuesday,

12    July 28th, and the resumed testimony of Wilder on cross.  Wilder

13    confirms he takes a photo; but when asked whether it would be

14    inaccurate to state that someone else took the photo, counsel

01:22:25  15    objected and said, "Vague.  Which photo are we talking about

16    here?"

17          And then, after being overruled, he added another

18    even more explicit non-objection warning to the witness about

19    what he needed to say:  "Your Honor, they put up two photos at

01:22:41  20    the start of today's proceeding that we believe are two separate

21    photographs; and he hasn't identified which ones he's speaking

22    about here."

23          And then Wilder testifies:  We both took

24    photographs, so I guess -- and then, it breaks off from there.

01:22:57  25          Now, we go to the next day.  They go into

1   redirect of Wilder first thing on the morning of Wednesday, July

2   29th.  Clearly, now, there's an issue about these photographs;

3   and there's an issue about who took what photograph and when and

4   how did they come.

01:23:16   5          After a night to prep, when no question now, if

6   they hadn't done it before, they have to ask the witness, "Is

7   this your photo or is this Herrera's photo?"  We got it from

8   Herrera.

9          And they asked Wilder this question:  "Were you

01:23:28   10   the only one who took photos of the hot dog incident or the

11   johnny sack incident?  And Wilder, under oath, in answer to that

12   question says, "No, sir, I was not.  I was standing right next

13   to Warden Herrera.  As a matter of fact, in that particular

14   situation, Warden Herrera was taking a picture; and I decided

01:23:47   15   that it was a good idea for me to have a picture on my phone in

16   case any of the CID leadership or there were questions regarding

17   the incident that I had a picture on my phone for posterity as

18   well."  He says, "So, we were standing literally right next to

19   each other when we took the picture."

01:24:05   20          That was false testimony under oath.  They

21   prepped him the night before.  I have no idea what was said.

22   But the best you can take out of it is they got a story that

23   they should have known to be untrue and didn't ask the witness.

24   "Hey, is this accurate?  Where did Herrera get the phone?"

01:24:25   25          Then on recross, Wilder's asked directly, "And

1  your testimony is you took a photo with Warden Herrera directly

2  standing next to you, correct?"

3            Answer:  "He was standing next to me, yes, sir."

4            Question:  "And you saw Warden Herrera also take

01:24:41  5  a photo from the exact same location?"

6            Answer:  "Yes, sir."

7            Wilder then testified unequivocally in answer to

8  the question did he send this photo to Warden Herrera.  He

9  answered, "No, sir, I did not."

01:24:57  10           Now, later that night, at the end of that day's

11  testimony, we said we need these two photos, one from Herrera's

12  phone and one from Wilder's phone produced with native and all

13  the metadata so we can check this story.  And we get two photos

14  with two different names from counsel saying, please, say --

01:25:17  15  "Please see attached."

16           How could counsel have not at that point, your

17  Honor, gone back and said, "All right.  Now, we've been ordered

18  to produce two photos from two phones."  And they produced two

19  photos.  And it's only now in the opposition and yesterday for

01:25:32  20  the first time that they say, "Oh, no, we just found out there

21  is only one photo."  It can't be the case.

22           We notified them by e-mail Friday that we

23  believed there were misrepresentations made about this photo,

24  and we wanted to confer about a motion for sanctions.  They

01:25:50  25  said, "We can only confer tomorrow.  We can confer tomorrow at

1   1:00 o'clock," on Saturday.

2          And on Saturday we said, "Look, there's only one

3   photo; and we're going to move for sanctions."  And Mr. Cowles

4   stated, "We'll oppose your motion."  He made no suggestion that

01:26:06   5   he knew or agreed there was only one photo or that they had done

6   any inquiry into this.

7          So, that's why --

8          THE COURT:  Mr. Keville, I mean, I can see there are

9   inaccuracies.  But why do we attribute bad faith to this?  They

01:26:21  10   didn't get anything out of this, did they?  They didn't gain any

11   benefit by originally claiming there were two photos, did they?

12          MR. KEVILLE:  Well, they did, your Honor, in that

13   Wilder tried to make this story up to back up what the attorneys

14   had been signaling to him in their objections, saying there's

01:26:37  15   two photographs; and we don't know which one and who took which

16   one.

17          And they were trying to downplay the testimony of

18   Butaud who said:  Look, this is -- and we were retaliated

19   against because of this lawsuit.  Back in April after the

01:26:51  20   injunction -- remember, this happened about a week after the

21   injunction.  And Mr. Butaud testified, "I believe this was in

22   retaliation.  That's what I heard."

23          THE COURT:  Okay.

24          MR. KEVILLE:  The problem -- the biggest problem, your

01:27:05  25   Honor, and one of the things I'll note about their opposition,

1  is that there's no declaration from Wilder.  Wilder's testimony

2  was very clear, very unequivocal, done when all of this was

3  really put squarely in issue.

4              And then, he comes back the next day after a

01:27:23  5  night of prep and testifies that "No, I never sent this photo to

6  Herrera.  Yes, Herrera was standing right next to me.  Yes, we

7  took photos at exactly the same time."

8              Now, all they say in their opposition is it's now

9  apparent that Wilder did send his photograph of the hot dog

01:27:43  10  incident to Herrera.  It's likely that he simply did not

11  remember sending the photograph.  No explanation of how his

12  testimony was directly opposite, of how the attorneys didn't do

13  any inquiry to find out about this.

14              This was their client, your Honor.  They prepped

01:27:57  15  him for testimony.  They should have asked or there should be

16  some declaration attached to this opposition saying this is how

17  this all came about, and there's not.  There was false testimony

18  by Mr. Wilder.

19              There's other problems with all this, your Honor.

01:28:15  20  The whole thing about Wilder's photos and Herrera's photos about

21  "We didn't intend to use them so we didn't have to produce them"

22  after they had twice used them and then saying, "We didn't even

23  know about Wilder's photos until last week."

24              If these representations are accurate -- Wilder

01:28:32  25  was on their Rule 26 disclosures, I went back and looked, since

1   June 3rd as a witness with knowledge.  He was on their will call

2   witness list the day we first received it on July 5th.  And what

3   this means is they didn't search or ask about relevant photos or

4   messages he had until after we were through with trial.

01:28:53   5         So, your Honor, I'll leave it to the Court to

6   fashion the appropriate remedy.  At a minimum -- this is the

7   second time Wilder testified falsely under oath; and there is no

8   explanation for that.

9         At a minimum, all of his testimony should be

01:29:11   10   given zero weight or stricken or whatever your Honor thinks is

11   the appropriate sanction for that.

12         The lawyers' conduct, it may just have been very

13   reckless in the statements they were making, in making

14   representations that they had no idea whether they were true or

01:29:27   15   false, which later turned out to be false.  I will leave that to

16   your Honor to how to address that.

17         But this is a serious situation.  This is an

18   issue with lawyers making representations to the Court that turn

19   out to be completely false.  It turns out that the stories

01:29:42   20   they're saying -- even just going back to Molina questioning

21   this witness and saying:  I need to question this witness

22   because this is COVID-19 -- somewhat COVID-19 related on a

23   document that they themselves coded under their COVID-19 policy

24   and then coming to the Court and saying, "We think this should

01:30:00   25   all stay out as irrelevant."  And this is all -- shows the

1  conduct, shows how this case has been handled.

2           And so, I think it's very important that this be

3  addressed.  I think lawyers have an obligation to the Court when

4  they make representations.  We all know that.  I think witnesses

01:30:17  5  who testify falsely under oath repeatedly have to be dealt with

6  in how you address this.  And then, I'll leave it to the Court,

7  your Honor, to find the appropriate remedy.

8           THE COURT:  Okay, thank you.

9           MR. COWLES:  May I be heard, your Honor?

01:30:32  10          THE COURT:  Yes, you may.

11          MR. COWLES:  At the outset, I just have to say it's

12  very disappointing that a fellow member of the bar would bring

13  such a frivolous motion.  There is no bad faith whatsoever.  And

14  I'm happy to explain every single point that's happened during

01:30:47  15  this trial, everything that the Plaintiffs' counsel are

16  alleging.  It's their misrepresentations about this office, at

17  the Attorney General's Office, and our clients that should be

18  highlighted.

19          But let me directly refute each and every point,

01:31:04  20  your Honor, that they make.

21          Before I do that, I want to set the context.  We

22  still don't believe the hot dog incident is relevant to TDCJ's

23  response to COVID-19 at the Pack Unit.  Mr. Molina asked that

24  Plaintiffs' counsel at Gary Butaud's deposition would stipulate

01:31:23  25  to that.  They refused to stipulate.  So, like any good

 1  attorney, Mr. Molina is going to ask questions.  Even though we
 2  don't agree, the Plaintiffs, for some reason, think that's
 3  relevant.
 4              The only potential relevance that the hot dog
 5  incident has, your Honor, is that the offenders were upset that
 6  they had been placed on precautionary lockdown a week earlier or
 7  so and were no longer able to eat hot meals in the chow hall.
 8              Now, I understand they would like to have hot
 9  meals in the chow hall.  I'd rather have a hot meal than
10  continually have cold meals.  But we're dealing with a global
11  pandemic that has spread to the four corners of the earth, and
12  TDCJ is taking the best reasonable measures that it can to
13  protect these offenders from the risk of COVID-19.
14              As a result, the decision was made to place the
15  Pack Unit on precautionary lockdown and the offenders have been
16  eating, unfortunately, in their cubicles.  And, unfortunately,
17  they're no longer getting hot meals.  But that is to protect the
18  offenders.
19              So, what Mr. Keville wants to cite as he's made
20  his representations to this Court actually refutes Plaintiffs'
21  claims that TDCJ has acted with deliberate indifference because
22  they've taken steps to protect the offenders from COVID-19 by
23  placing them under precautionary lockdown.  And I'm not saying
24  that the offenders -- you know, just after this happened, I
25  could understand, you know, "Hey, we'd like to have a hot meal."

1          The reason that that photograph was introduced in

2     rebuttal, as the Court will recall, Mr. Butaud testified that

3     the offenders gently placed the johnny sacks containing the hot

4     dogs just outside of their dorm.

01:33:22  5          There -- it's obvious, your Honor, from the

6     picture that the offenders don't know -- no human being has a

7     long enough arm to have placed gently the johnny sacks in that

8     hallway.  I don't know the exact measurements; but some of those

9     johnny sacks were thrown ten, fifteen, maybe twenty feet.  No

01:33:40  10    one has -- even in the NBA, they don't have that kind of a

11    reach, your Honor.

12          So, that photo, we had no intent to get into

13    that.  I still submit that the hot dog incident is completely

14    irrelevant to this case except to the extent the Court, you

01:33:57  15    know, finds that it supports that the offenders were placed

16    under precautionary lockdown to protect them from the risk of

17    COVID-19.

18          But Mr. Butaud's statement that the johnny sacks

19    were gently placed outside of their dorm is directly refuted by

01:34:12  20    the hot dog incident photo.  And that's why in rebuttal that

21    photo -- that no one had anticipated on our end at the AG's

22    office would be needed in this trial.

23          And it's still a shock to me that the Plaintiffs

24    still want to talk about a hot dog incident as something that

01:34:32  25    they believe helps them because it only hurts them.  It only

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    reenforces how TDCJ had acted deliberately to protect the

2    offenders by placing them in precautionary lockdown.

3                    Similarly, the sinks in the laundry room area

4    photo.  Plaintiffs want to keep bringing this up.  That photo

01:34:53    5    supports that TDCJ is making sinks with soap and water readily

6    available to the offenders at the Pack Unit.  There was a lot of

7    testimony about the laundry room exchange area.

8                    Mr. -- Plaintiffs' own expert, Eldon Vail -- it's

9    quoted in our response brief -- he's stating that he's not sure

01:35:16    10   or doesn't believe -- I don't have the exact language; it's

11   quoted -- your Honor will see that in our response -- that there

12   are adequate handwashing opportunities in this laundry room

13   exchange area.

14                   After, again, this was introduced in trial in

01:35:31    15   rebuttal, this photo was used to directly contradict and refute

16   what Plaintiffs' expert Eldon Vail had seen.

17                   And, your Honor, let me -- I want to go through

18   in detail because I want the Court to understand exactly how we

19   became aware of these different photos.

01:35:50    20                  As the Court well knows, this trial started three

21   and a half months after the complaint was filed.

22              THE COURT:  Yeah, yeah.

23              MR. COWLES:  I wish we had -- there are a million

24   things I would have liked to have done in order to prepare the

01:36:04    25   defense to make sure that the Court understands all of the

1  actions that TDCJ is taking at the Pack Unit in order to

2  mitigate the risk of COVID-19 there.

3          So, during trial, after Gary Butaud testifies

4  that the johnny sack bags were very gently placed just outside

01:36:24   5  the dorms, Warden Herrera provided us with that photo.  No one

6  asked where he got that photo.  I assumed he had taken the

7  photo.  So, my understanding was the photo that Warden Herrera

8  gave to us in rebuttal, in rebutting Mr. Butaud's testimony, had

9  come from Warden Herrera.

01:36:47   10          And I clearly represented; and Plaintiffs'

11  counsel cannot cite anywhere to the contrary, they confirm, I

12  represented my understanding to the Court.

13          In the metadata review, it became apparent that

14  there was no photo on Warden Herrera's phone that he had taken.

01:37:09   15  Instead, it's either the same day of this -- I believe it's an

16  April 24th incident.  Either the same day or the next day,

17  Warden Herrera had sent -- I'm sorry, Warden Wilder sent the

18  photo of the hot dog incident, the johnny sacks in the hallway

19  that had been thrown, to Warden Herrera.

01:37:28   20          So, we got it from Warden Herrera.  We're

21  operating with that understanding.  Those two -- the reason

22  those two images, those two photographs, your Honor, of the

23  johnny sacks having been thrown at the offenders are slightly

24  different is, because when someone sends another person a photo,

01:37:45   25  the resolution is going to be different.  The cropping will be

1  different.  And that's why it is the same photo, but it takes on

2  a different appearance slightly.

3          Obviously, it, you know, is a photo.  And I said

4  at the same time when we were in trial discussing this issue

01:38:05  5  that it clearly is depicting the same event.

6          This is a big nothingburger, your Honor.  There

7  has been only the utmost good faith as we've tried to present

8  everything that our client has done to this Court under very

9  difficult circumstances.

01:38:23  10          THE COURT:  The circumstances have been difficult.  I

11  agree.  I agree with that.

12          MR. COWLES:  All right.  So, we got the photo from

13  Warden Herrera.  We subsequently found out that Warden Wilder

14  had taken it.  And we have informed the Court.  There's --

01:38:35  15  there's nothing to discuss.

16          The only issue that I want to bring to the

17  Court's attention is Warden Wilder testified he believed Warden

18  Herrera had also taken a photo next to him and that he hadn't

19  sent that -- Wilder hadn't sent his photo to Warden Herrera.

01:38:56  20          That's how Warden Wilder recalled it.  That was

21  his honest testimony at the time, two weeks ago or whatever it

22  was, in trial.  When we saw the metadata, we showed him; and he

23  said -- I'm not going to want to get into attorney-client

24  communications.  He just misremembered, your Honor.

01:39:15  25          THE COURT:  Okay.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    MR. COWLES:  Just like the Court pointed out, there is

2  nothing that the Defendants have gained by anything that

3  Mr. Keville had said.  There is zero prejudice to -- to the

4  Plaintiffs.  These are mistakes with one testimony of Mr. Wilder

01:39:30  5  having thought, as there are other incidents at the Pack Unit,

6  if something needs to be photo documented, sometimes both the

7  warden and the assistant warden will photo document things.

8  This time, that -- that didn't occur.

9    But it's not -- the Plaintiffs want to say any

01:39:46  10  type of mistake -- and I'm sure they've made mistakes, as well,

11  your Honor.  They want to say any mistake that is made is done

12  for nefarious intentional bad faith reasons.  And there is zero

13  truth to that, your Honor.

14    This was an innocent misrecollection.  That's all

01:40:03  15  it is.  That's the entire basis that they have for their motion

16  for sanctions.  There's no advantage that Defendants gain from

17  any of this.  This is us trying to present our best trial

18  presentation under extremely extenuating circumstances.

19    THE COURT:  I understand.

01:40:22  20    MR. COWLES:  So, we've done the best we can.  If I've

21  had to come back to the Court at different times and let you

22  know something, I have done that.

23    THE COURT:  Okay.

24    MR. COWLES:  And I hope the Court sees that we have

01:40:31  25  acted with the utmost good faith in all of our operations

1  throughout this case in our trial presentation.  And I just

2  don't see -- I think it's a huge waste of this Court's time, of

3  everyone's time, for Plaintiffs to have even brought this

4  motion.  And it's disappointing that they did.

01:40:49  5         If the Court wants me to address anything in

6  particular, I'm happy to do so further.  Because I want you to

7  understand everything of what the Plaintiffs have said is

8  baseless.  They have assumed the worst motives, imputed bad

9  faith where it is not warranted.

01:41:05  10         THE COURT:  Okay, thank you.

11         MR. KEVILLE:  Your Honor --

12         THE COURT:  I really -- I really don't see that the

13  Defendants gained anything from this.  There -- there may have

14  been mistakes made.  I guess there were mistakes made.  But I

01:41:14  15  can't -- I can't see that as sanctionable conduct.  Maybe I'm

16  missing something.

17         But, you know, it's always difficult to draw a

18  line between error and -- and intent.  But this does seem to me

19  to fall clearly on the side of error.

01:41:36  20         MR. KEVILLE:  May I respond, your Honor, briefly --

21         THE COURT:  Yes, you may.

22         MR. KEVILLE:  -- on this?

23         THE COURT:  Yes, you may.

24         MR. KEVILLE:  Your Honor, even now, the

01:41:41  25  misrepresentations are continuing about what this is about.

1            What Mr. Cowles just said is "We still believe
2    it's not relevant."  He said, "The only potential relevance is
3    that the inmates are upset because they are under precautionary
4    lockdown and not getting hot meals."  He said he couldn't
01:42:00  5    understand any other potential relevance.
6            He said it was totally unexpected that this came
7    up despite Molina having 12 pages of questioning on this
8    incident.
9            THE COURT:  Wasn't Molina's questioning after the
01:42:13  10   Plaintiffs wouldn't stipulate that it was irrelevant?
11            MR. KEVILLE:  No, no, no, your Honor.
12            They produced, in fact, COVID grievances.  That
13   wasn't the only grievance.  There was another grievance that
14   specifically said, "My life is at risk because you're not
01:42:25  15   cleaning things.  You're not doing these other steps to protect
16   me."  Molina wanted all of the grievances from Butaud to be
17   declared irrelevant.  And that's why we wouldn't agree.
18            And then, he said even this one was somewhat
19   COVID-19 related.  We've seen that they themselves coded it
01:42:43  20   under their category as a COVID-19 grievance.
21            But let me just turn, if I could, your Honor --
22   I'll put it up on the screen -- page 79 of Mr. Butaud's
23   deposition.  Because this goes directly contrary to what
24   Mr. Cowles just represented.
01:42:59  25            And, Allen, if you could go to lines 12 through

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1   19 and blow those up.

2              Mr. Molina asked, "Since March 1st -- so -- so

3   would you say that this" -- and he's talking about this hot dog

4   incident grievance -- "that this is a COVID-related issue or a

01:43:17   5   separate issue?"

6              Answer:  "I believe it was a COVID-related issue.

7   I believe it was in direct retaliation to the lawsuit that was

8   filed."

9              And Mr. Molina asked, "I actually wanted to get

01:43:27   10   to that.  Why do you think that's the case?"

11              Answer:  "Because it's verbalized."

12              And, Allen, if you could go to the next page at

13   lines 7 to 12.

14              "Okay.  Could you tell me the names of the

01:43:37   15   officers who have said that?"

16              "Sergeant Campbell, as a matter of fact.  One of

17   those that's on this one.  Warden Herrera has said it several

18   times.  He said," quote, "'Y'all want to file lawsuits?  I got

19   something for y'all.'"

01:43:51   20              So, contrary to Mr. Cowles saying this was

21   totally unexpected, it's irrelevant, and now even despite

22   knowing that this deposition was testified to and that there was

23   the same testimony under oath in this trial, that he was

24   concerned this was retaliation, Mr. Cowles comes in and says the

01:44:08   25   only potential relevance is that they're upset they're not

1    getting hot meals.  That's not the case.  That's not at all what

2    Mr. Butaud said.

3                     And he testified in trial at 2-227, "After this

4    incident with Warden Herrera, have you felt threatened by other

01:44:27    5    officers or staff at the unit?"

6                     "Yes, I have."

7                     "Mr. Molina:  Objection, your Honor.  Relevance."

8                     "I have been threatened.  I have been."

9                     So, this was relevant.  This was directly

01:44:40    10    relevant to issues with Warden Herrera and this lawsuit and

11    COVID-19.

12                     So, the statement to come in now knowing that

13    this was the trial testimony and to say, your Honor, the only

14    potential relevance is that they're upset they're getting hot --

01:44:54    15    not getting hot meals is directly contrary to the testimony.

16    And that's what we've been facing all along in this.  And that's

17    the prejudice in this:  Had we had these photos and been able to

18    examine it, number one.

19                     Number two, they knew about the photos, right, at

01:45:09    20    least at a certain point?  And they didn't produce them.  And

21    according to them, they didn't go into any of the other photos

22    and ask about any of the other photos.

23                     And I want to point out one last thing that

24    Mr. Cowles just represented.  He said Mr. Butaud testified that

01:45:24    25    these were gently placed in the hall, and the only reason they

1  went and got this photo from Herrera was because he said they

2  gently placed them in the hall.

3              Allen, if you could put up the testimony from

4  2-226.

01:45:45  5              And if you look, your Honor, at 15 to 17, he

6  says, "And we brought it to the staff's attention; and they

7  wouldn't do anything, so everybody tossed them out in the

8  hallway and asked them to bring some food we could eat."

9              There was no testimony that -- he certainly

01:46:04  10 testified "We threw them into the hallway.  We tossed them out."

11 That's what it means.  And yet, we come in with a new story

12 today that the only reason they got this photo from Warden

13 Herrera was to disprove that they were gently placed into the

14 hall.

01:46:19  15             And that's what we're dealing with, a lot of

16 misrepresentation, a lot of careless representations at best.

17             But most importantly, remember Warden Wilder.

18 His testimony was not equivocal.  Mr. Cowles now said, "Oh, he

19 might have just misremembered; and I don't want to get into

01:46:36  20 attorney-client privilege; but he" -- his testimony was not even

21 close to "My best memory is."  "I'm not sure."

22             There were lots of times -- remember, we talked

23 about some of the photos; and he said, "Well, I'm not sure if

24 that was before or after we had the mask order.  I just don't

01:46:51  25 remember the date of the photo."  He was unequivocal.

1          And remember, Warden Wilder was also the one who

2    testified directly he had never received any instruction to

3    retain documents and then came back after a night of prep and

4    said, "Oh, I misremembered.  I actually did get an instruction

01:47:07   5    on April 6, and it told me to retain documents and all the

6    electronics."

7          So, Warden Wilder multiple times had to change

8    his testimony; and now, we don't even have changed testimony.

9    His testimony is unequivocal, and all we have is Mr. Cowles

01:47:24   10   representing that he misremembered.  No declaration, no

11   anything.

12          And I think that goes directly to his testimony.

13   I think this was relevant.  They knew it.  They brought it up.

14   They knew it was a retaliation issue; and then, they tried to

01:47:35   15   keep it out at trial unsuccessfully.

16          MR. COWLES:  Your Honor, may I be heard?

17          THE COURT:  Yes, you may.

18          MR. COWLES:  I would submit that Plaintiffs don't even

19   believe that this case involves a retaliation issue because they

01:47:46   20   didn't plead it anywhere, to my knowledge, your Honor.

21          That's where the Court will recall we've

22   objected.  We do not agree that that is an issue that has been

23   properly put before this Court.  It's irrelevant to this case

24   about how TDCJ responded to COVID-19 at the Pack Unit.  That's

01:48:04   25   what this case is about.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1             Now, the Plaintiffs in their desperation --
2    because they know they haven't presented their case, they
3    haven't met their burden of proof, they're desperately wanting
4    to talk about hot dogs.  And I think there's a difference
01:48:16    5    between if I gently toss a ball at someone versus if I'm
6    throwing at someone.
7             I would say there is a difference between tossing
8    a johnny sack bag at a TDCJ officer versus throwing it at them.
9    And I think the photos indicate that exactly what we've said is
01:48:33   10    true.  The Court can, obviously, form its belief.
11            But this case is not about johnny sack bags being
12    gently tossed at officers by offenders or thrown at them.  This
13    case is about how TDCJ has taken all of the steps that it's
14    undertaken, deliberately relying upon the medical professionals
01:48:55   15    for the best possible medical advice, given the fact that the
16    last pandemic of this nature is over a hundred years ago, the
17    Spanish flu of 1918; and there aren't any experts available from
18    that timeframe to advise.
19            So, TDCJ got out in front by adopting the 14.52
01:49:17   20    policy.  When the *CDC Guidelines for Correctional and Detention*
21    *Facilities* caught up with them, they adapted further to the new
22    CDC guidelines, revised their 14.52 policy.
23            And as the Court well knows, the understanding of
24    the medical professionals back in March is very different from
01:49:37   25    the understanding of the medical professionals as of today, and

1  that's why TDCJ has nine -- I think eight different iterations,

2  your Honor, is my understanding of the 14.52 policies.  And

3  TDCJ, we have taken all of the actions to implement those

4  policies:  all of the different rounds of Strike Team testing at

01:50:00  5  the Pack Unit, the masks being prioritized for the elderly

6  offenders at the Pack Unit, the electrostatic sprayer that's

7  being used to disinfect the dorms and the cubicles and the other

8  areas at the Pack Unit.

9            Your Honor, this -- this Court knows that the

01:50:17  10  evidence shows that TDCJ deliberately took actions, countless

11  actions, your Honor, to protect the offenders at the Pack Unit.

12            This case is not about anything that Plaintiffs

13  want to bring in through Gary Butaud.  There was zero evidence

14  of anyone getting sick.  The hot dogs, obviously, weren't

01:50:36  15  spoiled.  They were sampled by TDCJ personnel.  No one got sick.

16  Plaintiffs haven't pled a retaliation claim.  And there's just

17  nothing to Plaintiffs' motion.

18            Now, I understand they're -- they're concerned

19  because they haven't met their burden.  They're feeling

01:50:52  20  desperate.  But they wasted everyone's time by even bringing

21  this, your Honor.

22            If the Court wants me to address anything

23  specifically, I'm happy to do because I want the Court to make

24  sure it understands how we have acted in good faith.  We've been

01:51:05  25  operating at a thousand miles an hour throughout this case.

 1          THE COURT:  I know you have.  I know you have.

 2               I'm going to deny the motion for sanctions.

 3               You want to talk about doing final closing

 4    arguments or do you want to do recommended findings of fact,

01:51:20   5    conclusions of law, and then do closing arguments?

 6          MR. KEVILLE:  Whichever way your Honor would prefer.

 7    We're ready to do closing as soon as your Honor is ready.

 8          MR. COWLES:  Your Honor, I think my preference would

 9    be to do closing arguments and then amended findings of fact.

01:51:32  10    That's how I was intending to proceed.

11          THE COURT:  Okay.

12          MR. COWLES:  If there's some reason you'd like to do

13    it differently, I'm open to suggestions.

14          THE COURT:  No, that's fine.  We'll do it at 9:00

01:51:39  15    o'clock tomorrow morning.  Thank you.

16          MR. COWLES:  Your Honor, may I be heard on one last

17    issue?

18          THE COURT:  Yeah.

19          MR. COWLES:  We -- we haven't received a ruling on our

01:51:45  20    motion for summary judgment.

21          THE COURT:  No.  I said orally that it's denied.

22          MR. COWLES:  Okay.  Thank you, your Honor.  So,

23    closing arguments --

24          THE COURT:  Tomorrow at 9:00.

01:51:54  25          MR. COWLES:  One other thing, your Honor.  I would

1    like to renew our Rule 52(c) motion for judgment on partial

2    findings based upon the evidence that was presented after I

3    initially made this motion once Plaintiffs have rested.  I'd

4    like to take the Court through the testimony during Defendants'

01:52:12    5    case in chief.  Would you like to do that now or tomorrow

6    morning or --

7              THE COURT:  We can do that tomorrow morning.

8              MR. COWLES:  Okay.  Thank you, your Honor.

9              THE COURT:  Thank you.

01:52:21    10              MR. COWLES:  Your Honor, I guess there's one other

11    issue.  I'm sorry.  This is the last issue.

12              We just wanted to confirm.  My understanding in

13    the breakout room that the screenshot of TDCJ's website -- it's

14    Exhibit 57 -- has been admitted into evidence.  That -- that's

01:52:37    15    my understanding.  If the Court can just confirm that.

16    Mr. Rivera is right there.  But that's what I was told occurred

17    at the breakout room.

18              THE COURT:  Is that right, Mr. -- do you agree with

19    that, Mr. --

01:52:52    20              Let me check with Mr. Rivera.

21              THE COURTROOM DEPUTY:  I have it as admitted.

22              THE COURT:  We have it as admitted, yes.

23              MR. COWLES:  Okay.  Thank you, your Honor.

24              THE COURT:  Do you have any updates on numbers of

01:53:11    25    infected and recovered and hospitalized, any of that?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1        MR. COWLES:  No.  We've been busily going through the

2   other discovery-related matters, this matter.  I don't have one.

3   If -- if the Court wants to take a break, I think 15, 20

4   minutes, I should be able --

01:53:19   5        THE COURT:  You can have it -- you can have it

6   tomorrow.  Have it tomorrow.

7        MR. COWLES:  Okay.  Be happy to do so.  Thank you.

8     (Court recessed for the day at 1:53 p.m.)

9

10

11                C E R T I F I C A T E

12

13     I certify that the foregoing is a correct transcript

14   from the record of proceedings in the above-entitled matter, to

15   the best of my ability.

16     This record was taken through video or telephone

17   conference which may have affected the quality of the record.

18

19   By: /s/*Gayle L. Dye*                    *08-05-2020*

20        Gayle L. Dye, CSR, RDR, CRR        Date

21

22

23

24

25

**'**

**'y'all** [1] - 25:18

**/**

**/s/Gayle** [1] - 33:19

**0**

**08-05-2020** [1] - 33:19

**1**

**1** [1] - 6:2
**10** [1] - 4:24
**1101** [1] - 2:6
**11th** [1] - 2:6
**12** [4] - 5:19, 24:7, 24:25, 25:13
**12548** [1] - 2:13
**14.52** [3] - 29:19, 29:22, 30:2
**14th** [3] - 4:5, 9:3, 9:9
**15** [2] - 27:5, 33:3
**15-minute** [1] - 4:1
**16th** [1] - 8:6
**17** [2] - 1:12, 27:5
**19** [1] - 25:1
**1918** [1] - 29:17
**1:00** [1] - 13:1
**1:02** [2] - 1:8, 4:2
**1:12** [1] - 4:3
**1:53** [1] - 33:8
**1st** [1] - 25:2

**2**

**2** [4] - 6:5, 6:8, 7:11, 7:14
**2-226** [1] - 27:4
**2-227** [1] - 26:3
**20** [2] - 3:19, 33:3
**2020** [2] - 1:8, 3:2
**217** [1] - 7:15
**219** [3] - 7:11, 7:14, 7:16
**24** [2] - 7:12, 7:17
**2400** [1] - 1:21
**24th** [1] - 20:16
**25** [2] - 7:12, 7:17
**26** [1] - 14:25
**264** [1] - 9:5
**27th** [1] - 9:4
**28th** [2] - 9:16, 10:12
**29th** [1] - 11:2
**2nd** [1] - 10:3

**3**

**3rd** [1] - 15:1

**4**

**48** [2] - 8:12, 8:24

**5**

**5** [2] - 1:8, 3:2
**512.370.9996** [1] - 2:15
**512.623.7727** [1] - 2:7
**512.623.7729** [1] - 2:7
**512.936.1378** [1] - 2:14
**515** [1] - 2:19
**52(c** [1] - 32:1
**57** [1] - 32:14
**5th** [1] - 15:2

**6**

**6** [1] - 28:5
**69** [2] - 4:18, 4:23
**6th** [1] - 4:8

**7**

**7** [1] - 25:13
**70** [1] - 4:24
**713.250.5582** [1] - 2:20
**713.651.2600** [1] - 1:22
**713.651.2700** [1] - 1:22
**73** [1] - 5:13
**77002** [2] - 1:21, 2:20
**78702** [1] - 2:6
**78711** [1] - 2:14
**79** [1] - 4:22

**8**

**8** [1] - 4:24
**800** [1] - 1:20
**8004** [2] - 2:19

**9**

**930** [1] - 6:11
**9:00** [2] - 31:14, 31:24

**A**

**ability** [1] - 33:15
**able** [3] - 17:7, 26:17, 33:4
**above-entitled** [1] - 33:14
**according** [2] - 9:2, 26:21
**accurate** [2] - 11:24, 14:24
**acted** [4] - 17:21, 19:1, 22:25, 30:24
**Action** [1] - 1:6
**actions** [4] - 20:1, 30:3, 30:10, 30:11
**adapted** [1] - 29:21
**added** [1] - 10:17

**address** [4] - 15:16, 16:6, 23:5, 30:22
**addressed** [1] - 16:3
**adequate** [1] - 19:12
**admitted** [3] - 32:14, 32:21, 32:22
**admittedly** [2] - 8:11, 9:8
**adopting** [1] - 29:19
**advantage** [1] - 22:16
**advice** [1] - 29:15
**advise** [1] - 29:18
**affected** [1] - 33:17
**aftermath** [1] - 7:10
**AG's** [1] - 18:21
**ago** [3] - 3:19, 21:21, 29:16
**agree** [6] - 17:2, 21:11, 24:17, 28:22, 32:18
**agreed** [1] - 13:5
**ahead** [1] - 3:20
**ahold** [1] - 3:25
**AIDED** [1] - 1:25
**allegations** [1] - 8:7
**alleging** [1] - 16:16
**Allen** [5] - 6:2, 7:13, 24:25, 25:12, 27:3
**allow** [1] - 5:15
**amended** [1] - 31:9
**Answer** [1] - 25:6
**answer** [5] - 11:11, 12:3, 12:6, 12:7, 25:11
**answered** [2] - 5:17, 12:9
**anticipated** [1] - 18:21
**apparent** [2] - 14:9, 20:13
**appear** [1] - 9:19
**appearance** [1] - 21:2
**APPEARANCES** [2] - 1:13, 2:1
**appropriate** [3] - 15:6, 15:11, 16:7
**April** [5] - 5:5, 5:13, 13:19, 20:16, 28:5
**area** [3] - 19:3, 19:7, 19:13
**areas** [1] - 30:8
**argument** [1] - 9:17
**arguments** [4] - 31:4, 31:5, 31:9, 31:23
**arm** [1] - 18:7
**assistant** [1] - 22:7
**assumed** [5] - 8:1, 8:18, 8:20, 20:6, 23:8
**attached** [2] - 12:15, 14:16
**attention** [2] - 21:17, 27:6
**ATTORNEY** [1] - 2:13
**Attorney** [1] - 16:17
**attorney** [5] - 17:1, 21:23, 27:20
**attorney-client** [2] - 21:23, 27:20
**attorneys** [3] - 10:2, 13:13,

14:12
**attribute** [1] - 13:9
**August** [3] - 1:8, 3:2, 10:3
**Austin** [2] - 2:6, 2:14
**available** [2] - 19:6, 29:17
**aware** [1] - 19:19

**B**

**bad** [4] - 13:9, 16:13, 22:12, 23:8
**bag** [1] - 29:8
**bags** [2] - 20:4, 29:11
**ball** [1] - 29:5
**bar** [2] - 7:7, 16:12
**based** [5] - 5:22, 7:5, 32:2
**baseless** [1] - 23:8
**basis** [1] - 22:15
**Bates** [1] - 4:12
**bduke@winston.com** [1] - 1:23
**became** [2] - 19:19, 20:13
**BEFORE** [1] - 1:11
**belief** [1] - 29:10
**BENCH** [1] - 1:12
**benefit** [1] - 13:11
**best** [8] - 11:22, 17:12, 22:17, 22:20, 27:16, 27:21, 29:15, 33:15
**between** [3] - 23:18, 29:5, 29:7
**big** [1] - 21:6
**biggest** [1] - 13:24
**blow** [1] - 25:1
**Box** [1] - 2:13
**Bramow** [1] - 2:12
**Brandon** [1] - 1:16
**break** [3] - 3:22, 4:1, 33:3
**breakout** [2] - 6:17, 32:13, 32:17
**breaks** [1] - 10:24
**brief** [2] - 9:5, 19:9
**briefly** [1] - 23:20
**bring** [4] - 16:12, 21:16, 27:8, 30:13
**bringing** [2] - 19:4, 30:20
**brought** [4] - 5:25, 23:3, 27:6, 28:13
**BRYAN** [1] - 1:7
**burden** [2] - 29:3, 30:19
**busily** [1] - 33:1
**Butaud** [19] - 4:9, 4:14, 4:21, 5:6, 5:9, 5:21, 6:9, 6:16, 7:4, 7:7, 8:7, 13:18, 13:21, 18:2, 20:3, 24:16, 26:2, 26:24, 30:13
**Butaud's** [7] - 4:10, 4:20, 6:3, 16:24, 18:18, 20:8, 24:22
**BY** [1] - 1:24

## C

**Campbell** [2] - 5:22, 25:16
**cannot** [1] - 20:11
**Capitol** [1] - 1:20
**careless** [1] - 27:16
**case** [16] - 11:16, 12:21, 16:1, 18:14, 23:1, 25:10, 26:1, 28:19, 28:23, 28:25, 29:2, 29:11, 29:13, 30:12, 30:25, 32:5
**category** [1] - 24:20
**caught** [1] - 29:21
**CDC** [2] - 29:20, 29:22
**certain** [1] - 26:20
**certainly** [2] - 9:13, 27:9
**certify** [1] - 33:13
**change** [1] - 28:7
**changed** [2] - 6:12, 28:8
**check** [2] - 12:13, 32:20
**checked** [1] - 3:19
**chief** [1] - 32:5
**chow** [2] - 17:7, 17:9
**Christin** [1] - 2:10
**christin.vasquez@oag. texas.gov** [1] - 2:16
**CID** [1] - 11:16
**circumstances** [3] - 21:9, 21:10, 22:18
**cite** [2] - 17:19, 20:11
**Civil** [1] - 1:6
**claim** [1] - 30:16
**claimed** [1] - 5:11
**claiming** [1] - 13:11
**claims** [1] - 17:21
**clarify** [1] - 5:14
**cleaning** [1] - 24:15
**clear** [1] - 14:2
**clearly** [4] - 11:2, 20:10, 21:5, 23:19
**client** [6] - 4:21, 5:6, 14:14, 21:8, 21:23, 27:20
**clients** [3] - 10:2, 10:8, 16:17
**close** [1] - 27:21
**closing** [5] - 31:3, 31:5, 31:7, 31:9, 31:23
**Cobe** [1] - 2:10
**Code** [1] - 6:11
**code** [1] - 6:13
**coded** [4] - 6:14, 7:2, 15:23, 24:19
**cold** [1] - 17:10
**collected** [3] - 8:5, 9:1, 9:12
**COLLIER** [1] - 1:7
**Collier** [1] - 9:6
**coming** [1] - 15:24
**communications** [1] - 21:24
**compel** [1] - 9:17
**complaint** [1] - 19:21

**completely** [3] - 6:20, 15:19, 18:13
**COMPUTER** [1] - 1:25
**COMPUTER-AIDED** [1] - 1:25
**concerned** [2] - 25:24, 30:18
**conclusions** [1] - 31:5
**conduct** [3] - 15:12, 16:1, 23:15
**confer** [3] - 12:24, 12:25
**conference** [1] - 1:25
**confirm** [3] - 20:11, 32:12, 32:15
**confirmed** [2] - 4:16, 7:8
**confirms** [1] - 10:13
**consideration** [1] - 3:24
**containing** [1] - 18:3
**content** [1] - 9:6
**context** [1] - 16:21
**continually** [1] - 17:10
**continued** [2] - 2:2, 5:19
**continuing** [1] - 23:25
**contradict** [1] - 19:15
**contrary** [4] - 20:11, 24:23, 25:20, 26:15
**Corinne** [1] - 1:17
**corners** [1] - 17:11
**correct** [4] - 5:17, 6:18, 12:2, 33:13
**Correctional** [1] - 29:20
**counsel** [10] - 6:18, 7:25, 8:1, 8:8, 10:14, 12:14, 12:16, 16:15, 16:24, 20:11
**countless** [1] - 30:10
**Court** [37] - 3:21, 3:22, 4:2, 4:3, 6:22, 7:22, 9:4, 10:6, 15:5, 15:18, 15:24, 16:3, 16:6, 17:20, 18:2, 18:14, 19:18, 19:20, 19:25, 20:12, 21:8, 21:14, 22:1, 22:21, 22:24, 23:5, 28:21, 28:23, 29:10, 29:23, 30:9, 30:22, 30:23, 32:4, 32:15, 33:3, 33:8
**COURT** [36] - 1:1, 2:18, 3:3, 3:4, 3:5, 3:7, 3:9, 3:18, 3:25, 13:8, 13:23, 16:8, 16:10, 19:22, 21:10, 21:25, 22:19, 22:23, 23:10, 23:12, 23:21, 23:23, 24:9, 28:17, 31:1, 31:11, 31:14, 31:18, 31:21, 31:24, 32:7, 32:9, 32:18, 32:22, 32:24, 33:5
**Court's** [2] - 21:17, 23:2
**COURTROOM** [1] - 32:21
**COVID** [6] - 5:5, 5:7, 5:20, 24:12, 25:4, 25:6
**COVID-19** [16] - 5:11, 6:21, 7:1, 7:2, 15:22, 15:23, 16:23, 17:13, 17:22, 18:17,

20:2, 24:19, 24:20, 26:11, 28:24
**COVID-19-related** [3] - 4:22, 6:13, 6:14
**COVID-related** [4] - 5:7, 5:20, 25:4, 25:6
**Cowles** [10] - 2:10, 9:17, 13:3, 24:1, 24:24, 25:20, 25:24, 26:24, 27:18, 28:9
**COWLES** [23] - 3:8, 3:21, 4:25, 16:9, 16:11, 19:23, 21:12, 22:1, 22:20, 22:24, 28:16, 28:18, 31:8, 31:12, 31:16, 31:19, 31:22, 31:25, 32:8, 32:10, 32:23, 33:1, 33:7
**CRIMINAL** [1] - 1:8
**cropping** [1] - 20:25
**cross** [1] - 10:12
**CRR** [2] - 2:19, 33:20
**CSR** [2] - 2:19, 33:20
**cubicles** [2] - 17:16, 30:7
**CURTIS** [1] - 1:4

## D

**dash** [1] - 7:11
**Date** [1] - 33:20
**date** [1] - 27:25
**David** [1] - 2:4
**Davis** [1] - 9:7
**DAY** [1] - 1:12
**day's** [1] - 12:10
**dealing** [2] - 17:10, 27:15
**dealt** [1] - 16:5
**decided** [1] - 11:14
**decision** [1] - 17:14
**declaration** [4] - 9:11, 14:1, 14:16, 28:10
**declared** [1] - 24:17
**DEFENDANTS** [1] - 2:9
**Defendants** [10] - 1:9, 3:7, 4:8, 5:10, 8:9, 9:5, 9:7, 22:2, 22:16, 23:13
**Defendants'** [4] - 7:25, 8:1, 8:8, 32:4
**defense** [1] - 19:25
**deliberate** [1] - 17:21
**deliberately** [3] - 19:1, 29:14, 30:10
**denied** [1] - 31:21
**Denise** [1] - 1:16
**deny** [1] - 31:2
**DEPARTMENT** [1] - 1:8
**depicting** [2] - 9:19, 21:5
**depo** [4] - 4:18, 5:4, 6:3, 7:6
**deposition** [4] - 4:9, 16:24, 24:23, 25:22
**DEPUTY** [1] - 32:21
**describe** [1] - 4:14

**desperate** [1] - 30:20
**desperately** [1] - 29:3
**desperation** [1] - 29:1
**despite** [2] - 24:7, 25:21
**detail** [1] - 19:18
**Detention** [1] - 29:20
**difference** [2] - 29:4, 29:7
**different** [12] - 9:19, 9:23, 12:14, 19:19, 20:24, 20:25, 21:1, 21:2, 22:21, 29:24, 30:1, 30:4
**differently** [1] - 31:13
**difficult** [3] - 21:9, 21:10, 23:17
**direct** [2] - 7:7, 25:7
**directly** [11] - 11:25, 12:1, 14:12, 16:19, 18:19, 19:15, 24:23, 26:9, 26:15, 28:2, 28:12
**disappointing** [2] - 16:12, 23:4
**disclosures** [1] - 14:25
**discovery** [1] - 33:2
**discovery-related** [1] - 33:2
**discuss** [3] - 5:8, 5:9, 21:15
**discussing** [1] - 21:4
**disinfect** [1] - 30:7
**disprove** [1] - 27:13
**DISTRICT** [2] - 1:1, 1:2
**DIVISION** [1] - 1:3
**document** [4] - 3:23, 7:2, 15:23, 22:7
**documented** [1] - 22:6
**documents** [3] - 4:17, 28:3, 28:5
**dog** [16] - 4:14, 5:11, 5:16, 5:18, 6:9, 7:11, 8:8, 11:10, 14:9, 16:22, 17:4, 18:13, 18:20, 18:24, 20:18, 25:3
**dogs** [3] - 18:4, 29:4, 30:14
**done** [9] - 10:4, 11:6, 13:5, 14:2, 19:24, 21:8, 22:11, 22:20, 22:22
**dorm** [2] - 18:4, 18:19
**dorms** [2] - 20:5, 30:7
**downplay** [1] - 13:17
**draw** [1] - 23:17
**Duke** [1] - 1:16
**during** [5] - 8:13, 8:14, 16:14, 20:3, 32:4
**Dye** [2] - 33:19, 33:20
**DYE** [1] - 2:19

## E

**e-mail** [2] - 8:14, 12:22
**earth** [1] - 17:11
**East** [1] - 2:6
**eat** [2] - 17:7, 27:8
**eating** [1] - 17:16

**ECF** [1] - 9:5
**Edwards** [1] - 2:4
**EDWARDS** [1] - 2:5
**eight** [1] - 30:1
**either** [2] - 20:15, 20:16
**elderly** [1] - 30:5
**Eldon** [2] - 19:8, 19:16
**electronics** [1] - 28:6
**electrostatic** [1] - 30:6
**ELLISON** [1] - 1:11
**ELVIN** [1] - 1:4
**end** [2] - 12:10, 18:21
**entire** [1] - 22:15
**entitled** [1] - 33:14
**equivocal** [1] - 27:18
**error** [2] - 23:18, 23:19
**event** [4] - 9:19, 9:21, 9:22, 21:5
**evidence** [6] - 8:10, 8:22, 30:10, 30:13, 32:2, 32:14
**exact** [3] - 12:5, 18:8, 19:10
**exactly** [3] - 14:7, 19:18, 29:9
**examination** [4] - 5:18, 8:13, 8:15, 10:4
**examine** [1] - 26:18
**except** [1] - 18:14
**exchange** [2] - 19:7, 19:13
**Exhibit** [2] - 6:2, 32:14
**expert** [2] - 19:8, 19:16
**experts** [1] - 29:17
**explain** [1] - 16:14
**explanation** [2] - 14:11, 15:8
**explicit** [1] - 10:18
**extended** [1] - 6:19
**extent** [1] - 18:14
**extenuating** [1] - 22:18
**extremely** [1] - 22:18

## F

**Facilities** [1] - 29:21
**facing** [1] - 26:16
**fact** [6] - 11:13, 24:12, 25:16, 29:15, 31:4, 31:9
**facts** [1] - 4:7
**faith** [8] - 8:19, 13:9, 16:13, 21:7, 22:12, 22:25, 23:9, 30:24
**fall** [1] - 23:19
**false** [5] - 11:20, 14:17, 15:15, 15:19
**falsely** [2] - 15:7, 16:5
**fashion** [1] - 15:6
**FAX** [2] - 1:22, 2:7
**feet** [1] - 18:9
**fellow** [1] - 16:12
**felt** [1] - 26:4
**Fennessey** [1] - 2:12
**fifteen** [1] - 18:9

**file** [1] - 25:18
**filed** [3] - 9:2, 19:21, 25:8
**fills** [1] - 6:10
**final** [1] - 31:3
**findings** [3] - 31:4, 31:9, 32:2
**fine** [1] - 31:14
**FIRM** [1] - 2:5
**first** [6] - 3:10, 5:4, 8:12, 11:1, 12:20, 15:2
**flu** [1] - 29:17
**focus** [1] - 6:4
**font** [1] - 5:1
**food** [1] - 27:8
**FOR** [3] - 1:14, 2:3, 2:9
**foregoing** [1] - 33:13
**forensic** [1] - 10:4
**form** [1] - 29:10
**forth** [1] - 6:22
**four** [2] - 6:5, 17:11
**Friday** [1] - 12:22
**frivolous** [1] - 16:13
**FROM** [1] - 1:25
**front** [1] - 29:19

## G

**gain** [2] - 13:10, 22:16
**gained** [2] - 22:2, 23:13
**Gary** [6] - 4:9, 6:16, 8:7, 16:24, 20:3, 30:13
**GAYLE** [1] - 2:19
**Gayle** [2] - 3:3, 33:20
**GENERAL** [1] - 2:13
**General's** [1] - 16:17
**gently** [6] - 18:3, 18:7, 18:19, 20:4, 26:25, 27:2, 27:13, 29:5, 29:12
**given** [2] - 15:10, 29:15
**global** [1] - 17:10
**great** [1] - 5:2
**Green** [1] - 1:18
**Grievance** [1] - 6:11
**grievance** [9] - 5:16, 6:4, 6:9, 6:14, 7:3, 24:13, 24:20, 25:4
**grievances** [9] - 4:10, 4:11, 4:20, 4:21, 5:3, 5:5, 5:6, 24:12, 24:16
**guess** [3] - 10:24, 23:14, 32:10
**guidelines** [2] - 29:20, 29:22

## H

**H-20-CV-1115** [1] - 1:6
**half** [1] - 19:21
**hall** [5] - 17:7, 17:9, 26:25, 27:2, 27:14
**hallway** [4] - 18:8, 20:18, 27:8, 27:10

**handled** [1] - 16:1
**handwashing** [1] - 19:12
**hang** [1] - 4:23
**happy** [6] - 7:19, 7:21, 16:14, 23:6, 30:23, 33:7
**hard** [1] - 1:10
**heard** [6] - 5:22, 6:12, 13:22, 16:9, 28:16, 31:16
**HELD** [1] - 1:10
**helps** [1] - 18:25
**Herrera** [37] - 5:23, 7:25, 8:2, 8:8, 8:13, 8:15, 8:16, 9:7, 9:8, 9:12, 9:21, 9:23, 10:9, 11:8, 11:13, 11:14, 11:24, 12:1, 12:4, 12:8, 14:6, 14:10, 20:5, 20:7, 20:9, 20:17, 20:19, 20:20, 21:13, 21:18, 21:19, 25:17, 26:4, 26:10, 27:1, 27:13
**HERRERA** [1] - 1:7
**Herrera's** [4] - 11:7, 12:11, 14:20, 20:14
**highlighted** [1] - 16:18
**Hockman** [1] - 1:17
**honest** [1] - 21:21
**Honor** [60] - 3:6, 3:8, 3:11, 3:12, 3:21, 4:4, 4:18, 5:19, 5:24, 6:8, 6:17, 8:11, 9:15, 9:20, 10:1, 10:19, 12:17, 13:12, 13:25, 14:14, 14:19, 15:5, 15:10, 15:16, 16:7, 16:9, 16:20, 17:5, 18:5, 18:11, 19:11, 19:17, 20:22, 21:6, 21:24, 22:11, 22:13, 23:11, 23:20, 23:24, 24:11, 24:21, 26:7, 26:13, 27:5, 28:16, 28:20, 30:2, 30:9, 30:11, 30:21, 31:6, 31:7, 31:8, 31:16, 31:22, 31:25, 32:8, 32:10, 32:23
**HONORABLE** [1] - 1:11
**hope** [1] - 22:24
**hospitalized** [1] - 32:25
**hot** [28] - 4:14, 5:11, 5:16, 5:18, 6:9, 7:10, 8:8, 11:10, 14:9, 16:22, 17:4, 17:7, 17:8, 17:9, 17:17, 17:25, 18:3, 18:13, 18:20, 18:24, 20:18, 24:4, 25:3, 26:1, 26:14, 26:15, 29:4, 30:14
**hour** [1] - 30:25
**hours** [2] - 8:12, 8:24
**HOUSTON** [1] - 1:3
**Houston** [3] - 1:7, 1:21, 2:20
**huge** [1] - 23:2
**human** [1] - 18:6
**hundred** [1] - 29:16
**hurts** [1] - 18:25

## I

**idea** [3] - 11:15, 11:21, 15:14
**identified** [1] - 10:21
**images** [1] - 20:22
**implement** [1] - 30:3
**important** [2] - 3:23, 16:2
**importantly** [1] - 27:17
**imputed** [1] - 23:8
**inaccuracies** [1] - 13:9
**inaccurate** [1] - 10:14
**incident** [24] - 4:14, 5:11, 5:18, 5:20, 6:9, 6:20, 7:8, 7:11, 8:8, 8:9, 11:10, 11:11, 11:17, 14:10, 16:22, 17:5, 18:13, 18:20, 18:24, 20:16, 20:18, 24:8, 25:4, 26:4
**incidents** [1] - 22:5
**including** [1] - 5:19
**indicate** [1] - 29:9
**indifference** [1] - 17:21
**infected** [1] - 32:25
**informed** [1] - 21:14
**injunction** [3] - 9:10, 13:20, 13:21
**inmates** [1] - 24:3
**innocent** [1] - 22:14
**inquiry** [2] - 13:6, 14:13
**instance** [1] - 9:25
**instead** [1] - 20:15
**instruction** [2] - 28:2, 28:4
**intend** [1] - 14:21
**intending** [1] - 31:10
**intent** [2] - 18:12, 23:18
**intention** [1] - 9:6
**intentional** [1] - 22:12
**interrupted** [1] - 6:16
**introduced** [2] - 18:1, 19:14
**involves** [1] - 28:19
**irrelevant** [7] - 5:8, 15:25, 18:14, 24:10, 24:17, 25:21, 28:23
**issue** [15] - 11:2, 11:3, 14:3, 15:18, 21:4, 21:16, 25:4, 25:5, 25:6, 28:14, 28:19, 28:22, 31:17, 32:11
**issues** [1] - 26:10
**iterations** [1] - 30:1

## J

**James** [1] - 2:4
**Jason** [2] - 1:19, 2:12
**jeff@edwards** [1] - 2:8
**jeff@edwards-law.com** [1] - 2:8
**Jeffrey** [1] - 2:4
**jkeville@winston.com** [1] -

1:23
**John** [1] - 1:15
**johnny** [10] - 11:11, 18:3, 18:7, 18:9, 18:18, 20:4, 20:18, 20:23, 29:8, 29:11
**judgment** [2] - 31:20, 32:1
**July** [10] - 4:5, 4:8, 8:6, 9:3, 9:4, 9:9, 9:16, 10:12, 11:1, 15:2
**June** [1] - 15:1
**jury** [1] - 6:23
**JUSTICE** [1] - 1:8

## K

**keep** [2] - 19:4, 28:15
**KEITH** [1] - 1:11
**KEVILLE** [12] - 3:6, 3:11, 4:4, 5:3, 13:12, 13:24, 23:11, 23:20, 23:22, 23:24, 24:11, 31:6
**Keville** [6] - 1:15, 3:10, 4:25, 13:8, 17:19, 22:3
**kind** [1] - 18:10
**KING** [1] - 1:4
**knowing** [2] - 25:22, 26:12
**knowledge** [2] - 15:1, 28:20
**known** [1] - 11:23
**knows** [3] - 19:20, 29:23, 30:9
**Kyle** [1] - 1:19

## L

**LADDY** [1] - 1:4
**Landon** [1] - 2:11
**language** [1] - 19:10
**larger** [1] - 5:1
**last** [6] - 6:4, 14:23, 26:23, 29:16, 31:16, 32:11
**laundry** [3] - 19:3, 19:7, 19:12
**law** [1] - 31:5
**LAW** [1] - 2:5
**law.com** [1] - 2:8
**lawsuit** [5] - 5:22, 7:5, 13:19, 25:7, 26:10
**lawsuits** [1] - 25:18
**lawyers** [2] - 15:18, 16:3
**lawyers'** [1] - 15:12
**leadership** [1] - 11:16
**least** [3] - 4:22, 5:7, 26:20
**leave** [3] - 15:5, 15:15, 16:6
**lengthy** [1] - 6:22
**life** [1] - 24:14
**likely** [1] - 14:10
**line** [1] - 23:18
**lines** [5] - 4:24, 7:12, 7:17, 24:25, 25:13
**list** [1] - 15:2

**listed** [1] - 6:11
**literally** [1] - 11:18
**LLP** [1] - 1:20
**location** [1] - 12:5
**lockdown** [6] - 17:6, 17:15, 17:23, 18:16, 19:2, 24:4
**look** [3] - 13:2, 13:18, 27:5
**looked** [2] - 3:16, 14:25

## M

**mail** [2] - 8:14, 12:22
**March** [2] - 25:2, 29:24
**Mark** [1] - 1:18
**mask** [1] - 27:24
**masks** [1] - 30:5
**match** [1] - 4:7
**matter** [4] - 11:13, 25:16, 33:2, 33:14
**matters** [1] - 33:2
**meal** [2] - 17:9, 17:25
**meals** [7] - 17:7, 17:9, 17:10, 17:17, 24:4, 26:1, 26:15
**mean** [1] - 13:8
**means** [2] - 15:3, 27:11
**MEANS** [1] - 1:24
**measurements** [1] - 18:8
**measures** [1] - 17:12
**medical** [4] - 29:14, 29:15, 29:24, 29:25
**Medlock** [1] - 2:5
**member** [1] - 16:12
**memory** [1] - 27:21
**Mendoza** [1] - 9:7
**messages** [1] - 15:4
**met** [2] - 29:3, 30:19
**metadata** [3] - 12:13, 20:13, 21:22
**Michael** [1] - 1:17
**might** [1] - 27:19
**miles** [1] - 30:25
**million** [1] - 19:23
**minimum** [2] - 15:6, 15:9
**minute** [1] - 4:23
**minutes** [2] - 3:19, 33:4
**misrecollection** [1] - 22:14
**misremembered** [4] - 21:24, 27:19, 28:4, 28:10
**misrepresentation** [1] - 27:16
**misrepresentations** [3] - 12:23, 16:16, 23:25
**missing** [1] - 23:16
**mistake** [2] - 22:10, 22:11
**mistakes** [4] - 22:4, 22:10, 23:14
**mitigate** [1] - 20:2
**Molina** [24] - 2:11, 4:9, 4:10, 4:16, 5:13, 6:16, 6:25, 7:7,

7:9, 7:19, 7:20, 7:24, 8:3, 8:4, 8:23, 9:9, 15:20, 16:23, 17:1, 24:7, 24:16, 25:2, 25:9, 26:7
**Molina's** [2] - 5:18, 24:9
**months** [1] - 19:21
**morning** [4] - 11:1, 31:15, 32:6, 32:7
**most** [1] - 27:17
**motion** [15] - 3:9, 3:12, 8:18, 9:17, 10:5, 12:24, 13:4, 16:13, 22:15, 23:4, 30:17, 31:2, 31:20, 32:1, 32:3
**motives** [1] - 23:8
**move** [1] - 13:3
**MR** [35] - 3:6, 3:8, 3:11, 3:21, 4:4, 4:25, 5:3, 13:12, 13:24, 16:9, 16:11, 19:23, 21:12, 22:1, 22:20, 22:24, 23:11, 23:20, 23:22, 23:24, 24:11, 28:16, 28:18, 31:6, 31:8, 31:12, 31:16, 31:19, 31:22, 31:25, 32:8, 32:10, 32:23, 33:1, 33:7
**multiple** [3] - 7:21, 8:5, 28:7
**Murphy** [1] - 1:17

## N

**names** [2] - 12:14, 25:14
**native** [1] - 12:12
**nature** [1] - 29:16
**NBA** [1] - 18:10
**need** [4] - 3:25, 5:8, 12:11, 15:21
**needed** [2] - 10:19, 18:22
**needs** [1] - 22:6
**nefarious** [1] - 22:12
**never** [4] - 9:12, 9:13, 14:5, 28:2
**new** [3] - 6:11, 27:11, 29:21
**next** [11] - 8:6, 10:25, 11:12, 11:18, 12:2, 12:3, 14:4, 14:6, 20:16, 21:18, 25:12
**night** [5] - 11:5, 11:21, 12:10, 14:5, 28:3
**nine** [1] - 30:1
**non** [1] - 10:18
**non-objection** [1] - 10:18
**none** [1] - 4:19
**note** [2] - 6:1, 13:25
**noted** [1] - 5:12
**nothing** [3] - 21:15, 22:2, 30:17
**nothingburger** [1] - 21:6
**notified** [1] - 12:22
**Number** [1] - 9:5
**number** [2] - 26:18, 26:19
**numbers** [2] - 4:13, 32:24

## O

**o'clock** [2] - 13:1, 31:15
**oath** [5] - 11:11, 11:20, 15:7, 16:5, 25:23
**object** [1] - 5:15
**objected** [2] - 10:15, 28:22
**objection** [3] - 4:16, 10:18, 26:7
**objections** [1] - 13:14
**obligation** [1] - 16:3
**obvious** [1] - 18:5
**obviously** [5] - 3:23, 9:18, 21:3, 29:10, 30:14
**occur** [1] - 22:8
**occurred** [2] - 6:20, 32:16
**OF** [4] - 1:2, 1:8, 1:10, 2:13
**offenders** [15] - 17:5, 17:13, 17:15, 17:18, 17:22, 17:24, 18:3, 18:6, 18:15, 19:2, 19:6, 20:23, 29:12, 30:6, 30:11
**offered** [1] - 8:9
**OFFICE** [1] - 2:13
**office** [3] - 6:10, 16:16, 18:22
**Office** [1] - 16:17
**office-use-only** [1] - 6:10
**officer** [1] - 29:8
**officers** [3] - 25:15, 26:5, 29:12
**omit** [1] - 7:23
**once** [2] - 9:8, 32:3
**one** [27] - 6:6, 6:12, 10:8, 11:10, 12:11, 12:12, 12:21, 13:2, 13:5, 13:15, 13:16, 13:25, 18:10, 18:21, 20:5, 22:4, 24:18, 25:16, 25:17, 26:18, 26:23, 28:1, 30:15, 31:16, 31:25, 32:10, 33:2
**ones** [1] - 10:21
**open** [1] - 31:13
**operating** [2] - 20:21, 30:25
**operations** [1] - 22:25
**opportunities** [1] - 19:12
**oppose** [1] - 13:4
**opposite** [1] - 14:12
**opposition** [8] - 3:14, 3:16, 7:23, 9:2, 12:19, 13:25, 14:8, 14:16
**orally** [1] - 31:21
**order** [3] - 19:24, 20:1, 27:24
**ordered** [2] - 10:6, 12:17
**originally** [1] - 13:11
**outset** [1] - 16:11
**outside** [3] - 18:4, 18:19, 20:4
**overruled** [1] - 10:17
**own** [2] - 7:2, 19:8

## P

**p.m** [4] - 1:8, 4:2, 4:3, 33:8
**Pack** [11] - 8:19, 16:23, 17:15, 19:6, 20:1, 22:5, 28:24, 30:5, 30:6, 30:8, 30:11
**page** [5] - 4:18, 5:13, 7:14, 24:22, 25:12
**pages** [3] - 5:19, 6:5, 24:7
**pandemic** [2] - 17:11, 29:16
**part** [3] - 6:10, 7:11, 7:16
**partial** [1] - 32:1
**particular** [2] - 11:13, 23:6
**Patrick** [1] - 1:19
**Paul** [1] - 9:21
**pending** [1] - 10:6
**person** [1] - 20:24
**personnel** [1] - 30:15
**phone** [6] - 11:15, 11:17, 11:24, 12:12, 20:14
**phones** [3] - 9:6, 10:7, 12:18
**photo** [44] - 8:16, 8:19, 8:23, 9:1, 9:16, 9:21, 9:22, 10:10, 10:13, 10:14, 10:15, 11:7, 12:1, 12:5, 12:8, 12:21, 12:23, 13:3, 13:5, 14:5, 18:12, 18:20, 18:21, 19:4, 19:15, 20:5, 20:6, 20:7, 20:14, 20:18, 20:24, 21:1, 21:3, 21:12, 21:18, 21:19, 22:6, 22:7, 27:1, 27:12, 27:25
**photograph** [8] - 7:25, 8:1, 8:9, 8:12, 11:3, 14:9, 14:11, 18:1
**photographs** [5] - 10:21, 10:24, 11:2, 13:15, 20:22
**photos** [29] - 9:8, 9:11, 9:12, 9:18, 9:23, 9:25, 10:3, 10:5, 10:6, 10:9, 10:19, 11:10, 12:11, 12:13, 12:18, 12:19, 13:11, 14:7, 14:20, 14:23, 15:3, 19:19, 26:17, 26:19, 26:21, 26:22, 27:23, 29:9
**picture** [8] - 7:10, 7:24, 8:4, 11:14, 11:15, 11:17, 11:19, 18:6
**pictures** [5] - 7:8, 7:20, 7:21, 8:5, 8:22
**place** [1] - 17:14
**placed** [9] - 17:6, 18:3, 18:7, 18:15, 18:19, 20:4, 26:25, 27:2, 27:13
**placing** [2] - 17:23, 19:2
**Plaintiffs** [16] - 1:5, 3:5, 3:6, 17:2, 18:23, 19:4, 22:4, 22:9, 23:3, 23:7, 24:10, 28:18, 29:1, 30:12, 30:16,
32:3
**PLAINTIFFS** [2] - 1:14, 2:3
**Plaintiffs'** [7] - 16:15, 16:24, 17:20, 19:8, 19:16, 20:10, 30:17
**plead** [1] - 28:20
**pled** [1] - 30:16
**plural** [2] - 7:20, 8:22
**PO** [1] - 2:13
**point** [9] - 7:20, 8:11, 9:8, 10:1, 12:16, 16:14, 16:19, 26:20, 26:23
**pointed** [1] - 22:1
**policies** [2] - 30:2, 30:4
**policy** [4] - 6:12, 15:23, 29:20, 29:22
**position** [1] - 7:1
**possible** [2] - 3:22, 29:15
**posterity** [1] - 11:17
**potential** [5] - 17:4, 24:2, 24:5, 25:25, 26:14
**precautionary** [6] - 17:6, 17:15, 17:23, 18:16, 19:2, 24:3
**predicting** [1] - 9:18
**prefer** [1] - 31:6
**preference** [1] - 31:8
**prejudice** [2] - 22:3, 26:17
**preliminary** [1] - 9:10
**prep** [3] - 11:5, 14:5, 28:3
**prepare** [1] - 19:24
**prepped** [2] - 11:21, 14:14
**present** [5] - 3:5, 3:6, 3:7, 21:7, 22:17
**presentation** [2] - 22:18, 23:1
**presented** [2] - 29:2, 32:2
**presumably** [1] - 9:9
**previously** [1] - 6:25
**prioritized** [1] - 30:5
**privilege** [1] - 27:20
**problem** [2] - 13:24
**problems** [1] - 14:19
**proceed** [1] - 31:10
**proceeding** [1] - 10:20
**PROCEEDINGS** [3] - 1:10, 1:24, 3:1
**proceedings** [1] - 33:14
**produce** [7] - 8:15, 8:21, 8:22, 10:6, 12:18, 14:21, 26:20
**produced** [9] - 4:12, 4:17, 5:4, 8:5, 8:16, 9:13, 12:12, 12:18, 24:12
**PRODUCED** [1] - 1:25
**production** [1] - 8:20
**professionals** [3] - 29:14, 29:24, 29:25
**proof** [1] - 29:3

**properly** [1] - 28:23
**protect** [7] - 17:13, 17:17, 17:22, 18:16, 19:1, 24:15, 30:11
**provided** [1] - 20:5
**put** [9] - 7:11, 7:13, 8:21, 8:25, 10:19, 14:3, 24:22, 27:3, 28:23

## Q

**quality** [1] - 33:17
**questioned** [1] - 8:8
**questioning** [4] - 6:16, 15:20, 24:7, 24:9
**questions** [3] - 5:15, 11:16, 17:1
**quote** [3] - 7:9, 7:10, 25:18
**quoted** [2] - 19:9, 19:11

## R

**Ralph** [2] - 2:11, 4:9
**rather** [1] - 17:9
**RDR** [2] - 2:19, 33:20
**reach** [1] - 18:11
**read** [4] - 3:12, 3:13, 3:22, 5:1
**readily** [1] - 19:5
**ready** [3] - 3:3, 31:7
**real** [1] - 10:2
**really** [4] - 10:9, 14:3, 23:12
**reason** [6] - 17:2, 18:1, 20:21, 26:25, 27:12, 31:12
**reasonable** [1] - 17:12
**reasons** [1] - 22:12
**rebut** [1] - 8:7
**rebuttal** [4] - 18:2, 18:20, 19:15, 20:8
**rebutting** [1] - 20:8
**recalled** [1] - 21:20
**received** [4] - 9:23, 15:2, 28:2, 31:19
**recessed** [2] - 4:2, 33:8
**reckless** [1] - 15:13
**recommended** [1] - 31:4
**record** [3] - 33:14, 33:16, 33:17
**RECORDED** [1] - 1:24
**recovered** [1] - 32:25
**recross** [1] - 11:25
**redirect** [1] - 11:1
**reenforces** [1] - 19:1
**referencing** [1] - 9:10
**refused** [1] - 16:25
**refute** [2] - 16:19, 19:15
**refuted** [1] - 18:19
**refutes** [1] - 17:20
**regarding** [2] - 8:7, 11:16
**related** [7] - 5:7, 5:20, 15:22,

24:19, 25:4, 25:6, 33:2
**relevance** [6] - 17:4, 24:2, 24:5, 25:25, 26:7, 26:14
**relevant** [10] - 4:20, 5:11, 7:1, 15:3, 16:22, 17:3, 24:2, 26:9, 26:10, 28:13
**relying** [1] - 29:14
**remedy** [2] - 15:6, 16:7
**remember** [6] - 13:20, 14:11, 27:17, 27:22, 27:25, 28:1
**REMOTELY** [2] - 1:10, 1:24
**renew** [1] - 32:1
**repeated** [1] - 4:7
**repeatedly** [1] - 16:5
**REPORTER** [2] - 2:18, 3:4
**representations** [6] - 14:24, 15:14, 15:18, 16:4, 17:20, 27:16
**represented** [7] - 4:11, 8:4, 9:4, 20:10, 20:12, 24:24, 26:24
**representing** [1] - 28:10
**represents** [2] - 7:20, 9:18
**requested** [1] - 5:13
**resolution** [1] - 20:25
**respond** [1] - 23:20
**responded** [1] - 28:24
**response** [5] - 7:9, 9:10, 16:23, 19:9, 19:11
**rested** [1] - 32:3
**result** [1] - 17:14
**resumed** [2] - 4:3, 10:12
**retain** [2] - 28:3, 28:5
**retaliated** [1] - 13:18
**retaliation** [8] - 5:21, 7:5, 13:22, 25:7, 25:24, 28:14, 28:19, 30:16
**review** [1] - 20:13
**revised** [1] - 29:22
**RICHARD** [1] - 1:4
**risk** [4] - 17:13, 18:16, 20:2, 24:14
**Rivera** [2] - 32:16, 32:20
**Rob** [1] - 1:18
**ROBERT** [1] - 1:7
**Room** [1] - 2:19
**room** [6] - 6:17, 19:3, 19:7, 19:12, 32:13, 32:17
**rounds** [1] - 30:4
**Rudloff** [2] - 1:19, 5:17
**Rule** [2] - 14:25, 32:1
**ruling** [1] - 31:19
**Rusk** [1] - 2:19

## S

**sack** [4] - 11:11, 20:4, 29:8, 29:11
**sacks** [6] - 18:3, 18:7, 18:9, 18:18, 20:18, 20:23

**sampled** [1] - 30:15
**sanction** [1] - 15:11
**sanctionable** [1] - 23:15
**sanctions** [4] - 12:24, 13:3, 22:16, 31:2
**Saturday** [2] - 13:1, 13:2
**saw** [4] - 7:10, 7:24, 12:4, 21:22
**Scofield** [1] - 1:16
**Scott** [1] - 2:5
**screen** [4] - 4:25, 24:22
**screenshot** [1] - 32:13
**search** [1] - 15:3
**second** [1] - 15:7
**see** [8] - 6:10, 8:12, 12:15, 13:8, 19:11, 23:2, 23:12, 23:15
**seem** [1] - 23:18
**sees** [1] - 22:24
**send** [2] - 12:8, 14:9
**sending** [1] - 14:11
**sends** [1] - 20:24
**sense** [1] - 9:25
**sent** [8] - 7:25, 8:14, 10:7, 14:5, 20:17, 21:19
**separate** [3] - 10:10, 10:20, 25:5
**Sergeant** [1] - 5:22
**sergeant** [1] - 25:16
**serious** [1] - 15:17
**set** [1] - 16:21
**several** [1] - 25:17
**Shawn** [1] - 2:10
**shawn.cowles@oag.texas. gov** [1] - 2:15
**Shea** [1] - 2:12
**shock** [1] - 18:23
**show** [3] - 4:5, 7:19, 7:21
**showed** [2] - 4:10, 21:22
**shown** [2] - 5:4, 8:14
**shows** [3] - 15:25, 16:1, 30:10
**sick** [2] - 30:14, 30:15
**side** [2] - 7:7, 23:19
**signaling** [1] - 13:14
**similarly** [1] - 19:3
**simply** [1] - 14:10
**single** [1] - 16:14
**sinks** [2] - 19:3, 19:5
**sit** [1] - 9:20
**sitting** [1] - 6:23
**situation** [2] - 11:14, 15:17
**slightly** [2] - 20:23, 21:2
**small** [1] - 5:1
**soap** [1] - 19:5
**someone** [4] - 10:14, 20:24, 29:5, 29:6
**sometimes** [1] - 22:6
**somewhat** [4] - 4:22, 5:7,

15:22, 24:18
**soon** [1] - 31:7
**sorry** [2] - 20:17, 32:11
**sort** [1] - 6:23
**SOUTHERN** [1] - 1:2
**Spanish** [1] - 29:17
**speaking** [1] - 10:21
**specifically** [2] - 24:14, 30:23
**spoiled** [1] - 30:15
**sprayer** [1] - 30:6
**spread** [1] - 17:11
**squarely** [1] - 14:3
**staff** [1] - 26:5
**staff's** [1] - 27:6
**standing** [5] - 11:12, 11:18, 12:2, 12:3, 14:6
**start** [2] - 4:5, 10:20
**started** [1] - 19:20
**starts** [1] - 4:6
**state** [1] - 10:14
**statement** [2] - 18:18, 26:12
**statements** [2] - 5:22, 15:13
**states** [1] - 4:19
**STATES** [1] - 1:1
**stating** [2] - 7:10, 19:9
**stay** [1] - 15:25
**STENOGRAPHIC** [1] - 1:24
**Step** [2] - 6:4, 6:8
**steps** [3] - 17:22, 24:15, 29:13
**still** [5] - 16:22, 18:13, 18:23, 18:24, 24:1
**stipulate** [5] - 4:19, 5:8, 16:24, 16:25, 24:10
**Stone** [1] - 1:17
**stories** [1] - 15:19
**story** [9] - 4:4, 4:6, 6:19, 6:24, 10:2, 11:22, 12:13, 13:13, 27:11
**STRAWN** [1] - 1:20
**Street** [2] - 1:20, 2:6
**stricken** [1] - 15:10
**Strike** [1] - 30:4
**submit** [3] - 4:18, 18:13, 28:18
**submitted** [2] - 3:21, 9:11
**subsequently** [1] - 21:13
**suggestion** [1] - 13:4
**suggestions** [1] - 31:13
**Suite** [1] - 1:21
**summary** [1] - 31:20
**supports** [2] - 18:15, 19:5
**surprisingly** [1] - 3:17

---

# T

**TDCJ** [14] - 6:10, 17:12, 17:21, 19:1, 19:5, 20:1,

28:24, 29:8, 29:13, 29:19, 30:1, 30:3, 30:10, 30:15
**TDCJ's** [2] - 16:22, 32:13
**Team** [1] - 30:4
**telephone** [1] - 33:16
**ten** [1] - 18:9
**Terao** [1] - 1:19
**testified** [2] - 8:17, 8:25, 12:7, 13:21, 15:7, 18:2, 21:17, 25:22, 26:3, 26:24, 27:10, 28:2
**testifies** [2] - 7:4, 10:23, 14:5, 20:3
**testify** [1] - 16:5
**testimony** [28] - 6:15, 7:4, 10:12, 11:20, 12:1, 12:11, 13:17, 14:1, 14:12, 14:15, 14:17, 15:9, 19:7, 20:8, 21:21, 22:4, 25:23, 26:13, 26:15, 27:3, 27:9, 27:18, 27:20, 28:8, 28:9, 28:12, 32:4
**testing** [1] - 30:4
**TEXAS** [2] - 1:2, 1:8
**Texas** [5] - 1:7, 1:21, 2:6, 2:14, 2:20
**THE** [41] - 1:11, 1:14, 2:3, 2:5, 2:9, 2:13, 3:3, 3:4, 3:5, 3:7, 3:9, 3:18, 3:25, 13:8, 13:23, 16:8, 16:10, 19:22, 21:10, 21:25, 22:19, 22:23, 23:10, 23:12, 23:21, 23:23, 24:9, 28:17, 31:1, 31:11, 31:14, 31:18, 31:21, 31:24, 32:7, 32:9, 32:18, 32:21, 32:22, 32:24, 33:5
**themselves** [4] - 5:24, 6:13, 15:23, 24:19
**they've** [3] - 7:21, 17:22, 22:10
**thinks** [1] - 15:10
**thousand** [1] - 30:25
**threatened** [2] - 26:4, 26:8
**threats** [1] - 7:5
**three** [1] - 19:20
**threw** [1] - 27:10
**throughout** [2] - 23:1, 30:25
**throwing** [2] - 29:6, 29:8
**thrown** [4] - 18:9, 20:19, 20:23, 29:12
**timeframe** [1] - 29:18
**today** [3] - 9:20, 27:12, 29:25
**today's** [1] - 10:20
**tomorrow** [8] - 12:25, 31:15, 31:24, 32:5, 32:7, 33:6
**took** [13] - 4:8, 9:21, 9:24, 10:14, 10:23, 11:3, 11:10, 11:19, 12:1, 13:15, 14:7, 30:10
**top** [1] - 6:11

**toss** [1] - 29:5
**tossed** [3] - 27:7, 27:10, 29:12
**tossing** [1] - 29:7
**totally** [2] - 24:6, 25:21
**TRANSCRIPT** [2] - 1:10, 1:25
**transcript** [3] - 5:19, 7:14, 33:13
**TRANSCRIPTION** [1] - 1:25
**trial** [16] - 5:25, 6:15, 15:4, 16:15, 18:22, 19:14, 19:20, 20:3, 21:4, 21:22, 22:17, 23:1, 25:23, 26:3, 26:13, 28:15
**TRIAL** [1] - 1:12
**tried** [3] - 13:13, 21:7, 28:14
**true** [2] - 15:14, 29:10
**truth** [1] - 22:13
**trying** [2] - 13:17, 22:17
**Tuesday** [2] - 9:16, 10:11
**turn** [2] - 15:18, 24:21
**turned** [1] - 15:15
**turns** [2] - 8:20, 15:19
**twenty** [1] - 18:9
**twice** [2] - 9:8, 14:22
**two** [21] - 9:18, 9:23, 9:24, 10:6, 10:7, 10:9, 10:19, 10:20, 12:11, 12:13, 12:14, 12:18, 13:11, 13:15, 20:21, 20:22, 21:21, 26:19
**type** [1] - 22:10

---

# U

**under** [13] - 6:11, 11:11, 11:20, 15:7, 15:23, 16:5, 17:23, 18:16, 21:8, 22:18, 24:3, 24:20, 25:23
**undertaken** [1] - 29:14
**unequivocal** [3] - 14:2, 27:25, 28:9
**unequivocally** [1] - 12:7
**unexpected** [2] - 24:6, 25:21
**unfortunately** [2] - 17:16
**unit** [2] - 26:5
**Unit** [11] - 8:19, 16:23, 17:15, 19:6, 20:1, 22:5, 28:24, 30:5, 30:6, 30:8, 30:11
**UNITED** [1] - 1:1
**unrelated** [1] - 6:20
**unsuccessfully** [1] - 28:15
**untrue** [1] - 11:23
**up** [14] - 3:14, 5:25, 7:13, 8:25, 10:19, 13:13, 19:4, 24:7, 24:22, 25:1, 27:3, 28:13, 29:21
**updates** [1] - 32:24
**upset** [4] - 17:5, 24:3, 25:25, 26:14
**utmost** [2] - 21:7, 22:25

## V

**Vague** [1] - 10:15
**Vail** [2] - 19:8, 19:16
**VALENTINE** [1] - 1:4
**Vasquez** [1] - 2:10
**verbalized** [1] - 25:11
**versus** [2] - 29:5, 29:8
**video** [1] - 33:16
**VS** [1] - 1:6

## W

**Wade** [1] - 2:11
**waited** [1] - 8:24
**waiting** [1] - 4:13
**wants** [5] - 4:18, 17:19, 23:5, 30:22, 33:3
**warden** [2] - 22:7
**Warden** [32] - 5:23, 8:13, 8:15, 8:16, 9:20, 9:23, 11:13, 11:14, 12:1, 12:4, 12:8, 20:5, 20:7, 20:9, 20:14, 20:17, 20:19, 20:20, 21:13, 21:17, 21:19, 21:20, 25:17, 26:4, 26:10, 27:12, 27:17, 28:1, 28:7
**warning** [1] - 10:18
**warranted** [1] - 23:9
**waste** [1] - 23:2
**wasted** [1] - 30:20
**water** [1] - 19:5
**website** [1] - 32:13
**Wednesday** [1] - 11:1
**week** [4] - 6:15, 13:20, 14:23, 17:6
**weeks** [1] - 21:21
**weight** [1] - 15:10
**Werbner** [1] - 1:18
**whatsoever** [1] - 16:13
**whichever** [1] - 31:6
**whole** [1] - 14:20
**Wilder** [24] - 9:21, 9:24, 10:12, 10:23, 11:1, 11:9, 11:11, 12:7, 13:13, 14:1, 14:9, 14:18, 14:24, 15:7, 20:17, 21:13, 21:17, 21:19, 21:20, 22:4, 27:17, 28:1, 28:7
**Wilder's** [6] - 9:16, 11:25, 12:12, 14:1, 14:20, 14:23
**WINSTON** [1] - 1:20
**wish** [1] - 19:23
**witness** [9] - 4:14, 8:24, 10:18, 11:6, 11:23, 15:1, 15:2, 15:21
**witnesses** [1] - 16:4
**worse** [1] - 10:11
**worst** [1] - 23:8

## Y

**y'all** [1] - 25:19
**years** [1] - 29:16
**yesterday** [3] - 3:13, 3:15, 12:19

## Z

**zero** [4] - 15:10, 22:3, 22:12, 30:13