## AFFIDAVIT

THE STATE OF **TEXAS** §

COUNTY OF **WALKER** §

BEFORE ME, the undersigned authority, on this day personally appeared **Monica Jackson**, who, being by me duly sworn, deposed as follows:

My name is **Monica Jackson** and I am an employee of the Texas Department of Criminal Justice (TDCJ), a governmental agency.  I am over 21 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the custodian of records for the **Plans and Operations**, a part of the TDCJ located in **Huntsville**, Texas.   Attached are true and correct copy of **Offender Orientation Handbook** which are kept by the TDCJ in the regular course of its business activity.  The entries of such records were made as a regularly conducted activity and a regular practice of the TDCJ and were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

I declare under penalty of perjury that the foregoing is true and correct.

"Further Affiant sayeth not."

_Monica Jackson_
**Monica Jackson**
**Program Administrator**
**Plans & Operations,**
**Correctional Institutions Division**
**Texas Department of Criminal Justice**

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned notary public, on the **15th** day of **April 2020**.

_Brittney R Vest_
NOTARY PUBLIC, STATE OF TEXAS

 Brittney Vest 
Notary's Printed Name

My Commission Expires:
 October 25, 2022 

**BRITTNEY VEST**
Notary Public-State of Texas
Notary ID #13177902-0
Commission Exp. OCT. 25, 2022
**Notary without Bond**

> **Case**
> **Valentine**
> **4:20-cv-01115**
>
> **Exhibit**
> **D EXH 19**

**DEFENDANTS' DISCLOSURE - 0195**



**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**


# OFFENDER ORIENTATION HANDBOOK

as

Approved by the

Texas Department of Criminal Justice
Director of the Correctional Institutions Division


Printed
FEBRUARY 2017


I-202 (rev. February 2017)

**DEFENDANTS' DISCLOSURE - 0196**



TDCJ–CID Region I
1225 Avenue G
Huntsville, Texas 77340

TDCJ-CID Region IV
965 Ofstie St.
Beeville, Texas 78102

TDCJ-CID Region II
#2 Backgate Road
Palestine, Texas 75803

TDCJ-CID Region V
304 West 6th St.
Plainview, Texas 79072

TDCJ-CID Region III
400 Darrington Road
Rosharon, Texas 77583

TDCJ-CID Region VI
1002 Carroll Street
Gatesville, Texas 76528

TDCJ Private Facility
Contract Monitoring and Oversight Division
Two Financial Plaza, Ste. 300
Huntsville, Texas 77340

DEFENDANTS' DISCLOSURE - 0197

# Texas Department of Criminal Justice
## Units/Facilities

| | | | |
|---|---|---|---|
| **Allred**<br>2101 FM 369 North<br>Iowa Park, TX 76367 | **B. Moore**<br>8500 North FM 3053<br>Overton, TX 75684 | **Bartlett**<br>1018 Arnold Drive<br>Bartlett, TX 76511 | **Beto**<br>1391 FM 3328<br>Tennessee Colony, TX 75880 |
| **Boyd**<br>200 Spur 113<br>Teague, TX 75860 | **Bradshaw**<br>P. O. Box 9000<br>Henderson,   TX   75653-9000 | **Bridgeport**<br>4000 North 10th Street<br>Bridgeport, TX 76426 | **Briscoe**<br>1459 West Highway 85<br>Dilley, TX 78017-4601 |
| **Byrd**<br>21 FM 247<br>Huntsville, TX 77320 | **C. Moore**<br>1700 North FM 87<br>Bonham, TX 75418 | **Clemens**<br>11034 Hwy 36<br>Brazoria, TX 77422 | **Clements**<br>9601 Spur 591<br>Amarillo, TX 79107-9606 |
| **Cleveland**<br>901 East 5th Street<br>Cleveland, TX 77327 | **Coffield**<br>2661 FM 2054<br>Tennessee Colony, TX 75884 | **Cole**<br>3801 Silo Road<br>Bonham, TX 75418 | **Connally**<br>899 FM 632<br>Kenedy, TX 78119 |
| **Cotulla**<br>610 FM 624<br>Cotulla, TX 78014 | **Crain**<br>1401 State School Road<br>Gatesville, TX 76599-2999 | **Dalhart**<br>11950 FM 998<br>Dalhart, TX 79022 | **Daniel**<br>938 South FM 1673<br>Snyder, TX 79549 |
| **Darrington**<br>59 Darrington Road<br>Rosharon, TX 77583 | **Diboll**<br>1604 South First Street<br>Diboll, TX 75941 | **Dominguez**<br>6535 Cagnon Road<br>San Antonio, TX 78252 | **Duncan**<br>1502 South First Street<br>Diboll, TX 75941 |
| **Eastham**<br>2665 Prison Road #1<br>Lovelady, TX 75851 | **East Texas Treatment**<br>900 Industrial Drive<br>Henderson, Texas 75652 | **Ellis**<br>1697 FM 980<br>Huntsville, TX 77343 | **Estelle**<br>264 FM 3478<br>Huntsville, TX 77320-3320 |
| **Estes**<br>1100 Highway 1807<br>Venus, TX 76084 | **Ferguson**<br>12120 Savage Dr.<br>Midway, TX 75852-3654 | **Formby**<br>998 County Road AA<br>Plainview, TX 79072-9641 | **Fort Stockton**<br>1536 East IH- 10<br>Fort Stockton, TX 79735 |
| **Garza East**<br>4304 Highway 202<br>Beeville, TX 78102-8981 | **Garza West**<br>4250 Highway 202<br>Beeville, TX 78102-8982 | **Gist**<br>3295 FM 3514<br>Beaumont, TX 77705 | **Goodman**<br>349 Private Road 8430<br>Jasper, TX 75951 |
| **Glossbrenner**<br>5100 South FM 1329<br>San Diego, TX 78384 | **Goree**<br>7405 Hwy 75 South<br>Huntsville, TX 77344 | **Gurney**<br>1385 FM 3328<br>Palestine, TX 75803 | **Halbert**<br>800 Ellen Halbert Drive<br>Burnet, TX 78611 |
| **Hamilton**<br>200 Lee Morrison Lane<br>Bryan, TX  77807 | **Havins**<br>500 FM 45 East<br>Brownwood, TX 76801 | **Henley**<br>7581 Hwy 321<br>Dayton, TX 77535 | **Hightower**<br>902 FM 686<br>Dayton, TX 77535 |
| **Hilltop**<br>1500 State School Road<br>Gatesville, TX 76598 | **Hobby**<br>742 FM 712<br>Marlin, TX 76661-4685 | **Hodge**<br>379 FM 2972 West<br>Rusk, TX 75785 | **Holliday**<br>295 IH 45N<br>Huntsville, TX 77320 |
| **Hospital Galveston**<br>P. O. Box 48, Sub St. #1<br>Galveston, TX 77555 | **Hughes**<br>3201 FM 929<br>Gatesville, TX 76597 | **Huntsville**<br>815 12th Street<br>Huntsville, TX 77348 | **Hutchins**<br>1500 East Langdon Road<br>Dallas, TX 75241 |
| **Jester I**<br>1 Jester Road<br>Richmond, TX 77406 | **Jester III**<br>3 Jester Road<br>Richmond, TX 77406 | **Jester IV**<br>4 Jester Road<br>Richmond, TX 77406 | **Johnston**<br>703 Airport Road<br>Winnsboro, TX 75494 |
| **Jordan/Baten**<br>1992 Helton Road<br>Pampa, TX 79065 | **Kegans**<br>707 Top Street<br>Houston, TX 77002 | **Kyle**<br>23001 IH 35<br>Kyle, TX 78640 | **LeBlanc**<br>3695 FM 3514<br>Beaumont, TX 77705 |
| **Lewis**<br>777 FM 3497<br>Woodville, TX 75990 | **Lindsey**<br>1620 FM 3344<br>Jacksboro, TX 76458 | **Lockhart**<br>1400 Industrial Blvd.<br>Lockhart, TX 78644 | **Lopez**<br>1203 El Cibolo Rd.<br>Edinburg, TX 78542 |

DEFENDANTS' DISCLOSURE - 0198

| | | | |
|---|---|---|---|
| **Luther**<br>1800 Luther Dr.<br>Navasota, TX 77868 | **Lychner**<br>2350 Atascocita Road<br>Humble, TX 77396 | **Lynaugh**<br>1098 South Highway 2037<br>Fort Stockton, TX 79735 | **Marlin**<br>2893 State Hwy 6<br>Marlin, TX 76661-6588 |
| **McConnell**<br>3001 South Emily Drive<br>Beeville, TX 78102 | **Michael**<br>2664 FM 2054<br>Tennessee Colony, TX 75886 | **Middleton**<br>13055 FM 3522<br>Abilene, TX 79601 | **Montford**<br>8602 Peach Avenue<br>Lubbock, TX 79404 |
| **Mountain View**<br>2305 Ransom Road<br>Gatesville, TX 76528 | **Murray**<br>1916 N. Hwy 36 Bypass<br>Gatesville, TX 76596 | **Neal**<br>9055 Spur 591<br>Amarillo, TX 79107 | **Ney**<br>114 Private Road 4303<br>Hondo, TX 78861-3812 |
| **Pack**<br>2400 Wallace Pack<br>Navasota, TX 77868 | **Plane**<br>904 FM 686<br>Dayton, TX 77535 | **Polunsky**<br>3872 FM 350 South<br>Livingston, TX 77351 | **Powledge**<br>1400 FM 3452<br>Palestine, TX 75803 |
| **Ramsey I**<br>1100 FM 655<br>Rosharon, TX 77583 | **Roach**<br>15845 FM 164<br>Childress, TX 79201 | **Robertson**<br>12071 FM 3522<br>Abilene, TX 79601 | **Rudd**<br>2004 Lamesa Highway<br>Brownfield, TX 79316 |
| **Sanchez**<br>3901 State Jail Road<br>El Paso, TX 79938 | **San Saba**<br>206 S. Wallace Creek Road<br>San Saba, TX 76877 | **Sayle**<br>4176 FM 1800<br>Breckenridge, TX 76424 | **Scott**<br>6999 Retrieve<br>Angleton, TX 77515 |
| **Segovia**<br>1201 East Cibolo Road<br>Edinburg, TX 78542 | **Skyview**<br>379 FM 2972 West<br>Rusk, TX 75785 | **South Texas ISF**<br>1511 Preston<br>Houston, TX 77002 | **Stevenson**<br>1525 FM 766<br>Cuero, TX 77954 |
| **Stiles**<br>3060 FM 3514<br>Beaumont, TX 77705 | **Stringfellow**<br>1200 FM 655<br>Rosharon, TX 77583 | **Telford**<br>3899 State Hwy 98<br>New Boston, TX 75570 | **Terrell**<br>1300 FM 655<br>Rosharon, TX 77583 |
| **Torres**<br>125 Private Road #4303<br>Hondo, TX 78861 | **Travis County**<br>8101 FM 969<br>Austin, TX 78724 | **Vance**<br>2 Jester Road<br>Richmond, TX 77406 | **Wallace**<br>1675 South FM 3525<br>Colorado City, TX 79512 |
| **Ware**<br>1681 S. FM 3525<br>Colorado City, TX 79512 | **West Texas ISF**<br>2002 Lamesa Hwy<br>Brownfield, TX 79316 | **West TX Regional Medical**<br>8602 Peach Avenue<br>Lubbock, TX 79404 | **Wheeler**<br>986 County Road AA<br>Plainview, TX 79072-9682 |
| **Willacy County**<br>1695 South Buffalo Drive<br>Raymondville, TX 78580 | **Woodman**<br>1210 Coryell City Road<br>Gatesville, TX 76528 | **Wynne**<br>810 FM 2821<br>Huntsville, TX 77349 | **Carol S. Young Medical Facility Complex**<br>5509 Attwater Avenue<br>Dickinson, TX 77539 |

## ADOPTION OF ORIENTATION HANDBOOK

This handbook contains general information and rules adopted by the Director of the Texas Department of Criminal Justice Correctional Institutions Division (TDCJ-CID).

### TEXAS DEPARTMENT OF CRIMINAL JUSTICE MISSION STATEMENT

*The mission of the Texas Department of Criminal Justice is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society and assist victims of crime.*

# Board of Criminal Justice

The Board of Criminal Justice is made up of nine unpaid citizens.  They are appointed by the Governor of Texas.  The Board helps the Department to plan, budget and make policy.

### Management

The Division Director and Deputy Directors of the CID are responsible for guiding the day-to-day operations and management of the TDCJ-CID offender population.

### GENERAL INFORMATION CONCERNING THIS HANDBOOK

This handbook is designed to provide the offender population with general information along with a standard for acceptable behavior.  Offenders who do not behave in an acceptable manner could be charged with a specific disciplinary offense.  The disciplinary offenses are listed in the **TDCJ *Disciplinary Rules and Procedures for Offenders Handbook***.  The standards for acceptable behavior by offenders are listed in this handbook, apply to all offenders.

Upon entering the TDCJ, offenders shall be provided with the latest revised copy of the Offender Orientation Handbook.  Offenders currently incarcerated within the TDCJ shall have access to revised copies when revisions to the Offender Orientation Handbook are made.  Handbooks written in Spanish shall be given to offenders whose primary language is Spanish.  Rules shall be explained to offenders who cannot read them and to offenders whose primary language is neither English nor Spanish.

All offenders confined within a facility of the Texas Department of Criminal Justice are responsible for understanding and abiding by the rules, regulations and policies detailed in the handbook as well as other policies and procedures posted on their facility of assignment.  Failure to do so may result in disciplinary action.

For purposes of this handbook, the terms "he", "his" and "him" refer to all offenders, both male and female.

**DEFENDANTS' DISCLOSURE - 0200**

# TABLE OF CONTENTS

## Chapter 1: Offender Access to Services and Standards for Behavior

**I.      Intake Process**............................................................................**1**
A.      Receiving and Screening.......................................................1
B.      Photographs and Fingerprints...............................................1
C.      Physical Examination............................................................1
D.      Mental Health Screening ......................................................1
E.      Americans with Disabilities Act (ADA) ..................................2
F.      Orientation ...........................................................................2
G.      Testing and Assessment ......................................................3
H.      Intake and Sociology Interview ............................................3
I.      Prison Offenders...................................................................4
J.      State Jail Offenders .............................................................4
K.      Transfer Offenders ..............................................................4
L.      SAFPF Offenders .................................................................4
M.      Foreign Nationals .................................................................5

**II.      Unit Classification**.........................................................................**5**
A.      Custody Levels .....................................................................5
        1.      Administrative Segregation or State Jail, SR Custody ...............6
        2.      General Population Level 5 - State Jail, GP, Level 5 (J5) .........6
        3.      General Population Level 4 - State Jail, GP, Level 4 (J4) .........6
        4.      General Population Level 3 .................................................6
        5.      General Population Level 2 - State Jail, GP, Level 2 (J2) .........6
        6.      General Population Level 1 - State Jail, GP, Level 1 (J1) .........6
B.      Committees ..........................................................................6
        1.      Unit Classification Committee ............................................7
        2.      Administrative Segregation Committee.................................7
        3.      State Classification Committee ...........................................7
        4.      Security Precaution Designator Review Committee.................7
C.      Inter-Unit Transfers ..............................................................7
D.      Good Conduct Time ..............................................................7
E.      Diligent Participation Credits for State Jail Offenders............9
F.      Time Credit Dispute Resolution Process ...............................9
        1.      Prison Offenders ...............................................................10
        2.      State Jail Offenders ..........................................................10
G.      Individualized Treatment Plan .............................................10
H.      Collection of DNA Blood Samples .......................................10

**III.      Standards of Behavior** ...............................................................**11**
A.      Personal Cleanliness and Grooming ...................................11
B.      Clothing and Necessities ....................................................12
        1.      Clothing ...........................................................................12
        2.      Towels .............................................................................13
        3.      Linens ..............................................................................13
        4.      Exchange Procedures for Necessities Items .......................13
C.      Living Areas ........................................................................13
D.      Dining Hall ..........................................................................15
E.      Shower Rules ......................................................................16
F.      Dayroom Rules....................................................................16
G.      Recreation Yard Rules ........................................................17
H.      Commissary Rules ..............................................................17
I.      Hall Rules ...........................................................................18

**DEFENDANTS' DISCLOSURE - 0201**

|  |  |  |  |
|---|---|---|---|
| J. | Offender Property | 18 |
| K. | Contraband | 21 |
| L. | Tobacco Policy | 21 |
| M. | Safety Regulations | 22 |
| N. | General Rules | 24 |

**IV.   Safe Prisons/PREA Program** ............................................................. **26**

| A. | TDCJ Zero Tolerance Policy | 26 |
|---|---|---|
| B. | What is PREA? | 26 |
| C. | What is sexual abuse? | 26 |
| D. | What is Sexual Harassment and Voyeurism? | 27 |
| E. | Cross Gender "Knock and Announce" Policy | 27 |
| F. | How does the Safe Prisons/PREA Program Help? | 28 |
| G. | How Should I Report Threats to my Safety? | 28 |
| H. | Sexual Abuse Prevention Strategies | 28 |
| I. | What should you do if you are sexually abused? | 29 |
|  | 1.   Report the Abuse to any Staff Member Immediately | 29 |
|  | 2.   Investigations | 30 |
|  | 3.   Offender Perpetrator Consequences | 31 |

**V.   Security Threat Groups** ..................................................................... **31**

**VI.   Programs and Services** ...................................................................... **32**

| A. | Education | 32 |
|---|---|---|
|  | 1.   Testing and Assessment | 32 |
|  | 2.   Counseling | 33 |
|  | 3.   Adult Literacy, Basic Skills and GED Preparation | 33 |
|  | 4.   Special Education | 33 |
|  | 5.   English as a Second Language (ESL) | 33 |
|  | 6.   Title I | 33 |
|  | 7.   Pre-Release Programs | 34 |
|  | 8.   Cognitive Intervention | 34 |
|  | 9.   Career and Technical Education | 35 |
|  | 10.  Libraries | 35 |
|  | 11.  School Rules | 36 |
|  | 12.  Information on Education Programs | 36 |
| B. | Recreational Activities | 36 |
|  | 1.   Non-Programmatic | 37 |
|  | 2.   Programmatic | 37 |
| C. | Offender Craft Shop | 38 |
| D. | Basic In-Cell Art | 39 |
| E. | Health Services | 39 |
|  | 1.   Medical Services | 39 |
|  | 2.   Dental Services | 40 |
|  | 3.   Pharmacy Services | 41 |
|  | 4.   Psychiatric and Psychological Services | 41 |
|  | 5.   Developmental Disabilities Program (DDP) | 42 |
|  | 6.   Complaints about Medical Services | 42 |
| F. | Rehabilitation Programs | 42 |
|  | 1.   Individualized Treatment Plan (ITP) | 43 |
|  | 2.   Administrative Segregation Pre-Release Program (ASPP) | 43 |
|  | 3.   Gang Renouncement and Disassociation Process (GRAD) | 43 |
|  | 4.   Serious and Violent Offender Reentry Initiative (SVORI) | 44 |
|  | 5.   Administrative Segregation Transition Program | 44 |
|  | 6.   Baby and Mother Bonding Initiative (BAMBI) Program | 44 |
|  | 7.   Faith-Based Programs | 44 |

**DEFENDANTS' DISCLOSURE - 0202**

|  |  | a. | Dorms ................................................................ 44 |
|  |  | b. | InnerChange Freedom Initiative (IFI) ........................... 44 |
|  |  | c. | Voyager .............................................................. 45 |
|  | 8. | College Courses ................................................................ 45 |
|  | 9. | College Technical Courses ................................................... 45 |
|  | 10. | Southwestern Baptist Theological Seminary (SWBTS) ........... 46 |
|  | 11. | Religious Services ............................................................. 46 |
|  | 12. | Sex Offender Rehabilitation Programs and Evaluation ........... 47 |
|  |  | a. | Minimum Requirements ............................................. 47 |
|  |  | b. | Sex Offender Treatment Program (SOTP-18) ............. 47 |
|  |  | c. | Sex Offender Treatment Program (SOTP-9) .............. 47 |
|  |  | d. | Sex Offender Education Program (SOEP-4) ............... 47 |
|  |  | e. | Risk Assessment .................................................... 47 |
|  | 13. | Civil Commitment of Sexually Violent Predators ..................... 48 |
|  | 14. | Sex Offender Registration Program Information ...................... 49 |
|  | 15. | Orchiectomy .................................................................... 50 |
|  | 16. | Substance Abuse Treatment Programs .................................. 50 |
|  | 17. | Driving While Intoxicated (DWI) Program .............................. 51 |
|  | 18. | In-Prison Therapeutic Community (IPTC) ............................. 51 |
|  | 19. | Pre-Release Substance Abuse Program (PRSAP) .................. 51 |
|  | 20. | Pre-Release Therapeutic Community (PRTC) ........................ 51 |
|  | 21. | State Jail Substance Abuse Program (SJSAP) ...................... 51 |
|  | 22. | Substance Abuse Felony Punishment Facility (SAFPF)........... 51 |
|  | 23. | Support Groups ................................................................ 52 |
|  | 24. | Volunteer Programs ........................................................... 52 |
|  | 25. | Youthful Offender COURAGE Program ................................. 52 |
| G. | State Counsel for Offenders .......................................................... 53 |
|  | 1. | Criminal Defense ............................................................... 53 |
|  | 2. | Appellate ........................................................................ 53 |
|  | 3. | Civil Defense ................................................................... 53 |
|  | 4. | Immigration ..................................................................... 54 |
|  | 5. | Legal Services ................................................................. 54 |
|  | 6. | Innocence & Wrongful Convictions ...................................... 54 |
|  | 7. | Prisoner's Civil Rights ....................................................... 54 |
|  | 8. | How Offenders Can Get Help ............................................. 54 |
| H. | Ombudsman Program .................................................................. 55 |
| I. | Language Assistance (Asistencia de Lenguaje) ................................ 56 |
| J. | Correspondence Rules ................................................................. 56 |
| K. | Visitation ................................................................................... 57 |
| L. | Offenders Access to Telephones ................................................... 57 |
| M. | Emergency Absences ................................................................... 62 |
|  | 1. | Emergency Absence .......................................................... 62 |
|  | 2. | Emergency Absence Eligibility Requirements ........................ 63 |
| N. | Inmate Trust Fund ....................................................................... 64 |
| O. | ID Cards .................................................................................... 66 |
| P. | Commissary ............................................................................... 67 |
| Q. | Voter Registration ....................................................................... 69 |
| R. | Offender Request To Official (I-60) Form ........................................ 70 |
| S. | Administrative Segregation Plan .................................................... 70 |
| T. | Institutional Lockdowns ................................................................ 70 |
| U. | Impermissible Conduct ................................................................. 71 |

| VII. | Disciplinary Procedures and Rules ..................................................71 |
| A. | General Procedures ...................................................................... 71 |
| B. | Solitary Confinement .................................................................... 72 |
| C. | Counsel Substitute Program .......................................................... 72 |

DEFENDANTS' DISCLOSURE - 0203

D. Appeal Process ....................................................................... 73

**VIII.   Grievance Procedures for Offenders** .....................................................**73**

**IX.    Parole Information** ....................................................................**76**
A. Parole Information ................................................................ 76
B. The Parole Interview ............................................................ 77
C. Parole Eligibility Requirements ........................................... 78
   1.   70th Legislature Requirements ................................. 78
   2.   71st & 72nd Legislature Requirements ...................... 79
   3.   73rd Legislature Requirements ................................. 79
   4.   74th Legislature Requirements ................................. 80
   5.   75th Legislature Requirements ................................. 82
   6.   76th Legislature Requirements ................................. 82
   7.   77th Legislature Requirements ................................. 82
   8.   78th Legislature Requirements ................................. 82
   9.   79th Legislature Requirements ................................. 82
   10.  80th Legislature Requirements ................................. 83
   11.  81st Legislature Requirements ................................. 83
   12.  82nd Legislature Requirements ................................. 83
   13.  83rd Legislature Requirements ................................. 83

D. Offenders with Detainers Pending ...................................... 84
E. Parole and Mandatory Supervision Violators ...................... 84
F. Offenders who commit offenses while in custody ............... 84
G. Questions about Parole-related issues ............................... 84

**X.    Reentry** ...................................................................................**84**
A. Identification and Reentry .................................................... 84
B. Veteran's Services .............................................................. 85
C. TCOOMMI Services ............................................................ 86
D. Continuity of Care (Mental Health and Medical) ................. 86
E. Adult Intensive Case Management ...................................... 86
F. Adult Transitional Case Management ................................... 87
G. HIV/AIDS Continuity of Care ............................................... 87
H. Medically Recommended Intensive Supervision (MRIS) ..... 87

**XI.    TDCJ Crime Stoppers "Behind the Walls"** .............................**87**
A. Tips Communication Procedures .......................................... 87
B. How do Offenders Report Information to Crime Stoppers ..... 87
C. What Type of Information is Reported to Crime Stoppers ..... 88
D. Important Information ............................................................ 88

**XII.   Proof of Incarceration Period**......................................................**88**
A. Discharge Certificates .......................................................... 88
B. Proof of Incarceration Period for State Jail Offenders ......... 88

**Chapter 2: Offender Visitation Rules and Regulations**.........................**89**
Introduction........................................................................... 89
Definitions ............................................................................. 89

**DEFENDANTS' DISCLOSURE - 0204**

**I.     General Information** ......................................................................**91**
Visitation Schedule ............................................................................ 91
A.     Periods of Visitation ................................................................ 91
B.     Frequency of Visits ................................................................. 92
C.     Visits Requiring Advanced Scheduling .................................. 93
D.     Number of Visitors Allowed.................................................... 93

**II.    Who Can Receive Visits** ................................................................**93**

**III.   Rules for Visits** .............................................................................**94**
A.     Children Ages 17 and Younger ............................................. 94
B.     Approval Process ................................................................... 95
C.     Visitors Notification ............................................................... 95
D.     Visitor Identification .............................................................. 96
E.     Visitors and Vehicle Searches .............................................. 97
F.     Contraband Items .................................................................. 98
G.     Contraband Items Not Allowed Inside Secure Perimeter of a Unit ........ 98
H.     Permissible Items .................................................................. 98
I.     Supervision of Visits.............................................................. 98
J.     Offender Rules ...................................................................... 99
K.     Visitor Rules ......................................................................... 99
L.     Denial of Visits/Visitors......................................................... 100
M.     Termination of Visits in Progress........................................... 101
N.     Suspension of General Visits ................................................ 101

**IV.    Visits for Other Categories** .........................................................**101**
A.     Developmental Disabilities Program (DDP) and Psychiatric In-Patient 101
B.     Psychiatric Out-Patient .......................................................... 101
C.     Transient Status .................................................................... 102
D.     Safekeeping Status................................................................ 102
E.     Pre-Hearing Detention .......................................................... 102
F.     Lockdown Status ................................................................... 102
G.     Solitary Confinement ............................................................. 102
H.     Administrative Segregation and Expansion Cellblock .......... 102
I.     Death Row ............................................................................. 103
J.     Level 5(G5/J5/P5) Offenders in the Main Compound........... 105

**V.     Contact Visitation** ........................................................................**105**
A.     Contact Visits ........................................................................ 105
B.     Eligibility Criteria................................................................... 105
C.     Contact Visitation Scheduling ............................................... 105
D.      Visitors Approved  for Contact Visits..................................106
E.     Contact Visitation Suspension................................... ....107
F.     Administrative Suspension .....................................................108

**VI.    Extended Visits**.……………………………....…….… ......................**108**

**VII.   Special Visits** ...............................................................................**108**
A.     General Procedures .............................................................. 108
B.     Long Distance Traveled  ....................................................... 108
C.     Spiritual Advisors .................................................................. 108
D.     Prospective Employers........................................................... 109
E.     Critically Ill List...................................................................... 109
F.     Hospice Offenders ................................................................ 109
G.     Non-Legal Visits Between Offenders ..................................... 110

**DEFENDANTS' DISCLOSURE - 0205**

**VIII.** **Current and Former TDCJ Employee Visits** ............................111

**IX.** **Attorney Visits**.............................................................................111

**X.** **Legal Visits Between Offenders**...............................................111

**Chapter 3: Uniform Offender Correspondence Rules**.........................112
**I.** **General Rules and Instructions Regarding Correspondence**..........112
  A. Permissible Correspondents ............................................. 112
  B. Restricted Correspondents ............................................... 112
  C. How to Correspond .......................................................... 113
  D. Publications ..................................................................... 115

**II.** **Special and Media Correspondence**.........................................115
  A. Permissible Correspondence ........................................... 116
  B. Exceptions ...................................................................... 116

**III.** **Legal Correspondence**.............................................................116
  A. Permissible Correspondence ........................................... 116
  B. Exceptions ...................................................................... 116

**IV.** **Handling Offender Correspondence**........................................116
  A. Content Inspection of General Correspondence................ 116
  B. Contraband in General Correspondence ........................... 117
  C. Contraband in Legal, Media, or Special Correspondence ................. 117
  D. Notices............................................................................ 117
  E. Record of Legal, Special, or Media Correspondence ........................ 117
  F. Content of Inspection of Publications ............................... 118
  G. Processing Incoming and Outgoing Offender Mail ............................. 119
  H. Forwarding of Mail .......................................................... 119
  I. Mailrooms ....................................................................... 119
  J. Treatment Programs ........................................................ 119

**V.** **Review Procedures for Denied Items**.......................................120
  A. Handling of Denied Items ................................................ 120
  B. Correspondence and Publication Appeal Procedure.......................... 120

**Chapter 4: Rules Governing Offender Access to the Courts, Counsel
and Public Officials** ...........................................................................121
  **Policy**...............................................................................121
  **Procedures** ......................................................................121
**I.** **Law Libraries**..........................................................................121
  A. Law Library Collections, Conditions, and Supplies ........................... 121
  B. Direct Law Library Access (General Population) ................ 123
  C. Indirect Law Library Access, Administration Segregation, Lockdown, G5/J5/P5, Medical Isolation, Temporary Detention, Trusty Camp, Work Camp, and Death Row Offender Access to the Law Library (Indirect Access).......................................................................... 124

**II.** **Offender's Personal Legal Material** ...........................................125
  A. Storage and Access.......................................................... 125
  B. Searches of Offender Legal Materials .............................. 125

**DEFENDANTS' DISCLOSURE - 0206**

**III.**   **Performance of Legal Work** ................................................................ **125**
    A.   Locations and Times ........................................................ 125
    B.   Offenders Assisting Other Offenders on Legal Matters ...................... 126

**IV.**   **Notary Public Services** .............................................................. **126**
    A.   Documents ....................................................................... 126
    B.   Scheduling ...................................................................... 126

**V.**   **Attorney Visitation** ................................................................... **127**
    A.   Periods of Visitation .......................................................... 127
    B.   Notice ............................................................................. 127
    C.   Identification .................................................................... 127
    D.   Designated Representative's Application to Visit ............................... 128
    E.   Limits on Number, Persons, and Type of Visit ................................. 128
    F.   Rejection by Offender of Visitation Request ..................................... 128
    G.   Procedures During Visit ......................................................... 129
    H.   Rejection of Visitation Request or Termination of Visit ....................... 130
    I.   Suspension of Visitation Privileges ............................................. 131
    J.   Attorney Visitation Review Procedure ........................................... 131
    K.   Consular Officials ............................................................... 131

**VI.**   **Attorney and Offender Telephone Calls** ........................................... **132**
    A.   General Guidelines .............................................................. 132
    B.   Telephone Call and Attorney of Record Approval ............................ 132

**VII.**   **Court Telephone Conference Calls** ................................................ **134**

**DEFENDANTS' DISCLOSURE - 0207**

# CHAPTER 1

# OFFENDER ACCESS TO SERVICES AND STANDARDS FOR BEHAVIOR

I.   **INTAKE PROCESS**

All offenders committed to the Texas Department of Criminal Justice (TDCJ) are received at a prison, state jail, intermediate sanction faction (ISF) or a substance abuse felony punishment (SAFP) intake facility.   These facilities are equipped to receive and process offenders admitted to the agency's custody.   Offenders who speak little or no English shall be identified and shall receive the necessary type of language assistance during the intake process and later when assigned to a unit.

A.   **Receiving and Screening**

Offenders shall be searched upon arriving at a TDCJ facility.   A receipt shall be completed for each offender's money and property.   Medical care shall be given, if care is needed immediately.   Offenders shall be housed according to security needs.   State clothing shall be issued; haircuts and showers provided.

B.   **Photographs and Fingerprints**

Each offender shall go to the Photograph and Identification Department to be:

1.   Photographed;

2.   Fingerprinted;

3.   Examined for any identifying scars, marks, or tattoos; and

4.   Interviewed to obtain basic demographic and emergency contact information.

The fingerprints shall be sent to the FBI and the Texas Department of Public Safety (DPS).   The Photograph and Identification process helps identify every offender to make sure no one is admitted or released illegally, and creates the TDCJ-issued identification card that each offender is required to carry.

C.   **Physical Examination**

Offenders shall be given a physical examination by medical and dental staff.   The medical and dental staff shall ask each offender about his medical history.   The medical and dental staff shall use the results to determine the special needs, if any, of an offender.   The special medical needs of an offender shall be taken into consideration during the classification process.

D.   **Mental Health Screening**

Each offender shall undergo an initial mental health screening.   An offender may be referred for further psychological evaluation.

**DEFENDANTS' DISCLOSURE - 0208**

E.      **Americans with Disabilities Act (ADA)**

It is the intent of the Texas Department of Criminal Justice to comply with the Americans with Disabilities Act (ADA).  Offenders shall report a disability if they have one.  ADA related complaints should be addressed through the Offender Grievance Procedure. ADA related complaints may also be expressed on an Inmate Request to an Official, I-60, to the warden.  Offenders who require assistance with daily life activities should request an evaluation from the unit medical provider for a referral to Assistive Disability Services (ADS).

F.      **Orientation**

An orientation video is provided to all new offenders, also available in Spanish to those offenders who require it.  The orientation shall cover the following:

Part 1    Director's Introduction
Part 2    Intake Process
Part 3    Classification
Part 4    Emergency Absence
Part 5    Spanish Language
Part 6    Health Services
Part 7    Security Threat Group Management Office (STGMO)
Part 8    Safe Prisons/PREA
Part 9    Office of the Inspector General
Part 10   Offender Visitation
Part 11   Offender Discipline
Part 12   Collection of DNA
Part 13   General Rules
Part 14   Contraband & Shakedowns
Part 15   Count Procedures
Part 16   Access to Courts
Part 17   Grievance Procedures
Part 18   Risk Management
Part 19   Offender Mail and Correspondence Rules
Part 20   Food Service and Laundry
Part 21   Commissary and Trust Fund
Part 22   Windham School District
Part 23   Recreation and Non-Programmatic Activities
Part 24   Chaplaincy
Part 25   Substance Abuse Treatment Program
Part 26   Sex Offender Treatment Program
Part 27   State Counsel for Offenders
Part 28   Parole Process, Texas Board of Pardons and Paroles
Part 29   Field Services/Release
Part 30   Voter Registration
Part 31   Closing Remarks

Offenders shall also participate in Peer Education classes addressing Prison Rape Elimination Act (PREA) awareness, and medical issues.  During intake, offenders shall receive information explaining the agency's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment.  Within 30 days of intake, the agency shall provide comprehensive education to offenders either in person or through video regarding an offender's right to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents, and regarding agency policies and procedures for responding to such incidents.

**DEFENDANTS' DISCLOSURE - 0209**

Current offenders who have not received such education shall be educated within one year of the effective date of the PREA standards, and shall receive education upon transfer to a different unit to the extent that the policies and procedures of the offender's new unit differ from those of the previous unit.   The agency shall provide offender education in formats accessible to all offenders, including those who are limited English proficient, deaf, visually impaired, or otherwise disabled, as well as to offenders who have limited reading skills.  The agency maintains documentation of all offender participation in these education sessions.  Key information is continuously and readily available or visible to offenders through posters, offender handbooks, or other written formats. (Safe Prisons/PREA Office)

Offenders shall view a video provide by the Veterans Health Administration, Suits: Support for Incarcerated Veterans.   Female offenders shall also view a video on fetal alcohol syndrome.

**G.      Testing and Assessment**

All offenders shall be tested to determine educational, psychological, and substance abuse treatment needs, except on SAFP intake facilities.

**H.      Intake and Sociology Interview**

During the intake interview and the sociology interview, information is gathered to create the classification record.   During these interviews, offenders shall be asked questions about their:

1.      Criminal history;

2.      Social history;

3.      Institutional history;

4.      Educational history;

5.      Employment history;

6.      Family history;

7.      Military history;

8.      Drug and/or alcohol histories; and

9.      Any other pertinent information.

Offenders shall be interviewed to verify information in their records.   Offenders may be punished through the disciplinary process for giving false information during interviews. A summary of all information collected on each offender shall be used to help in the classification process.

Sociology Interviews  are not completed on SAFP intake facilities.

**DEFENDANTS' DISCLOSURE - 0210**

I.      **Prison Offenders**

The State Classification Committee (SCC) and designated staff of the Classification and Records Office (CRO) shall determine the first unit to which each offender sentenced to prison shall be sent.  Offenders do not have the right to choose their unit of assignment. Offenders are assigned to units by the SCC after intake processing is completed.

Offenders spend the first few weeks going through the intake process.  Data is collected on each offender.  The SCC and CRO staff use this data to place offenders with similar characteristics on units or facilities together.  The SCC and CRO staff shall make its decision based on:

1.      All information collected;

2.      The offender's safety needs;

3.      The offender's security needs; and

4.      The offender's treatment needs.

Based on 1-4 above, the SCC may also recommend the offender's:

1.      Level of supervision (custody level);

2.      Housing assignment; and

3.      Job assignment.

J.      **State Jail Offenders**

Under legislation that established the State Jail felony, state jail offenders are:

1.      Convicted of a fourth degree (or state jail) felony and sentenced by a court to serve a sentence of up to 24 months in a TDCJ State Jail facility.

2       Housed in a state jail facility closest to their county of conviction that can accommodate the offender's need.  There are nine designated state jail service regions served by one or more state jail facilities.  These service regions were created to provide cost effective community based incarceration enabling offenders to connect to services in their home communities.

K.      **Transfer Offenders**

Transfer offenders are convicted of 1st, 2nd or 3rd degree felonies and are awaiting assignment to a permanent facility and subject to the classification procedures as stated above. Offenders can be detained in a transfer facility for up to two years before being moved into a permanent facility.

L.      **SAFPF Offenders**

Substance Abuse Felony Punishment Facility (SAFPF) offenders are normally assigned to units closest to their county of residence in order to facilitate family visits, family counseling, as well as to maintain contact with the offender's Community Supervision officer (CSO).

**DEFENDANTS' DISCLOSURE - 0211**

**M.     Foreign Nationals**

If you are a non-U.S. citizen, you are entitled to have TDCJ notify your country's consular representatives here in the United States.  A consular official from your country may be able to help you obtain legal counsel, and may contact your family and visit you in detention, among other things.   If you want TDCJ to notify your country's consular officials, you can request this notification now by advising an intake staff member or at any time in the future by contacting the classification office on your unit.

If you are a non-U.S. citizen and a citizen of one of the following countries you MUST advise TDCJ immediately.  It is mandatory that your country's consular representatives in the United States be notified that you have been detained.  After your consular officials are notified, they may call or visit you.  You are not required to accept their assistance, but they may be able to help you obtain legal counsel and may contact your family and visit you in detention, among other things.

| | | |
|---|---|---|
| Albania | Guyana | Seychelles |
| Algeria | Hong Kong | Sierra Leone |
| Antigua and Barbuda | Hungary | Singapore |
| Armenia | Jamaica | Slovakia |
| Azerbaijan | Kazakhstan | Tajikistan |
| Bahamas | Kiribati | Tanzania |
| Barbados | Kuwait | Tonga |
| Belarus | Kyrgyzstan | Trinidad & Tobago |
| Belize | Malaysia | Tunisia |
| Brunei | Malta | Turkmenistan |
| Bulgaria | Mauritius | Tuvalu |
| China | Moldova | Ukraine |
| Costa Rica | Mongolia | United Kingdom |
| Cyprus | Nigeria | Uzbekistan |
| Czech Republic | Philippines | Zambia |
| Dominica | Poland (non-permanent Residents Only) | Zimbabwe |
| Fiji | Romania | |
| Gambia | Russia | |
| Georgia | Saint Kitts and Nevis | |
| Ghana | Saint Lucia | |
| Grenada | Saint Vincent and the Grenadines | |

**II.     UNIT CLASSIFICATION**

**A.     Custody Levels**

On the unit of assignment, an offender is given a custody designation which indicates several things.  It tells where and with whom he can live, how much supervision he will need, and what job he can be assigned to.

An offender's custody level depends on his current institutional behavior, his previous institutional behavior, and his current offense and sentence length.   If the offender violates any rules, he may be placed in a more restrictive custody.   If the offender complies with the rules, he may be assigned a less restrictive custody level.

**DEFENDANTS' DISCLOSURE - 0212**

| **Prison Offender Custody Levels:** | **State Jail Offender Custody Levels:** |
|---|---|
| 1.  Administrative Segregation | 1.  Administrative Segregation (SR) |
| 2.  General Population Level 5 (G5) | 2.  General Population Level 5 (J5) |
| 3.  General Population Level 4 (G4) | 3.  General Population Level 4 (J4) |
| 4.  General Population Level 3 (G3) | 4.  General Population Level 2 (J2) |
| 5.  General Population Level 2 (G2) | 5.  General Population Level 1 (J1) |
| 6.  General Population Level 1 (G1) | |

1.      Administrative segregation, SR custody for state jail offenders, refers to offenders who shall be separated from the general population because they are dangerous, either to other offenders or staff, or they are in danger *from* other offenders. Offenders who, according to the Security Threat Group Management Office (STGMO), are members of security threat groups designated by TDCJ, may be given this custody level. These offenders leave their cells, for the most part, only for showers and limited recreation. Offenders assigned to administrative segregation in expansion cellblocks shower in their cells.

2.      General population Level 5 (G5) or (J5) custody refers to offenders who have assaultive or aggressive disciplinary records. G5 or J5 custody offenders shall live in cells. They may not work outside the security fence without direct, armed supervision.

3.      General population Level 4 (G4) or (J4) custody means the offender shall live in a cell, with few exceptions, and may work outside the security fence under direct armed supervision. J4 state jail offenders may be housed in designated dorms.

4.      General population Level 3 (G3) refers to prison offenders who may live in dorms or cells inside the main building of the unit. G3 offenders are ineligible to live in dorms outside the main building of a unit, inside the security fence. G3 offenders shall be generally assigned to field force and secure jobs inside the perimeter as designated by the warden. They may work outside the security fence under direct armed supervision. (state jail offenders are not assigned to level 3 custody as this custody is reserved for offenders serving sentences of 50 years or greater.)

5.      General population Level 2 (G2) or (J2) custody refers to offenders who may live in dorms or cells inside the security fence. They may work outside the security fence under direct armed supervision.

6.      General population Level 1 (G1) or (J1) custody allows offenders to live in dorms outside the security fence. Offenders living in trusty camps shall be classified OT custody. They may work outside the security fence with periodic unarmed supervision.

Note: Offenders in general population custody levels may also be given a safekeeping status (P2 – P5) if they need an added level of protection from other offenders.

**B.      Committees**

In TDCJ, a classification committee determines an offender's custody.

**DEFENDANTS' DISCLOSURE - 0213**

1.     Unit Classification Committee (UCC)

Responsible for assigning an offender a custody level. This custody level designates where offenders shall live on the unit and what job(s) they are eligible for. Offenders appear before this committee when they arrive on a new unit. They also meet with the UCC when routine classification decisions are needed.

2.     Administrative Segregation Committee (ASC)

Responsible for the process of reviewing offenders for placement in administrative segregation and routine reviews of those offenders.

3.     State Classification Committee (SCC)

A central administrative classification committee that makes final decisions with regards to agency-wide issues and unit classification committee recommendations. During the intake process, the SCC makes decisions concerning the initial assignment of an offender to a unit. The SCC also makes final decisions regarding administrative segregation, safekeeping, and requests for protection.

4.     Security Precaution Designator Review Committee (SPDRC)

The authority that determines the eligibility for removal of a security precaution designator code from the offender's record. This committee is also the authority that determines if a security precaution designator should remain in the offender's record after designated timeframes expire.

## C.     Inter-Unit Transfers

Inter-unit transfers are transfers from one unit to another. Offenders do not have a right to choose their unit of assignment. Inter-Unit transfers are based on departmental and offender needs. Transfer requests follow a process. The warden, the Unit Classification Committee or the proper department head shall first recommend transfer requests. If approved at the unit level, the unit shall then contact the State Classification Committee for final approval.

Transfer requests for medical or educational reasons shall be made to the appropriate department. For example, the Education Department shall review and approve a transfer request to attend a four-year college program. If approved, the department head forwards the request to the State Classification Committee for its review. The State Classification Committee shall **not** review transfer requests directly from offenders.

Some offenders have problems/conflicts on their unit and want a transfer. These offenders should contact the unit staff for help. If further review is needed, the State Classification Committee shall be contacted.

Hardship transfer requests may be considered to accommodate immediate family members listed on the offender's approved visitation list if medical documentation can be obtained. The request shall come from the offender's immediate family member.

## D.     Good Conduct Time

Note: Only prison-sentenced offenders convicted of first, second, or third degree felonies receive good conduct time.

**DEFENDANTS' DISCLOSURE - 0214**

Good conduct time is a *privilege*, not a right.  Offenders shall follow the rules in order to receive good conduct time.  Some or all of the good conduct time awarded to an offender may be taken away for disciplinary infractions.

When offenders enter the TDCJ, they are assigned a time-earning status of Line Class I.  Offenders can work their way into a higher time-earning status or be placed into a lower time-earning status, dependant upon their behavior.  Each time-earning status is linked with a set number of days of good conduct time that can be earned each month.  This rate is fixed by law.  There are two (2) types of time-earning statuses:

1.      Line Class status (ranging from Line Class III to Line Class I), and

2.      State-Approved Trusty (SAT) status (ranging from SAT IV to SAT II).

Newly received offenders shall be assigned to Line Class I status and shall wait six months before they are eligible for promotion in time-earning status.  They shall be automatically promoted if they do not have any major disciplinary cases during this time period.

Good conduct time is awarded based on the laws in effect when the crime was committed, as described below.

Offenders who committed their crimes **before** September 1, 1987 are "Pre-70th Legislature" offenders.  These offenders are also known as "65th Legislature" offenders.  They are awarded good conduct time each month based on their time-earning status.

"Pre-70th Legislature, 65th Legislature and Pre-65th Legislature" offenders can also earn up to 15 extra days of good conduct time each month.  These extra credits are called "A", "B", and "C" credits.  To receive these credits, offenders shall complete one or more programs in academic or vocational education or complete an On-the-Job Training Program while in the TDCJ.  These extra credits are awarded from the time the program was completed.  Offenders in Line Class III status are not eligible to receive "A", "B", or "C" credits.

Offenders who committed their crime **on or after** September 1, 1987 are known as "70th Legislature" offenders.  They are awarded good conduct time each month based on their time-earning status **if** they participate in assigned work or school programs.  For participating, these offenders also get an extra 15 days of diligent participation credits each month.  These offenders get **no** good conduct time for each day they do not go to work, school or a required treatment program when unexcused.  "70th Legislature" offenders who are assigned to administrative segregation **shall not receive any** of the 15 days diligent participation good conduct time credits.  They shall receive only the good conduct time based on their time earning status.  Offenders who are excused from participating for any reason receive good conduct time.  This includes the extra 15 days.

"70th Legislature" offenders are not eligible to earn the "A", "B", or "C" educational credits.

Two things affect an offender's eligibility for release on parole or mandatory supervision.  They are:

1.      The type of crime the offender was convicted of; and

2.      The laws in effect when the crime was committed.

**DEFENDANTS' DISCLOSURE - 0215**

Offenders returned to the TDCJ for parole or mandatory supervision violations, whether those violations are for technical violations or new offenses, shall not receive credit for past good conduct time.  They start earning new good conduct time from the date of re-arrest.   Violators back in the TDCJ shall be assigned to Line Class I status regardless of their previous status.  An offender who starts a new sentence without leaving the custody of TDCJ shall retain his time-earning status.

The laws dealing with good conduct time are very complicated.  There are many rules that determine how much good conduct time offenders can earn and how it applies toward their sentences.  Good conduct time, parole or mandatory supervision statutes do not apply to state jail offenders.

SAFPF offenders are under unique guidelines related to early release and/or parole, and should check with unit administrators for assistance in understanding which, if any, apply to their individual situation.

**E.      Diligent Participation Credits for State Jail Offenders**

State jail offenders, whose offenses occurred on or after September 1, 2011 may be eligible for Diligent Participation Credits.  These credits may only be awarded by the sentencing judge based on participation in programs, such as work, education, and treatment.

Diligent participation is defined as (A) successful completion of an educational, vocational, or treatment program;  (B) progress toward successful completion of an educational, vocational, or treatment program that was interrupted by illness, injury, or another circumstance outside the control of the defendant; and (C) active involvement in a work program.   The law requires TDCJ to report the number of days an offender diligently participates to the sentencing judge no later than 30 days prior to the offender completing 80% of their sentence.   Once a state jail felon, who is serving a sentence for an offense committed on or after September 1, 2011, is received by TDCJ, the agency shall report one day of diligent participation for each day in custody, with the following exceptions.   Offenders found guilty of a disciplinary offense for refusing to work (25.0); refusing to attend school or complete school assignments (25.1); or refusing to attend or participate in a required treatment program (25.2) shall not be eligible for diligent participation credit for the day(s) of the refusal.   Also, offenders assigned to state jail level 4 (J4), state jail level 5 (J5), solitary confinement or SR custody are ineligible for diligent participation credit.

After TDCJ reports the diligent participation days to the sentencing judge, the judge, based on the progress report received, may credit up to 20% of the offender's sentence for days served as long as the offender was diligently participating in a program and not subject to disciplinary action.  The judge is not required to give credit for each or any day of diligent participation.  The diligent participation credit, if any, shall be submitted by the sentencing judge to the TDCJ.  The TDCJ shall recalculate the maximum discharge date and send notification to the offender.  A time credit under this law is a privilege, not a right.

**F.      Time Credit Dispute Resolution Process**

The TDCJ has established a dispute resolution process for offenders who allege their time credits are in error.  Complaints regarding time credits cannot be resolved through the offender grievance process.

**DEFENDANTS' DISCLOSURE - 0216**

1.      Prison Offenders

Offenders shall contact the CRO by submitting an Offender Time Credit Dispute Resolution Form (CL-147) to the CRO.

2.      State Jail Offenders

Offenders shall submit the CL-147 form to the unit intake coordinator for resolution.

Upon receipt of correspondence, the CRO or intake coordinator shall investigate the allegations.  If a correction to time is made, the offender shall be provided a new time slip or a commitment data form after the correction.  If the CRO finds no error in the time-served credits, the offender shall be provided a written statement from the custodian of offender records, certifying the credits to be correct based upon documents received by TDCJ.

Offenders may not file a time-credit error in an application for a Writ of Habeas Corpus until**:**

1.      A final certification decision from the CRO has been received by the offender;  or

2.      More than 180 days has passed since offender filed the complaint with the Custodian of Offender Records, and no response has been received.

3.      Offenders who are within 180 days of their presumptive parole date, date of release to mandatory supervision, or date of discharge may use either this internal time credit dispute resolution procedure, or submit their application directly to the court, if the Writ of Habeas Corpus is not otherwise barred.

**G.      Individualized Treatment Plan**

The Individualized Treatment Plan (ITP) is a plan of treatment for an individual offender.  The plan outlines programmatic activities and services for an offender and prioritizes his participation in recommended programs based on the offender's needs, program availability and applicable parole or discharge date.  An offender's needs for programs are ranked and prioritized to assess the immediacy for placement.   Treatment department professionals develop the ITP, interview the offender, assess all available information and record their judgments concerning specific programming needs.  Treatment department professionals shall be responsible for tracking and reviewing all offenders newly assigned to TDCJ for ITP reviews within two weeks of the offender's arrival on the unit.  Any conflicts or problems that may arise from ITP recommendations concerning program or job scheduling shall be referred to the UCC for resolution.

The ITP serves to establish institutional conditions required by statute for an offender to be considered for release on parole as defined by Texas Government Code §508.152.  The ITP is provided to the Board of Pardons and Paroles during the parole review process.   Some of these programs are mandatory and non-attendance can result in disciplinary action, loss of good conduct time or negative parole consideration.

**H.      Collection of DNA Blood Samples**

Government Code § 411.148 requires all TDCJ offenders or offenders incarcerated in a facility under contract with TDCJ to submit a DNA specimen unless such has previously been collected.

**DEFENDANTS' DISCLOSURE - 0217**

An offender who refuses to provide a DNA specimen may be charged with Disciplinary Code 24.3, "Refusal to Submit to a DNA Specimen Collection," and subject to the loss of good time.

If the offender continues to refuse, the TDCJ is authorized to use force in accordance with the TDCJ *Use of Force Plan* to compel the offender to submit to a DNA specimen collection.

## III.   STANDARDS OF BEHAVIOR

The standards of behavior outlined below apply to G1/J1, G2/J2, G3 and G4/J4 custody general population offenders.  The conditions in disciplinary status, administrative segregation, lockdown, or G5/J5 custody may vary from the following:

### A.   Personal Cleanliness and Grooming

1.   Offenders shall be given the opportunity to shower.  Offenders shall maintain good personal hygiene.

2.   Offenders shall brush their teeth daily.

3.   Male offenders shall be clean-shaven.  No beards, mustaches, or hair under the lip shall be allowed, unless the offender has been approved to grow a beard for religious purposes.

4.   Offenders with religious belief who want to grow a beard shall:

   a.   Submit an I-60, "Inmate Request to an Official" to the warden's office requesting to be approved for a religious beard;

   b.   Remain clean-shaven until they receive a response, approving them to grow a religious beard;

   c.   Have a new offender photo taken 30 days after being approved to grow the beard, for identification purposes;

   d.   Receive a new identification card with the new photo of them with the religious beard; and

   e.   Be required to shave once a year, during the month of the offender's birthday and have a clean-shaven picture taken for current identification purposes, after which time the offender shall be allowed to regrow the religious beard.

5.   Religious Beards Specifications

   a.   Religious beards shall be no more than fist length and not exceed four inches outward from the face.  This may be measured by having the offender grasp the beard with their fist.  Facial hair that_extends beyond the fist shall be considered out of compliance with policy and shall be trimmed.

   b.   Religious beards shall not have any lines, designs, patterns, symbols cut or shaped, or have any alterations from the natural hair growth.

**DEFENDANTS' DISCLOSURE - 0218**

c.      Religious beards shall not be sculpted and shall remain neatly trimmed and clean.

d.      Offenders who refuse to comply with the religious beard specifications outlined in this policy shall be charged with offense code 24.1, Refusing to Adhere to Grooming Standards, and disciplined in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders*.

e.      Offenders who are allowed to grow a religious beard, but receive disciplinary for hiding contraband within their beards, or who have a history of escape, shall not be allowed to maintain a religious beard.

f.      If, at any time, an offender decides to no longer grow a religious beard, the offender shall notify the warden's office to change their status and the offender shall not be approved again for a religious beard for 12 months.

6.   Male offenders shall keep their hair trimmed up the back of their neck and head. Hair shall be neatly cut. Hair shall be cut around the ears. Sideburns shall not extend below the middle of the ears. No block style, afro, or shag haircuts shall be permitted. No fad or extreme hairstyles/haircuts are allowed. No mohawks, tails, or designs cut into the hair are allowed.

7.   Female offenders shall not have extreme hairstyles. No mohawks, "tailed" haircuts or shaved/partially-shaved heads shall be allowed. Female offenders may wear braids in accordance with unit policy. Female offenders may go to the beauty shop on their unit; however, going to the beauty shop is a privilege. Female offenders may be restricted from going to the beauty shop as the result of disciplinary action.

8.   Offenders' fingernails shall be neatly trimmed. Fingernails shall not exceed more than one-eighth of an inch past the tip of the fingers. Fingernails shall not be filed to a point, but shall be rounded.

**B.   Clothing and Necessities**

Offenders shall not alter, destroy or mark on any TDCJ-issued clothing or necessities item. Offenders shall not possess any extra clothing or necessities unless specifically authorized, for instance medically authorized.

1.   Clothing

a.      Offenders shall be provided the opportunity to have a daily change of socks and under garments.

b.      Offenders shall be issued enough clothing to keep warm during cold weather.

c.      Offenders shall be provided the opportunity to have a change of pants and shirts on each working day, but not less than three (3) times per week.

d.      Offenders shall wear TDCJ-issued clothing in the manner stated below when leaving the living area.

(1)   Pant legs shall not be rolled up or tucked inside socks or footwear. Pants shall not be worn below the waist level.

**DEFENDANTS' DISCLOSURE - 0219**

(2) Collars may not be tucked inside the shirt. Male offenders shall wear shirt-tails tucked inside pants. Female offenders shall wear shirt-tails as stated in unit policy.

(3) Male offenders shall wear socks with TDCJ-issued footwear. Female offenders shall wear socks with TDCJ-issued shoes.

(4) Shoes shall be worn and shall be laced and tied, if applicable. The types of shoes offenders are allowed to wear and the locations where the shoes are to be worn shall be coordinated with the laundry manager and the warden with unit-specific procedures on footwear issuance.

2. Towels

a. Offenders shall be provided the opportunity to have a minimum of three shower towels per week.

b. Cell towels shall be traded in at least once a week.

3. Linens

a. Offenders shall be issued a clean and sanitized mattress/pillow combo when assigned to the unit. Linen exchange shall be conducted weekly and shall include two sheets and one pillowcase or if a mattress/pillow combo is used, two sheets only.

b. Offenders shall be issued a blanket(s) to use during cold weather.

c. Each offender shall trade his dirty sheets and pillowcase for clean sheets and a pillowcase at least once a week.

4. Exchange Procedures for Necessities Items

a. Necessity items shall be exchanged one-for-one, clean-for-dirty.

b. During the exchange, offenders shall be afforded the opportunity to examine items for proper fit and damage. If items do not fit properly or are damaged, the item should be turned in for replacement.

c. Offenders shall be held responsible for dirty items exchanged. Returned items shall be checked for intentional damage. Offenders found to have intentionally damaged TDCJ-property shall be subject to disciplinary action as outlined in the TDCJ *Disciplinary Rules and Procedures for Offenders.*

**C.** **Living Areas**

1. Each offender shall be assigned to a bunk in a cell or a dormitory. Offenders shall not change bunks without permission. Each offender shall be assigned a locker or a shelf for storing personal property. No offender shall use a bunk, shelf or locker not assigned to him.

2. Each offender shall keep his living area neat, clean and free from contraband. Beds shall be made when not being used for sleeping.

**DEFENDANTS' DISCLOSURE - 0220**

3. All property shall fit in a box provided that is approximately 1.75 cubic feet but shall not exceed 2.0 cubic feet.  Some exceptions such as radio, typewriter, and fan can be stored outside the box.

4. An offender is not allowed to go into another offender's cell.  An offender shall be considered in violation of this rule if:

   a. Any part of his body enters the cell of another offender;  or

   b. Any object, held in any way by an offender, enters the cell of another offender.

5. Offenders shall not hang towels, blankets, clothing, or other similar items in the living area so that it blocks the correctional officer's view of any area.  Items shall not be placed, stored or hung in the windows, on doors, on cubicle walls, or in front of vents.

6. An offender shall get permission from the correctional officer on duty before passing any item:

   a. Through the bars or windows of any dormitory or cellblock area;

   b. From cellblock to cellblock;

   c. From dormitory to dormitory;  or

   d. From cell to cell.

7. Each offender may have one mattress and one pillow or one mattress/pillow combo, one pillowcase and two sheets or if a mattress/pillow combo is used, two sheets only.

8. Offenders are not allowed to sleep on the floor.

9. Offenders shall play radios in a low volume or with the use of headphones or earphones.  The correctional officer on duty shall determine when a radio is not being played at an appropriate volume.

10. Offenders shall not place homemade covers, shades, or other similar items, on lights in living areas or over air vents to restrict the exchange of air inside the living area.

11. Offenders shall not alter, disfigure, damage or destroy any state property in the housing area, to include bunks, ceiling, walls, fixtures or other similar items.

12. Offenders shall report problems with cell, wing or dorm toilets, sinks, electrical plugs, lights, or other similar items to the correctional officer on duty.

13. Offenders are not allowed to store open containers of food that can spoil in their living areas.   Opened containers of food that will not spoil shall be sealed or wrapped while being stored in living areas.

14. Offenders shall not be loud or boisterous.  Offenders shall not use vulgar or abusive language.

**DEFENDANTS' DISCLOSURE - 0221**

15.   When leaving the living area, each offender shall:

    a.   Make sure his bed is made;

    b.   Turn off all electrical appliances, except the clock in a clock radio;

    c.   Pick up all garbage and empty all garbage containers;

    d.   Dress properly;

    e.   Make sure he has his identification card with him; and

    f.   Make sure property is stored appropriately.

16.   Offenders shall not loiter in the hallway outside of the living areas.

17.   Offenders shall not throw trash or other items into the hallway outside the living area or out the window.  Trash shall be put in trash cans.

18.   Offenders shall not have items sticking out of the cells or windows.

**D.   Dining Hall**

1.   Offenders are provided with three wholesome meals daily.  However, on selected units, two meals shall be provided on Saturdays and Sundays that meet the same nutritional requirements as three meals.

2.   Offenders shall not talk loudly or cut in line.

3.   Meals are normally served cafeteria style.  No food may be wasted or stolen. Offenders shall not try to have more food placed on their tray by offenders working on the serving line.  The offender workers have been told by officials how much food to serve.

4.   An offender may go through the serving line once per meal.

5.   The correctional officer on duty shall direct offenders where to sit.  Offenders shall not skip seats or save seats for other offenders.

6.   Offenders are allowed to talk with those offenders at the same table as long as it is kept within normal conversational levels as interpreted by the supervising employee.

7.   Offenders are not allowed to pass anything from one table to another.

8.   Offenders who are not satisfied with the food may talk to the correctional officer on duty.

9.   Offenders shall be given 20 minutes to eat, from the time they enter the dining room until they depart.  Offenders who are loitering, visiting, or engaging in other similar activities and not eating shall be told to leave the dining hall.

10.   Offenders shall stay seated until ready to leave the dining hall.  Each offender shall clean his eating area and turn in all trays, cups, utensils and other similar items before leaving.  No trays, cups, utensils and other similar items shall be

**DEFENDANTS' DISCLOSURE - 0222**

taken from the dining hall.  No food shall be taken from the dining hall, except as allowed by unit policy.

11.     Offenders who are denied access to the dining hall due to disruptive behavior shall be served a sack lunch.

12.     Offenders prescribed therapeutic diets by a health care provider shall not be allowed to receive food from the regular food line.

**E.     Shower Rules**

1.      Offenders shall normally shower one time each day; however, paraplegic offenders may be allowed to shower whenever necessary, as determined by the medical provider.

2.      Offenders are allowed to wear boxers when showering.

3.      Offenders shall not shower during normal working hours unless authorized by a supervisor.

4.      Offenders shall not loiter in the shower area.

5.      Offenders using centralized shower locations shall not carry towels or extra clothing from the shower area.

6.      Offenders shall not save shower stalls for other offenders.

**F.     Dayroom Rules**

1.      Television shall be kept at a low volume.

2.      Offenders shall choose television programs by majority vote of the offenders watching television or through established unit procedure.

3.      Offenders may talk at a low level as long as the offenders do not disturb those who are watching television.

4.      Loud talking, arguing, horseplay, slamming dominoes, and other types of disturbances shall not be allowed.

5.      Offenders shall be seated while in the dayroom.

6.      Offenders shall not save chairs for other offenders in the dayroom.

7.      Offenders shall be properly dressed while in the dayroom (see section III B.1.d). Female offenders shall wear bras while in the dayroom.

8.      Offenders shall not wear caps, hats or headgear in the dayroom, with the exception of those worn by offenders for religious purposes.

9.      Offenders shall not take blankets, pillows or linens into the dayrooms.

10.     Offenders shall not take radios, typewriters, fans, or other electric devices into the dayrooms.

**DEFENDANTS' DISCLOSURE - 0223**

11.	Offenders shall not take stingers, hot pots, or any other type of heating element into the dayrooms.

12.	Offenders may have:

a.	One canned drink or cup of drink;

b.	One opened container of food, enough for self-consumption, such as chips, cookies, candy, no canned food;

c.	One newspaper, book, magazine, or reading material;

d.	One Bible;

e.	Board games;

f.	Writing materials, pen, pencil, no stamps, no legal materials; and

g.	Brush or comb

13.	Rules concerning television viewing may be different in a therapeutic community, including SOTP and IPTC, hospice and infirmary settings, and rules shall be determined by treatment staff.

## G.	Recreation Yard Rules

1.	Offenders shall be properly dressed while going to or returning from the recreation yard.  Offenders may wear regulation T-shirts and shorts in place of the outer shirts on the recreation yard, but shall be fully dressed while going to and coming from recreation.  Female offenders shall be appropriately dressed, to include wearing bras, while on the recreation yard.

2.	Offenders shall not take linens, towels, or blankets into the yard.

3.	Offenders shall not come in contact with the fence.

4.	Offenders shall not place clothing on the fence.

5.	Horseplay is prohibited.

6.	Physical contact not related to approved recreational activity is against the rules.

7.	Offenders shall immediately report any injury to an employee.

8.	Offenders shall not damage or abuse recreational equipment.

9.	Offenders shall not urinate anywhere other than in toilets provided on the recreation yard or toilets in the building.

10.	Offenders shall not carry food items or beverages to the recreation yard.

## H.	Commissary Rules

1.	Offenders shall not go to the commissary during the offenders' regular working hours.

**DEFENDANTS' DISCLOSURE - 0224**

2.      Offenders shall not talk in the commissary line.

3.      Any item bought from the commissary shall be for personal use only.

4.      Offenders shall have enough money in their trust fund accounts to cover the cost of all commissary items ordered.

5.      Commissary purchase slip (SO-7) shall be filled out completely before approaching the commissary window.  *DO NOT USE RED INK.*

6.      Merchandise is to be listed on the SO-7 in order of need or preference.

7.      Offenders shall be charged a spend trip to the commissary anytime the offender's card is scanned.

8.      Offenders should check commissary items before leaving the commissary window.  No changes shall be made after an offender leaves the commissary window area.

9.      Offenders are not allowed to return items to the commissary unless the items are defective.

10.     Offenders shall take commissary items back to the offenders' assigned living area immediately after leaving the commissary.

11.     Only one offender is allowed at the commissary window at a time.  Offenders shall carry their own commissary items; no helpers or carriers shall be allowed.

12.     Offenders are not allowed to purchase more items than will fit in the allotted storage space, in accordance with AD-03.72, "Offender Property."

## I.     Hall Rules

1.      Offenders shall walk single file next to the wall.

2.      Offenders shall be properly dressed while out of the housing area.

3.      Offenders shall not drink or eat in the hallway.

4.      Offenders shall not throw trash or spit on the floor.

5.      Offenders shall not speak loudly or engage in horseplay.

6.      Offenders shall not loiter or run in the hallway or walkway.  Offenders shall not sit against or lean on the wall in the hallway or walkway.

## J.     Offender Property

TDCJ policy establishes what personal and TDCJ-issued property an offender may possess, and obtain, while in custody – and how it shall be stored.  By choosing to possess property while in the TDCJ, an offender consents to the rules and regulations established regarding the acquisition, possession, storage, and disposition of that property.  When an offender's property is restricted, or left behind due to his departure from the unit, it shall be inventoried and stored in the unit property room.

1.      Newly-received offenders are permitted to bring the following items:

**DEFENDANTS' DISCLOSURE - 0225**

a.     Educational items – one item each, such as substance abuse literature, and one religious text, specific to the offender's declared faith, if those items are consistent with chaplaincy guidelines;

b.     Health care devices and supplies, medically prescribed items shall be evaluated for approval by medical staff, contact lenses (colored or clear) shall be allowed only until TDCJ-issued eye glasses are provided to the offender  (items shall be registered);

c.     Jewelry items - One wedding ring and one wrist watch, which may be denied if determined to be excessive in value or size;

d.     Legal material - no unused stationery items;

e.     Personal Hygiene Items - One pair of shower shoes;

f.     Photographs, except those of a sexually explicit nature;

g.     Personal Shoes - If TDCJ-issued footwear is unavailable in the correct size, a newly-received offender shall retain the shoes in the offender's possession at the time of intake.  The shoes shall be registered and once a TDCJ-issued pair is available, the personal shoes shall be disposed of in accordance with AD-03.72;

h.     Visitors address list and phone numbers; and

i.     Gender-related items - female offender may retain up to seven (7) white bras without underwire;

j.     Inmate Trust Fund Account – Cash or negotiable items, such as money orders, cashiers or law enforcement checks shall be deposited in the offender trust fund account, no personal checks accepted.  Negotiable items shall be endorsed and thumb-printed by the offender.  Cash is only accepted at the time of intake.

Note:     Items of Identification, such as birth certificate, social security card, driver's license and similar items, shall be forwarded to the Reentry and Integration Division (RID) and returned to the offender at the time of release from TDCJ; and

2.     An offender returning to TDCJ following a bench warrant or emergency absence is not permitted to return with food or hygiene items; however, any other property taken with the offender at the time of departure from TDCJ may accompany him when returning, if there is no threat or risk to security.  Items requiring registration shall be supported by a TDCJ "Registered Property Receipt."

3.     At the time of an offender's arrival at TDCJ, and at times when an offender's property is taken or returned, inventory forms shall be completed.  Items not allowed at intake shall be mailed at the offender's expense to anyone the offender chooses within the designated time limits.  If this is not possible, the items shall be destroyed or donated to charity.  Parcels shall not be sent cash on delivery (COD).

4.     Certain items shall be registered and engraved, if possible.  An offender is responsible for keeping the registration papers as proof of ownership.  Items

**DEFENDANTS' DISCLOSURE - 0226**

which shall be registered are wedding ring; wrist watch, other than one purchased at the commissary; shoes, except TDCJ-issued; radio; electric fan; typewriter; religious items; health care devices other than TDCJ-issued; clamp on lamp; alarm clock; AM/FM booster; multi-outlet; and hotpot.  In addition, female offenders shall receive registration papers for a curling iron and hair dryer.

5.   Metal, fire-resistant, closable storage containers are provided for storage of an offender's property.  An offender shall have no less than 1.75 cubic feet available but shall not be authorized to use more than 2.0 cubic feet of a container that is larger than the maximum 2.0 cubic foot size.  Nothing other than cell or dormitory fixtures may be placed on the walls, windows or doors of an offender's housing area.  NOTE: After approval by the warden, additional storage may be provided for legal material needed for current litigation and for approved religious materials, including religious text and study material.

6.   An offender may not participate in the inventorying of another offender's property and property transactions between offenders are prohibited.  Staff may only provide an offender with items as authorized by agency policy.

7.   Amounts that an offender may spend in the commissary are based on his classification, custody, or disciplinary status.  Subject to approval by the warden, an offender may order authorized items from an outside vendor.  However, no offender may possess more property than he can store in designated areas.

8.   Claims for lost or damaged offender property shall be pursued through the Offender Grievance procedure.  Loss or damage that is determined to be the responsibility of the TDCJ shall generally be paid at no more than $50 per item; no more than $500 total.

9.   An offender may have property restricted due to his classification, custody or disciplinary status.

NOTE: If an offender remains in Level 3 administrative segregation status for nine consecutive months and fails to make arrangements for the 'restricted property,' it shall be disposed of by the agency.

10.  When departing a unit on a temporary basis or due to re-assignment, an offender shall choose wisely what property he takes with him – as it shall be placed into *one TDCJ-issued mesh bag and fit into a two cubic foot storage space.  If permanently reassigned to another unit, an offender shall generally receive the remaining property within 21 days following arrival at the unit of assignment. NOTE:  Offenders authorized additional legal storage may take one additional mesh bag of legal material; if going out on bench warrant or to court, they may take one mesh bag of legal material for each authorized legal storage container.

11.  If an offender departs due to parole or emergency absence, property left behind shall be stored for a maximum of thirty days; if out on bench warrant, property shall be stored in the Property Room for a maximum of six months.  If the offender has not returned to TDCJ custody after these time frames, and has not made arrangements for disposition of the stored property, it shall be disposed of by the agency.

12.  No offender may send out a property item, by mail or visitor, with the intent of having the item repaired and returned.

**DEFENDANTS' DISCLOSURE - 0227**

13.    When an offender departs his cell or bunk area, his property shall be stored in the following manner:

a.    A photo and one of each hygiene items may be stored on a shelf, if available.

b.    Shoes, TDCJ-issued necessity items, non-combustible items, such as typewriter, radio, fan, or other similar allowed items shall be neatly stored in the housing area as designated by unit administration.

c.    All remaining offender property shall be stored in closeable containers.

## K.    Contraband

Possession of contraband is a violation of TDCJ rules.

1.    Possession includes having an item on the body of an offender, among his belongings or in his cell or immediate living area, no matter who owns the item.

2.    Contraband is:

a.    Any item not allowed when the offender came to the TDCJ, not given or assigned to an offender by the TDCJ, and not bought by an offender for his use from the commissary;

b.    Any item altered from its original condition;

c.    Any item which, in the judgment of TDCJ personnel, unreasonably hinders the safe and effective operation of the facility;

d.    Items in excess of the amounts authorized or stored in an unauthorized manner;

e.    Any item received or sent through the mail that is not approved in accordance with the TDCJ Offender Correspondence Rules;

f.    Anything an offender is not supposed to have: such as, but not limited to:

(1)    Money;

(2)    Items used for gambling, such as dice and playing cards;

(3)    Books, magazines or newspapers that are not approved;

(4)    Clothes that are not approved; or

(5)    Tobacco or tobacco related items.

g.    Any item used to violate a TDCJ rule.

3.    Any contraband found on TDCJ property may be taken and disposed of according to procedures set forth by the TDCJ and the State of Texas.

## L.    Tobacco Policy

All facilities within the TDCJ are designated as tobacco free.

**DEFENDANTS' DISCLOSURE - 0228**

Offenders found in possession of tobacco products, paraphernalia, or similar products may be charged with a disciplinary offense.

**M.** **Safety Regulations**

1. Every effort shall be made to provide a safe living and work environment for offenders.  It is the responsibility of each offender to exercise care, cooperation and common sense while performing their assigned job duties and daily activities.

2. Offenders shall **immediately** report all injuries to the appropriate work supervisor or staff member.

3. Offenders shall immediately report all safety hazards to the appropriate work supervisor or staff member, and shall not continue to work in any area or on any equipment that has been deemed unsafe or improperly guarded by the work supervisor.  If an offender's work supervisor or other staff member does not agree that an unsafe condition exists, the offender may report the situation to the Unit Risk Manager, either verbally or in writing.

4. Appropriate safety related personal protective equipment shall be provided to offenders where necessary.  It is the responsibility of each offender to use personal protective equipment to protect against physical injury and health hazards.  Offenders shall wear safety goggles when performing operations such as: grinding, hammering, mowing and other similar functions.  Hearing protection shall be worn in all work areas designated with high noise levels.  Work or safety shoes shall be worn while performing assigned job functions, and safety shoes shall be worn in all designated areas or job functions.

5. Offenders shall perform only work that is assigned to them.  Operating machines or equipment or performing any operation for which offenders have not been specifically assigned and trained is strictly forbidden.

6. Offenders shall not remove safety guards from machinery or equipment or operate machinery and equipment without required safety guards in place.  Offenders shall not adjust, oil, clean, repair or perform any maintenance on machinery or equipment that is in motion or energized.

7. Offenders shall not ride on the drawbars of farm vehicles and shall not ride on tractors, forklifts, or other vehicles unless an authorized manufacturer installed seat is provided.  Offenders shall not stand in moving vehicles and shall not sit where their legs hang over the sides of vehicles and trailers.  Offenders shall not dismount any vehicle until it has come to a complete stop.

8. The fabrication or repair of personal offender items on TDCJ equipment is prohibited, unless authorized in the Unit Craft Shops.

9. Any offender found in violation of these procedures or any other posted unit specific safety or risk management policy is subject to disciplinary action.

10. Shower Rules

Offenders shall exercise caution when entering and exiting shower areas in an effort to prevent slip, trip, and fall injuries.

**DEFENDANTS' DISCLOSURE - 0229**

11.    Temperature Extremes

Heat Precaution - Offenders shall be cautious of heat during the summer months; especially offenders working in areas of extreme heat such as, field, maintenance, and yard squads.

Hypothermia - COLD Related Illness – Offenders should consider appropriate clothing for working in cold weather, to include: thermal underwear, insulated jackets, cotton or leather gloves, insulated hoods, work shoes, and socks. Appropriate clothing shall be issued even when the index indicates little danger of exposure injury.

Be alert of the signs and symptoms of heat and hypothermia illnesses; see chart below.

| REGCOGNITION OF HEAT ILLNESS | RECOGNITION OF HYPOTHERMIA (COLD RELATED ILLNESS) |
|---|---|
| **HEAT CRAMPS** | **HYPOTHERMIA CATEGORY 1** |
| • Involuntary muscle spasms following hard, physical work in a hot environment<br>• Heavy sweating<br>• Cramping in the abdomen, arms, and calves | • Loss of body heat<br>• Shivering<br>• Lack of interest or concern<br>• Speech difficulty<br>• Forgetfulness<br>• Mild unsteadiness in balance or walking<br>• Loss of manual dexterity<br>• Lips turn blue |
| **HEAT EXHAUSTION** | **HYPOTHERMIA CATEGORY 2 (EMERGENCY!!! Death is imminent)** |
| • Weakness, anxiety, fatigue, dizziness, headache, nausea<br>• Profuse sweating, rapid pulse, rapid breathing<br>• Possible confusion or loss of coordination<br>• May lead to heat stroke if not treated | • Shivering stops<br>• Exhaustion<br>• Drowsiness<br>• Confusion<br>• Sudden collapse<br>• Slow pulse and breathing<br>• Pupils dilated<br>• Cardiac arrest<br>• May lead to category three if not treated |
| **HEAT STROKE (EMERGENCY!!! Death is imminent)** | **HYPOTHERMIA CATEGORY 3 (EMERGENCY!!! Death is imminent)** |
| • Diminished or absent sweating<br>• Hot, dry, and flushed skin<br>• Increased body temperature, delirium, convulsions, seizures, possible death<br>• Headache, mental confusion, dizziness<br>• Extreme fatigue<br>• Nausea/vomiting<br>• Incoherent speech progressing to coma<br>• Rapid pulse, weakness<br>• Medical care is urgently needed | • Individual is comatose<br>• No palpable pulse<br>• No visible respiration |
| **TREATMENT AND PREVENTION OF HEAT ILLNESS** | **TREATMENT AND PREVENTION OF HYPOTHERMIA (COLD RELATED ILNESS)** |
| **TREATMENT OF HEAT ILLNESS (ALL TYPES)** | **TREATMENT OF COLD ILLNESS (ALL TYPES)** |
| • Move person out of direct sunlight into air-conditioned environment, if possible<br>• Remove clothing, maintaining modesty<br>• Have them drink water, if conscious<br>• Sprinkle water on them; fan them if there | • Move person into a warm environment, if possible<br>• Remove wet clothing<br>• Insulate the person by adding clothing or blankets |

**DEFENDANTS' DISCLOSURE - 0230**

| | | | |
|---|---|---|---|
| is no breeze | | • | If frostbite exists, gently heat affected area with warm water or towels, a heating pad, or hot water bottles |
| • Get medical attention ASAP | | • | If conscious, encourage consumption of water, sweetened liquids |
| | | • | Monitor breathing |
| | | • | If heart has stopped, then judge the possibility of administering CPR |
| | | • | Get medical attention ASAP |
| **HIGHER RISK FOR HEAT ILLNESS** | | **HIGHER RISK FOR COLD ILLNESS** | |
| • Newly assigned to job | | • | Newly assigned to job |
| • On psychiatric medications and certain other medications | | • | Elderly |
| • Elderly | | • | Exposed to below freezing temperatures for a long period of time without adequate clothing/blankets |
| • High temperature and humidity conditions | | • | Wet when exposed to cold weather |
| • No breeze | | | |
| **PREVENTION OF HEAT ILLNESS** | | **PREVENTION OF COLD ILLNESS** | |
| • Increase frequency of fluid intake when working in hot environments | | • | Dress appropriately when working in extreme cold conditions |
| • Take a break every 30-60 minutes | | • | Drink warm, sweet fluids |
| • Decrease intensity of work under extreme conditions | | • | Move extremities often to keep enhanced blood circulation |

Report all incidents of temperature related illness to a staff member immediately.

**N.     General Rules**

Offenders shall make themselves aware of and follow all written rules and posted signs.

1.     The possession or use of any tobacco products, paraphernalia, or related products is prohibited.

2.     No loud or boisterous talking, no vulgar or abusive language shall be allowed.

3.     When talking to an employee or official, offenders shall stand with arms by their side and call them Mr., Ms., or Officer (Last Name) or use their title. Offenders can identify the officer by the last name on his nameplate that is worn as part of the uniform. Offenders shall show respect when talking with employees, officials, visitors and other offenders. Offenders shall answer "yes, sir"; "no, sir"; "yes, ma'am"; or "no, ma'am".

4.     Offenders are prohibited from maintaining active social media accounts for the purposes of soliciting, updating, or engaging others, through a third party or otherwise.

5.     No fighting, scuffling, horseplay, or similar activities are allowed.

6.     Offenders shall not litter. Trash and garbage shall be placed in trash cans.

7.     Offenders shall not alter, disfigure, damage or destroy any state property.

8.     Offenders shall not have playing cards, dice or any other item that can be used for gambling.

9.     Offenders shall not tamper with hand restraints, or any security equipment.

10.     Offenders shall not take posted information from bulletin boards.

**DEFENDANTS' DISCLOSURE - 0231**

11.    Offenders and their living areas may be searched at any time by staff.

12.    Offenders are not allowed in unauthorized areas.

13.    Offenders are not allowed in their work areas except during their work hours, unless approved due to special circumstances.

14.    Offenders shall not traffic and trade postage supplies, or trade any offender's personal property for other commissary items.

15.    Offenders are expected to be dressed and ready when called for work, school, or other turnouts. There shall be no tardiness allowed by offenders.

16.    Offenders are allowed to carry the following items to their job assignment:

    a.    One authorized comb or brush;

    b.    One handkerchief (may not extend out of the pocket); and

    c.    Personal Identification card

All other items are prohibited in the workplace. In addition, offenders are not allowed to take any item from the workplace back to the living area.

17.    Offenders shall not wear sunglasses indoors unless medically prescribed.

18.    It is the intent of the TDCJ to have all offenders immediately comply with lawful instructions or orders. An offender shall obey the staffs' orders at all times, as long as the orders do not place him or those around him in physical danger, or would cause him to violate a TDCJ written rule or policy. In such cases, the written policy almost always would supersede the direct order.

19.    An offender should be aware of how to handle situations in which he perceives himself to be the object of sexual advances by staff members. Any type of sexual advancement by any staff member directed toward any offender is a strict violation of policy. Similarly, it is a violation of the rules for offenders to direct advances towards correctional officers or staff. Correctional officers or staff may not solicit offenders in any way for any type of sexual favors. The same applies towards offenders. This includes any conversation(s) that might lead to sexual involvement or relationship of a personal nature. Personal correspondence with a staff member is prohibited.

In the event that an offender feels he is being pressured for sexual favors or to violate any institutional rule, the offender shall refuse to do the prohibited act and either:

    a.    File a formal grievance;

    b.    Contact a ranking correctional officer;

    c.    Contact Classification Staff;

    d.    Contact the warden;

    e.    Contact the chaplain;

**DEFENDANTS' DISCLOSURE - 0232**

f.      Contact the Office of the Inspector General;

g.      Contact any staff member with whom he feels comfortable enough to let them know and request their help; or

h.      Write a family member and urge the family member to call the Ombudsman Office immediately.

## IV.    SAFE PRISONS/PREA PROGRAM

### A.    TDCJ Zero Tolerance Policy

The TDCJ has a zero-tolerance policy regarding sexual abuse and sexual harassment of offenders in TDCJ's custody.  Sexual abuse and sexual harassment of any type on a TDCJ facility is strictly prohibited and shall not be tolerated.  Sexual abuse includes sexual contact with an offender by a staff member, contractor, or volunteer or by another offender.  This means, all allegations of sexual abuse and sexual harassment whether it is perpetrated by a staff member or another offender shall be thoroughly investigated.  Additionally, the TDCJ prohibits retaliation for reporting allegations and/or cooperating with investigations related to sexual abuse and sexual harassment.

### B.    What is PREA?

In 2003, the federal government enacted the Prison Rape Elimination Act (PREA).  The purpose of this Act is to reduce the incidence of sexual abuse by establishing national standards with the goal of eliminating sexual abuse within all confinement facilities across the nation.  The TDCJ fully supports the national efforts to eliminate sexual abuse of offenders and has incorporated the PREA standards in the TDCJ policies and procedures.

### C.    What is Sexual Abuse?

1.      Sexual abuse (offender-on-offender) includes any of the following acts performed on an offender by another offender, if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse:

      a.      Contact between the penis and vulva or the penis and anus, including penetration, however slight;

      b.      Contact between the mouth and the penis, vulva, or anus;

      c.      Penetration of the anal or genital opening of another person, however slight, by a hand, finger, object, or other instruments; and

      d.      Any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or the buttocks of another person, excluding contact that was incidental to a physical altercation.

2.      Sexual abuse (staff-on-offender) includes any of the following acts performed on an offender by a staff member, contractor, or volunteer **with or without** the consent of the offender:

      a.      Contact between the penis and vulva or the penis and anus, including penetration, however slight;

**DEFENDANTS' DISCLOSURE - 0233**

b.     Contact between the mouth and penis, vulva, or anus;

c.     Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify desire;

d.     Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

e.     Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described above; and

f.     Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an offender.

Employees of the TDCJ are strictly prohibited from engaging in sexual conduct with an offender, even if an offender is willing to engage in the act.  Employees found in violation of sexual abuse are subject to disciplinary action and/or criminal prosecution.

**D.     What is Sexual Harassment and Voyeurism?**

1.     Sexual harassment is:

a.     Any repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one offender directed at another; and

b.     Any **repeated** verbal comments or gestures of a sexual nature to an offender by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

2.     Voyeurism

Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an offender by staff for reasons unrelated to official duties, such as peering at an offender who is using the toilet in his or her cell to perform bodily functions; requiring an offender to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an offender's naked body or of an offender performing bodily functions for the purpose of sexual gratification.

**E.     Cross Gender "Knock and Announce" Policy**

TDCJ facilities are supervised by both male and female staff.  On occasion, male offenders shall be supervised by female correctional officers, and female offenders shall be supervised by male correctional officers.  Correctional officers of the opposite gender shall announce their presence before entering a housing area at the beginning of their shift and anytime the gender of supervision changes from same gender, to mixed –or- opposite gender supervision.  The announcement applies to both security and non-security staff.  Be aware that once the announcement is made, it shall not be repeated during the course of the shift.  Offenders shall treat staff of the opposite gender with respect.  Any inappropriate behavior or comments directed toward staff of either gender shall be subject to disciplinary action.

**DEFENDANTS' DISCLOSURE - 0234**

F.    **How Does the Safe Prisons/PREA Program Help?**

The Safe Prisons/PREA program was established to prevent, detect, and respond to sexual abuse, sexual harassment, extortion, and other acts of violence perpetrated against an offender.   The *Safe Prisons/PREA Plan* and policies provides guidelines necessary to prevent, respond, and investigate acts of aggression.   Additionally, the *Plan* outlines the process of addressing the needs of offenders following an allegation.   One of the strategies involved in the Program includes educating offenders to raise awareness regarding the Program and provide direction on methods to prevent and report incidents of sexual abuse or sexual harassment.

G.    **How Should I Report Threats to my Safety?**

1.    Offenders are provided with multiple methods to report sexual abuse, sexual harassment and other acts of aggression that may pose a significant threat to your safety.   It is important that you begin by telling any staff member, immediately.   All staff members have been trained on what to do when they receive reports concerning an offender's safety.   Staff is also instructed to maintain confidentiality by discussing reports with officials on a need to know basis.

2.    The PREA Ombudsman is a point of contact for offenders who have complaints or inquiries regarding any allegations of sexual abuse or sexual harassment. Offenders may contact the PREA Ombudsman in writing; however, offender family members and friends may contact the PREA Ombudsman in writing or by phone.   You may report allegations verbally or in writing, but keep in mind time is of the essence when reporting sexual abuse.   Any delay in reporting shall make investigating an incident more challenging.

3.    You may privately and confidentially report incidents of sexual abuse to the agency PREA Ombudsman, who shall initiate an investigation into your claims.

4.    A report made in good faith based upon a reasonable belief that the alleged conduct did occur does not constitute lying for the purpose of disciplinary action even if the investigation does not establish evidence sufficient to substantiate (prove the incident occurred) the allegation.   Offenders shall not be disciplined for good faith reporting.

5.    However, if investigation reveals that an offender knew that the information was false, and made the allegation intentionally or with malice, he or she shall be subject to disciplinary action.   This type of behavior is also a violation of the Texas Penal Code.

H.    **Sexual Abuse Prevention Strategies**

The only way that sexual abuse can be eliminated is when a sexual abuse predator chooses not to abuse.   However, you can reduce the risk of being victimized by keeping the following guidelines in mind:

1.    A successful predator will get to know you and determine your strengths, weaknesses, and needs.   For example, if you are new to the prison environment and need items, such as deodorant or toothpaste, and don't have the money in your account, a predator may offer to buy these things for you as a kind gesture. However, this friendship could be short-lived and the predator may demand sex as repayment.   Others may offer protection in return for sexual favors.

**DEFENDANTS' DISCLOSURE - 0235**

2.      Do not accept commissary items or other gifts from offenders.  Placing yourself in debt to another offender can lead to the expectation of repaying the debt with sexual favors.

3.      Do not accept an offer from another offender to be your protector.

4.      Be alert!  Do not use contraband substances such as drugs or alcohol: they can weaken your ability to stay alert and make good judgments.

5.      Position yourself in "Safe Zones" or areas where you can see a staff member and the staff member can see you.  If you are being pressured for sex, report it to any staff member immediately.  The quicker you report the situation, the faster you will be removed from the situation.  **Don't try to take matters into your own hands.**

6.      Be aware of situations that make you feel uncomfortable.  Trust your instincts.  **If it feels wrong, get help, or call out for a staff member.**

7.      Don't let your manners or pride get in the way of keeping yourself safe.  Don't be afraid to say "NO" or "STOP IT NOW."

8.      Walk and stand with confidence.  Predators generally choose victims who look like they won't fight back or appear emotionally weak.

9.      Avoid talking about sex and casual nudity.  These things may be considered a come on, or make another believe that you have an interest in a sexual relationship.

**I.      What Should You Do If You Are Sexually Abused?**

1.      Report the abuse to any staff member immediately.

The longer you wait, the more difficult it is to obtain the evidence necessary for a criminal and/or administrative investigation.   Request immediate medical attention; you may have serious injuries that you are not aware of, and any sexual contact can expose you to sexually transmitted infections.

a.      Do not shower, brush your teeth, use the restroom, or change your clothes.  You may destroy important evidence.

b.      The first responder shall immediately separate you from the alleged perpetrator and move you to a safe place.

c.      You shall be examined by a qualified medical professional and shall receive treatment for any injuries.  You may undergo a forensic medical examination utilizing the sexual assault evidence collection kit.  This kit allows for the collection of evidence necessary for identifying and prosecuting the alleged perpetrator.

d.      Depending on the type of abuse, you may be provided with a community rape crisis advocate (where available) or an offender victim representative (chaplain, psychologist, sociologist, or case manager) to provide emotional support services during the forensic examination and any investigatory interviews.   You are not obligated to accept the services; however, it is highly encouraged.

**DEFENDANTS' DISCLOSURE - 0236**

e.   An offender protection investigation shall be conducted following report of the incident by a correctional officer or staff if the assault was perpetrated by another offender.  Additionally, the Office of the Inspector General may investigate the incident for criminal violations.

f.   The Office of the Inspector General is generally responsible for conducting investigations regarding staff members who are ranked as a supervisor.

g.   You shall also be referred for Mental Health Services. The days following the abuse can be traumatic and it helps to have people who will be there to help you.   Seek professional help.   Offenders who are victims of sexual abuse shall receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment in accordance with Correctional Managed Health Care (CMHC) policies.

h.   If no qualified medical or mental health practitioners are on duty at the time a report of abuse is made, correctional staff first responders shall take preliminary steps to protect the victim and immediately notify the appropriate on-call medical and mental health practitioners.

i.   Offenders who become victims of sexual abuse while incarcerated shall be offered timely information about and access to emergency contraception and sexually transmitted infections prophylaxis, according to professionally accepted standards of care, where medically appropriate, in accordance with CMHC policies.

j.   Treatment services shall be provided to offender victims without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising from the incident.

k.   All offender victims of sexual abuse shall be offered access to forensic medical examinations, whether on-site or at an outside medical facility, without financial cost, where evidentiary or medically appropriate.  Such examination shall be performed by a sexual assault forensic examiner (SAFE) or sexual assault nurse examiner (SANE) when possible.   If neither a SAFE nor SANE can be made available, the examination may be performed by other qualified medical practitioners in accordance with CMHC policies.   Efforts to provide a SAFE or SANE shall be documented.

2.   Investigations

a.   Investigations shall be conducted promptly to collect facts and evidence surrounding the reported incident.   You may be placed in another location on the facility until the investigation is complete.   Once completed, you shall be reviewed by the Unit Classification Committee who shall determine if the offender protection investigation conducted by security staff is substantiated, unsubstantiated, or unfounded.   The committee shall also assess your protective needs and determine the best course of action (if any) on a case-by-case basis.

**DEFENDANTS' DISCLOSURE - 0237**

       b.    OIG or the Safe Prisons Management Office shall provide you with information regarding any criminal investigations. You may also submit a request for information through the OIG.

3.    Offender Perpetrator Consequences

    a.    All allegations of sexual abuse shall be taken seriously. Offender perpetrators that are found to have engaged in sexual abuse or sexual harassment shall be disciplined.

    b.    **You shall be issued a disciplinary case;** if you are found guilty, sanctions shall be harsh. Additionally, your classification level shall be reviewed and likely downgraded, which could mean a transfer to a higher security prison or housing unit with significantly less freedom of movement and limited privileges. If you have family, this will affect your loved ones and their ability to visit you.

    c.    All cases of sexual abuse are subject to criminal investigation by the OIG. You may be prosecuted for a criminal offense and if found guilty of a felony, any additional prison time shall be stacked on top of your current sentence in accordance with Texas law.

    d.    If you are convicted, your **victim** shall have an opportunity to write a statement which can impact your **sentence length** and can affect your ability to parole. Also, you shall be required to **register as a sex offender** upon release from prison.

    e.    Engaging in **any form of sexual** conduct in prison significantly increases your risk of HIV infection, along with exposing you to other sexually transmitted infections.

    f.    If you have trouble controlling your actions, seek help from mental health staff and/or consider participating in programs designed to control anger or reduce stress. To reduce immediate feelings of anger or aggression, try talking to or writing to a friend, meditate, do breathing exercises to relax, or engage in some type of exercise.

## V.  SECURITY THREAT GROUPS

Offenders who participate in gang related activities may be confirmed as a security threat group member. Those confirmed as a security threat group member shall be assigned to administrative segregation. If placed in administrative segregation, you shall be separated from the general population and you shall lose a number of privileges. Other restrictions include: contact visits are not allowed; no participation in educational or vocational classes; emergency absence requests are not considered; good time credits shall not be awarded, and movement is restricted. As a security threat group member, you could also become a victim of security threat group related violence and may even place your immediate family in danger.

If a confirmed security threat group member wishes to disassociate with their current affiliation, the offender may request to be considered for the Gang Renouncement and Disassociation (GRAD) Process. After approval, the offender shall complete the GRAD process before they are reviewed for release from administrative segregation and returned to general population status. The curriculum provides cognitive intervention, anger management, substance abuse education, and programming addressing criminal addictive behavior.

**DEFENDANTS' DISCLOSURE - 0238**

VI.    PROGRAMS AND SERVICES

A.    **Education**

Windham School District (WSD) provides appropriate educational programming and services to meet the needs of the eligible offender population within the TDCJ.   All programs emphasize skills for offenders that potential employers demand, such as personal qualities, teamwork, decision making, cultural sensitivity/tolerance, and problem solving.    Selection for WSD programming is based on an ITP which prioritizes participation in recommended programs based on the offender's age, program availability, projected release date and need for academic, vocational and life skills programs.

Literacy, Career and Technical Education (CTE), and Life Skills Programs are offered on several units or facilities.   The goal of all classes is to prepare students for work both in prison industry and for jobs after release from incarceration.   The following programs and services are provided throughout the system:

- Testing and Assessment

- Counseling

- Academic Programs

  - Adult Basic Education (Literacy)

  - GED Preparation

  - Special Education

  - English as a Second Language (ESL)

  - Title I

- Personal and Social Development  Programs

  - CHANGES

  - Cognitive Intervention

  - Parenting and Family Wellness

- Career and Technical Education (Vocational)

- Libraries

Most literacy classes are held three hours per day, five days per week.   Not all programs and services are available at every unit or facility location.

1.    Testing and Assessment

Tests of Adult Basic Education (TABE) are administered to incoming offenders to determine each offender's educational level.   Offenders enrolled in WSD literacy programs are tested throughout the school year to monitor student progress.

**DEFENDANTS' DISCLOSURE - 0239**

The GED exam is administered to eligible offenders when they attain a level of proficiency that indicates a likelihood of passing the GED.

2.      Counseling

School counselors share program information with potential students and enroll eligible offenders in appropriate educational programs.   Counselors provide career guidance to help offenders prepare for jobs and careers after release.

3.      Adult Literacy, Basic Skills and GED Preparation

Eligible offenders may enroll in literacy programs.   Students are assigned to literacy classes based on their individual achievement level as demonstrated on the TABE.   Adult basic education classes are offered to offenders functioning below the sixth grade level and secondary level adult education classes are offered to those offenders working toward the attainment of a high school equivalency certificate (GED).

4.      Special Education

The Special Education program provides educational services to eligible offenders with disabilities.   Offenders may be evaluated for this program by self-referral; or their teachers or principal may refer them.   Disabilities that affect learning may qualify a student for special education.   These include:

a.          Learning disability;

b.          Emotional disturbance;

c.          Intellectual disabilities;

d.          Orthopedic or other health impairment;

e.          Visual or hearing impairment;

f.          Speech impairment; and

g.          Traumatic brain injury.

The special education program provides many services including special assistance in academic and vocational classes, computer-assisted instruction, speech therapy, Braille and large print materials, and sign language interpreters.

5.      English as a Second Language (ESL)

The English as a Second Language program (ESL) is provided to offenders who exhibit limited English proficiency.   Eligible offenders are provided intensive instruction in English language development, reading and writing.

6.      Title I

The Title I program is provided for offenders who are 21 years of age or younger. Students are enrolled in a Title I class in addition to a regular Literacy class each day.   Interactive computer-assisted instruction is used in the Title I program to provide remediation of basic skills.

**DEFENDANTS' DISCLOSURE - 0240**

7.      Pre-Release Programs

The CHANGES program offers life skills to prepare offenders for release. CHANGES, the name of the prerelease program, stands for Changing Habits and Achieving New Goals to Empower Success.  The CHANGES program is offered to offenders within two years of release.   It is also offered to offenders who have FI3R parole requirements.   It includes many topics that are important to being successful in the freeworld,  including:

a.      Personal Development;

b.      Healthy Relationships;

c.      Living Responsibly;

d.      Drug Education;

e.      Living Well;

f.      Putting Together a New Start; and

g.      Going Home

8.      Cognitive Intervention

The Cognitive Program teaches students to examine and change the thinking patterns that lead to criminal behavior.  Students learn more appropriate thinking skills in order to reduce anger and anxiety, and increase communication and problem solving abilities.  Students can request the class, or an offender can be referred to the Cognitive Program by unit administration.  Topics include:

a.      Team Building;

b.      Thinking Errors;

c.      Criminal/Addictive Cycle;

d.      Franklin Reality Model;

e.      Problem Solving Steps;

f.      Stop and Think;

g.      Problems and Goals;

h.      Gathering Information and Insight;

i.      Choices and Consequences;

j.      Choose…Plan…Do;  and

k.      Relapse Prevention

DEFENDANTS' DISCLOSURE - 0241

9.        Career and Technical Education

Windham offers training in numerous vocational trades to eligible offenders. Programs prepare students for employment after release. Most of the programs are approximately 600 hours long. Students can earn certificates of achievement from WSD and industry certificates from various certifying agencies. Students attend class six hours per day, five days per week. Most units or facilities offer several trades, some of which include:

a.        Automotive Trades;

b.        Construction Trades;

c.        Horticulture/Landscape Trades;

d.        Truck Driving;

e.        Culinary Arts;

f.        Welding and Other Metal Trades;

g.        Diesel Mechanics;

h.        Computer Related Trades; and

i.        Electrical Trades

Offenders may request to be placed on the district-wide waiting list to transfer for a CTE program that is offered on another unit. The unit principal and/or counselor can assist the offender with this process. The TDCJ State Classification committee shall make all decisions regarding unit assignment.

The Apprenticeship Program offers offenders training in many crafts. Each craft requires 2,000 to 8,000 hours of work background. Offenders shall have 144 hours of related classroom instruction per year. The U.S. Department of Labor issues a Certificate of Completion of Apprenticeship to students who complete the program.

10.      Libraries

The Windham School District maintains libraries to support its educational programs and provide recreational reading opportunities for eligible offenders. The libraries offer a wide variety of reading materials, including reference books, library books, magazines and newspapers.

Offenders shall follow established unit library rules and procedures posted in the library. The rules and procedures shall show the scheduled library hours, the number of books that can be checked out, and the length of time on the books. It is the responsibility of the offender to make sure library books are returned to the library or put in a unit book drop box on time. Reference books, magazines, and newspapers are to remain in the library and cannot be removed.

Library books are state numbered property. Disciplinary action shall be taken for loss, theft, damage, or destruction of books, reference books and magazines. Overdue library books are considered contraband.

**DEFENDANTS' DISCLOSURE - 0242**

11.     School Rules

The Windham School District has rules to help create an orderly and positive atmosphere.   A positive atmosphere helps people learn.   The following rules apply to all students in the school:

a.      Students shall arrive for class on time;

b.      Students shall not leave the classroom or school without permission;

c.      Sleeping in class is not permitted;

d.      Eating, horseplay and profanity are not permitted;

e.      Students shall be neatly groomed and properly dressed;

f.      Cheating on any schoolwork or test is not permitted;

g.      Students shall do all their assigned work and take all required tests;

h.      Students are not permitted to bring personal property to the school;

i.      Excessive noise and other disruptive behaviors are not appropriate;

j.      Students shall not steal, damage or destroy school property;

k.      Students shall follow all the TDCJ, unit, and school rules;

l.      Vocational students shall read the standard operating procedures (SOP) before operating power equipment and read Material Safety Data Sheets (MSDS) before handling chemicals;

m.      Vocational students shall wear eye protective gear and all personal protective equipment when required;

n.      Students are not allowed to work on personal projects in class;

o.      Vocational students shall check out tools according to established checkout procedures; and

p.      Violation of any of these rules may result in disciplinary action and the possible removal from school.

12.     Information on Education Programs

Contact the unit Principal or Windham Counselor for information on any educational program or service.   Enrollment in Windham School District programs is based on ITP priorities.

**B.      Recreational Activities**

The TDCJ has developed guidelines for out-of-cell time which affords eligible offenders the opportunity to participate in non-programmatic and programmatic recreational activities.   Recreation facilities and equipment are provided for offender use.   Certain recreational activities may not be available for participation due to an offender's loss of recreation privileges as a result of disciplinary actions.

**DEFENDANTS' DISCLOSURE - 0243**

1.    Non-Programmatic Recreational Activities

Non-programmatic recreational activities may include, but not be limited to:

a.    Television viewing;

b.    Recreational games such as chess, checkers, Scrabble®, dominoes, or any other warden approved recreational activity;

c.    Basketball, volleyball, table tennis (in gymnasium only), handball, and weight lifting. Depending on the size and lay-out of the facility, additional recreational activities may be provided;

d.    Basic in-cell art activities; and

e.    Craft Shop.

2.    Programmatic Recreational Activities

a.    Programmatic recreational activities include:

(1)    Intramural sports

(2)    Participation in the intramural sports program is available to all eligible general population offenders, and participation is a privilege.

(3)    The purpose of intramural sports is to promote individual, dual, and team activities.

(4)    Examples of individual intramural sports are chess, checkers, horseshoes, and handball.

(5)    Examples of dual intramural sports are badminton, pickle ball, and table tennis.

(6)    Examples of team intramural sports are softball and basketball.

b.    Out-of-cell time requirements for non-programmatic and recreational activity

(1)    G1/J1/OT, G2/J2/P2, and G3/P3 Custody offenders shall be allowed a minimum of four hours on weekdays to participate in non-programmatic activities. At least one hour shall be spent in the gym or recreation yard.

(2)    G1/J1/OT, G2/J2/P2, and G3/P3 Custody offenders shall be allowed a minimum of seven hours on weekends to participate in non-programmatic activities. At least two hours shall be spent in the gym or recreation yard.

(3)    G4/P4 Custody offenders shall be allowed four hours on weekdays to participate in non-programmatic activities. At least one hour shall be spent in the gym or recreation yard.

**DEFENDANTS' DISCLOSURE - 0244**

(4) G4/P4 Custody offenders shall be allowed four hours on weekends to participate in non-programmatic activities. At least one hour shall be spent in the gym or recreation yard.

(5) J4 Custody offenders shall be allowed two hours on weekdays to participate in non-programmatic activities. At least one hour shall be spent in the gym or recreation yard.

(6) G5/P5 Custody offenders shall be allowed two hours each day in the gym or recreation yard.

(7) J5 Custody offenders shall be allowed one hour each day in the gym or recreation yard.

**C.      Offender Craft Shop**

Note: State jails do not have craft shops.

The use of the unit craft shop is a privilege and shall be treated as such. The warden may take away an offender's craft shop privilege at any time. Craft shop cards shall be issued on a first–come first–served basis. To participate in the craft shop program, an offender shall:

1. Have a time-earning status of at least Line Class I;

2. Be classified as G1, G2, or G3 minimum custody;

3. Be assigned to TDCJ at least six months prior to submitting a request for craft shop participation;

4. Have a clear disciplinary record for the prior six month period (no major or minor disciplinary case convictions);

5. Have a job assignment (except for offenders who are medically unassigned); and

6. Have sufficient funds on deposit with the Offender Trust Fund to make initial purchase of supplies/materials as follows:

   Required start-up funds:
   
   a.       Basic Arts:                 Minimum of $ 25

   b.       Woodworking:            Minimum of $ 50

   c.       Leather working:         Minimum of $100

   d.       Jewelry:                    Minimum of $100

   e.       Other crafts:             Minimum of $ 25

Offenders shall satisfy the above criteria before submitting an I-60 request to participate in the unit craft shop program and be approved by the warden or designee.
Advanced in-cell piddling programs exist at the warden's discretion. Advanced in-cell offenders shall meet the above rules in order to participate in the craft shop program.

The Craft shop program is a privilege. The warden may take away an offender's piddling privileges at any time.

**DEFENDANTS' DISCLOSURE - 0245**

D.      **Basic In-Cell Art**

All offenders who are eligible for commissary purchases may purchase basic art supplies from the commissary for use in their cells. Once purchased, basic art items shall be considered personal property with the appropriate restrictions applied regarding storage and use. The following provisions also apply:

1.      The sale of any artwork from the basic in-cell art program is prohibited;

2.      Basic art items purchased by an offender for in-cell artwork shall be used for recreational purposes only; and

3.      When an offender has abused the privileges extended with the basic in-cell art program, his privileges may be restricted in accordance with TDCJ *Disciplinary Rules and Procedures for Offenders*.

E.      **Health Services**

Health care is provided for offenders who have medical, dental, psychiatric and psychological problems. Also, physically handicapped offenders receive services through the Assistive Disability Services (ADS).

1.      Medical Services

        The health needs of each offender are assessed when he/she enters prison. Basic medical services including emergency care, sick call and ongoing care for chronic illness are offered at each unit. Licensed medical professionals provide health care. Offenders who need special care may be sent to a unit which provides the specific service(s) needed. Offenders needing hospital care are sent to the TDCJ Hospital at Galveston or to other hospitals which serve TDCJ.

        Offenders who have trouble seeing, hearing, speaking or walking can get help from Medical Services. Their problems are assessed and care is provided if needed. All offenders may access the medical department by submitting a sick call request slip or by direct request to a correctional officer or supervisor.

        Specific details on unit procedures shall be provided at unit orientations and shall also be provided in writing. In the event of an emergency, offenders may request a correctional officer or supervisor to contact the medical department on their behalf. The medical department staff shall provide direction as to disposition based on their clinical judgment.

        As of September 28, 2011 and in accordance with state law, if you initiate a health services visit you be charged an annual $100 fee, unless indigent. The fee covers health care visits that you request for one year and shall be deducted from your Trust Fund. You shall be provided access to health care services regardless of your ability to pay this fee.

        The following health care visits are exempt from being charged a fee:

        a.      An emergency or life-threatening situation;

        b.      Follow-up services recommended by the health care staff;

        c.      Chronic care (including communicable diseases such as HIV, AIDS and TB);

**DEFENDANTS' DISCLOSURE - 0246**

d.      Prenatal care;

e.      Health screening and evaluations related to the diagnostic and reception process; or

f.      Health care services necessary to comply with State law and regulations.

Any complaint about the annual health care services fee shall be made to the Unit Practice Manager, Health Administrator, Director of Nursing, Nurse Manager or Nurse Administrator, as appropriate, immediately upon your receipt of the Trust Fund statement containing the charge. If you are indigent or the balance of your fund is insufficient to cover the fee, fifty percent of the balance and of each future deposit into your Trust Fund shall be applied toward the amount owed until the entire $100 is paid. Any charge to your Trust Fund account causes a statement to be generated for your immediate review. Charges that you believe are ineligible shall be reported within ninety days of the date you were seen in clinic for which the charge occurred. Failure to do so shall result in your inability to grieve the issue because you shall have exceeded time limits for filing.

The Patient Liaison Program does not review concerns from offenders related to the annual health care services fee. If the Unit Practice Manager, Health Administrator, Director of Nursing, Nurse Manager or Nurse Administrator, as appropriate, is unable to resolve your concern, you shall seek resolution through the grievance process. Restoration of the annual health care services fee by the TDCJ Health Services Division can only occur through a sustained Step 2 grievance**.**

2.      Dental Services

All offenders may request dental care. Offenders can use the Sick Call Request form to request an appointment. The Sick call request slip can be found in the housing areas. The dentist decides who needs treatment and when treatment should be given. The most pressing needs are treated first, such as swelling, pain, or infections which are considered urgent. Filling a small cavity or cleaning teeth are not considered urgent needs. An offender with these types of problems may have to wait to be treated.

Offenders are given a toothbrush and toothpaste at the intake centers. When the offenders get to the unit of assignment, they shall be given information about oral hygiene aids available. Offenders shall get instructions on how to keep their teeth and gums in healthy condition. Offenders shall be able to demonstrate that they can keep their teeth and gums healthy before receiving dental care other than emergency or urgent dental care.

The type of dental care offered includes:

a.      Examination;

b.      X-ray;

c.      Cleaning;

d.      Dental care and health education;

e.      Silver and tooth-colored fillings;

**DEFENDANTS' DISCLOSURE - 0247**

f.    Stainless steel temporary crowns; and

g.    Pulling of teeth and oral surgery.

Dental services **NOT** provided include:

a.    Gold or porcelain crowns or bridges;

b.    Braces; or

c.    Dentures (unless there is a severe medical condition requiring them).

3.    Pharmacy Services

Prescribed medications may be obtained at the pill window.  Some over-the-counter medications are provided in the commissary for purchase.  Prescriptions may be picked up at the pill window after 24 hours of being ordered by a provider.  Some prescriptions may take longer to arrive.  The offender shall need his ID card to get medicine at the pill window.  The person at the pill window can answer questions about the medication.

Offenders are allowed to carry some medications on their persons, as determined by the prescribing doctor.  The offender may be given the entire card of medication to be locked up with his personal belongings.  Submit a sick call request for any medications that need to be refilled.

Medications such as vitamins and some over-the-counter medicines can be purchased in the commissary.  The commissary officer can tell offenders, what medicines are sold there.

4.    Psychiatric and Psychological Services

Psychiatrists, psychologists, nurses, and other trained professionals are available to help with mental health issues.  Offenders can use form I-60 to ask for mental health services.  For immediate assistance, offenders may contact a correctional officer or supervisor who shall notify the mental health or medical department.

An offender may be sent to a special Psychiatric Center unit if his problems are severe.  Trained staff can help an offender with these problems to get well.

Mental Health Services provides the following:

a.    Evaluates offenders for potential mental health problems;

b.    Determines mental health diagnosis, mental illness and determines which method(s) of treatment shall be most effective and beneficial to offenders;

c.    Provides access to mental health services for offenders who send a sick call request (SCR) or an I-60.  Access to mental health services shall include routine and crisis intervention.  Access to mental health services may include "follow-up" appointments;

d.    Provides treatment to mentally ill offenders.  This may or may not include medication; and

**DEFENDANTS' DISCLOSURE - 0248**

e.      Ensures confidentiality, but recognizes its limits within the prison.

Mental Health Staff cannot:

a.      Approve, authorize or make telephone calls for offenders;

b.      Change custody levels, line classes, or any similar changes;

c.      Run the unit or judge unit operations or employees; or

d.      Tolerate threats. Offenders are responsible for their own behavior.

5.      Developmental Disabilities Program (DDP)

The Developmental Disabilities Program (DDP) helps offenders with severe learning problems.   Test scores and other information help staff decide who needs this special help.   Offenders learn to read and do math.  They learn to work and to live with other people.  Services include:

a.      Case management;

b.      Basic school work;

c.      Job training;

d.      Psychological (mental health) help;

e.      Counseling;

f.      Recreation; and

g.      Work opportunities.

Offenders who need this type of help are also assisted with finding these services in the freeworld when they are released.

6.      Complaints about Medical Services

Any offender who feels that he/she did not receive medical care that is necessary and appropriate should contact the treating professional at their unit of assignment.   If the offender is unsatisfied with the response from the treating professional, each facility has an informal complaints process in place.   The offender should submit an I-60 and/or letter to the facility based complaint coordinator, who is the facility Health Administrator/Practice Manager.   If the offender continues to be dissatisfied with the response from this process, the offender has the option of filing a grievance (I-27) through the Offender Grievance Process.

## F.    Rehabilitation Programs

The Rehabilitation Programs Division provides rehabilitative programs, pre-release programs, religious programs, and volunteer programs as well as activities to all eligible offenders and confinees within the TDCJ.  Each program establishes eligibility criteria that an offender shall meet in order to participate.

**DEFENDANTS' DISCLOSURE - 0249**

1.     Individualized Treatment Plan (ITP)

The ITP outlines programmatic activities and services for every individual offender and prioritizes participation in recommended programs based on needs, program availability, and applicable parole or discharge date. The ITP records eligibility for, and participation in, treatment programs aimed at reducing recidivism, improving knowledge, positive social interactions, and life skills.

Every CID offender has an ITP developed for the purposes of providing information to staff when identifying programmatic needs; as a tracking instrument to ensure appropriate placements are made; and to enhance reports to the Board of Pardons and Paroles (BPP) regarding offender program participation. Offenders are required to attend programs specified by the ITP, regardless of their parole eligibility, as the programs are available. The ITP may also be utilized by the Reentry and Integration Division (RID) to enhance reentry planning. Any conflicts or problems that may arise from ITP recommendations concerning a program or job scheduling is referred to the UCC for resolution.

The ITP serves to establish institutional conditions required by statute for an offender to be considered for release on parole as defined by Texas Government Code, Section 508.152. Some of these programs are mandatory and non-attendance can result in disciplinary action, loss of good conduct time or negative parole consideration.

2.     Administrative Segregation Pre-Release Program (ASPP)

The ASPP program is for Detention Level 1 and Level II administrative segregation offenders who have 3 months until release (to parole, projected release or discharge date) from TDCJ. It is an in-cell program that provides 120 hours of lessons covering anger management, thinking errors, cultural diversity, and substance abuse education, along with other self-help worksheets.

This 90 day program targets administrative segregation offenders prior to release into the community. The curriculum utilizes cognitive behavioral interventions to address attitudes, thought processes and enhance coping skills, and addresses reentry planning and opportunities. The program curriculum incorporates the use of technology to deliver portions of the materials.

3.     Gang Renouncement and Disassociation Process (GRAD)

The GRAD Process offered to Security Threat Group (STG) members to disassociate from their gang membership and transition from administrative segregation custody into general population (GP). The GRAD process is comprised of three phases lasting approximately 9 months. Once completed, these offenders are provided the opportunity of being assigned a job and the ability to participate in all regularly scheduled unit academic, religious, and volunteer programs.

Those willing to renounce their gang affiliation are required to participate in the process and associated activities until successful completion is attained. Offenders who fail to successfully complete the entire process or become reconfirmed as an STG member after release to the GP shall be returned to administrative custody.

Interested offenders should send an I-60 to the Unit STG Officer.

**DEFENDANTS' DISCLOSURE - 0250**

4.      Serious and Violent Offender Reentry Initiative (SVORI)

This program is a seven month pre-release, street ready initiative for male offenders in administrative segregation custody and includes cognitive restructuring, life skills training, substance abuse education, anger management, literacy, cultural diversity, faith-based courses (voluntary), and self paced activities, all of which target some of the leading causes of recidivism.

To participate, an offender shall be assigned to Security Detention Level 1 and have a FI-7R parole vote or volunteer.  To volunteer, offenders shall: be eligible for mandatory supervision **OR** have a flat discharge date with at least 7 months remaining **OR** be a HB 1433 case.

5.      Administrative Segregation Transition Program

This four month program assists offenders in the transition from administrative segregation to general population.   The program addresses dysfunctional thinking patterns, life and coping skills, problem solving, and building/maintaining appropriate and healthy relationships.

6.      Baby and Mother Bonding Initiative (BAMBI) Program

Eligible offenders who have been screened and approved by TDCJ and UTMB may, after giving birth, complete the remainder of their sentence (with the infant) in a residential facility.   The offender shall participate in child development education, bonding activities, life skills, infant first aid and CPR, nutrition, peer recovery, cognitive skills, and family reunification sessions.   Additional programming may include substance abuse education and GED classes.

Any offender who fails to follow the program rules may be returned to TDCJ and a designated caregiver contacted in regards to the infant.  If the caregiver is unable or refuses to accept custody of the infant, Child Protective Services shall be notified.  Additionally, the offender may be subject to disciplinary action.

7.      Faith-Based Programs

a.      Dorms

Faith-based dorms (FBD) are located on many of the TDCJ prisons and state jails, offering support and accountability, along with an intensive faith-based curriculum and mentoring program provided by faith-based community volunteers and unit chaplains.

The dorms support the practice of religious faith in a group setting and provide the tools needed for improved institutional adjustment and successful reentry into the community.   While participating in a FBD (up to two years), offenders continue to work and attend academic and vocational classes (if eligible) as available on the unit.

b.      InnerChange Freedom Initiative (IFI)

The 24-month pre-release program teaches offenders how to apply biblical values to daily life.  An additional 6 months is spent in aftercare (after release from prison) to assist with successful reintegration into society.

**DEFENDANTS' DISCLOSURE - 0251**

Prison offenders with a parole (FI) vote, who volunteer, are within 24 months to release and who meet the established criteria may be approved.

c.      Voyager

Voyager offers a faith-based, non-denominational curriculum that includes life skills for developing self-esteem, being responsible for actions, understanding values, overcoming bad habits, managing emotions, and building and maintaining healthy relationships. The program varies from 3 to 12 months and is dependent upon available programming space.

Offenders shall volunteer for Voyager and be in a custody that does not preclude participation in programmatic activities. In some instances, completion of Voyager *may* satisfy an FI-3R parole vote.

8.      College Courses

All college expenses incurred by the offender during incarceration shall either be paid at registration or upon release, per legislative requirement effective September 1995.

The state shall provide the cost of two academic courses each semester, which shall be reimbursed to the state by the offender after release as a condition of parole. Offenders may make payments prior to release. Additional courses may be taken each semester at the expense of the offender. These costs shall be paid by the offender at registration from personal funds or by other financial aid arrangements between the offender and the college or university.

Academic courses are available on a wide variety of units in all areas of the state. University courses are available on selected units with limited major areas of study. Offenders housed on a unit that does not offer the academic program for which they qualify may request a unit transfer for participation by submitting the appropriate forms to the RPD Operations Department in Huntsville. The TDCJ State Classification Committee (SCC) shall make all decisions on unit assignments.

Minimum requirements for enrollment in college programs are:

a.      A verified high school diploma, GED, or at least 12 hours of transferable college credit from an accredited institution;

b.      Appropriate classification and disciplinary status;

c.      Appropriate release date for course completion; and

d.      Appropriate medical classification for unit assignment.

9.      College Technical Courses

The state shall provide the initial cost of two college level vocational courses, to be reimbursed to the state by the offender after release as a condition of parole. Offenders may make payments prior to release. Additional courses may be taken, on a space-available basis, at the expense of the offender. These costs

**DEFENDANTS' DISCLOSURE - 0252**

shall be paid by the offender at registration from personal funds or by other financial aid arrangements between the offender and the college or university.

College vocational courses are available on a wide variety of units. Offenders are placed on a waiting list for the requested vocational course. Offenders with the least amount of time remaining on his/her sentence receive priority placement in the requested course. Offenders housed on a unit that does not offer the vocational training course for which they qualify shall be placed on a waiting list. The RPD Operations Department in Huntsville shall request unit transfers for offenders through the SCC. The SCC makes all decisions on unit assignments. An offender may participate in two college-level vocational courses while incarcerated. Only one college vocational course may be taken while the offender is outside of 5 years of a projected release or maximum expiration date.

Minimum requirements for enrollment in college vocational programs are:

a.      A verified high school diploma, GED or at least 12 hours of transferable college credit from an accredited institution;

b.      Appropriate composite TABE score;

c.      Appropriate classification and disciplinary status;

d.      Appropriate release date for course completion; and

e.      Appropriate medical classification for unit assignment.

10.     Southwestern Baptist Theological Seminary (SWBTS)

The SWBTS provides successful offenders a fully accredited, four-year Bachelor Degree in Biblical Studies upon completion of 230 college hours.

Prison offenders shall meet the criteria of both the TDCJ and SWBTS and agree to serve as peer mentors within TDCJ after the degree has been awarded. Selection is limited to 40 candidates per year.

Minimum requirements for enrollment are:

a.      A verified high school diploma or GED;

b.      An EA score of 11 or higher;

c.      Appropriate classification and disciplinary status;

d.      Appropriate release date for course completion (10 years of confinement remaining *before* parole eligibility); and

e.      Shall volunteer to participate.

11.     Religious Services

Religious services and support are provided to all interested offenders. There is at least one chaplain assigned to each unit. Chaplains provide general spiritual support. Chaplains listen, advise, guide and help offenders during family emergencies.

**DEFENDANTS' DISCLOSURE - 0253**

At times, volunteers help Chaplains with their duties.  Volunteer groups also come into the prison to sing, preach, teach, and to provide other help.

News about religious programs is posted on unit bulletin boards.  Leaflets may also be distributed that announce programs.  Sometimes, offenders may hear about a program or service from other offenders.  All eligible offenders may attend the unit services.  If an offender is sick, in administrative segregation or solitary, he may have a chaplain or volunteer visit.

12. Sex Offender Rehabilitation Programs and Evaluation

The Sex Offender Rehabilitation Programs (SOTP) are located on various TDCJ units throughout the State of Texas.  The SOTP conducts evaluations and offers sex offender rehabilitation services for both male and female offenders.

a. Minimum requirements for eligibility are:

(1) G2 or G3 custody.

(2) Within 15-24 months of release.

(3) Appropriate parole vote (FI-18R, 9R, or 4R)

b. Sex Offender Treatment Program (SOTP-18)

The SOTP-18 is a high intensity treatment program for sex offenders who have been assessed to pose a high sexual re-offense risk. Participants may be required to attend sex offender treatment for the duration of their supervision after release.

c. Sex Offender Treatment Program (SOTP-9)

The SOTP-9 is a moderate intensity treatment program for sex offenders who have been assessed to pose a moderate sexual re-offense risk. Participants may be required to attend sex offender treatment for the duration of their supervision after release.

d. Sex Offender Education Program (SOEP-4)

The SOEP-4 is a 4-month didactic for sex offenders who are determined to pose a low risk to sexually re-offend after their release from TDCJ. Participants may be required to attend sex offender treatment for the duration of their supervision after release.

e. Risk Assessment

The TDCJ has established a process to assess the risk a sex offender poses to the community.  Assigned risk levels are "High," "Moderate," or "Low."  The basic measures for assessing risk-level are "Static" and "Dynamic."

The Static measure uses the STATIC-99R (Revised).  This instrument utilizes static (unchangeable) factors that have been correlated with sexual reconviction in adult males and is completed for all offenders required to register as a sex offender prior to release from the TDCJ.

DEFENDANTS' DISCLOSURE - 0254

The Dynamic measure uses the STATIC-99R plus two additional instruments (typically through an interview process). Combined, these yield a "dynamic" level which takes into account factors such as education and treatment, allowing for a variable risk level. A Dynamic Risk Assessment (DRA) is completed for all offenders serving a sentence for which sex offender registration is required prior to release from the TDCJ.

13.   Civil Commitment of Sexually Violent Predators

In 1999, the Texas Legislature passed a law that provides for the civil commitment of sexually violent predators. The law requires that if an offender has two or more convictions for one of the following sex offenses, he should be referred for civil commitment consideration: aggravated sexual assault, sexual assault, indecency with a child by contact, aggravated kidnapping with the intent to commit a sex offense, or burglary of a habitation with the intent to commit a sex offense. In addition, the attempt, conspiracy, or solicitation to commit one of these offenses is a qualifying offense. Similar offenses committed in other states, under federal law or the Uniform Code of Military Justice also qualify, as do adjudications of delinquency in juvenile court for these types of offenses. In addition, a finding of not guilty by reason of insanity (NGRI) for one of these offenses coupled with a conviction for one of these offenses qualifies an offender, as does two findings of NGRI. Successfully completed probations or deferred adjudications count as final convictions for purposes of civil commitment. The offender shall be currently serving a conviction for one of these offenses.

The Texas civil commitment process is based on outpatient treatment and supervision. The Office of Violent Sex Offender Management (OVSOM) is responsible for case management and treatment services.

Sex offenders who are within 16 months of their scheduled release date are transferred to the SOTP for an evaluation, and their case is presented to the Multidisciplinary Team (MDT). The MDT is jointly appointed by the Executive Director of TDCJ and the Commissioner of the Texas Department of Mental Health and Mental Retardation (MHMR) and includes representation for the TDCJ, OVSOM, MHMR, OVSOM and Texas Department of Public Safety (DPS). The team determines whether the offender has been convicted of two qualifying offenses and whether the offender is likely to commit a sexually violent offense after release or discharge. If the team determines that re-offense is likely, they shall recommend that the offender be seen by an expert. If the expert determines that the offender has a behavioral abnormality that makes him likely to commit a predatory act of sexual violence after release or discharge, the case may be referred to the Special Prosecution Unit for consideration. If a petition is filed, the offender shall receive a copy. State Counsel for Offenders shall be appointed to represent indigent offenders.

a.   Offense Codes Requiring Registration

In Chapter 62 of the Texas Code of Criminal Procedure, "reportable conviction or adjudication" is a conviction or adjudication, including an adjudication of delinquent conduct or a deferred adjudication, regardless of the pendency of an appeal, for:

(1)   A violation of Penal Code §§ 21.02 (continuous sexual abuse of a young child or children); 21.11 (indecency with a child), 22.011

**DEFENDANTS' DISCLOSURE - 0255**

(sexual assault), 22.021 (aggravated sexual assault), or 25.02 (prohibited sexual conduct);

(2)     A violation of Penal Code §§ 43.05 (compelling prostitution), 43.25 (sexual performance by a child), or 43.26 (possession or promotion of child pornography);

(3)     A violation of Penal Code § 20.04(a)(4) (aggravated kidnapping, if the defendant committed the offense or engaged in the conduct with intent to violate or abuse the victim sexually);

(4)     A violation of Penal Code § 30.02 if the offense is punishable under subsection (d) (burglary of a habitation, if the defendant committed the offense or engaged in the conduct with intent to violate or abuse the victim sexually);

(5)     A violation of Penal Code §§ 20.02 (unlawful restraint), 20.03 (kidnapping), or 20.04 (aggravated kidnapping), if the judgment contains an affirmative finding under art. 42.015, Texas Code of Criminal Procedure that the victim was younger than 17 years of age at the time of the offense or the order in the hearing or the papers in the case contain an affirmative finding that the victim or intended victim was younger than 17 years of age;

(6)     The second violation of Penal Code § 21.08 (indecent exposure, unless the second violation results in a deferred adjudication);

(7)     An attempt, conspiracy, or solicitation, as defined by Penal Code §§ 15.01-.03, to commit an offense or engage in conduct listed in a-e, or k;

(8)     A violation under the laws of another state, the United States, a foreign country, or the Uniform Code of Military Justice (UCMJ) for an offense containing elements that are substantially similar to the elements of an offense listed in a-e, g or j-k, unless the violation results in a deferred adjudication;

(9)     A second violation under the laws of another state, the United States, a foreign country, or the UCMJ for an offense containing elements that are substantially similar to the elements of an offense of indecent exposure, unless the second violation results in a deferred adjudication;

(10)    A violation of Penal Code § 33.021 (online solicitation of a minor, except for a violation under subsection (b)); or

(11)    A violation of Penal Code §§ 20A.02(a) (3), (4), (7), or (8) (trafficking of persons).

14.     Sex Offender Registration Program Information

Sex offender registration is required in all 50 states.  Offenders convicted of certain sexual offenses on or after September 1, 1970, are required by law to register with local law enforcement authorities.   TDCJ shall complete the registration paperwork at the time of your release from prison and send it to the Department of Public Safety (DPS) and local law enforcement agency in the

DEFENDANTS' DISCLOSURE - 0256

community where you shall live.  Within 7 days of your release, you shall report to the local law enforcement agency and verify the information.  Failure to do so may result in a new felony conviction.

TDCJ shall also indicate your risk level on the registration form.  If you are noted as high risk and were convicted of a sex offense on or after January 1, 2000, your neighbors will receive a post card about your release to the community.  Information can be printed in the newspaper on certain sex offenders at the discretion of local law enforcement and shall be available on the DPS website regardless of risk level.

Your parole officer will be able to answer questions concerning the Texas Sex Offender Registration Program.

15.    Orchiectomy

The RPD coordinates requests for an Orchiectomy, which is another term for surgical castration.  An offender may request this procedure if convicted of (1) Continuous Sexual Abuse of Young Child or Children, (2) Indecency with a Child, (3) Sexual Assault of a Child, or (4) Aggravated Sexual Assault of a Child, and has been previously convicted of one of those offenses.  The offender shall be 21 years of age or older, submit the request in writing, and sign a statement admitting guilt for the offenses for which he has been convicted.  He shall be placed in the 18-month SOTP which shall be completed before the surgery shall be performed.

During the course of treatment, a psychiatrist and psychologist shall evaluate the offender to determine suitability for the procedure, and counsel the offender before he undergoes the procedure.  In addition, a monitor appointed by the Texas State Board of Medical Examiners shall consult with the offender to ensure that medical professionals have provided adequate information regarding surgical castration and that the offender has not been coerced to have the procedure performed.

An offender can change his mind at any time before actually undergoing the procedure.  However, once an offender has requested the surgery but later decides not to proceed, he shall no longer be eligible for the surgery at any time in the future.  The request for, or completion of, surgical castration has absolutely no influence on parole consideration, favorable or otherwise.  The Board of Pardons and Paroles cannot require that an offender receive an Orchiectomy as a condition of release.

If you are a qualifying sex offender interested in this procedure, please send an I-60 to the RPD-SORP.

16.    Substance Abuse Treatment Programs

The Substance Abuse Treatment Programs provide evidence-based substance abuse treatment services appropriate to the needs of individual offenders by utilizing assessment tools developed specifically for the populations served. Treatment goals for all of the substance abuse programs include rehabilitation, recovery, and reduction of recidivism.

**DEFENDANTS' DISCLOSURE - 0257**

17.     Driving While Intoxicated (DWI) Program

The 6-month DWI program is for prison offenders identified as needing intensive treatment for DWI offenses. This program blends evidence-based practices that focus on alternatives to drinking and driving, alcohol addiction and abuse, victim awareness, medical effects, lifestyles, stress, assertion, cognitive therapy, journaling, etc.

Offenders with an active DWI conviction may be placed in the program by parole-vote or by the State Classification Committee (SCC).

18.     In-Prison Therapeutic Community (IPTC)

The IPTC is a 6-month intensive therapeutic community treatment program for prison offenders required to participate as a condition of their parole and voted by the Parole Board. Female prison offenders identified with special needs shall participate in the program for 9 months.

There are three in-prison phases that target criminal thinking errors, drug seeking behavior and relapse prevention. There are additional phases (aftercare) once released from prison.

19.     Pre-Release Substance Abuse Program (PRSAP)

The PRSAP is a 6-month intensive program for male prison offenders who have serious substance abuse or chemical dependency issues along with antisocial characteristics. Programming consists of basic therapeutic community language and rules, including exposing criminal thinking errors and drug seeking behaviors through therapeutic confrontation, practice of relapse prevention methods and problem solving techniques.

20.     Pre-Release Therapeutic Community (PRTC)

The PRTC is a 6-month intensive program with the primary purpose of integrating and maximizing services to male prison offenders within a therapeutic community environment. Services include educational and vocational programs, substance abuse treatment, and cognitive restructuring. The substance abuse track targets those with serious substance abuse issues as well as those who are non-chemically dependent.

21.     State Jail Substance Abuse Program (SJSAP)

The SJSAP is a cognitive-behavioral intervention process which includes fellowship and peer support activities as an integral component. There are two tiers available. One tier is 60-90 days in length; the other is 90-120 days.

Confinees shall have a sufficient length of confinement to complete appropriate tier. Participants may be placed in the SJSAP program by the UCC process (with a SJSAP representative); a screening process conducted by SJSAP staff; or, volunteer for the program.

22.     Substance Abuse Felony Punishment Facility (SAFPF)

Offenders are sentenced to a SAFPF by a judge as a condition of community supervision in lieu of prison or state jail, or, voted in by the Board of Pardons and Paroles as a modification of their parole. The SAFPF is a 6-month intensive

**DEFENDANTS' DISCLOSURE - 0258**

therapeutic community (9-months for special needs offenders). Offenders charged with or convicted of certain sex offenses are not eligible.

There are three in-prison phases that target criminal thinking errors, drug seeking behavior and relapse prevention. There are additional phases (aftercare) once released from prison.

Should you have further questions on any of the programs listed above, you may write the Substance Abuse Treatment Program at:

Truck Mail:     RPD – Substance Abuse
                Administration Building - Huntsville

First Class:    RPD – Substance Abuse
                P.O. Box 99
                Huntsville, Texas 77342

23.  Support Groups

There are a variety of active support groups in prison, state jail, and private facilities, as well as in parole and community supervision offices. These include drug and alcohol addiction support groups such as Alcoholics Anonymous, Winner's Circle, Narcotics Anonymous, Cocaine Anonymous, Secular Organization for Sobriety, Celebrate Recovery, CASA and Overcomers, and many other recovery support groups.

There are spiritual and motivational support groups, such as Quest for Authentic Manhood, Breaking Free, and Making Peace with Your Past. These and many others provide faith and non-faith based support to improve life skills, decision-making skills and self-worth. Eligible offenders may participate in these groups regardless of their faith affiliation.

24.  Volunteer Programs

The TDCJ places a significant focus on volunteer services, realizing volunteers are essential to the rehabilitation of offenders, as well as to their reentry into the community. Volunteers assist by providing literacy and educational programs, life skills training, job skills training, parent-training, health awareness, prevention training, arts and crafts, drug and alcohol groups, faith-based programming, and other activities that improve institutional adjustment, aid in the transition between confinement and society, and reduce recidivism.

25.  Youthful Offender COURAGE Program

Prison offenders ages 14 to 17 are placed in the Youthful Offender COURAGE (Challenge Opportunity Understanding Respect Acceptance Growth Education) Program after initial intake. While housed on the program unit, in addition to school and work assignments, the offender shall participate in one of two tracks. One track is designated for those who will be releasing from TDCJ to community and the other to those who will be releasing to general population within TDCJ. Both tracks function with a level system: the higher the offender advances in levels is directly related to the privileges that may be received.

Youthful offenders are housed in TDCJ prisons and state jails that are equipped with Youthful Offender Programs. Youthful offenders identified with special needs shall be assigned to an appropriate facility designed to meeting their needs; such as offenders who are mentally impaired or physically disabled.

**DEFENDANTS' DISCLOSURE - 0259**

G.    **State Counsel for Offenders**

State Counsel for Offenders (SCFO) can provide independent legal counsel to indigent offenders incarcerated in TDCJ-CID.  This service is only for offenders who cannot afford to pay an attorney to assist them with their legal problems.   SCFO operates independently of TDCJ and all legal correspondence between an offender and SCFO is confidential under the laws concerning attorney-client privileges.

There are five legal sections within SCFO:  Criminal Defense, Appellate, Civil Defense, Immigration and General Legal.  These sections perform the following functions:

1.    The Criminal Defense Section represents indigent offenders who are indicted for felonies allegedly committed while incarcerated within TDCJ-CID.   Legal assistants and investigators assist attorneys in this section.  Investigators shall frequently visit with offenders first to gather information about the alleged crime, interview witnesses and take photographs.   Attorneys shall represent the offender in all court appearances, file all necessary motions, obtain plea agreements, and try the case.

NOTE:  Correspondence with SCFO employees about the case is privileged and confidential.  Any other communication between an offender and other people (including other offenders) is NOT confidential and can be used against the offender during a trial or other administrative proceeding.

2.    The Appellate Section assists indigent offenders who need help with appeals and writs.  If the offender represented by a Criminal Defense Section attorney is convicted of a crime, SCFO may pursue an appeal on behalf of the offender.  If the appellate section pursues the case, they shall prepare briefs and argue the case before the appropriate appellate courts.

Attorneys shall also assist offenders who discover substantial errors in their convictions.  It is important for the offender to be very specific about the error that was made in the case.  Most errors will not result in a reversal of the case or the right to a new trial.  Attorneys may assist offenders by researching whether there is a valid, provable legal reason to file a writ of habeas corpus or a direct appeal to either set aside or modify the conviction or sentence.

Legal Assistants working under the direction of the Appellate Section investigate time credit issues to determine whether an offender is receiving all their time credits.   Offenders who feel TDCJ is improperly computing their time credits should first use the Dispute Resolution Process to resolve the error.

NOTE:  The Dispute Resolution Process cannot resolve jail time credit problems brought about by mistakes on the Judgment and Sentence that is holding them in custody.  Offenders who feel the judge failed to award enough jail time credit on the judgment should skip the Dispute Resolution Process.

3.    The Civil Defense Section represents indigent offenders facing commitment under Chapter 841 of the Health and Safety Code, commonly known as the Sexually Violent Predator (SVP) statute.  Attorneys, legal assistants and investigators work together to help provide a defense to civil commitment. Attorneys shall handle all parts of the case, including discovery, depositions and trial.  If an offender is civilly committed, the Appellate Section shall determine whether there are any issues to appeal.  Under some circumstances SCFO may

**DEFENDANTS' DISCLOSURE - 0260**

continue its representation of the offender in the appellate process, and during biennial reviews.

4.   The Immigration Section assists indigent offenders who are scheduled to appear before the Immigration Judge as part of a removal proceeding, formerly known as "deportation."   SCFO shall receive a notice if a TDCJ-CID offender is the subject of a removal proceeding and shall visit the offender upon the offender's arrival at a Huntsville unit for the removal hearing.  If the attorney determines the offender has a defense to removal, SCFO shall represent the offender during the removal proceeding.

The Immigration section shall also assist offenders interested in the Prisoner Exchange Program.   That program allows offenders to serve the remainder of their sentences in their own country.  Not all countries participate in the program.

Any offender who has questions about an immigration issue may write to SCFO for information.

5.   The Legal Services Section provides assistance for matters not covered by one of the other sections.  Attorneys in this section can assist offenders with pending charge problems, detainers, and probation revocation waivers.  They can also provide answers to questions about civil actions, powers of attorney, expunctions, divorces, termination of parental rights and proxy marriages.  Basic information about all these topics is included in the State Counsel for Offenders (SCFO) *Legal Handbook*.  Offenders should consult the SCFO *Legal Handbook* before writing SCFO for assistance.  The SCFO *Legal Handbook* is available in every unit law library.

6.   Innocence and Wrongful Convictions

Chapter 13 of the SCFO *Legal Handbook* deals primarily with innocence claims. Offenders are offered contact information for various innocence projects throughout the State of Texas.   The Texas Prisoner Innocence Questionnaire (TPIQ) is designed to allow the offender to provide as much information as possible about the case so that the prospective innocence project can decide whether it is a viable case or one worthy of pursuit.  Legal materials addressing both innocence and wrongful conviction are available in the law library.

7.   Prisoner's Civil Rights

Claims of alleged civil rights violations are addressed in Chapter 1 - Introduction, Section 1.4, Areas Beyond State Counsel for Offenders' Scope of Assistance in the SCFO *Legal Handbook*.  Offenders are informed of a number of areas, including civil rights claims and conditions of confinement or supervision that are outside of the scope of SCFO representation.  A number of other areas also are listed under Section 1.4, including internal TDCJ matters, disciplinary actions, classification disputes, grievances, and parole matters.   Offenders are encouraged to seek outside counsel or to pursue the matter on their own.  Legal materials addressing this topic are available in the law library.

8.   How Offenders Can Get Help

Offenders who want help with legal problems should first consult the SCFO *Legal Handbook*.   The SCFO *Legal Handbook* contains valuable information, along with sample pleadings and letters, that can help answer many legal questions. Offenders who need help using the SCFO *Legal Handbook* should ask the Law

**DEFENDANTS' DISCLOSURE - 0261**

Librarian.  If the SCFO *Legal Handbook* does not answer the offender's question, the offender should write SCFO with the specific issue or problem they are having by using an I-60.  If the issue or problem cannot be adequately explained on the I-60, the offender should write on regular paper, place the contents in an envelope marked "Truck Mail" and send the letter to SCFO.

It helps speed up the process if the offender places the correct section (Criminal Defense, Appellate, Civil Defense, Immigration or Legal Services) on the correspondence.  If the offender's problem involves time credits and the Dispute Resolution Process was not successful in resolving the issue, the offender should obtain a Jail Time Questionnaire form from the Law Librarian, fill it out, and send it to SCFO.

Offenders shall contact SCFO directly – the request for help cannot come from friends or family members.  ALL REQUESTS MUST HAVE THE OFFENDER'S NAME AND TDCJ NUMBER.  If that information is missing, SCFO cannot help the offender.

SCFO CANNOT assist offenders with civil rights issues, disputes about TDCJ policy or procedures, fee-generating cases, or parole decisions.  For help with those issues please see Chapter 1 of the SCFO *Legal Handbook*.

**H.    Ombudsman Program**

In accordance with Section 493.016 of the Texas Government Code, the TDCJ Ombudsman Program provides a single point of contact for elected officials and members of the general public who have inquiries regarding the agency, offenders or staff.  When necessary, investigations shall be coordinated through appropriate TDCJ officials.  The TDCJ Ombudsman Office strives to provide timely responses to the public. The Ombudsman office is for offender family members, friends, and the public.  The appropriate channel for offenders to use is the offender grievance process.

1.    An Ombudsman can do the following:

    a.    Act as a liaison between TDCJ and the general public;

    b.    Respond to informational inquiries regarding agency policies, procedures, or actions;

    c.    Respond to questions concerning a specific offender;

    d.    Facilitate problem resolution;

    e.    Make appropriate referrals to agency staff; and

    f.    Act as a contact and information resource for special interest groups

2.    An Ombudsman cannot:

    a.    Override decisions made by appropriate authorities (i.e., Judges, Board of Criminal Justice, Office of Inspector General, etc.); or

    b.    Handle issues outside the oversight of the Texas Department of Criminal Justice.

**DEFENDANTS' DISCLOSURE - 0262**

I.      **Language Assistance (Asistencia de Lenguaje)**

The TDCJ provides language assistance in several program and service areas for offenders who speak only Spanish or who are very limited in their ability to speak English. Those services included are:

1.      Grievance Procedure

        Offenders who are involved in the grievance procedure and need language assistance because they are having difficulty understanding the Grievance response should contact a *Spanish Staff Interpreter* to request language assistance.

2.      Disciplinary Process

        Offenders involved in the disciplinary process who need language assistance shall be provided such assistance as required.  The counsel substitute assists offenders in preparing for the hearing by gathering witness statements, securing any relevant documentary evidence and other relevant information as necessary. The counsel substitute shall represent the offender during the hearing.

3.      Documents in Spanish

        The TDCJ provides many documents and informational notices in Spanish.  If an offender needs a document or notice in Spanish, he should contact a *Spanish Staff Interpreter* who shall determine if the information is already available in Spanish and get the offender a copy, if appropriate.

4.      Law Library

        Offenders in need of language assistance in the law library should contact the Law Library Supervisor.

5.      State Counsel for Offenders

        Offenders who need language assistance to communicate with a state counsel attorney or paralegal should contact the unit law library and request language assistance.

6.      Windham School District

        The Windham School District offers English as a Second language at a number of facilities for offenders who speak little or no English.

J.      **Correspondence Rules**

Offenders may send and receive mail while in the TDCJ.  There are four types of correspondence including general, special, legal and media correspondence.

Offenders may send letters to as many people as they choose.  Offenders shall go through the TDCJ to receive and send mail.  Mail may not be smuggled in or out of TDCJ units or facilities.  All rules for sending and receiving mail shall be followed.

Offenders should tell their family and friends to address their letters with the offender's name, number and unit address.  Offenders may not get packages from friends and family.  Offenders may receive approved publications, such as magazines, books or

**DEFENDANTS' DISCLOSURE - 0263**

newspapers, from the publisher or store that sells them.  Offenders may not receive packages containing writing paper.  Stationery shall be purchased through the commissary, provided through the indigent supply program or purchased by offender families and friends through the eCommDirect program.

Offenders may not receive cash on delivery (COD) items or packages with payment on approval from any source.  Offenders may not receive money, stamps, or other negotiable items in the mail.

Offenders may buy stamps and writing paper in the commissary.  Offenders with less than $5 in their trust fund may request correspondence supplies.  The mailroom or law library provides this service.  Rules for getting postage stamps or paper are posted on each unit.

Each unit has a mailroom.  TDCJ employees staff the mailroom.  No offender may handle the mail of another offender.  An offender with questions about the mail should see a mailroom supervisor.

The rules governing offender correspondence are found in Chapter 3 of this handbook. Read them closely.

**K.** **Visitation**

It is the policy of the TDCJ to enable and encourage offenders, consistent with security and classification restraints, to have visits with family members and friends.  Visitation within a TDCJ unit shall be conducted in an accommodating manner, in keeping with the need to maintain order, the safety of persons, and the security of the unit.  All offender visits (except for attorney-clients visits) are subject to electronic monitoring.  Offender visits are conducted in accordance with the provisions of the TDCJ *Offender Visitation Plan* and under the direction of the warden.

While it is recognized that visitation is an integral component of the rehabilitation process and every effort shall be made to ensure that visits are conducted under the least restrictive protocol available, offenders ***shall not*** be assigned to a unit ***solely*** for convenience of visitation privileges.  While it is recognized that unit assignments may create hardships for visitation, these assignments are based on many considerations in addition to offender or family convenience.

For general and contact visitation rules, refer to the Offender Visitation Rules in Chapter 2 of this handbook.  For information on legal visits, refer to the Access to Courts Rules in Chapter 4.

**L.** **Offenders Access to Telephones**

1.  Methods

     Three methods, based on eligibility criteria, are available for an offender to place outgoing telephone calls:

     a.  A call placed through the Offender Telephone System (OTS).

     b.  A collect call placed from a TDCJ-owned unit telephone.

     c.  Telephone calls placed in accordance with BP-03.81, "Rules Governing Offender Access to Courts, Counsel, and Public Officials."

DEFENDANTS' DISCLOSURE - 0264

2.        Procedures for the Offender Telephone System

    a.    Eligible Criteria

        Offender access to the OTS shall be validated and initiated by the telecommunications contractor based on the following eligibility requirements:

        (1)    Offenders classified as general population Levels 1, 2, 3, or 4 or protective safekeeping shall be authorized to access the OTS;

        (2)    Each eligible offender shall have a Personal Biometric Identifier (PBI) which shall be used to access the OTS and a unique Personal Identification Number to verify the PBI.  An exception is an eligible offender who has been identified by medical as having a hearing impairment, and these offenders would need the voice biometric requirement is removed;

        (3)    Offenders in a psychiatric inpatient program or Developmental Disabilities Program (DDP) are allowed access to the OTS in accordance with the offender's treatment plan; and

        (4)    Eligible offenders in the infirmary shall have access to the OTS.

    b.    Ineligible Criteria

        (1)    Offenders in transient status, prehearing detention, solitary confinement, cell restriction, or special cell restriction shall not be permitted access to the OTS, regardless of custody designation.

        (2)    An offender's access to the OTS may be suspended if the offender is found guilty of a major disciplinary violation in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders.*

3.        Outgoing Calls

    All outgoing calls through the OTS shall be placed using one of the following methods:

    a.    Debit Calls - To complete a call through the OTS using the debit option, funds shall be available in the offender's telephone account.

        (1)    The funds located in the offender's telephone account may be transferred from the offender's Inmate Trust Fund (ITF) account by the offender or offender's friends and family may deposit funds directly into the offender's telephone account.

        (2)    An individual does not have to be on an offender's Approved Calling List to deposit money in an offender's telephone account.

        (3)    Once funds are placed in the account, the funds become the property of the offender.  An offender may request a refund of the account balance from the telecommunications contractor after the offender's release from the TDCJ.

**DEFENDANTS' DISCLOSURE - 0265**

b.  Collect Calls - Collect calls may be placed through the OTS and billed directly to the party called.  Prepaid accounts are available to friends and family members by contacting the telecommunications contractor.

c.  An offender's telephone account shall be separate from the offender's ITF account.  Funds in an indigent offender's telephone account shall not affect the offender's indigent status, and the TDCJ shall not seize funds in an offender's telephone account as the result of a disciplinary action.

4.  General Guidelines for Offender Telephone System Calls

a.  Offenders shall conduct telephone conversations in an acceptable manner.  Loud, boisterous conversations are not permitted.  Offenders are prohibited from speaking in code, passing gang related information, planning criminal activity, or using the telephone in furtherance of any criminal conduct.  Threats, obscenities, and other types of abusive language may result in immediate termination of the telephone call, suspension of future telephone privileges, and disciplinary action.

b.  Unauthorized contact with a victim or a member of a victim's family by an offender is prohibited.

c.  Offenders are prohibited from dialing or answering any telephone calls on TDCJ-owned telephones.

d.  Eligible offenders may only call adults listed on the offender's Approved Calling List once the adult has successfully registered to receive calls from the offender.  Offenders are not allowed to speak to any adult not listed on the offender's Approved Calling List.

e.  Eligible offenders shall have the ability to place calls to the Office of the Inspector General (OIG) and similar organizations as designated by the Correctional Institutions Division (CID) director or designee.  These calls shall be at no charge to the offender and have no impact on the offender's OTS account balance.

f.  Offenders are permitted to call only telephone and post-paid cell phone numbers within the continental United States and Hawaii.

g.  The OTS shall be located within the dayrooms or living areas of the cellblock or dormitories and other designated locations.

h.  Eligible offenders are permitted to place calls to their attorney(s) of record once the attorney has successfully registered to receive calls from the offender.

i.  All telephone calls placed using the OTS are subject to monitoring and recording, except calls to the offender's attorney(s) of record.

j.  An attorney listed on the offender's Approved Calling List who has not successfully registered through the attorney registration process shall not be considered as the offender's attorney(s) of record.  This type of call has no expectation of privacy during a telephone conversation placed using the OTS, and these calls are subject to monitoring and recording.

**DEFENDANTS' DISCLOSURE - 0266**

k. All offender complaints and concerns regarding the OTS, other than eligibility criteria, shall be addressed by submitting an Offender Assistance Request Form to the telecommunications contractor. Forms shall be provided by the telecommunications contractor to all facilities where the OTS is available.

l. The following types of calls and conversations shall not be permitted.

    (1) Placing calls to pre-paid cell phones;

    (2) Calls to businesses;

    (3) International calls;

    (4) Forwarded calls;

    (5) Three-way calls;

    (6) Calls to victims, a member of a victim's family, or individuals with whom the court has ordered no contact;

    (7) Conversations with anyone not on the Approved Calling List;

    (8) Placing calls on speakerphones; and

    (9) Offenders are not to manipulate the phone system in order to call a number that is not registered on the offender's Approved Calling List.

m. Offenders found having or soliciting these types of calls or conversations are subject to disciplinary action in accordance with the *TDCJ Disciplinary Rules and Procedures for Offenders.*

n. Friends or family members discovered facilitating these types of calls or conversations may be blocked or removed from the offender's Approved Calling List. Friends or family members may be blocked by the warden from receiving calls from the offender for a period of time not to exceed 45 days.

o. An individual removed from an offender's Approved Calling List may appeal the decision by submitting a written appeal to the Director's Review Committee within 14 days from the date on the written notice. If the appeal is denied, the individual may submit another appeal in six (6) months.

5. Calls Placed on TDCJ-Owned Telephone Equipment

a. Eligibility Criteria

    (1) Offenders who are not eligible for the OTS due to custody designation shall be authorized access to TDCJ-owned telephones designated by the warden.

    (2) Offenders who are eligible for the OTS are not authorized access to TDCJ-owned telephones to contact friends and family

**DEFENDANTS' DISCLOSURE - 0267**

members, except in extraordinary circumstances and at the discretion of the warden.

(3)    In order to be eligible to place a call using a TDCJ-owned telephone, offenders shall not have been found guilty of any major disciplinary violations within the last 90 days, or 30 days for state jail and substance abuse felony punishment (SAFP) offenders. Offenders whose medical condition precludes work and who meet all other requirements are eligible to place a call using a TDCJ-owned telephone.

b.    Request and Approval Procedures

(1)    To request a phone call using a TDCJ-owned telephone, offenders shall submit an Inmate Request to an Official (I-60) for the warden's approval.

(2)    If no security concerns exist, offenders in Level I administrative segregation may request and receive authorization for a telephone call at the warden's discretion.

(3)    Calls placed to an offender's attorney of record or the General Consulate shall be requested and approved in accordance with BP-03.81, "Rules Governing Offender Access to the Courts, Counsel, and Public Officials."

6.    Collect calls are permitted for outgoing telephone calls, unless the call is a local number.

7.    Offenders are limited to one telephone call every 90 days or 30 days for state jail and SAFP offenders.

8.    Calls placed on TDCJ-owned telephones are limited to five minutes in duration. Calls may be further restricted during high traffic periods, such as Christmas holidays, when a three minute limit would allow more calls to be made.

9.    Offenders are allowed to call only those persons who appear on the offender's Visitors List. Requests for an exception submitted on an I-60 are reviewed and approved at the discretion of the warden or designee.

10.    Offenders are permitted to call only telephone numbers within the continental United States and Hawaii.

11.    Calls placed on TDCJ-owned telephones are dialed and monitored by authorized security staff appointed by the warden or designee. An interpreter shall be available to monitor calls for those offenders who speak only Spanish or for those offenders who are bilingual but whose family members are not. An interpreter may monitor calls for those offenders who speak foreign languages other than Spanish or those offenders who are bilingual but whose family members are not.

12.    Attorney Registration

a.    An offender's Attorney of Record may register by going to the texasprisonphone.com website; or

**DEFENDANTS' DISCLOSURE - 0268**

b.　The attorney may send a notice, on the attorney's letterhead, containing the following information in the body of the letter.

(1)　Attorney Name

(2)　Attorney Phone Number

(3)　Attorney state bar association number, and state registration. If not the Texas bar, the phone number of the appropriate bar association.

(4)　The Offender's TDCJ number and the offender's first and last name.

(5)　A statement that the attorney has an attorney-client relationship with the listed offender.

Mail to:　CenturyLink Friends and Family Enrollment
720 Western Blvd
Tarboro, NC 27886

13.　Friends and Family Registration

a.　To receive calls, the telephone number shall be listed on the offender's Approved Calling List and shall be registered with the Telephone Contractor to receive calls.

b.　An offender's family and friends may purchase telephone minutes for use by an eligible offender directly from the Telecommunications Contractor. Individuals purchasing minutes are not required to be on the offender's approved Visitors List.

c.　Friends and family wishing to receive calls can obtain more information on the TDCJ website (www.tdcj.texas.gov) or the Contractor's website (www.texasprisonphone.com). Friends and family may also register by calling (866) 806-7804. The following information is required for registration.

(1)　Offender's TDCJ ID number;

(2)　The friend or family member's driver's license or state ID; and

(3)　The friend or family member's telephone number

## M.　Emergency Absences

An Emergency Absence is an approved leave of absence from prison for a day under escort of TDCJ staff. They are granted for emergency reasons only.

An Emergency Absence is a privilege, not a right. It is granted to offenders who are trustworthy, work hard and who are considered acceptable security risks by TDCJ to be temporarily released to the general public and who meet the basic criteria set forth by TDCJ.

1.　Emergency Absence

**DEFENDANTS' DISCLOSURE - 0269**

Emergency absences are granted to:

a.      Attend funerals, or visit a funeral home to view a deceased immediate family member.

b.      Visit critically ill immediate family members.   "Immediate family" is defined as an offender's parents, spouse, children, siblings, half-siblings and grandparents.

Offenders cannot request an emergency absence.   Only doctors or Funeral Home Directors on behalf of the offender's family can make requests for emergency absences.  These absences are granted for no longer than one day.

2.      Emergency Absence Eligibility Requirements

To be considered for an emergency absence, an offender shall meet the current TDCJ established criteria and be approved by the SCC and other parties concerned.   The basic eligibility requirements  are:

a.      No convictions for any of the offenses listed below, including soliciting, attempting, conspiring, or aiding others to engage, solicit, attempt, or conspire to commit any of the listed offenses, or have been incarcerated in or sentenced to an adult correctional facility for any violent felony offense as identified by TDCJ records:

(1)     Homicide: capital murder, murder, manslaughter, or any other homicide offense;

(2)     Kidnapping:  kidnapping, aggravated kidnapping, unlawful restraint, or any other kidnapping offense;

(3)     Sexual offense:  rape, sexual assault, sexual abuse, aggravated rape, aggravated sexual abuse, indecency with a child, or any other sexual assault offense;

(4)     Robbery:   robbery, aggravated robbery, or any other robbery offense;

(5)     Assault:  assault, aggravated assault, injury to a child, injury to an elderly person, or any other assault offense;

(6)     Escape:  any escape offense from an adult correctional facility;

(7)     Any offense in which the offender used or exhibited a deadly weapon during the commission or during immediate flight there from, and where an affirmative finding on use of a deadly weapon was made by the trial court or jury; or

(8)     An offense of stalking under Texas Penal Code § 42.072.

b.      No violations that resulted in major penalties within the past six months, or have a disciplinary history of assaults on staff.

c.      No unresolved or pending felony or Immigration and Customs Enforcement detainer.

**DEFENDANTS' DISCLOSURE - 0270**

d.     With in 12 months of parole eligibility, if applicable.

e.     No security precaution designators as described in AD-04.11, "Security Precaution Designators."

f.     Physically able to travel.

g.     Intermediate sanction facility or SAFPF offenders shall be assigned to the facility for at least 30 days.

h.     State jail offenders shall be assigned to a custody level of at least J2 and in the custody of the TDCJ for six months or have exhausted one-third of their sentence, whichever comes first.

i.     All other offenders shall be assigned to a custody level of at least G1, G2, or G3 and in the custody of the TDCJ for six months.

**N.     Inmate Trust Fund**

Offenders are required to surrender all money they have in their possession to officials at the receiving location.  The offender shall be given a receipt showing money relinquished.  Money found in the possession of an offender after the first day of confinement shall be confiscated as contraband and the offender shall be charged with a disciplinary violation.

The offender's TDCJ number also serves as his Inmate Trust Fund account number.  The name on the account shall be the same as that listed in the official TDCJ records.   An offender's funds shall be disbursed solely at his request.  Inmate Trust Fund reserves the right to correct any error.

There are several ways for family/friends to deposit money in an offender's account.

1.     Money Orders or Cashier's Checks

Money orders or cashier's checks made payable to "Inmate Trust Fund for "*Offender Name and Number*"

a.     Deposit slips can be obtained:

(1)     From offender;  or

(2)     Send a self addressed, stamped envelope to Inmate Trust Fund, P.O. Box 60, Huntsville, Texas 77342-0060.

b.     Send money orders or checks with completed deposit slip to Inmate Trust Fund, P.O. Box 60, Huntsville, Texas 77342-0060

2.     Monthly Checking Account Debit (ACH)

a.     Complete an ACH authorization form and have a set amount automatically debited from a personal checking account once each month for deposit to a specified offender.

b.     Attach a voided check for the account to be debited.

c.     Debit transactions shall occur on the 5th of each month.

**DEFENDANTS' DISCLOSURE - 0271**

      d.      Submit form with voided check to Inmate Trust Fund, P.O. Box 60, Huntsville, Texas 77342-0060.

      e.      Free service provided by TDCJ.

3.      American Cash Express (ACE)

Can be sent from anywhere in the United States. Deposit funds to an offender's trust fund account for a service fee.  For the nearest ACE location, call 1.866.734.2306 or visit the web site at **www.acecashexpress.com**.

4.      eCommDirect

eCommDirect is the secure way to make a deposit in an offenders trust fund account. Visit www.texas.gov/eCommDirect.  Enter offender details.  Add deposit amount to your cart.  Check out using a Visa or MasterCard.

5.      JPAY

JPay allows you to send money to an offender for service fee.  Visit their web site at **www.jpay.com** or call 1.800.574.5729 to send funds using Visa or MasterCard credit/debit card.  Senders can make cash deposits at any MoneyGram location nationwide using an Express Payment form and using RECEIVE CODE 3570.

6.      Touchpay Payment Systems

Provides ways to get money to your loved ones for a service fee.  Online: **www.tdcjpayment.com.**  Telephone (toll-free):  1.877.868.5358 MasterCard and Visa credit/debit cards are accepted, as well as MoneyPak, which is a remote cash option available at retailers nationwide.
Visit: **https://www.moneypak.com/Partner/Payment.aspx/TouchPay** for details and locations.

7.      Western Union Convenience Pay

Offered at select locations within the state of Texas.  Send up to $200 to an offender's trust fund account for a service fee.  Call 1.800.354.0005 to find a Convenience Pay agent location.  Retail locations include Kroger, HEB, Minyard's, Sack 'n Save, Carnival and selected Western Union agent locations.

8.      Western Union Quick Collect

Can be sent from anywhere in the United States.  All three Quick Collect products are subject to different fees, send amounts, and other restrictions in certain states.  Standard fee for over-the-counter Quick Collect transaction at a Western Union location.  Deposit shall post to offender's account within 24 hours. Western Union at 1.800.325.6000, or visit www.westernunion.com to find the nearest Western Union location Telephone (toll-free): 1.800.634.3422, press 2 to send Q/C payment for credit card transactions.  Web transactions: visit www.westernunion.com for online transactions.  **For each Quick Collect transaction the following information shall be provided:**
Pay to: TDCJ - Inmate Trust Fund
Code City and State: TDCJ/TX
Account number with Facility: offender's TDCJ number and inmate's last name
Attention: offender's last name and offender's first name

**DEFENDANTS' DISCLOSURE - 0272**

The Inmate Trust Fund department can respond to questions regarding deposit receipt, but other information concerning the offender's account activity can only be released to the offender. Offenders receive monthly bank statements itemizing account transactions.

Personal checks are not accepted and shall be returned to the sender or destroyed. Sending cash through the mail is not permitted. Money orders and cashier checks of $500 or more, insurance checks and company checks require two weeks to clear before the offender can use the funds. The Inmate Trust Fund does not pay interest. Therefore, the account should hold no more than what is required to meet the offender's immediate needs. Offenders with excess funds are encouraged to open a savings account with a banking facility of their choice.

The Inmate Trust Fund does not forward personal mail or other items sent with money deposits. Packages for offenders received at Offender Trust Fund shall be refused and returned at the sender's expense.

An Inmate Trust Fund Account is held under the authority of TDCJ. Anyone who deposits or maintains funds in an Inmate Trust Fund thereby agrees to be bound by agency policies concerning such funds which are in effect at the time these funds are placed in the account or thereafter. These policies include the forfeiture and disposition of the contents of such accounts. The agency may decide what funds shall be deposited, what funds may be withdrawn and to whom these funds may be paid.

In general, offenders may not receive gifts or fees from other offenders. A deposit from one offender to another may be made only by transfer from one Inmate Trust Fund (ITF) account to another and shall have unit administrative approval. This approval shall be obtained even if the depositing offender has made previous deposits to the receiving offender's account.

Deposits from one offender to another, processed through an outside person or bank, are considered a violation of the TDCJ "Trafficking and Trading Rules" regardless of whether accepted for deposit or received by the ITF Department. Suspected violations shall result in an investigation. Confirmed violations of deposits between offenders may result in disciplinary action against any offenders involved in any unauthorized transactions, whether depositors or recipients. If an offender reports unauthorized transactions that are afterward determined to be in violation of the stated policy and voluntarily signs a wavier for forfeiture of the funds received, no disciplinary action shall be taken.

Moreover, funds gained through extortion (by coercion, deception, or violence) may be forfeited. If an offender is found guilty of extorting money that has been deposited in his trust fund account, or has been received without authorization as described above, the offender shall forfeit title to the funds.

## O.    ID Cards

Normally, within two to seven days after an offender is received, he shall be issued an identification card. The ID card shall be used for commissary purchases, dispensing of medication, meals served, access to authorized areas within the unit and participation in various programs as well as other general security requirements. Offenders are required to carry their ID card at all times. It is the responsibility of every offender to immediately notify the security office, Commissary Officer or warden's office if his ID card is lost, stolen or damaged. The ID card is property of the state and is furnished as identification for offenders. The ID card may become the offender's property upon parole, discharge or mandatory supervision, if needed for identification. Offenders shall give or show their ID cards when asked by a correctional officer or staff. Offenders shall be charged five

**DEFENDANTS' DISCLOSURE - 0273**

dollars for lost or damaged ID cards; the fee shall be collected from the offender's Trust Fund account.    If the warden determines the offender should not be charged a replacement fee for the lost card due to special circumstances, then it should be noted at the bottom of the ITF-8 by checking "Do Not Charge" box.

Pursuant to AD 03.83 "TDCJ Offenders who Refuse To Comply with Grooming Standards" ID cards shall not be issued to offenders not complying with agency grooming standards.

It is a violation of the TDCJ offender rules and regulations for any offender to:

1.      Not be in possession of his ID card.  If an offender does not have his ID card with him, it shall be considered a refusal or failure to obey orders;

2.      Willfully damage, change the appearance of the card, abuse or destroy one's own or another offender's ID card.  Such actions are considered as damaging or destroying property belonging to the state, or another offender;

3.      Be in possession of any other offender's ID card.  Offenders in possession of another offender's ID card are considered possessing contraband or unauthorized property;

4.      Use or try to use another offender's ID card for any purpose.  Offenders who try to use another offender's ID card are considered in possession of contraband or unauthorized property, or stealing property belonging to the state or another offender;

5.      Use, try to use or conspire to use any counterfeit, fictitious, altered, forged, lost, stolen or fraudulently obtained ID card for any purpose, knowing the same to be counterfeit, fictitious, altered, forged, lost, stolen or fraudulently obtained. Offenders who commit these offenses are considered stealing property belonging to the state, or another offender;

6.      Receive or try to receive money, goods or any item of value by use of another offender's ID card or by use of a counterfeit, fictitious, altered, forged, lost, stolen or fraudulently obtained identification card.  Offenders who knowingly commit these offenses are considered stealing property belonging to the state or another offender; or

7.      Give or loan an ID card to another offender so that offender can obtain, or attempt to obtain, extra benefits through use of another card.  Offenders who loan or give their ID cards to another offender are considered trafficking and trading contraband/commodities.

Violations of these rules subject an offender to disciplinary proceedings and penalties in accordance with the **Disciplinary Rules and Procedures.**

**P.      Commissary**

Commissaries are stores within the prison where items not furnished by the state may be purchased.  The ID card given to offenders can be used to make commissary purchases, as long as they have funds in the Inmate Trust Fund to cover their purchases and they are not on commissary restriction as the result of disciplinary action.

There are two types of purchases that can be made at the Commissary - regular and registered property purchases.

**DEFENDANTS' DISCLOSURE - 0274**

1.      Regular Purchases are those items purchased within a two week period, such as soft drinks, pastries, and food.  Regular purchases are limited to $85 every two weeks, with the following exceptions:

        a.      G4/J4 custody offenders may spend $35 every two weeks.  However, SAT3, SAT4 and state jail offenders with one year clear major disciplinary record are allowed to make purchases up to $85 every two weeks.

        b.      G5/J5 custody offenders are allowed to spend $25 every two weeks.

2.      Commissary Restriction Purchase:

        Offenders on Commissary restriction may purchase the following every 30 days:

        a.      5 bars of Soap

        b.      1 Shampoo

        c.      1 Toothpaste

        d.      1 Deodorant

        e.      1 Toothbrush

        f.      1 Comb

        g.      1 Toilet Paper

        h.      3 Boxes of Tampons

3.      Twenty dollars ($20) of correspondence supplies to include stamps, envelopes, pens, paper, carbon paper, dictionary, eraser, and writ envelopes may be purchased every 30 days.

4.      Administrative Segregation Offenders may make purchases according to the following guidelines:

        a.      Level I offenders may purchase $70 every two weeks.

        b.      Level II & III offenders may purchase personal hygiene items (toothbrush, [2] small toothpaste, deodorant, [5] soap, [2] small shampoo, comb, toilet paper, [3] boxes of tampons, and shower shoes) and a maximum of $10 in correspondence supplies (stamps, envelopes, paper, carbon paper, dictionary, eraser, writ envelopes and pens) every two weeks.

5.      Death Row Offenders may make purchases according to the following guidelines:

        a.      Level I offenders may purchase $85 every two weeks.

        b.      Level II & III offenders may make the same purchases as Level II and III administrative segregation offenders.

**DEFENDANTS' DISCLOSURE - 0275**

6.      Emergency Items

The following have been designated as emergency items and may be purchased by any custody of offender including commissary restricted offenders:  Fans, gym shorts, sun block, and shower shoes.

7.      Registered Property Purchases

Not limited by dollar amount, but limited in quantity to one of each item per offender.  Availability of these items is at the warden's discretion.  The following items (available through the unit commissaries) require an approved Registered Property Purchase Form approved by the warden and Property Officer.   Items which cost over $25 do not count against the offender's regular purchased dollar amount.

a.      Clip On Lamp

b.      Clock

c.      Curling iron

d.      Fan

e.      Hair dryer

f.      Hotpot

g.      Multi-plug Outlet

h.      Radios

i.      Tennis Shoes

j.      Typewriter

k.      Watch

l.      Work boots

Note:  Some of these items are not available on state jails and SAFPF's due to the absence of available electrical plugs.

8.      The Commissary prices are set by the Director of Commissary and Trust Fund and can change at any time with proper notice.   All items bought from the Commissary shall be for the offender's personal use.  Any item bought from the Commissary shall be used for its intended purpose.

## Q.      Voter Registration

An offender may be eligible to vote.  In order to vote, he shall meet the following criteria:

1.      Is 18 years of age or older;

2.      Is a United States citizen;

3.      Has not been determined mentally incompetent by a final judgment of a court;

**DEFENDANTS' DISCLOSURE - 0276**

4.      Has not been finally convicted of a felony or, if so convicted, has fully discharged the person's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court;

5.      Is a resident of this state; and

6.      Is a registered voter.

Information regarding how to contact the Registrar of Voters in your county or the Elections Division of the Secretary of State's Office is available in the unit Law Library.

R.      **Offender Request To Official (I-60) Form**

Offenders can ask for help by using the Offender Request to Official (I-60) form. I-60 forms are available in living areas and in various other places on the unit. An offender asking for help should briefly write his problem or request on side 1 of the I-60 and fill in his name, number, date of the request, unit of assignment, living quarters and work assignment on the bottom. The offender should also complete side two of the form by checking the appropriate box, if one applies, and addressing it to the individual or department he is asking for help. If it is unknown which individual or department the I-60 should be addressed to, the Chief of Unit Classification has been appointed as the point of personal contact for all offenders and shall provide assistance and/or advice as needed. The I-60 can be sent through truck mail or placed in the appropriate box on the unit. A response, an appointment or some action should be made to the I-60 as soon as possible by the appropriate department or individual.

S.      **Administrative Segregation Plan**

The purpose of the TDCJ *Administrative Segregation Plan* is to provide uniform rules and regulations for the use of administrative segregation, and state jail offenders in SR custody within the TDCJ. Administrative segregation, and state jail SR custody, non-punitive statuses involving separation of an offender from the general population are for the purpose of maintaining safety, security and order. Administrative segregation consists of the following categories:

1.      Security Detention;

2.      Pre-hearing Detention; and

3.      Temporary Detention Between Consecutive Terms of Solitary Confinement.

Offenders undergoing the intake process and those on a transient unit assignment shall not be treated as administrative segregation offenders except to the extent provided for in the Plan. Specific information regarding the conditions and procedures relating to administrative segregation and state jail offenders in SR custody can be obtained by reviewing the TDCJ *Administrative Segregation Plan*. A copy of the TDCJ *Administrative Segregation Plan* is available in the law library for review by offenders.

T.      **Institutional Lockdowns**

A lockdown of an institution, wing, cell block or dorm may be imposed by the warden when it is believed that such an action is necessary to suppress a major disruption of the unit's safety and security. As a general rule, offenders are confined to their cell or dorm area and all routine processes and certain privileges and rights are suspended until the lockdown is lifted. Privileges and activities are restricted only to the degree necessary to

**DEFENDANTS' DISCLOSURE - 0277**

protect the security of the unit, other offenders, and the unit staff.  The length of time an area is locked down is determined by the continued behavior of the affected offenders.

**U.    Impermissible Conduct**

Offenders are restricted in their access to information about themselves, other offenders, staff, or items which constitute security concerns.   Offenders shall not have any supervisory, administrative or disciplinary authority over other offenders: receive special privileges, or obtain or have access to sensitive information.  The information an offender can have about himself is described in the *TDCJ Public Information Act Manual, Chapter 3, "Incarcerated Offender Information."*  The only information an offender may have about an employee is payroll name, rank or title, and current business address.   For more information, see Administrative Directive 03.02, "*Impermissible Offender Conduct*" available in the unit Law Library

## VII.    DISCIPLINARY PROCEDURES  AND RULES

The disciplinary process is designed to modify offender behavior  where necessary.

**A.    General Procedures**

1.    Offenders in the TDCJ are required to obey all rules and regulations either issued by TDCJ or those specific to their unit.  If an offender violates a rule, he may be punished through the Disciplinary Process.  For more information, see the **TDCJ Disciplinary Rules and Procedures for Offenders** handbook (GR-106).

2.    Once a rule violation has been noted, if it is not settled informally, the rule violation may be reported in the form of an offense report.

3.    After an offense report has been written, the report shall be given a number and shall be graded as major or minor.  The offender shall be notified of the charges filed against him.

4.    A disciplinary hearing shall be conducted to decide whether or not the offender is guilty  or not guilty and, if guilty, determine the punishment.  Punishment is progressive and may fall in the following range depending on the seriousness of the offense:

a.    Counsel  and reprimand;

b.    Loss of privileges, which include:

(1)    Being able to recreate;

(2)    Buying things from the commissary (except legal materials);

(3)    Watching television;

(4)    Having  access to personal property;

(5)    Having  contact visits; and

(6)    Having  access to the Offender  Telephone  System

c.    Being restricted to the offender's  cell;

**DEFENDANTS' DISCLOSURE - 0278**

d. Doing extra work;

e. Being placed in solitary confinement;

f. Being placed in a lower time-earning class; and

g. Loss of good time.

5. An offender who intentionally damages or destroys state property may be assessed monetary damages. Upon conviction of this offense, TDCJ may seize the contents of the offender's trust fund account and award itself damages for the value of the property damaged.

6. The disciplinary history may be provided to Parole, and may be used in determining an offender's Parole eligibility.

7. For state jail offenders, the disciplinary history may be part of the report submitted to the court (judge), the community supervision office, and the parole authority under whose jurisdiction the offender is confined.

**B.** **Solitary Confinement**

Solitary confinement is a segregated housing status, which may be imposed as the result of a major disciplinary hearing or a state jail offender disciplinary hearing. Solitary confinement is ordinarily used when all other levels of discipline have been tried; where the safety of other offenders or staff is concerned; or when the serious nature of the offense makes it necessary. Offenders in solitary shall be allowed out of their cell only one time each day to shower. Offenders may be placed in solitary for up to 15 days. Consecutive terms shall be separated by 72 hours.

**C.** **Counsel Substitute Program**

1. The purpose of the Counsel Substitute Program is to assist offenders charged with an alleged rule infraction during the major disciplinary process. It is the job of the Counsel Substitute to ensure that all "due process" steps are followed when the offender is brought before a major hearing.

2. The Counsel Substitute does the following things for an offender when the offender shall go before a major hearing:

a. Ensures the offender understands the rights provided through the disciplinary process when notified of pending charges.

b. Reads the charge to the offender and makes certain the disciplinary case and the rights provided in the disciplinary process are understood.

c. Assists the offender in preparing for the hearing by gathering documentary evidence, witness statements and other relevant information as necessary. The Counsel Substitute shall represent the offender during the hearing.

d. Presents the offender's case at the hearing, asking pertinent questions of the charging officer and/or witnesses, as may be necessary.

e. Advises the offender of appealable issues and assists in filing an appeal upon request.

**DEFENDANTS' DISCLOSURE - 0279**

3.     Offenders shall be provided with Counsel Substitutes before a major hearing when any of the following are met:

    a.    The offender is developmentally disabled as defined in the Developmental Disabilities Program (DDP) (has an IQ of 73 or below) or if the offender's mental ability to understand and respond to disciplinary charges and proceedings is questionable;

    b.    The offender's educational achievement score is below 5.0 on reading or his literacy or understanding of English is questionable;

    c.    The offender's case is very complex;

    d.    The offender is confined to any form of segregation before the disciplinary hearing;

    e.    The offender requests a counsel substitute; or

    f.    A witness requested by the accused offender is on a different unit or facility.

4.     Special Procedures for Psychiatric Patients

When a psychiatric offender is charged with a disciplinary infraction, psychiatric clearance shall be obtained before proceeding with the disciplinary.

## D.    Appeal Process

At the end of the disciplinary hearing, the disciplinary hearing officer shall advise the offender of his right to appeal the decision, with respect to guilt or the punishment given, through the offender grievance procedure.

Three Basic Grounds for Appeal:

1.     One or more procedural rights were violated;

2.     Insufficient evidence to find offender guilty; and

3.     Penalty imposed by the hearing officer was too severe.

The disciplinary decision may be appealed by filing a grievance. If the offender is not satisfied with the decision, he may then file a Step 2 grievance for appeal purposes. The Counsel Substitute shall assist offenders with an appeal if they request assistance.

## VIII.    GRIEVANCE PROCEDURES FOR OFFENDERS

Instructions on How to Write and Submit Grievances.

A.    Grievance forms are available from the law library, housing area, shift supervisors, or by contacting the unit grievance office. After completely filling out the form, place it in the grievance box yourself or hand it directly to the grievance investigator on your unit. Step 2 appeals shall be accompanied by the original, answered Step 1.

B.    An attempt to informally resolve your problem shall be made before filing a grievance. Informal resolution is defined as any attempt to solve the issue at hand and shall be

**DEFENDANTS' DISCLOSURE - 0280**

noted on the Step 1 grievance form (I-127).  You have 15 days from the date of the alleged incident or occurrence of the issue presented in which to complete the Step 1 grievance form and forward it to the unit grievance investigator (UGI).  The Step 1 process may take up to 40 days from the date the unit grievance office receives the Step 1 form to respond or 45 days for medical grievances.  If you are not satisfied with the Step 1 response, you may appeal the Step 1 decision by filing a Step 2 (I-128).  You have 15 days from the "Date returned to the Offender" noted in the "OFFICE USE ONLY" box on the front of the grievance form to submit the Step 2 to the grievance investigator on the unit.  The Step 2 process may take up to 40 days to provide you a written response or 45 days for medical grievances.  Present only one issue per grievance.

**C.**     Additional time may be required in order to conduct an investigation at either Step 1 or Step 2 and in either case; you shall be notified of the extension in writing.

**D.**     Complete your grievance using a typewriter or dark ink.  If you need assistance filing a grievance or understanding a response, contact your unit grievance investigator.

**E.**     The following issues are grievable through the Offender Grievance Procedure. Remember that you may only file a grievance on issues that PERSONALLY APPLY TO YOU, with the exception of SEXUAL ABUSE or PREA related issues.

   1.     The interpretation or application of TDCJ policies, rules, regulations, and procedures.

   2.     The actions of an employee or another offender, including denial of access to the grievance procedure.

   3.     Any reprisal against you for the good faith use of the grievance procedure or Access to Courts.

   4.     The loss or damage of authorized offender property possessed by persons in the physical custody of the TDCJ, for which the TDCJ or its employees, through negligence, are the proximate cause of any damage or loss.

   5.     Matters relating to conditions of care or supervision within the authority of the TDCJ for which a remedy is available.

**F.     You may not grieve:**

   1.     State or federal court decisions, laws and/or regulations;

   2.     Parole decisions;

   3.     Time-served credit dispute which should be directed to the Classification and Records, Time Section;

   4.     Matters for which other appeal mechanisms exist; or

   5.     Any matter beyond the control of the agency to correct.

**G.**     Grievances that do not meet the following established screening criteria may be returned to you unprocessed; however, most grievances may be corrected and resubmitted within 15 days from the "Date Returned to the Offender" noted in the "OFFICE USE ONLY" box on the back of the grievance form on the returned grievance.

**DEFENDANTS' DISCLOSURE - 0281**

1.  Grievable time period has expired.  (Step 1 grievances shall be submitted within 15 days from the date of incident and Step 2 Appeals shall be submitted within 15 days from the date of the signature on the Step 1.)

2.  Submission in excess of one every seven days.  (All grievances received in the grievance office shall be reviewed; however, only one grievance shall be processed every seven days [with the exception of disciplinary and emergency grievances].)

3.  Originals not submitted.  (Carbon copies are not considered originals even if they have an original signature.  The original answered Step 1 shall be submitted with a Step 2 Appeal.)

4.  Inappropriate/excessive attachments.  (Your grievance shall be stated on one form and in the space provided.  Attach only official documents that support your claim, such as answered I-60's, sick call requests, property papers and other similar items).

5.  No documented attempt at informal resolution.  (You are required to attempt to resolve issues informally with a staff member prior to filing a grievance.  Remember, the attempt shall be documented in the space provided on the I-127 form.)

6.  No requested relief is stated.  (The specific action required to resolve the complaint shall be clearly stated in the space provided on the I-127 form.)

7.  Malicious use of vulgar, indecent, or physically threatening language directed at an individual.

8.  The issue presented is not grievable (refer to Section E above).

9.  Disciplinary appeals shall not be processed until after the disciplinary hearing.

10. Redundant.  (You may not repeatedly grieve matters already addressed in a previous grievance.)

11. The text is illegible or incomprehensible.  (Write your grievance so that it can be read and understood by anyone.)

12. Inappropriate.  (You may not ask for monetary damages or any form of disciplinary action against staff.)

**H.**  Do not use a grievance form to comment on the effectiveness and credibility of the grievance procedure; instead, submit a letter or I-60 to the administrator of Offender Grievance Program.

**I.**  Grievances containing threats of violence against staff or other offenders or of escape are subject to disciplinary action.  Disciplinary action taken as a result of one of these reasons is not considered a form of reprisal.

**DEFENDANTS' DISCLOSURE - 0282**

## IX.    PAROLE INFORMATION

### A.    Parole Information

Parole is a privilege, not a right!  Parole is the discretionary and conditional release of an eligible offender from physical custody of a jail or prison if the offender agrees to serve the remainder of his sentence under the supervision of the Parole Division.

Some requirements for an offender to be released on parole are: (a) serves sufficient time as required by law [Tex. Gov't. Code § 508.145]; (b) is not a risk to public safety; and (c) meets work, program participation, and behavior standards.

Offenders approved for parole are allowed to leave the TDCJ and serve the remainder of their sentences under the supervision of parole officers.  Offenders who are approved for parole may be released during their initial parole eligibility month/year (FI-1); may be released during a specified month which is beyond their initial parole eligibility month/year (FI-2); may be transferred to a Pre-Parole Transfer facility and released on a specified month/year which is beyond their initial parole eligibility date (FI-4); or may be transferred to an In-Prison Therapeutic Community (IPTC) for substance abuse treatment (FI-5).

The Board of Pardons and Paroles (BPP) has also passed parole vote options that require rehabilitation treatment programs for certain offenders prior to parole.  Specific categories include FI-3R, FI-6R, FI-7R, and FI-18R.  The numerical identifier in the vote (3, 6 and 18) reflects the number of months the offender shall serve beyond a specified release date, which shall be set by the BPP.

An offender approved for parole under an FI-5 or any of the FI-R votes shall be reevaluated by the BPP if he fails to complete the treatment program successfully.  Offenders who are not approved for parole may be given new BPP review dates (Next Review Dates).

Offenders who are denied parole and are given serve-alls shall be released to Mandatory Supervision (MS) on their Projected Release Dates (minimum expiration dates).  If an offender has no Projected Release Date and is given a serve-all, he shall serve his/her entire sentence in calendar time and shall be discharged from the TDCJ on his/her maximum expiration date.

If the offender is incarcerated for an offense that occurred on or after 9-1-96, and is not approved for parole release, the offender's file shall be reviewed by the BPP for possible release to mandatory supervision (RMS) or denial of release to mandatory supervision (DMS).

Offenders who are denied release to mandatory supervision (DMS) shall be given a new BPP review date (Next Review Date).  The review process shall be done 30 days prior to the next review date.  Offenders denied release to mandatory supervision (DMS) shall receive annual BPP review until receipt of approval for release on mandatory supervision (RMS) or upon release on expiration of their sentence on their maximum expiration date.  Offenders whose offenses occurred prior to 9-1-96, who are denied parole and receive a serve-all from the BPP shall be released to mandatory supervision on their Projected Release Date (minimum expiration date).  If the offender is serving consecutive sentences, he may be approved for parole on a specific cause number that is eligible for review (CU-FI) or the BPP may deny parole for a specific cause number (CU-NR).

Parole and Mandatory Supervision allow an offender to be released from custody to the supervision of a Parole Division District Parole Officer.   Parole and Mandatory

DEFENDANTS' DISCLOSURE - 0283

Supervision rules are the same. In order to complete the required period of Parole or Mandatory Supervision, the releasee shall meet the requirements of supervision.

In addition to the General Conditions of parole and mandatory supervision, the BPP may also impose Special Conditions requiring treatment and other program participation, travel and contact restrictions, and restitution reimbursement, Electronic Monitoring may also be imposed by the BPP.   Discharge from Parole or Mandatory Supervision occurs on the maximum expiration date of the offender's sentence.

## B.   The Parole Interview

Offenders do not have to apply for parole or mandatory release consideration.  Offenders do not have to hire attorneys or parole consultants to represent them in the parole process or to check on their parole status.

All offenders shall receive initial parole interviews regardless of disciplinary status (good time lost/class demotion); however, to be eligible for subsequent parole interviews offenders shall be classified in the same or higher time earning status assigned to them when they entered TDCJ and shall not have had any major disciplinary infractions in the six-month period prior to the dates they are reviewed for parole which resulted in loss of good time or reduction in class below entry level.

During the parole interview, offenders are given the opportunity to present parole release plans and employment plans.   Release Plans to their family and friends are preferable due to limited halfway house space available.

The law [Tex. Gov't Code § 508.181] requires that offenders shall reside in their Legal County of Residence after release.  Legal County of Residence is defined as the county where the offender was living when he committed the present offense.  If an offender is incarcerated for multiple offenses, the legal county of residence is determined by the residence at the time of the most recent present offense.

Offenders who are called to the unit parole office should bring the names, complete addresses, including accurate zip codes and phone numbers of the person(s) in the Legal County of Residence with whom they intend to reside while on Parole or Mandatory Supervision.   If the offender cannot provide addresses in his/her Legal County of Residence, alternate addresses (including out-of-state release plans) may be submitted and the BPP shall decide whether or not to allow the offender to be released to a non-county of residence.

Out-of-state plans shall be accepted by the state to which placement has been requested (via Interstate Compact Agreement).  Since all parole plans are verified by parole officers, it is important for them to be provided with complete and accurate addresses and phone numbers (home, work, day, night, and weekend phone numbers) so they can quickly verify each offender's parole plan.

The BPP may require electronic monitoring as a condition of release.  In the event this condition is imposed, special equipment shall be installed in the residence.  Prior to the offender's release, the sponsor shall sign an agreement to remove all features from the phones (call forwarding, caller ID, call waiting, etc.)  The BPP may require halfway house placement as a special condition of an offender's release.

When an offender has been interviewed for parole consideration, a report is submitted to the BPP for a decision.  When a decision is reached, the offender is informed of the decision.   Remember, offenders do not have to apply for parole consideration.   An offender DOES NOT have to be in physical custody of TDCJ to be paroled.  Texas law

**DEFENDANTS' DISCLOSURE - 0284**

authorizes Parole in Absentia (PIA).   PIA is the parole release of TDCJ sentenced offenders from other holding facilities, including jails, contract facilities, and federal/other state prisons.

**C.**     **Parole Eligibility Requirements**

Offenders serving sentences for offenses that precede the 70th legislature should contact their Unit Institutional Parole Officer in reference to specific eligibility requirements.

The following is a listing of parole eligibility requirements (including 3g and Non-Mandatory Supervision offenses) separated by Legislatures.

1.     70th Legislature Requirements (Offense dates 9-1-87 to 8-31-89): [Article 42.18, Texas Code of Criminal Procedure (TCCP)].

   a.     Most offenders under this law become parole eligible when their flat time served and good time credits combine to equal one-fourth of their total sentences.   Fifteen years total flat time and good time credit is the maximum requirement in this example.   (Flat time served + good time credits = one-fourth of sentence = parole eligibility.)

   b.     Offenders convicted of certain aggravated crimes (i.e., 3g offenses) shall serve one-fourth of their sentences in calendar time (flat time); minimum – two years; maximum – 15 years.  These 3g offenses are:

      (1)     Capital Murder;

      (2)     Aggravated Kidnapping

      (3)     Aggravated Robbery;

      (4)     Aggravated Sexual Assault; or

      (5)     "When it is shown that the defendant used or exhibited a deadly weapon as defined in the Penal Code, during the commission of a felony offense or during the immediate flight there from."

   c.     Offenders under this law who have their parole denied shall be released to Mandatory Supervision on their Projected Release Dates; however, offenders convicted of certain offenses under this law do not have Projected Release Dates (minimum expiration dates).   These offenders shall be released on parole, or on their maximum expiration dates.   Any good time earned by these offenders' counts toward parole eligibility only, and does not apply to Projected Release Dates.   An offender may not be released to Mandatory Supervision if the offender is serving a sentence for:

      (1)     Murder, 1st Degree [Penal Code Section 19.02];

      (2)     Capital Murder [Section 19.03];

      (3)     Aggravated Kidnapping, 1st or 2nd Degree [Section 20.04];

      (4)     Sexual Assault, 2nd Degree [Section 22.011];

**DEFENDANTS' DISCLOSURE - 0285**

(5)     Aggravated Assault, 2nd or 3rd Degree [Section 22.02];

(6)     Aggravated Sexual Assault, 1st Degree [Section 22.021];

(7)     Deadly Assault on Law or Corrections Officer, Court Participant; Probation Personnel; Member or Employees of the BPP; Employees of TYC, 1st Degree [Section 22.03];

(8)     Injury to a Child or Elderly Individual, 1st Degree [Section 22.04];

(9)     Arson, 1st Degree [Section 28.02];

(10)    Robbery, 2nd Degree [Section 29.02];

(11)    Aggravated Robbery, 1st Degree [Section 29.03];

(12)    Burglary, 1st Degree [Section 30.02 Subsection (d) (3)]; (if armed, in possession of explosives, or if threats or injuries to another occurred during the commission of the burglary); and

(13)    Any offense when the judgment for the offense contains an affirmative finding of a deadly weapon.

d.      Offenders serving consecutive (stacked) sentences shall become parole eligible on each of the sentences in the series before they can be released on parole.

e.      Offenders convicted of certain sex offenses that were committed on or after September 1, 1991 are required to register with local law enforcement authorities.  The offenders shall be informed at the time of release of the legal requirement to register as a sex offender within seven calendar days after release.

2.   71st & 72nd Legislature Requirements (Offense dates 9-1-89 to 8-31-93); [House Bill 93 amending Article 42.18 (TCCP)].

a.      Same time requirements as 70th Legislature cases.  (See Section I.A)

b.      Same 3g offenses as 70th Legislature cases.  (See Section 1.b.)

c.      Same Non-Mandatory Supervision offenses as 70th Legislature cases. (See Section 1.c.)

d.      Changes From Prior Legislation: Capital Murder – Shall serve 35 years calendar time (flat time) to be parole eligible.

3.   73rd Legislature Requirements (Offense dates 9-1-93 to 8-31-95); Senate Bill 1067 amending Article 42.18 (TCCP)].

a.      Same time requirements as 70th Legislature (See Section I.A)

b.      Offenders convicted of certain Aggravated crimes (i.e., 3g offenses) shall serve one-half of their sentences in calendar time (flat time); minimum – two years; maximum 30 years.  These offenses are:

**DEFENDANTS' DISCLOSURE - 0286**

(1)     Capital Murder (note:  shall serve 40 years calendar time);

(2)     Murder, 1st Degree [Section 19.02];

(3)     Indecency with a Child (Sexual Contact) 2nd Degree or 3rd Degree [Section 21.11 (a)(1)];

(4)     Aggravated Kidnapping;

(5)     Aggravated Sexual Assault;

(6)     Aggravated Robbery; and

(7)     "When it is shown that the defendant used or exhibited a deadly weapon as defined in the Penal Code, during the commission of a felony offense or during the flight therefrom."

c.     Offenders under this law who have their parole denied shall be released to Mandatory Supervision on their Projected Release Dates.   (See Section I.C)

d.     SIGNIFICANT CHANGES IN 73RD LEGISLATURE

(1)     CAPITAL MURDER –Shall serve 40 years of calendar time (flat time) to be parole eligible; shall have two-thirds vote of the entire 18-member Parole Board to be approved for parole.

(2)     DELETED as a Non-Mandatory Supervision offense - Deadly Assault on Law Enforcement or Corrections Officer or Court Participant [Section 22.03].

(3)     CHANGED as a Non-Mandatory offense – From Aggravated Assault, 2nd or 3rd Degree, to Aggravated Assault, 1st or 2nd Degree [Section 22.02].

(4)     DRUG FREE ZONES – Offenders convicted of crimes committed in Drug Free Zones [Section 481.134 of the Health and Safety Code] are not eligible for release on mandatory supervision.  They are not eligible for release on parole until their actual time served equals five years, without consideration of good conduct time, or the maximum term of their sentences, whichever is less.

(5)     USE OF CHILD IN COMMISSION OF OFFENSE - Offenders convicted of crimes involving the use of a child in the commission of the offender [Section 481.140 of the Health and Safety Code) are not eligible for release on Mandatory Supervision.

4.     74th Legislature Requirements (Offense dates 9-1-95 to 8-31-97)

a.     Same time requirements as 70th Legislature cases. (See Section 1.a.)

b.     Same 3g offenses as 73 Legislature cases, plus the offense of Sexual Assault of a Child.  (See Section 3.b.)

**DEFENDANTS' DISCLOSURE - 0287**

c. Offenders under this law who have their parole denied, shall be released to Mandatory Supervision on their Projected Release Dates. (See Section 1.c., for offenses not eligible for Mandatory Supervision, with the exception of Deadly Assault on Law Enforcement or Correctional Officer or Court Participant, which was deleted as a Non-Mandatory Supervision offense by the 73rd Legislature. Also, Aggravated Assault offenses, 1st or 2nd degree, as changed by the 73rd Legislature. Other exceptions to release on Mandatory Supervision shall be found in Parts f and g of this section.)

d. Drug Free Zones and Use of Child in Commission of Offense [See Section 3.d.(5)]

e. SIGNIFICANT CHANGES IN 74TH LEGISLATURE

    (1) Enhanced offenses resulting in life sentences for the following offenses shall require 35 calendar years to be eligible for parole:

        (a) Burglary of a Habitation with Intent to Commit Sex Assault or Indecency with a Child;

        (b) Aggravated Sexual Assault; and

        (c) Aggravated Kidnapping (intent to violate or abuse victim sexually).

    (2) SEXUAL ASSAULT (of a child) – Offenders convicted of Sexual Assault. [Section 22.011 (a) (2) of the Texas Penal Code] became 3g offenders during this legislative session and shall serve one-half of their sentences in calendar time (flat time) to be parole eligible; minimum-2 years; maximum 30 years.

f. Sentences for offenses occurring on or after 9-1-96 shall not be approved for release to Mandatory Supervision if a Parole Panel determines that the release would endanger the public. These are known as "Discretionary Mandatory Supervision" or House Bill 1433 cases.

g. Sentences for offenses occurring on or after 9-1-96 shall not be considered for Mandatory Supervision or Discretionary Mandatory Supervision if the offender has ever been convicted of: Capital Murder, Aggravated Kidnapping, Aggravated Sexual Assault (including Aggravated Sexual Abuse and Aggravated Rape), Aggravated Robbery, any offense with an affirmative finding of a deadly weapon, Murder 1st Degree, Sexual Assault 2nd Degree (including Sexual Abuse and Rape), Aggravated Assault (1st and 2nd Degree), Injury to a Child or Elderly 1st Degree, Arson 1st Degree, Robbery 2nd Degree, Drug Free Zone offense, Injury to Disabled Individual, Burglary 1st Degree, Use of Child in Commission of offense.

**DEFENDANTS' DISCLOSURE - 0288**

5.      75th Legislature Requirements (Offense dates 9-1-97 to 8-31-99, Section 508.149 Texas Government Code); [House Bill 432 amending Article 42.18 (TCCP); Texas Code of Criminal Procedure changed 9-1-97 to Texas Government Code].

     a.      SIGNIFICANT CHANGES IN 75TH LEGISLATURE

          (1)      The following offenses are not eligible for mandatory supervision if the offense occurred ON OR AFTER 5-23-97: Murder 2nd Degree [Section 19.02 of the Texas Penal Code]; Indecency with a Child 2nd Degree, Indecency with a Child 3rd Degree [Section 21.11 of the Texas Penal Code].

          (2)      Sentences for offenses occurring on or after 5-23-97 shall not be considered for Discretionary Mandatory Supervision if the offender has ever been convicted of Murder 2nd Degree or Indecency with a Child 2nd or 3rd Degree.

6.      76th Legislature Requirements (Offense dates 9-1-99 to 8-31-2001).

     a.      SIGNIFICANT CHANGES IN 76TH LEGISLATURE

          (1)      The following offenses are 3g and shall serve one-half of their sentences in calendar time (flat time); minimum –two years; maximum 30 years.

               (a)      Sexual Assault – § 22.011 (all subsections); and

               (b)      A Felony Increased Under Health & Safety § 481.140 (Use of Child in Commission of Offense).

          (2)      3g offenses and sentence of death excluded from Medically Recommended Intensive Supervision (MRIS) as of 9-1-1998.

          (3)      The offenses listed below are NOT eligible for Mandatory Supervision:

          A Felony increased under the Health & Safety Code § 481.140 (Use of Child in Commission of Offense).

7.      77th Legislature Requirements (Offense dates 9-1-2001 to 8-31-2003).

8.      78th Legislature Requirements (Offense dates 9-1-2003 to 8-31-2005).

     a.      Adds to Capital Murder (Capital Felony) , intentionally murders a person in the course of committing or attempting to commit a "terroristic threat – § 22.07(a)(1,3,4,5  or 6).

     b.      Adds Burglary of Habitation with Intent to Commit any of the following listed sexual offenses: *Obscenity (images of child under age 18) – § 43.23.

9.      79th Legislature Requirements (Offense dates 9-1-2005 to 8-31-2007).

     a.      Established the punishment of Death or Life without Parole for Murders in retaliation for/on account of service/status as judge or justice of courts.

**DEFENDANTS' DISCLOSURE - 0289**

     b.       Prohibits anyone younger than 18 years of age to be punished by death.

     c.       Excludes offenders serving a sentence of Life without Parole from being eligible for Medically Recommended Intensive Supervision (MRIS).

10.     80th Legislature Requirements (Offense dates 9-1-2007 to 8-31-2009).

     a.       Allows sex offenders to be eligible for Medically Recommended Intensive Supervision (MRIS) if:

          (1)       Persistent vegetative state;

          (2)       Organic brain syndrome; or

          (3)       Significant or total mobility impairment.

     b.       Lists the following offenses as NOT eligible for Parole or Mandatory Supervision

          (1)       Aggravated Sexual Assault – 22.021(f); or

          (2)       Continuous sexual abuse of a young child or children – 21.02.

11.     81st Legislature Requirements (Offense dates 9-1-2009 to 8-31-2011)

     a.       Adds Criminal Solicitation, 1st degree, to list of offenses not eligible for Mandatory Supervision.

     b.       Parole Eligibility may be delayed for persons found guilty of Murder, Sexual Assault, or Aggravated Sexual Assault, if there is an affirmative finding or delay of arrest on the judgment, due to the offender fleeing prosecution.

12.     82nd Legislature Requirements (Offense dates 9-1-2011 to 8-31-2013)

     a.       Adds the offense of Continuous Trafficking of Persons (§ 20A.03) to the list of 3g offenses, as well as the list of offenses not eligible for Mandatory Supervision.

     b.       Adds the offenses of Criminal Solicitation, 1st degree; Compelling Prostitution; and Trafficking of Persons to the list of offenses not eligible for Mandatory Supervision.

13.     83rd Legislature Requirements (Offense dates 9-1-2013 to present)

     a.       Adds Burglary of a Habitation, 1st degree with intent to commit a sexually related offense; Compelling Prostitution; and Trafficking of Persons to the list of 3g offenses.

     b.       Adds Engaging in Organized Criminal Activity and Directing the activities of Certain Street Gangs to the list of offenses not eligible for Mandatory Supervision.

**DEFENDANTS' DISCLOSURE - 0290**

**D.     Offenders With Detainers Pending**

All offenders with detainers should contact the agency that placed the detainer with TDCJ and attempt to have their detainers resolved. Offenders with detainers who have been approved for parole, or scheduled for Mandatory Supervision release, shall be released to the agency that placed the detainer with TDCJ. Detainers are not ignored or forgotten by TDCJ or the Parole Division.

**E.     Parole and Mandatory Supervision Violators**

Technical Parole Violators and Mandatory Supervision Violators shall be reviewed for parole when their time credits reflect they are legally eligible for parole review. Parole or Mandatory Supervision violators with new convictions shall be eligible for parole consideration when they have accumulated sufficient time to become eligible for parole.

**F.     Offenders Who Commit Offenses While In Custody**

Offenders who commit felony offenses on or after July 1, 1994, while in the custody of TDCJ, jails, contract facilities, transfer facilities, FCI, other state prisons, and other similar facilities are not eligible for parole review until after those charges are adjudicated and upon the offender meeting parole eligibility requirements.

**G.     Questions About Parole-Related Issues**

To expedite responses, offenders who have questions about their parole eligibility dates or any other parole/release matters should contact the Unit Parole Officer or the Institutional Parole Office for assistance. Do not contact other departments, as they are not trained in parole issues. Parole-related questions should be sent on an offender request form (I-60) or letter to the Institutional Parole Office and should clearly state the question on the I-60/letter. Appropriate responses to these requests shall be given as quickly as possible.

**X.     REENTRY SERVICES**

**A.     Identification and Reentry Planning**

The Reentry and Integration Division provides reentry services for eligible offenders through a three phase program. Reentry case managers conduct screening and contact eligible offenders to offer each phase of the program. The case manager arranges referrals to meet the highest priority needs and provides resources to help the offender in addressing other, lower priority needs. Each phase of the reentry program is voluntary.

1.     Phase I

Identification Document Services: A reentry case manager shall assist eligible offenders in ordering a replacement social security card, certified birth certificate, and Texas identification card. The identification documents are ordered prior to release and issued to the offender at the time of release from TDCJ. These documents equip the offender with the identification information necessary to secure employment, housing, benefits and other services upon return to the community.

2.     Phase II

Assessment and Reentry Case Management: A unit-based reentry case manager conducts a risk assessment to determine an offender's risk level as it

**DEFENDANTS' DISCLOSURE - 0291**

relates to criminogenic need and risk of re-offending.   Offenders who are moderate or high risk are offered enrollment in individual case planning, where the offender and the case manager use the *Individual Reentry Plan* to identify post-release needs in the following areas:

- Food/Clothing
- Housing
- Drug/Alcohol treatment
- Medical/Dental Care
- Mental Health Care
- Rent Assistance
- Domestic Violence
- Employment
- Income/Benefits
- Unemployment
- Health Care Benefits
- Medication Assistance
- Aging and disability Services
- Identification
- Social Security
- Coping Skills-Family/Children
- Life Skills Training
- Community Case Management
- Transportation
- Resource Management
- Vocation Training
- Education

3.      Phase III – Community Case Management

A community-based case manager identifies eligible offenders based upon referrals from unit-based case manager, parole officer, or offender self-referral. Based upon results of a validated risk assessment instrument, clients with medium or high risks of reoffending  are offered case management services to assist with resources, job fairs and classes related to employment, food, clothing, higher education, financial and budgeting, nutrition and health, life skills, parenting and relationship, medical and mental health, transportation support and cognitive skills.

**B.      Veteran's Services**

Through partnerships with the Veteran Integrated Service Network (VISN), Texas Veterans Commission (TVC), Military Veterans Peer Network (MVPN), and the U.S. Department of Veterans Affairs, Reentry and Integration Division staff:

1.      Verify veteran information via information exchange with the VA;

2.      Identify veteran offenders nearing release from TDCJ and provide referrals to the appropriate  VISN and MVPN representatives;

3.      Complete veterans benefit applications and submit to the TVC and VISN;

4.      Obtain DD214s and provide them to offenders  at time of release from TDCJ;

**DEFENDANTS' DISCLOSURE - 0292**

5.      Collaborate and share information with the VISN regarding offenders who have had rejected applications for copies of DD214's;

6.      Provide county service organizations' information to offenders, and share information where permitted to the county service organization, to facilitate access to post-release services;

7.      Work closely to identify medically appropriate facilities through the VISN for veterans receiving a Medically Recommended Intensive Supervision release or in need of medically appropriate residence/care upon parole or discharge;

8.      Facilitate offender participation in the veterans reentry dorm program; and

9.      Provide veteran offenders a copy of the publication Federal Benefits for Veterans, Dependents and Survivors upon request.

**C.      Texas Correctional Office on Offenders with Medical or Mental Impairments (TCOOMMI) Services**

TCOOMMI provides intensive treatment, continuity of care, and case management services to juvenile and adult offenders with special needs as well as continuity of care for non-offender populations such as 46.B defendants, mental health discharges from the Texas Juvenile Justice Department, and wrongly imprisoned persons.  In addition, a 31 member committee composed of representatives from juvenile and adult criminal justice, health and human services, education, regulatory, law enforcement, the courts, and advocacy groups serves in an advisory capacity to the Texas Board of Criminal Justice and TCOOMMI staff.

Mission Statement:  To provide a formal structure of criminal justice, health and human service and other affected organizations to communicate and coordinate on policy, legislative, and programmatic issues affecting offenders with special needs (special needs include offenders with serious mental illnesses, intellectual disabilities, terminal or serious medical conditions, physical disabilities and those who are elderly).

**D.      Continuity of Care (Mental Health and Medical)**

A program designed to provide a responsive system for individuals discharging from TDCJ, local referrals from parole, jail, family and other related agencies.  Components include, but are not limited to:

1.      Liaison with community resources, community supervision and parole offices, provide technical assistance to medical service providers caring for offenders and work with the Wrongfully Convicted Program.

2.      Screening and linkage to appropriate services, including medically appropriate residential plans.

3.      Federal entitlement application services.

4.      Court intervention.

**E.      Adult Intensive Case Management**

Clients shall have a high criminogenic risk and high clinical need.  Risk is determined by the Risk Assessment performed by TDCJ's criminal justice partners.  Services include, but are not limited to:

**DEFENDANTS' DISCLOSURE - 0293**

1.      Case Management;

2.      Rehabilitation/Psychological Services;

3.      Substance Abuse Treatment;

4.      Psychiatric Services/Medication Monitoring; and

5.      Linkage to Hospice and Medical Services.

**F.      Adult Transitional Case Management**

A program that provides transitional mental health services to offenders with severe and persistent mental illness who have been served in Adult Intensive Case Management caseload, and require ongoing services to reduce risk of recidivism, reduce or stabilize symptoms while linking the offender to natural and/or alternative supports. Additionally, this program may be provided to offenders with a severe and persistent mental illness who present with very little risk of harm and a level of functioning that requires less intensive levels of care to maintain community tenure.

**G.      HIV/AIDS Continuity of Care**

A program designed to provide a responsive system for individuals with HIV/AIDS discharging from TDCJ with discharge planning (linkage to appropriate services), and post-discharge follow-up to ensure engagement in services.

**H.      Medically Recommended Intensive Supervision (MRIS)**

To provide early release from incarceration for offenders who suffer from mental illness or intellectual disabilities, or who are elderly, physically handicapped, terminally ill, or require long-term care, and who pose minimal public safety risk. This program provides immediate linkage to appropriate services, including medically appropriate residential plans.

**XI.      TDCJ CRIME STOPPERS "BEHIND THE WALLS"**

**A.      Tip Communication Procedures**

If an offender has information about a felony crime or wanted fugitive and this information leads to the arrest, indictment and/or charges filed, he shall be eligible to collect a cash reward of "up to" $1,000.

**B.      How Do Offenders Report Information to Crime Stoppers?**

Write to:      TDCJ
                    CRIME STOPPERS
                    P. O. BOX 1855
                    HUNTSVILLE, TX 77342-1855

Call:         800-832-8477

Offenders shall not be required to write their name, TDCJ number or return address on the outside of this sealed correspondence. Correspondence shall not be logged or inspected by TDCJ personnel. Writing to the TDCJ Crime Stoppers Program following the above instructions shall assure informant anonymity.

**DEFENDANTS' DISCLOSURE - 0294**

C. **What Type of Information is Reported to Crime Stoppers?**

Information provided to TDCJ Crime Stoppers concerning a crime needs to be as specific as possible to ensure that the appropriate investigative actions can be taken. Include a physical description of the suspect (example: race, sex, age, date of birth, height, weight, hair, and eye color). Also, include the name of the suspect, nicknames or street names used by the suspect, address, telephone number, employer, known hangouts and acquaintances and the location of the suspect. Be sure to include types of weapons and/or automobiles used by the suspect, and an explicit description of the date, time and type of crime committed. If you do not give complete information, an Office of Inspector General employee may contact you; however, the reason and purpose shall remain confidential.

D. **Important Information**

The TDCJ Crime Stoppers Program shall not be used to circumvent the grievance system or to report problems that you may have with TDCJ or its operations that are not criminal in nature.

XII. **PROOF OF INCARCERATION PERIOD**

A. **Discharge Certificates**

Upon release from the Texas Department of Criminal Justice offenders who either discharge their sentence or complete parole shall be issued either a Discharge Certificate or a Parole Certificate. These certificates are extremely important – offenders **MUST** keep these certificates. Upon release, these certificates may be required by potential employers, housing authorities, military personnel, schools/college, state license board and government agencies (Social Security Administration). These certificates are not duplicated.

B. **Proof of Incarceration Period for State Jail offenders**

Upon release, state jail offenders shall be given a "Proof of Incarceration Letter". State jail offenders **MUST** keep these letters, which may be required by potential employers, housing authorities, military personnel, schools/colleges, state license board and government agencies (Social Security Administration).

**DEFENDANTS' DISCLOSURE - 0295**

# Chapter 2

## OFFENDER VISITATION RULES AND REGULATIONS

### INTRODUCTION

The Texas Department of Criminal Justice (TDCJ or Agency) encourages offender visits consistent with security and classification guidelines. Offender visitation in TDCJ units shall be conducted in an accommodating manner, in keeping with the need to maintain order, safety of persons and security of the unit. However, visitation is a privilege and may be temporarily restricted for an offender or a visitor, if rule violations occur or security concerns exist. Visitation may also be temporarily discontinued during lockdowns and other serious incidents, such as escape, health related concerns or riot. The temporary visitation suspension shall be posted on the TDCJ website. Offender visitation is managed under the direction of each warden, and in accordance with the rules and guidelines outlined below in accordance with the TDCJ *Offender Visitation Plan*. All offender visits covered by the TDCJ *Offender Visitation Plan* are subject to be electronically monitored. Unless otherwise noted, these rules and guidelines apply to both general (non-contact) visits and contact visits.

Effective, April 21, 2014, the TDCJ developed and implemented an online process in which family and friends are able to check an offender's eligibility status to receive visits. The following steps shall allow family and friends to look up an offender's visitation eligibility.

SEARCH AN OFFENDER'S VISITATION STATUS ELIGIBILITY ONLINE @ http://www.tdcj.texas.gov/

❖ Go to the TDCJ Website (Homepage) – http://www.tdcj.texas.gov/

❖ Locate "Quick Links" (right side of Homepage)

❖ Click on "Offender Search" - enter information for one or more fields – then click "Search"

❖ Click the "Name" Field - which contains the offender's name

❖ Scroll down to "Offender Visitation Eligible" Field

❖ Click on the Field's contents

❖ Review the "Offender Visitation" page for helpful information before visiting

### DEFINITIONS

**"Contact Visits"** are visits that are usually conducted inside the unit in a designated visiting area or outside the main building, within the fenced perimeter. Physical contact between offenders and visitors is allowed. Embracing and kissing is permitted once at the beginning and once at the end of each visit. Holding hands is permitted during visitation, as long as hands remain on top of the table in full view of staff. During visits, offenders and visitors are seated **on** opposite sides of the table, with the exception of the offender's small children who may be held by the offender.

**"Contraband"** is any item not permitted into the secured perimeter of a unit, or in some cases, on TDCJ property. Also, any item brought into, or taken out of a unit, or in the possession of an offender, visitor or employee as defined in the Texas Penal Code, Section 38.11, is prohibited by the rules and regulations of the TDCJ, may also be considered contraband. These items include, but are not limited to, alcoholic beverages, controlled substances or any drug, firearms or deadly weapons, or any item brought onto TDCJ property with the intent to deliver to an offender, such as paper money, tobacco, lighter, matches,

**DEFENDANTS' DISCLOSURE - 0296**

cell phones, pagers, laptop computers, cameras, digital recorders or any other type of electronic or wireless devices.

**"Current/Former Employee"** for the purpose of this plan, includes anyone currently or previously employed by the TDCJ, or anyone currently or previously employed by an agent of the TDCJ, including a private prison vendor, Windham School District (WSD), University of Texas Medical Branch (UTMB), Texas Tech University of Health Science Center (TTUHSC), or any other similar entity.

**"Director's Review Committee" (DRC)** is the central and final authority for all appeals related to the removal of persons from an offender's Visitors List and offender contact visitation restrictions.

**"Ex-Offender"** for the purpose of this plan, is an individual who has been incarcerated in a state or federal institution, and released under mandatory supervision, parole, discharged, released from a Substance Abuse Felony Punishment (SAFP) facility or released on shock probation.

**"Extended Visit"** may be permitted at the discretion of the warden or designee for individuals traveling in excess of 250 miles one-way for visitation, if space allows. This may be for up to four hours in length.

**"Family Liaison Officer"** (FLO) is a TDCJ employee, such as a duty warden, who assists offenders' immediate family members and other persons during visits with offenders and aids those persons in resolving problems that may affect permitted visits with offenders.

**"General Visits"** are conducted inside the main building of the unit in which no physical contact between offenders and visitors is possible or allowed. These visits are usually held in a designated visiting area where offenders and visitors are physically separated by a glass wall or partition. General visits are also referred to as non-contact and regular visits.

**"Hardship Visits"** allow children ages 16 and 17, who are on the offender legal guardian/parent Visitors List and do not have an adult to accompany them, to visit legally recognized guardians or parents who are incarcerated in the TDCJ.

**"Immediate Family"** for the purpose of this handbook, is a ceremonial, proxy, or common-law spouse, natural or adopted mother and stepmother; natural or adopted father and stepfather; natural or adopted children, stepchildren, grandchildren, and step-grandchildren; natural or adopted siblings stepsiblings; natural or adopted grandparents and step-grandparents; aunts, uncles, and persons related by marriage, which are in-laws: father, mother, daughters, sons, brothers, sisters, grandchildren, and grandparents.

**"Offender"** for the purpose of this handbook, is an individual in the custody of the TDCJ.

**"Ombudsman Office"** is a single point of contact for offender family members, elected officials, and members of the general public.

**"Significant Other"** for the purpose of this handbook, is a surrogate parent or a special relationship, such as a foster parent or legal guardian of an offender's minor child that is verified by the warden.

**"Special Visits"** are visits that allow the warden or designee to permit contact or general visits or authorize special conditions of visits outside of the ordinary course of established visitation rules. The warden may delegate the authority to review and approve requests for special visits to a designee, such as duty warden, assistant warden, building major, or Unit Classification Committee (UCC) member. Offenders or visitors requesting a special visit shall submit the request in writing or via telephone or e-mail, for applicable units to the warden or designee.

**"Split Visits"** are visits that allow offenders and visitors to divide or breakup a visit in one- or two-hour increments. For example, during one two-hour special visit, two adults can visit during the first hour and two different adults can visit during the last hour; or during one four-hour special visit, two adults can visit during the first two hours and two different adults can visit during the last two hours. Both regular and

**DEFENDANTS' DISCLOSURE - 0297**

special visits allow a total of four adults to visit.  Prior to being granted a split visit, the visitor shall inform the visitation officer of the desire to receive a split visit during the visitors' check-in process.

**"Visitor Identification"** for visitors ages 18 and older, is a pictured and signed identification (ID) of one of the following:  (1) state driver license; (2) state Department of Public Safety (DPS) ID card; (3) Armed Forces ID card; (4) passport; or (5) ID card issued by the United States Department of Homeland Security, U.S. Citizenship & Immigration Services (USCIS), such as Visa Border Crossing ID Card (USA B1/B2 Visa BCC).  If an identification document other than a passport is used, the identification document shall contain a current physical address.  Children 17 years of age and younger may be required to provide ID, such as birth certificate, ID card, or student ID card (student ID card shall be used only for children ages 17 and younger).  Identification is required for hardship visitors.  An exception is allowed for victims of family violence who are certified as a crime victim to use a post office box address instead of a physical address.

**"Victims of Family Violence"** for the purpose of this handbook, are the victims of family violence who may be issued a card that indicates the individual has been certified as a crime victim and is entitled to protection.  These individuals may visit using a post office box in lieu of a physical address, when presenting the certification card and a government ID.  In particular, the attorney general is authorized under Texas Code of Criminal Procedure § 56.82 to protect the address information of victims of family violence.

**"Visitors List"** is the official approved list of names, phone numbers, and physical addresses of persons with whom the offender wishes to visit during authorized visiting hours.  Each offender is allowed to have a maximum of 10 names on the Visitors List.

**"Visitors List Change"** for the purpose of this handbook, is the process of adding or deleting names from an offender's Visitors List once every six months for institutional offenders and once every 60 days for state jail offenders.

**"Visitors List Status Change"** for the purpose of this handbook, is the process of updating information on an offender's Visitors List at any time without the updated information being counted as a "Visitors List Change."  For example, changes to an address, phone number, relationship, adding a different last name, or any other similar updated information may be done at any time.

**I.    GENERAL INFORMATION**

While it is recognized that unit assignments may create hardships for visiting, assignments are based on considerations other than offender or family convenience.

Each unit's designated FLO, usually the duty warden, shall ensure offenders' immediate family members and other persons are given assistance during visits with offenders and given assistance in resolving problems that may affect permitted contact with offenders.  The duty warden has the ultimate responsibility for resolving any visitation problem.  Other employees and TDCJ approved volunteers shall assist the duty warden in providing assistance to visitors.  The volunteer may be able to offer general information regarding unit operations and rules for visitors.  Copies of the I-218, "Offender Rules and Regulations for Visitation" booklet are prominently displayed at locations in the unit that are accessible to offenders and in areas accessible to visitors.

**Visitation Schedule:**

**A.    Periods of Visitation**

1.    Visits usually occur on Saturday and Sunday between 8:00 a.m. and 5:00 p.m.

2.    Normally one visit per visiting cycle for eligible offenders are allowed.

**DEFENDANTS' DISCLOSURE - 0298**

3.      Visiting cycles begin on Monday and end on the following Sunday. For example, if a visitor or an eligible offender desires to visit on Sunday and the following Monday, Monday begins the next visiting cycle. Therefore, if allowed to visit, this shall count as one visit for each week.

4.      A regular visiting period is two hours in duration and begins when the offender is seated.

5.      Due to visitation demand, the CID director may designate units to expand normal visitation days and hours to include Fridays.

Updated and regularly maintained Unit Visitation Schedules are located on the TDCJ website, under "Offender Search."

**B.      Frequency of Visits**

Generally, all offenders are permitted to have a total of one general or contact visit for a two-hour period each week, except during the Intake Process; Lockdown Status; Solitary Confinement; Administrative Segregation; and G5/J5/P5 custody offenders housed in the main compound.

Administrative segregation, death row, and G5/J5/P5 custody offenders housed in the main compound and other areas of visitation are detailed in Section IV. "Visits for Other Categories," of this handbook.

The following offenders are eligible for visits, with the frequency as indicated:

| Custody Level/Class | Frequency |
|---|---|
| Level 1 (G1, J1); Level 2 (J2 only) | One contact visit/week |
| Level 2 & 3 and Protective Safekeeping (with SAT 3) (G2, G3, P2, P3, P6 and P7); | One contact visit/week |
| Level 2 & 3 (G2, G3, P2, P3) | Three contact visits/month |
| Level 4 - (G4, J4, P4) State jail and institutional SAT 3 and 4 offenders with no disciplinary convictions for one year | Two contact visits/month |
| All other Level 4 (G4, J4, P4) | One general visit/ week |
| Level 4 (G4) Special Penalty | Two general visits/month |
| GRAD offenders (CG) | One general visit/week |
| Protective Safekeeping (below SAT 3) (P6 and P7) | Three contact visits/ month |
| Outside Trusty (OT), SAFP (FT), & IPTC (IT) | One contact visit/week |
| Medical (MD), Mental Health (MH), & Intellectually Impaired (II) | Based on computer recommended custody, which determines the type and frequency of visits |

The number of contact visits allowed each month shall count toward the total number of visits as outlined above.  Except in unusual circumstances, an offender shall not be scheduled for both a contact visit and a general (non-contact) visit on the same day or during the same week.

**DEFENDANTS' DISCLOSURE - 0299**

**C.** **Visits Requiring Advance Scheduling**

1.  Visits may occur on holidays, except Christmas Day, that fall on a Monday or Friday, if scheduled in advance.  Arrangements to schedule these visits may not be made on any holiday.

2.  All arrangements to schedule visits shall be made through the warden's office between 8:00 a.m. and 5:00 p.m. at least one day but not more than seven days prior to the visit.

3.  Unit administration shall make every effort to accommodate visitors arriving late, if time and space is available.

**D.** **Number of Visitors Allowed**

1.  Each eligible offender is allowed to have two adults, ages 18 and older, per visit. Children ages 17 and younger may visit without being counted in this number. The number of children allowed per visit is based on the amount of space available and the visitor's ability to manage and control the children.

2.  Each eligible offender  is also allowed to have split visits.

3.  Eligibility Criteria

    An offender is eligible for a contact visit if the offender's eligibility is reflected in the Mainframe computer records (that is, the offender Visitors List screen in the Inmate Master File computer program indicates when or if an offender is eligible to receive contact visits).

## II.   WHO CAN RECEIVE VISITS

**A.**   **Intake Processing**

During the Intake process, each offender is asked to submit a list of not more than ten names of proposed visitors to the warden or designee, using the RO-1, request for placement on Visitors List.  Each name submitted shall include the physical address and phone number of the proposed visitor and the visitor's relationship to the offender.  An offender, not a visitor, shall request to have a visitor added to the Visitors List.  The visitor cannot request to be placed on an offender Visitors List.  Offenders do not receive visits until the intake processing is complete and offenders are classified and assigned a custody.

**B.**   **Identification of Proposed Individuals on the Visitors List**

The offender is required to identify all individuals on the proposed Visitors List who are on parole, mandatory supervision or have discharged a sentence for which the individuals were incarcerated.  Persons with a criminal record are not automatically precluded from visiting.  The nature and extent of the criminal record and the time lapse since the criminal activity are taken into consideration.

**C.**   Newly-received offenders shall be given sufficient time to obtain visitors' addresses and phone numbers for inclusion on the initial Visitors List.

**DEFENDANTS' DISCLOSURE - 0300**

D.    **Visitors List**

1.    Institutional offenders may request additions and deletions to the Visitors List once every six months.  State jail offenders may make additions and deletions to the Visitors List once every 60 days.

2.    Offenders are allowed to request Visitors List Status Changes on the Visitors List, using the RO-1, Request for Placement on Visitors List at any time without affecting a Visitors List date change.  For instance, changes to an address, phone number, relationship, adding a different last name or any other similar updated information may be done at any time without causing a Visitors List date change.  The procedures to change the offender's Visitors List are outlined in the Visitors List Change/Status Change Update Procedures, Attachment A, TDCJ *Offender Visitation Plan.*

## III.   RULES FOR VISITS

### A.   Children Ages 17 and Younger

Children ages 17 and younger shall be accompanied by an adult who is listed on the offender's Visitors List.

1.    Hardship Visits

With prior written approval from the warden, children ages 16 and 17 and are on the offender's Visitors List, may be allowed to visit a legal guardian or parent-offender, alone without an adult accompanying them.  These accommodations are allowed for children ages 16 and 17 who do not have an adult to accompany them when visiting incarcerated legal guardian or parents.

A copy of the warden's written approval obtained prior to the visit shall accompany the 16 or 17 year old when visiting and shall be filed in the offender's unit file.

2.    Child Victim Restrictions

An offender convicted and sentenced for current or prior crimes involving sexual offenses against children or offenses causing bodily injury to a child, during which the child victim was age 17 and under, is restricted from having contact visits with children 17 and under.  The offender may have a general visit with a child age 17 and under only if the offender is the legally recognized parent of the child and the child was not the victim of the sexual offense or bodily injury.  Before the visit may occur, the legal guardian or parent shall complete a Child Victim Restriction Affidavit attesting that the offender is the legally recognized parent of the child and the child was not the victim of any sexual offense or bodily injury for which the offender has been convicted or placed on deferred adjudication.

The Chief of Unit Classification shall enter the appropriate administrative denial ("VR") in the offender's records.  This restriction is based on the propensity for repetitive acts of this nature, and the nature of the intimacy involved in contact visits with children.  This restriction is imposed in the interest of visitor safety and the security of the institution, as well as to ensure that criminal acts against children which are of a sexual or assaultive nature do not occur during contact visitation.

**DEFENDANTS' DISCLOSURE - 0301**

This is not to be confused with those few exceptions when a child should be allowed to see a sex offender, usually a parent in a controlled group environment supervised by Sex Offender Treatment Program (SOTP) psychologists.  It is not intended to be used to prohibit family participation in counseling groups as a part of the SOTP.  These exceptions shall only occur with the approval of the SOTP Clinical Director.

Offenders may file a grievance or appeal to the DRC for removal of a "VR" code.

**B.**     **Approval Process**

1.     The warden or designee shall review the list of names submitted by the offender and approve or deny these persons for visitation using the RO-1, Request for Placement on Visitors List.

2.     Each offender is given a copy of the offender's approved Visitors List.  The original offender's Visitors List shall remain with the offender's travel card.  The names, addresses, relationship and phone numbers of each offender's approved visitors shall also be maintained on the TDCJ Mainframe computer system.

**C.**     **Visitor Notification**

1.     When an offender receives a TDCJ number, initial unit of assignment or is transferred to a new unit of assignment, the offender is responsible for notifying all persons on the offender's Visitors List of this information including the unit's mailing address, visitation schedule (to include frequency and length of visits, visitation periods and any other similar information) and number of visitors allowed per visit.  The *Offender Orientation Handbook (English and Spanish)* is located on the TDCJ website at: http://www.tdcj.state.tx.us/documents/Offender Orientation Handbook English.pdf.

2.     The offender is responsible for notifying ex-offenders, who are not immediate family members that they are required to wait 24 months from their release date before being eligible to visit.

The offender is also responsible for notifying immediate family members who are ex-offenders to bring written permission from the individual or agency supervising the conditional release and also notify the respective warden prior to visiting.  Permission from the supervising agency shall be filed in the offender's unit file and is only required once.

The duty warden has the authority to make the final determination whether an ex-offender is allowed or not allowed to visit an offender based on safety and security concerns.

3.     Visitation Restriction

a.     When an offender's visitation privileges are in any way restricted or suspended, such as offender is placed in solitary confinement; or the offender's contact visitation privileges are administratively suspended by a UCC member, the offender is responsible for notifying the individuals on the Visitors List by mail as to the type and length of the visitation restriction or suspension.  In cases where an offender's general visitation privileges have been restricted due to the offender's placement in solitary confinement, and notification by mail is not possible before the visitors

**DEFENDANTS' DISCLOSURE - 0302**

are expected, the offender should notify the warden or designee, who shall attempt to contact the visitors by telephone.

b.   In the event an offender is placed on the Critically Ill List, unit medical staff shall notify the warden or designee who shall make the appropriate notifications to the next of kin in accordance with AD-06.10, "Notification Regarding Critically Ill Offenders."

## D.   Visitor Identification

The CID is authorized to maintain a Visitor's Tracking System.

1.   Prior to entering the visitation area, all visitors ages 18 and older shall provide the required ID as defined by this handbook.

2.   If the visitor's ID is questionable or not acceptable, further verification is required, such as birth certificate, pictured credit card or other official ID.  Children 17 and younger may be required to provide an ID, such as birth certificate, DPS ID, or student ID) if the child's age is questionable due to physical maturity of the child. Student IDs may be used only for children ages 17 and younger.

### VISITATION CRITERIA

| Age | On Visitors List | | ID Required | | Shall be Accompanied by an Adult | |
|---|---|---|---|---|---|---|
| | Yes | No | Yes | No | Yes | No |
| 17 & younger | | √ | | √ | √ | |
| 18 & older **(Adults)** | √ | | √ | | | √ |
| *Children ages 16 and 17 who have been approved for a Hardship Visit shall be on the offender Visitors List and are required to provide ID, such as student ID card, birth certificate, or state Department of Public Safety ID card. | | | | | | |

3.   Visitors shall provide the following information prior to entering the unit or the unit's designated security checkpoint:

a.   Name and TDCJ number of the offender to visit;

b.   Visitor's relationship to the offender;

c.   Visitor's current physical address and phone number; and

d.   Written permission from the individual or agency supervising visitors on parole or mandatory supervision, if applicable.

4.   The correctional officer in charge of visitation shall verify all visitors' approval prior to allowing the visit.   Questions regarding identity shall be referred immediately to the duty warden.

**DEFENDANTS' DISCLOSURE - 0303**

E.    **Visitor and Vehicle Searches**

1.    All vehicles and visitors are subject to search prior to entering TDCJ property. Visitors shall be screened by a metal detector prior to entering the visitation area in accordance to TDCJ policies.  Pat search shall be conducted by a security staff of the same gender; however, metal detector screening may be performed by either gender.  Visitors shall be screened in a sheltered area during inclement weather.

Children under 18 shall not be pat searched by TDCJ security staff but shall be screened by TDCJ security staff using a hand-held or walk-through metal detector.

Parents, guardians or accompanying adults are responsible for ensuring visiting children are free of any contraband prior to entering a TDCJ unit.

Any visitor refusing a search procedure shall be required to leave TDCJ property.

Each unit shall have a sign listing these procedures posted at the vehicle check-in point at units that use vehicle check-in points and the visitor check-in point. The signs shall be posted in both English and Spanish.  It is a mandatory requirement that all visitors shall be screened and searched inside a sheltered area if inclement weather exists.

2.    All visitors shall leave any metal objects or material capable of causing injury, abetting escape, or otherwise causing a threat to the safety or security of the unit in a secure vehicle.  The duty warden has the authority to make a final determination whether an object is prohibited.  All hand-carried items shall be searched.

EXCEPTION:  If a visitor has a pacemaker, or any other type of medical implants, the visitor shall have written documentation from a physician or pacemaker manufacturer indicating that the metal detector screening may cause the visitor's pacemaker to malfunction.  Once this documentation is presented to security, the visitor shall submit to a pat search.

3.    No internal body cavity searches of visitors shall be conducted.  Strip-searches of visitors shall only be conducted if the visitor agrees in writing using the Consent To A Strip Search Form, and the duty warden gives prior approval for the strip search based on reasonable cause.  In making the decision to authorize a strip-search, the duty warden shall evaluate the grounds asserted to justify the search, including:

a.    Knowledge, as a result of visual inspection or use of a metal detector that the visitor may be carrying contraband;

b.    The apprehension of the visitor while passing or attempting to pass contraband to an offender or another visitor; or

c.    Other sufficient reason to believe a search is warranted.

**DEFENDANTS' DISCLOSURE - 0304**

F.     **Contraband Items**

Visitors shall not possess or introduce into the secured perimeter of a unit, or in some cases, on TDCJ property, any items defined as contraband or any articles, instruments or substances specifically prohibited by state law or policies and rules of the TDCJ.

If there are questions regarding an item, the duty warden has the authority to make a final determination. The following are defined as contraband items and are distinguished as items not allowed on TDCJ property or items not allowed inside the secured perimeter of a unit:

Contraband Items Not Allowed on TDCJ Property

1.     Any intoxicating beverages, for instance a beverage containing any amount of alcohol or drugs used for the purpose of altering one's mental state;

2.     Any controlled substance, as defined by Texas Health and Safety Code § 481.002, or dangerous drugs, as defined by Texas Health and Safety Code § 483.001, and any other substance or item not otherwise permitted by Texas Penal Code § 38.11; and

3.     Any instrument that may be used in affecting or attempting to affect an escape.

G.     **Contraband Items Not Allowed Inside the Secured Perimeter of a Unit**

Knives, drugs, medications, except medication with written authorization from the visitor's physician. Food items, purses, diaper bags, briefcases, baby strollers, toys, dolls, photographs or photograph albums, paper money, tobacco, lighters, matches, cell phones, pagers, laptop computers, cameras, digital recorders, or any other type of electronic or wireless devices or any other non-authorized items.

H.     **Permissible Items**

1.     Visitors are permitted to bring into the unit a small wallet, clear plastic bag, Ziploc® type or change purse.

2.     Visitors may bring coin money in an amount not to exceed $25 Visitors who violate this rule may have the visit denied and may be removed from the offender's Visitors List.

3.     Visitors with infants or small children may bring no more than three diapers, a supply of baby wipes and two baby bottles or a "sippy" cup for toddlers into the unit. These items shall be stored in a clear plastic bag.

4.     Visitors are allowed to purchase soft drinks and snacks from the vending machines for offenders during general and contact visits, but the items shall be consumed during the visit.

I.     **Supervision of Visits**

1.     Each warden shall establish procedures to ensure all visits are conducted in a quiet and orderly manner.

2.     Assigned staff shall constantly monitor against the passing of contraband between offenders and visitors, as well as between offenders.

**DEFENDANTS' DISCLOSURE - 0305**

3.      Offenders shall be pat or strip-searched prior to entering the visitation area and strip-searched prior to leaving the visitation area.  After completing the visit, the offender shall immediately leave the visitation area and shall not be given the opportunity to return to the visitation area or any part thereof.

4.      Offenders who are allowed to take a restroom break during the visit shall be strip-searched when exiting and pat or strip-searched when re-entering the visitation room.  Time taken for restroom breaks shall be considered as part of the visiting period.

**J.      Offender Rules**

1.      Offenders shall wear TDCJ-issued pants, with shirts tucked in, and TDCJ-issued or commissary-purchased shoes.   Offenders may wear TDCJ-issued or commissary-purchased t-shirts, thermals, and wedding rings (band-type only with property papers) during visits.   If the offender wears commissary-purchased shoes to a visit, the offender shall have proof of ownership for the shoes in their possession.  Any offender not producing proof of ownership for the commissary-purchased shoes may have the visit terminated, the shoes confiscated, or be provided a pair of TDCJ-issued shoes to complete the visit.

2.      Offenders shall not pass items to other offenders or visitors.

3.      Offenders shall not be loud or boisterous during visits.

**K.      Visitor Rules**

1.      Dress Code

a.      Conservative dress is encouraged for all visitors.  The duty warden shall make the final decision on whether the visit should be denied based on clothing.

b.      Shorts and skirts no shorter than 3" above the middle of the knee when standing, capri pants, or long pants are allowed.

c.      Length is not restricted for pre-adolescent boys and girls; generally ages ten and younger.

d.      Sandals, flip-flops and open-toes shoes are allowed.

e.      Sleeveless shirts and dresses are allowed, however the shirts and dresses shall cover the shoulders.

f.      Clothing with pictures or language that may be considered profane or offensive by current public standards is not allowed.

g.      Clothing that is tight fitting, revealing, or made with see-through fabrics is not allowed.  Sleeveless shirts and dresses are allowed, but shall cover the shoulders.

2.      Visitors are prohibited from engaging in the following activities:

a.      Loitering around the unit's front gate, parking lot, or perimeter pickets;

b.      Walking along the perimeter road;

**DEFENDANTS' DISCLOSURE - 0306**

    c.       Photographing buildings, fences, or other parts of the unit;

    d.       Playing radios loudly; or

    e.       Yelling at offenders.

3.      Children shall not be left unattended.

4.      Visitors are not allowed to switch from visiting with one offender to another.  This conduct may cause the visit to be terminated and possibly the visitor's name removed from the offender's Visitors List.

5.      Removal of Articles from the Unit

    a.       Without approval from the duty warden, no visitor may take any article from TDCJ property, such as gifts from offenders, excess personal property items, or craft items.

    c.       Transfer of offender property or craft items to visitors shall be managed in accordance with AD-03.72, "Offender Property" and AD-14.59, "Offender Piddling and Craft Sales."  Monies for payment of craft items may be arranged in advance with the warden or designee.

## L.    Denial of Visits/Visitors

1.      When there is reason to believe that a forthcoming visit, or a particular visitor, may compromise the safety and security of offenders, staff or the unit, the duty warden or designee have the authority to cancel the visit or deny a particular individual permission to visit on that day.  In addition, the duty warden or the UCC may remove an individual's name from an offender's Visitors List when there is cause to believe the visitor may compromise the security of the unit or safety of offenders and staff.

2.      The specific reasons for cancelling a visit, denying a visitor or removing a visitor from an offender's Visitors List shall be documented on the TDCJ Offender Visitation Denial Form and the Denial Log.  A copy of the TDCJ Offender Visitation Denial Form shall be provided to the denied visitor and the offender, and the original shall be filed in the offender's unit file.

3.      A visitor shall be denied permission to visit and may have the visitor's name removed from the offender's Visitors List if, the visitor:

    a.       Appears to be under the influence of drugs or alcohol;

    b.       Refuses or fails to produce identification or falsifies identification information;

    c.       Refuses to be searched or refuses to allow the vehicle to be searched;

    d.       Misrepresents the relationship; or

    e.       Knowingly violates any TDCJ visitation rule.

**DEFENDANTS' DISCLOSURE - 0307**

4.     An offender may appeal the decision to remove an individual's name from the offender's Visitors List through the offender grievance procedures or by submitting a written appeal to the DRC.

5.     Additionally, a denied visitor shall be notified by the warden or designee of the right to appeal the decision to be removed from an offender's Visitors List to the DRC.   The appeal shall be submitted within 14 days of the date on the written notice.   If the appeal is denied, the individual may submit another appeal six months after the denial.

## M.   Termination of Visits in Progress

1.     The duty warden has the authority to terminate an offender's general or contact visit while the visit is in progress, if the offender violates established TDCJ offender rules and regulations.   Visits may also be terminated if the offender's visitors do not comply with the rules and regulations established for visitors, including but not limited to failure to prevent children from disturbing other individuals in the visiting area.

2.     Prior to terminating a visit, less severe alternatives should be attempted if appropriate.   This should include warnings to the offender or visitors of improper conduct which, if continued, shall result in the visit being terminated and may cause the visitor's name to be removed from the offender's Visitors List.

## N.   Suspension of General Visits

Loss of general visitation privileges cannot be imposed as a punishment upon conviction for a disciplinary violation.   However, general visitation privileges shall be suspended while offenders are in solitary confinement.   Visitation privileges may be suspended for offenders on lockdown status in accordance with AD-03.31, "Unit Lockdowns Procedures."

## IV.   VISITS FOR OTHER CATEGORIES

## A.   Developmental Disabilities Program (DDP) and Psychiatric In-Patient

Determinations regarding visitation for offenders in a DDP Sheltered Facility or psychiatric in-patient facility shall be made on a case-by-case basis by the offender's Program Treatment Team according to the following criteria.

1.     Psychiatric in-patients are allowed contact visits in accordance with the computer recommended custody.   Offenders who have no disciplinary for 12 consecutive months shall be allowed to receive contact visits with immediate family members. These offenders shall be reviewed and approved by the Program Treatment Team which consists of a psychiatric or rehabilitation aide supervisor or designee, and with the warden's approval.

2.     Visitation for all psychiatric in-patient facilities may be scheduled for any day of the week, at the discretion of the warden or designee and the Program Treatment Team.

## B.   Psychiatric Out-Patient

Psychiatric out-patients are eligible for general and contact visits in accordance with the offender's custody.

**DEFENDANTS' DISCLOSURE - 0308**

C.      **Transient Status**

Offenders in transient status or housing except those undergoing intake processing are eligible for general visits in the same manner as all other general population offenders. Contact visitation for these offenders is allowed in accordance with the criteria and procedures outlined in these rules and at the discretion of the warden or designee, as in cases where offenders are being housed in transient status due to a protection investigation.

D.      **Safekeeping Status**

Offenders in safekeeping status are eligible for general and contact visits in accordance with the same criteria and procedures as all other general population offenders.

E.      **Pre-Hearing Detention**

Offenders in pre-hearing detention are not allowed to have contact visits while in this status, irrespective of custody level or time-earning status.  However, these offenders are allowed to have general visits in accordance with the same criteria and procedures as general population offenders.

F.      **Lockdown Status**

Offenders on lockdown status may not be allowed visitation in accordance with AD-03.31, "Unit Lockdowns Procedures" and the unit's progressive release lockdown schedule.

G.      **Solitary Confinement**

All visitation privileges are suspended while offenders are in solitary confinement.  In cases where the offender is placed in solitary confinement, and timely notification to the visitor by mail is not possible the offender should notify the warden or designee, who shall attempt to contact the visitors by telephone.

H.      **Administrative Segregation and Expansion Cellblock**

1.      General Visits

Offenders in administrative segregation (security detention) or G5 in expansion cellblocks are allowed general visits based on the administrative segregation level to which they are assigned, as outlined below.  Special security procedures may be used during visitation periods to ensure the safety and security of all offenders, visitors, staff and the unit.

| Security Detention Level | # of Visits Allowed |
| --- | --- |
| Level I | One general visit/week |
| Level II | Two general visits/month |
| Level III | One general visit/month |

2.      Expansion Cellblocks

a.      Offenders assigned to expansion cellblock facilities (separate cellblocks at the Estelle, Lewis, Smith, Allred and Clements Units designed to house G5 and administrative segregation offenders) shall receive scheduled visits during the week due to the physical configuration of the facilities.

**DEFENDANTS' DISCLOSURE - 0309**

b.  Visits for administrative segregation and G5 offenders in expansion cellblock facilities shall be scheduled in advance through the warden's office between 8:00 a.m. and 5:00 p.m. (Monday through Friday), at least one day, but not more than seven days prior to the visit.  However, at the warden's discretion, offenders may receive unscheduled general visits during the weekend.

c.  Other units that house administrative segregation offenders other than the expansion cellblock facilities may be designated to receive scheduled visits during the week.

## I.   Death Row

1.  Death Row offenders are not allowed contact visits.  Generally, visits are two hours in duration.  Special security procedures may be used during visitation periods to ensure the safety and security of all offenders, visitors, and staff as well as the security of the unit.

| Custody Level | # of General Visits Allowed |
|---|---|
| Work Capable & Level I | One visit/week |
| Level II | Two visits/month |
| Level III | One visit/month |

2.  Visitation is held on the following days, except on holidays:

| Polunsky | Mountain View |
|---|---|
| Monday (8:00 a.m. - 5:00 p.m.) | Monday (8:00 a.m. - 5:00 p.m.) |
| Tuesday (8:00 a.m. - 5:00 p.m.) | Tuesday (8:00 a.m. - 12:00 p.m.) |
| Wednesday (8:00 a.m. - 12:00 p.m.) | Wednesday (8:00 a.m. - 5:00 p.m.) |
| Thursday (8:00 a.m. - 5:00 p.m.) | Thursday (8:00 a.m. - 5:00 p.m.) |
| Friday (8:00 a.m. - 5:00 p.m.) | Friday (8:00 a.m. - 5:00 p.m.) |
| Saturday (5:30 p.m. - 10:00 p.m.) | Saturday (5:30 p.m. - 9:30 p.m.) |

3.  Death row visitation may be scheduled by appointment during high-traffic times or due to the physical configuration of the unit visitation room.  Scheduling is used to ensure the minimum amount of wait time for visitors and most efficient use of the visitation room.  Visitation at the Mountain View Unit is scheduled with the warden's office.  Visitation at the Polunsky Unit is held on a first-come, first-served basis, except for Saturday evenings, which is scheduled by appointment.  Special visits are conducted at the warden's discretion.

4.  Attorney Visits

Death row offender visits with attorneys are governed by BP-03.81, "Rules for Governing Offender Access to the Courts, Counsel, and Public Officials."  An attorney visit shall not count against a death row offender's visits.

5.  Death Row Ministerial and Spiritual Advisor Visitation Guidelines

Outside ministerial and spiritual advisor visits are permitted on a case-by-case basis at the discretion of the warden or designee and shall be conducted in accordance with AD-07.30, "Procedures for Religious Programming," and the TDCJ *Offender Visitation Plan*.  Permission for visits with spiritual advisors who are not listed on the offender's approved Visitors List may be obtained from the warden.  Spiritual advisors shall provide credentials indicating official status as a

**DEFENDANTS' DISCLOSURE - 0310**

member of the clergy, in accordance with AD-07.30, in order to obtain permission to visit.

a.      Special exceptions regarding spiritual advisor visitation are extended to death row offenders who are within 30 days of their execution date.

b.      Death row offenders may visit with their spiritual advisors at a prearranged time, for two hours, on a regular death row visiting day.

c.      A death row offender may have a spiritual advisor visit and a regular visit on the same day. However, the spiritual advisor may not have a spiritual advisor visit and a regular visit with the same offender on the same day.

d.      A spiritual advisor visit shall not count against a death row offender's regular visits.

e.      Designating the Spiritual Advisor

(1)      Each death row offender may designate in writing one outside spiritual advisor for witnessing purposes.

(2)      The designated spiritual advisor may be changed at the request of the death row offender if adequate prior notice is given.

(3)      In responding to requests for such visits, priority is given to offenders who have not recently had outside ministerial or spiritual advisor visits, and spiritual advisors who travel great distances to visit.

(4)      Spiritual advisors requesting visits shall contact the unit Offender Records Department on weekdays between 8:00 a.m. and 5:00 p.m. by calling 254-865-7226 (Mountain View) or 936-967-8020 (Polunsky) to schedule a visit.

(5)      No more than three outside spiritual advisor visits shall be scheduled for death row any single visiting day, except at the discretion of the warden.

(6)      Visitation is scheduled based on availability of time, space, and staff.

6.      Media Visits

Press interviews of death row offenders are scheduled through the Public Information Office.

| Polunsky Unit | Mountain View Unit |
| --- | --- |
| Wednesday 1:00 p.m. to 3:00 p.m. | Tuesday, 1:00 p.m. to 3:00 p.m. |

Special security procedures, such as security cages may be used during the visitation periods to ensure the safety and security of offenders, visitors, staff and the unit.

**DEFENDANTS' DISCLOSURE - 0311**

**J.      Level 5 (G5/J5/P5) Offenders in the Main Compound**

Offenders with the below custody who are housed in the Main compound shall receive visits as indicated below.

| Custody Level | Frequency/General Visits |
|---|---|
| Level 5 (G5, J5, P5) | Two general visits/month |
| Level 5 (G5, J5, P5) offenders on special penalty cell restriction | One general visit/month |

All visits are limited to two hours in duration and occur on **Saturday and Sunday between 8:00 a.m. and 5:00 p.m.**

Units identified with high visitation frequency shall allow visitation Saturday and Sunday between 7:00 am. and 5:00 pm.

**V.      CONTACT VISITATION**

**A.      Contact Visits**

Both indoor and outdoor contact visitation are located on most TDCJ units.  For outdoor contact visits, covered picnic type tables or similar seating arrangements are available. Contact visits may be held outdoors if weather permits.  The duty warden shall determine when inclement weather conditions or some other uncontrollable situation which would prohibit the use of outdoor contact visitation.

1.      Offenders shall complete the intake process and be incarcerated in the TDCJ for a minimum of 60 days from the current TDCJ receive date prior to becoming eligible for contact visitation.   General visits are allowed anytime during this process as specified by the warden.

2.      State jail offenders shall complete the intake process and be incarcerated in the TDCJ for a minimum of 30 days from the current TDCJ receive date prior to becoming eligible for contact visitation.  General visits are allowed at anytime during this process as specified by the warden.

**B.      Eligibility Criteria**

An offender is eligible for a contact visit if the offender's eligibility is reflected in the Mainframe computer records.

**C.      Contact Visitation Scheduling**

1.      Offenders eligible to receive contact visits may select the week for the visitation; they shall not be restricted to a designated week for contact visitation.

2.      In the event the computer becomes inoperable prior to or during any part of the contact visiting hours, and a unit is unable to determine which offenders are eligible to have contact visits, the duty warden shall have the authority to provide offenders with general visits on that day.  Eligible offenders are permitted to have contact visits on a subsequent day (which may be during the same week at the warden's discretion).

**DEFENDANTS' DISCLOSURE - 0312**

**D.**     **Visitors Approved for Contact Visits**

1.     Contact visits are limited to the eligible offender's immediate family to include the following procedures for ceremonial, proxy, common-law spouse and significant other categories.

2.     Spouse

   a.     Ceremonial

   The person listed as an offender's spouse on the offender's Visitors List is eligible for contact visits.  Any change of an offender's spouse on the Visitors List shall be verified by the warden or designee, that is, proof of divorce shall be provided by the offender when a change in spouse is requested on the Visitors List).  A copy of the marriage license or other acceptable legal documents shall be used for verification.

   b.     Proxy

   A marriage in which an applicant is unable to appear personally before the county clerk to apply for a marriage license or to participate personally in the marriage ceremony.

   A copy of the executed proxy marriage license or other acceptable legal documents shall be used for verification.

   c.     Common-law

   A common-law marriage cannot include a party who is age 17 or younger.  A common-law marriage is when a man and woman agree to be married and after the agreement live together as husband and wife and represent to others that they are married.

   Acceptable documentation for establishing a common-law marriage status is a Declaration and Registration of Informal Marriage.  A declaration of informal marriage shall be executed on a form provided by the Bureau of Vital Statistics of the Texas Department of State Health Services and provided by the county clerk.  In absence of a Declaration and Registration of Informal Marriage, both the offender and the common-law spouse may submit to the warden an Affidavit of Informal Marriage form declaring the marriage.  The offender may use an unsworn affidavit under penalty of perjury (Texas Civil Practice and Remedies Code §§ 132.001 – 132.003.  However, the common-law spouse shall provide an affidavit certified by the county clerk or notarized by a Notary Public.  Any other form of registration acceptable to the Bureau of Vital Statistics is considered acceptable proof of marriage.  A copy of the documents shall be placed in the offender's unit file.

3.     Significant Other

   Special Relationship or Surrogate Parent

   A person having a special relationship or surrogate parent with an offender may be eligible for contact visits, if the relationship is verified and approved by the warden or designee.  A surrogate parent is generally defined as a person with whom the offender resided as a minor for a significant amount of time.  For

**DEFENDANTS' DISCLOSURE - 0313**

example, foster parents, and the legal guardian of an offender's minor child, to include the parent of the child, are eligible if the relationship to the offender is verified by the warden or designee. The warden or designee shall have the authority to assess the relationship and determine if the proposed visitor qualifies as a special relationship or surrogate parent.

4.      Non-immediate family members

The warden or designee may approve non-immediate family members for contact visits with offenders who, although eligible, are not able to have contact visits with immediate family members, for the offender has no immediate family, family members are located too far away for visitation, no immediate family members or visitors from other categories have been approved for contact visitation or other similar situations.

5.      Offenders assigned to G1/J1/OT custody are allowed to have a contact visit with any person on the offender's Visitors List.

**E.      Contact Visitation Suspension**

Disciplinary Process

Contact visitation is a privilege granted to offenders based on positive institutional behavior and is subject to suspension either through the unit disciplinary process as a result of institutional rule violations or administratively suspended or denied for safety and security reasons.

Length of Contact Visitation Suspension Resulting from Disciplinary Convictions:

1.      Minor Disciplinary Hearings

Offenders who are eligible for contact visits and found guilty of minor disciplinary violations by a minor hearing officer may have contact visitation privileges suspended for a minimum of one visit or a maximum of two months from the date of conviction. Offenders whose contact visitation privileges are suspended shall continue to be eligible for a general visit.

2.      Major Disciplinary Hearings

Offenders who are eligible for contact visits and found guilty of major disciplinary violations by a Disciplinary Hearing Officer (DHO) through the major disciplinary hearing process, may have contact visitation privileges suspended for a minimum of one visit or a maximum of four months from the date of conviction.

Offenders whose contact visitation privileges are suspended shall continue to be eligible for a general visit, unless housed in solitary confinement, or as otherwise provided herein.

3.      When disposition through the unit disciplinary process includes suspension of contact visitation privileges, the minor hearing officer, minor hearings only or DHO, major or minor hearings, shall document the date the suspension shall end on the offender's I-47MA or I-47MI, TDCJ Disciplinary Report and Hearing Record form.

**DEFENDANTS' DISCLOSURE - 0314**

F.   **Administrative Suspension**

   1.   Contact visitation privileges may be administratively suspended by the UCC upon the determination that contact visits for the offender would be detrimental to the safety or security of other offenders, visitors, staff or the unit.

   2.   Reinstatement of contact visitation privileges is determined by the UCC.

## VI.   EXTENDED VISITS

Permission for extended visits of a maximum of four hours may be requested through the warden or designee for visitors whose residence is 250 or more miles in distance, one-way, from the offender's unit of assignment, as indicated by the Bing mileage guide found at http://bing.com/maps/.   The warden shall make every effort to allow extended visits, if time and space allow.

## VII.   SPECIAL VISITS

A.   **General Procedures**

The warden or designee may permit special visits, contact or general, or authorize special conditions for visits outside of the ordinary course of established visitation rules. The warden may delegate authority to review and approve special visits to a designee such as, duty warden, assistant warden, building major or the UCC.  Visitors requesting a special visit shall submit the request in writing or via telephone or e-mail, for applicable units, to the warden or designee.   Offenders requesting a special visit shall submit the request in writing or via telephone or email, for applicable units, to the warden or designee.

The warden or designee shall review the request and notify the requestor of the denial or approval of the special visit.

B.   **Long Distance Traveled**

Special visits may be granted for a total of eight hours visiting with a maximum of four hours per day on two consecutive days, for visitors traveling over 250 miles one way. Visitors are encouraged to call during the week to verify special arrangements; however, the duty warden shall make every effort to allow special visits, if time and space allow. Only one special visit may be held each month.  Permission for a special visit due to distance traveled shall not usually be granted if the visitor has visited more than once in the past month.

C.   **Spiritual Advisors**

Permission for visits with spiritual advisors may be obtained from the warden.  Spiritual advisors shall provide one of the following forms of identification in order to obtain permission to visit as outlined in AD-07.30, "Procedures for Religious Programming":

   1.   Minister ID card supplied by the authorizing denomination or religious group;

   2.   License or Ordination certificate;

   3.   Official letter from an organized religious body or congregation indicating the status of the letter holder as an official representative of the religious body or congregation; or

**DEFENDANTS' DISCLOSURE - 0315**

4.      A current listing as a clergy person in an official listing of ministers/clergies from an organized religious body.

**D.      Prospective Employers**

Permission for visits with prospective employers who are not listed on the offender's Visitors List may be obtained from the warden.  Prospective employers shall provide ID in order to obtain permission to visit.  A standard picture ID is required, as previously described, and proof that the individual represents a viable business, such as company letterhead, business card or letter from the company's headquarters or human resources department.

**E.      Critically Ill List**

Critically ill is the gravest medical condition, when death is an acute concern.  The determination of the status of an offender is to be made by a physician only and not based on the assumptions of security staff.

1.      TDCJ Units

Offenders who are placed on the critically ill list by a licensed physician, to include offenders listed as non-ambulatory, are allowed to receive visitors in the unit infirmary or medical department at the warden's discretion with the presiding physician's medical consensus.  The presiding physician shall make the determination regarding the offender's ability to receive visitors.  The warden may provide alternate means for visiting these offenders on a case-by-case basis, such as scheduling a visit during the week by special arrangement.

2.      Free-World Hospitals

If the offender is in a free-world hospital, visitation usually does not take place. However, in exceptional circumstances, family visitation may occur as considered appropriate by the warden, chaplain, and free-world hospital administration.  Factors taken into consideration shall include the seriousness of the illness, as determined by the presiding physician, security needs, and the hospital's physical structure or location.

3.      Hospital Galveston

Critically ill offenders are allowed visits seven days a week at Hospital Galveston. The presiding physician determinates whether an offender is critically ill.

**F.      Hospice Offenders**

Offenders in the Hospice Program, or offenders diagnosed as terminally ill who receive only palliative (comfort) care, are allowed to receive visits seven days a week between the hours of 8:00 a.m. and 5:00 p.m., within the unit infirmary setting, subject to approval of the warden and medical provider.   All visits shall be coordinated through the Chaplaincy Department.

1.      Infirmary

a.      Visitors entering the infirmary shall be immediate family members or on the offender's Visitors List.

**DEFENDANTS' DISCLOSURE - 0316**

    b.    Visiting children shall be immediate family members.  Children ages 15 and younger shall visit in the regular visitation area.  Only individuals ages 16 and older shall be permitted to go into the infirmary to visit at the warden's discretion.

    c.    A maximum of four adults at a time shall be permitted to visit an offender in the infirmary.

    d.    Exceptions can be made due to the deterioration of the offender's health at the warden's discretion.

2.    General Visitation Area

    a.    Offenders whose health condition permits may receive visits in the existing visitation area.

    b.    Offenders receiving visits in the existing visiting area may visit with anyone on the offender's Visitors List.

    c.    All other visitation issues shall be in accordance with Agency policies.

**G.    Non-Legal Visits Between Offenders**

Permission for special, non-legal visits between offenders may be granted under the conditions outlined below.  Final approval from the State Classification Committee (SCC) shall be obtained in those cases where the offenders are assigned to different units and approval of the visit necessitates a temporary unit transfer.

1.    Eligibility Criteria

Offenders shall meet the following criteria in order to be approved for a visit with another offender.

    a.    The offenders shall be related by blood or marriage;

    b.    Both offenders shall have been in the TDCJ for a minimum of six months and have demonstrated satisfactory institutional adjustment, such as no major disciplinary cases for six months;

    c.    Each offender shall be listed on the other offender's Visitors List;

    d.    The offenders shall not have had a non-legal visit with another offender in the TDCJ within the last 12 months; and

    e.    Visits between institutional and state jail offenders is not permitted.

2.    Approval Process

    a.    An offender shall submit a written request to the warden to obtain approval for a visit with another offender.  If approved, the warden shall forward the request to the warden of the offender to be visited via e-mail.

    b.    If both wardens approve the visit, the request shall be submitted to the SCC via e-mail for review.  If approved, the SCC shall schedule the visit and notify the wardens involved.  If the visit is denied, the SCC decision

**DEFENDANTS' DISCLOSURE - 0317**

shall be documented.  Offenders may appeal such denials through offender grievance procedures or the DRC.

**VIII.   Current and Former TDCJ Employee Visits**

A.   Current and former employees may be included on an offender's Visitors List if the following conditions exist:

1.   The relationship between the offender and the current or former employee or between the current or former employee's spouse and offender was established prior to the offender's incarceration;

2.   The current or former employee reported the relationship to Agency officials in accordance with PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees;" and

3.   The current/former employee is an immediate family member.

B.   If a former employee does not meet all of the above three criteria, the former employee shall not be allowed to visit for 24 months after the employee's date of separation from employment with the Agency.  After expiration of the 24-month time period, the former employee may be reviewed for visitation privileges by the DRC.  The offender shall submit an RO-1, Request for Placement on Visitors List and RO-2, Visitation Approval Form-Current/Former TDCJ Employee to request that the former employee be added. Documented security concerns the former employee delivered or attempted to deliver contraband to the offender while still an employee or had an inappropriate relationship with the offender while employed may cause disapproval of the request.  If the former employee is approved, the visitor may be added to the list immediately, even if the offender is not eligible for a Visitors List change.  If denied, the offender may appeal through the Offender Grievance Procedures or the DRC.

**IX.   Attorney Visits**

Offender visits with attorneys shall be governed by BP-03.81, "Rules Governing Offender Access to the Courts, Counsel, and Public Officials."

**X.   Legal Visits Between Offenders**

In accordance with BP-03.81, "Rules Governing Offender Access to the Courts, Counsel, and Public Officials," offenders are permitted to assist or advise each other on all legal matters.

**DEFENDANTS' DISCLOSURE - 0318**

# CHAPTER 3

# UNIFORM OFFENDER CORRESPONDENCE RULES

I.     **GENERAL RULES AND INSTRUCTIONS REGARDING CORRESPONDENCE**

A.     **Permissible Correspondents**

An offender may correspond with as many persons as he or she chooses, except as restricted by this policy, BP-03.91, "Uniform Offender Correspondence Rules."

B.     **Restricted Correspondents**

1.     Other Offenders

Offenders may not correspond with other offenders unless:

a.     The offenders are immediate family members (parents, step-parents, grandparents, children, step-children, spouses, common-law spouses, and siblings, aunts and uncles);

b.     The offenders have a child together, as proven through a birth certificate and the parental rights have not been terminated;

c.     The offenders are co-parties in a currently active legal matter; or

d.     The offender is providing a relevant witness affidavit in a currently active legal matter.

Prior to an offender being approved to correspond, relationship issues shall be verified through the records office and legal matters shall be verified through the access to courts department.

2.     Negative Mailing List

Offenders shall be denied permission to correspond with persons on their negative mailing list. Persons on that list may be:

a.     Minors whose parents or legal guardians object in writing to the correspondence, except an offender's own child or step-child (unless the child or step-child is the offender's victim as described in subsection 3 of "Restricted Correspondents");

b.     Individuals who request in writing that further correspondence not be sent to them by the offender;

c.     Offenders who request, in writing, not to receive further correspondence from the offender;

d.     Victims of the offender with whom the court prohibits contact during confinement; and

**DEFENDANTS' DISCLOSURE - 0319**

e. Individuals who have attempted to send contraband into the institution or otherwise committed a serious violation of the correspondence rules, as determined by the warden. A person who commits a serious violation of the Uniform Offender Correspondence Rules may be prohibited from any further correspondence with a particular offender and may be placed on a negative mailing list of persons with whom that particular offender may not correspond. Within 72 hours of such addition to a negative mailing list, a notice, accompanied by a statement of the reason therefore, shall be sent to the disallowed person and to the offender. Within the same time period, the disallowed person and the offender shall also be notified of how to appeal and the procedure for appeal.

3. Victims

a. Pursuant to AD-04.82, "Forfeiture of Good Conduct Time for Contacting a Victim Without Authorization," the TDCJ prohibits unauthorized contact with a victim or a victim's family member by offenders if:

(1) The offender is currently serving time for committing a crime against that victim;

(2) The victim was younger than 17 years of age at the time of the offense; and

(3) Written authorization for the contact was not obtained prior to the initiation of the contact.

b. A court may prohibit an offender from contacting, during the term of confinement, the victim of the offense of which the defendant is convicted or a member of the victim's family.

c. Offenders making unauthorized contact with victim shall be charged with a major disciplinary offense and, if the charge is sustained, may forfeit all or any part of accrued good conduct time credit if the offender is not a state jail offender. A state jail offender shall be assessed a major disciplinary penalty if the charge is sustained.

d. An offender may also be subject to criminal charges for improper contact with a victim.

**C. How to Correspond**

There is no restriction placed upon the length of incoming or outgoing correspondence. All offender mail shall be sent and received through duly authorized channels. Offenders shall not smuggle letters in or out of the institution.

1. Authorized Channels

Offenders may only send First Class, Certified, Media Rate or Priority United States mail through the offender mail system. Inter-agency truck mail may only be used by offenders when communicating with TDCJ officials.

**DEFENDANTS' DISCLOSURE - 0320**

2.      Cash on Delivery (COD) Mail

No COD mail shall be accepted for any offender and no offender shall be authorized to send mail COD. Unauthorized items arriving by mail shall be returned to the sender at the expense of the offender if ordered by said offender, unless the offender is without funds, in which case the mail shall be returned at the sender's expense. Offenders shall be notified when COD mail is returned to the sender.

3.      Packages

All outgoing packages may not be sealed for mailing until inspected by TDCJ. Packages shall be free of contraband or material which constitutes a threat to security or which cannot be lawfully sent through the mail. Inspection of this mail shall be done in the presence of the offender. Outgoing packages may be mailed at media mail rate if the contents of the package meet the media mail rate guidelines established by the U.S. Postal Service (USPS). These rules shall not apply to outgoing packages to special, legal, and media correspondents, which shall be governed by the rules relating to such correspondence.

Offenders are not allowed to receive packages containing stationery supplies. Packages of publications may be sent to offenders by publishers or publication suppliers, including bookstores. The TDCJ shall accept delivery of packages from public carriers only, such as USPS, UPS, FedEx, or DHL. Special provisions are made for packages to be received from suppliers for craft shop operations. All incoming packages are subject to inspection. Offenders shall be notified when unauthorized packages have been denied.

4.      Return Address and Outgoing Correspondence

Each outgoing envelope or package shall include the sending offender's commitment name, TDCJ number, unit name, current address and postage. Offenders having a legal name other than their commitment name may also place that name in the return address. No other information may be made part of the return address.

Offenders may not embellish their outgoing envelopes with illustrations or written messages other than the return address, the name and address of the intended recipient, and a notation that the envelope contains legal, special, or media mail, photos do not bend; or fragile.

After consultation with the MSCP, mailroom officials shall not mail any outgoing correspondence from an offender that mailroom officials reasonably believe shall be deemed non-mailable by the United States Postal Service pursuant to 18 U.S.C. Section 1716. This includes envelopes or packages having obnoxious odors or containing liquids or powders.

5.      Stationery

Any type of stationery, whether bought at the commissary, purchased through the eCommDirect program or authorized for issuance to indigent offenders may be used for correspondence. Offenders shall not use homemade envelopes to correspond.

**DEFENDANTS' DISCLOSURE - 0321**

6. Indigent Postage

Postage and stationery for mail from indigent offenders may be secured through the warden's designee. Postage and stationery shall be made available at regular intervals to indigent offenders, including those in administrative segregation. Postage and stationery shall furnished to an indigent offender for correspondence to any special correspondent listed in these Rules and to any attorney or legal aid society. An indigent offender may use indigent postage to send five one-ounce domestic letters per month to general correspondents and five items per week to legal or special correspondents. An offender may send extra letters to general, legal, or special correspondents using indigent postage if requested for a legitimate reason and approved by the warden.

Funds expended by TDCJ for postage and stationery for indigent offenders shall be recouped by the TDCJ from funds later deposited in the offender's ITF account.

## D. Publications

An offender may receive publications in the mail only from the publisher or publication supplier, including bookstores. Offenders ordering publications shall forward payments for subscription to individual publications with the order. Offenders shall not receive publications of any kind on a trial basis with payment postponed. Persons desiring to give publications directly to individual offenders shall have the publication mailed directly to the offender only from the publisher or publications supplier, including bookstores. Publications received by offenders may be in languages other than English.

## II. SPECIAL AND MEDIA CORRESPONDENCE

**"Media Correspondence"** is any mail sent to or from a media correspondent**.**

**"Media Correspondent"** is any member of the editorial and reporting staff of any newspaper or magazine listed in the Gale Directory of Publications or the Editor & Publisher Year Book or the editorial and reporting staff of any radio or television station. Other members of the media, including freelance members, may petition the DRC to be included within the definition of media correspondent.

*"Special Correspondence"* is any mail sent to or from a special correspondent.

**"Special Correspondent**" is any member of the Texas Board of Criminal Justice; the executive director; the deputy executive director; any division directors, deputy directors, Prison Rape Elimination Act (PREA) ombudsman, or wardens of the TDCJ; any court or district or county clerk of the United States or any of the states of the United States; any member of the legislature of the states or the United States; the President of the United States or the governor of any state of the United States; the attorney general of the United States or any attorney in the United States Department of Justice; the director or any agent of the Federal Bureau of Investigation or any official of any federal, state, or local law enforcement agency, including offices of inspector general, the directors of state departments of corrections, the Bureau of Prisons, and parole commissioners from other states; the attorney general or any assistant attorney general of any state; any member or commissioner of the Texas Board of Pardons and Paroles; any foreign consulate, which includes the consul general, vice consul, deputy consul, or honorary consul of any country of which the offender is a citizen; or the Texas State Law Library or any county law library in the state of Texas.

**DEFENDANTS' DISCLOSURE - 0322**

### A. Permissible Correspondence

Offenders may send sealed and uninspected letters directly to special and media correspondents. All incoming correspondence from any special or media correspondent shall be opened and inspected only for contraband, except under the special circumstances noted in these Rules. The inspection shall be in the offender's presence. All incoming special correspondence envelopes shall be prominently stamped as received by TDCJ or cancelled so that postage-free government envelopes cannot be reused.

### B. Exceptions

In individual cases, where reasonable suspicion exists to believe the correspondence rules or the law is being violated, incoming or outgoing special or media correspondence may be opened and inspected for contraband and content after obtaining written permission from the Correctional Institutions Division (CID) director or his designee.

## III. LEGAL CORRESPONDENCE

**"Legal Correspondence"** is any mail sent to or from a legal correspondent.

**"Legal Correspondent"** is any attorney licensed in the United States or a legal aid society, which is an organization providing legal services, that contacts an offender in order to provide legal services.

### A. Permissible Correspondence

In order to facilitate the attorney-client privilege, an offender may send sealed and uninspected letters directly to legal correspondents. No inspected correspondence from an offender to any legal correspondent may be opened or read. All incoming correspondence from any legal correspondent may be opened and inspected for contraband only. The inspection shall be in the offender's presence. No correspondence to an offender from any legal correspondent may be read.

### B. Exceptions

When an offender violates the law or the correspondence rules using legal correspondence, the offender may have legal mail privileges suspended except to the offender's attorney of record, upon obtaining written permission of the CID director or designee. The attorney of record shall submit a written statement naming them as the attorney of record for the offender. The CID director shall approve the restriction of legal correspondence privileges.

## IV. HANDLING OFFENDER CORRESPONDENCE

### A. Content Inspection of General Correspondence

All general correspondence are subject to the right of inspection and rejection by the unit mailroom staff. All outgoing or incoming letters to and from offenders and enclosures such as clippings, photographs or similar items, shall be disapproved for mailing or receipt if the content falls as a whole, or in significant part, into any of the categories listed below:

1. Contains threats of physical harm against any person or place or threats of criminal activity;

**DEFENDANTS' DISCLOSURE - 0323**

2.      Threatens blackmail or extortion;

3.      Concerns sending contraband in or out of the institutions;

4.      Concerns plans to escape or unauthorized entry;

5.      Concerns plans for activities in violation of institutional rules;

6.      Concerns plans for future criminal activity;

7.      Uses code and its contents are not understood by the person inspecting the correspondence;

8.      Solicits gifts of goods or money under false pretenses or for payment to other offenders;

9.      Contains a graphic presentation of sexual behavior that is in violation of the law;

10.     Contains a sexually explicit image;

11.     Contains an altered photo;

12.     Contains information, which if communicated would create a clear and present danger of violence or physical harm to a human being; or

13.     Contains records or documentation held by TDCJ which are not listed in the attachment to the TDCJ *Open Records Act Manual* Chapter 3.

**B.      Contraband in General Correspondence**

If contraband is found in an incoming letter or publication, the contraband shall be removed from the letter or publication, if possible.  If the contraband cannot be removed from the letter or publication, the letter shall not be delivered to the offender.

**C.      Contraband in Legal, Media, or Special Correspondence**

If an enclosure constituting contraband is found, the contraband shall not be delivered to the offender.

**D.      Notices**

The offender and the sender or addressee shall be provided a written statement of the disapproval and a statement of the reason for the disapproval within three business days after receiving the correspondence.   The notice is given on Correspondence Denial Forms.      The offender is given a sufficiently detailed description of the rejected correspondence to permit effective use of the appeal procedures.   The offender, sender, or addressee may appeal the mailroom staff's decision through the procedures outlined in this policy.   The offender or sender may submit a written argument as to why the item should not be denied for the DRC's considerations.

**E.      Record of Legal, Special, and Media Correspondence**

The mailroom shall keep a record showing the source and destination of all incoming and outgoing legal, special, and media correspondence.

**DEFENDANTS' DISCLOSURE - 0324**

F.    **Content Inspection of Publications**

All publications are subject to inspection by the MSCP and unit staff.  The MSCP has the authority to accept or reject a publication for content, subject to review by the DRC.  The MSCP shall render decisions on publications reviewed within two weeks of receipt at the MSCP office.  Unit mailroom staff shall review books not previously reviewed and render a decision within two weeks of receipt at the mailroom.  Offenders do not have to be notified when magazines or books are being held for review.  Publications shall not be rejected solely because the publication advocates the legitimate use of offender grievance procedures or urges offenders to contact public representatives about prison conditions or contains criticism of prison authorities.

1.    Rejection Due to Content

A publication may be rejected if:

a.    It contains contraband that cannot be removed;

b.    It contains information regarding the manufacture of explosives, weapons, or drugs;

c.    It contains material that a reasonable person would construe as written solely for the purpose of communicating information designed to achieve the breakdown of prisons through offender disruption such as strikes or riots, or STG activity;

d.    A specific determination has been made that the publication contains graphic presentations of sexual behavior that is in violation of the law, such as rape, incest, sex with a minor, bestiality, necrophilia, or bondage;

e.    It contains material on the setting up and operation of criminal schemes or how to avoid detection of criminal schemes by lawful authorities charged with the responsibility for detecting such illegal activity; or

f.    It contains sexually explicit images.  Publications shall not be prohibited solely because they display naked or partially covered buttocks.  Subject to review by the MSCP and on a case-by-case basis, publications constituting educational, medical/scientific, or artistic materials, including, but not limited to, anatomy medical reference books, general practitioner reference books and/or guides, National Geographic, or artistic reference material depicting historical, modern, and/or post modern era art, may be permitted.

2.    Notice

If a publication is rejected, the offender and sender, be provided a written notice of the disapproval and a statement of the reason for disapproval within three business days of receipt of the publication or MSCP denial date on a Publication Denial Form, along with the procedures to appeal.  The offender is given a sufficiently detailed description of the rejected publication to permit effective use of the appeal procedures.  The offender or sender may appeal the rejection of the publication through procedures outlined in this policy.  Publications approved by MSCP are delivered to offenders within three business days.

**DEFENDANTS' DISCLOSURE - 0325**

3.    List of Disapproved Publications

A list of publications disapproved for receipt by offenders during the last two months are noted on the Law Library Holdings List at each institution.  The list is updated every month.

## G.    Processing Incoming and Outgoing Offender Mail

All mail and e-messages, including delivery, pick-up, or notifications, are processed by TDCJ employees or private operated facility staff only and during normal business hours, when possible.  An offender shall not handle another offender's mail, except to assist staff when loading and unloading mail in bulk deliveries.  Staff shall maintain direct supervision of these offenders.

All incoming mail, except packages, are delivered within two business days of receipt, except on weekends or holidays.  Incoming packages are delivered within three business days of receipt, except on weekends or holidays.

All outgoing mail, except packages, are delivered to a USPS employee within two business days, except on weekends or holidays.  Outgoing packages shall be delivered to a USPS employee within three business days of receipt, except on weekends or holidays.

Records are maintained to indicate the source and destination of outgoing mail from death row offenders.

Exception:  Incoming and outgoing mail for offenders whose mail is being monitored may be processed within three business days of receipt, if necessary, to allow unit staff to properly examine the correspondence.

## H.    Forwarding of Mail

Mail received is forwarded to an offender immediately in the event the offender has left the unit and a forwarding address is available.  Newspapers are forwarded by truck mail for seven days and other subscriptions are forwarded by truck mail for 45 days after an offender is transferred between TDCJ institutions, if truck mail is available between the two institutions.  Should an offender leave the unit of assignment for temporary medical treatment, correspondence, newspapers, and magazines are held by the unit mailroom until the offender returns.

## I.    Mailrooms

All unit mailrooms shall be open and provide mail service Monday through Friday, except on holidays recognized by the USPS.

## J.    Treatment Programs

The Substance Abuse Treatment Program, the Sex Offender Treatment Program, the COURAGE Program for youthful offenders, and other treatment programs, as approved by the Correctional Institutional Division Director and the Rehabilitation Programs Division director and maintained by the MSCP, may have more restrictive content-based requirements for general correspondence and publications, as long as those more restrictive requirements are directed at the treatment goals and needs of the treatment program or serve to keep the agency in compliance with established laws governing access to certain types of publications by minors.

**DEFENDANTS' DISCLOSURE - 0326**

## V.   REVIEW PROCEDURES FOR DENIED ITEMS

### A.   Handling of Denied Items

Any incoming or outgoing correspondence or publications that are rejected shall not be destroyed, but shall remain with the mailroom staff subject to examination and review by those involved in the administration of appeal procedures outlined herein.   Upon completion of the appeal procedures, if the correspondence or publication is denied, the offender may request that it continue to be held in the custody of the mailroom staff for use in any legal proceeding contemplated by the offender, or it be disposed of in one of the following manners unless security concerns mandate the offender not have a choice in the disposition:

1.   Mail the publication or correspondence to any person at the offender's expense; or

2.   Destroy the publication or correspondence, only with the offender's written permission.

### B.   Correspondence and Publication Appeal Procedure

Any offender, other correspondent, or sender of a publication may appeal the rejection of any correspondence or publication.   They may submit written evidence or arguments in support of their appeal.   An offender or a correspondent may appeal the placement of the correspondent on the offender's negative mailing list.   An offender or a correspondent may appeal to the DRC for reconsideration of the negative mailing list placement after six months.

1.   Appeal Procedures

A written notice of appeal, including justification, shall be sent to the DRC within two weeks of the notification of rejection.   Upon receipt of notification, the correspondence or publication in question shall be sent to the DRC.

2.   Final Decision

The DRC shall render its decision within two weeks after receiving the appeal, and shall issue written notification of the decision to the parties involved within two business days.

3.   Delegation

The DRC chairman may delegate decisions regarding correspondence and publication denials to the MSCP, which shall be governed by the guidelines applicable to the DRC regarding appeals.

**DEFENDANTS' DISCLOSURE - 0327**

# Chapter 4

# RULES GOVERNING OFFENDER ACCESS TO THE COURTS, COUNSEL, AND PUBLIC OFFICIALS

**POLICY:**

The Rules Governing Offender Access to Courts, Counsel and Public Officials were developed for the purpose of assisting offenders in gaining access to the courts. These rules are intended to guide staff and offenders in matters related to offenders' legal work.

Every offender has the right of access to state and federal courts and to legal counsel and public officials and agencies. Every foreign national offender has the right to communicate with an official from the consulate of the offender's country. Offenders may present any issue, including challenges to the legality of their confinement, redress for improper conditions of confinement, remedies for civil law problems, claims against correctional officials and other governmental authorities, and any other right protected by constitutional or statutory provisions, or by common law. Offenders may confer about legal matters subject to regulation of time, place and manner necessary to maintain the security and order of the institution. Officers, employees or agents of TDCJ shall not interfere with, harass, punish or otherwise penalize any offender as a result of participation in litigation, either as a party or a witness, or for filing or threatening to file a lawsuit, grievance, appeal or other complaint about prison conditions or official misconduct, or for discussing with others or writing in accordance with TDCJ rules and regulations to others about actual or potential legal action or other forms of grievance and complaint. TDCJ rules and regulations regarding offender legal mail are contained in the TDCJ Correspondence Rules and are not addressed within this policy.

**PROCEDURES:**

**I. LAW LIBRARIES**

A law library collection is maintained at every unit. If a specific legal research item is not available at an offender's unit of assignment, the offender may submit a written request to the unit's access to courts (ATC) supervisor stating the need for the item as well as justification for a legal accommodation. The following legal materials are available in paper form or electronically.

**A. Law Library Collections, Conditions, and Supplies**

1. Law Book Collections

   Each of the items below or its equivalent shall be made accessible either as part of the unit's law library collection or through the Intra-Law Library Loan Program.

   a. Federal Reporter 2d

   b. Federal Reporter 3d

   c. Federal Supplement

   d. Federal Supplement 2d

   e. Supreme Court Reporter

   f. Southwestern Reporter 2d, Texas Cases

**DEFENDANTS' DISCLOSURE - 0328**

g.   Southwestern Reporter 3d, Texas Cases

h.   United States Code Annotated, following volumes only:

   (1)   Constitution (all)

   (2)   Title 8 Aliens and Nationality (all)

   (3)   Title 21 Food and Drugs (all)

   (4)   Title 42 Public Health and Welfare (all)

i.   Vernon's Texas Annotated Statutes and Codes: the Civil Practices & Remedies Code, Family Code, Government Code, Code of Criminal Procedure, and Penal Code

j.   *Texas Digest*

k.   Pamphlets:

   (1)   Federal Civil Procedure Code and Rules

   (2)   Federal Criminal Code and Rules

   (3)   Texas Criminal Procedures Code and Rules

   (4)   Texas Rules of Courts, State

   (5)   Texas Rules of Court, Federal

l.   One Legal Research Guide or Manual

m.   *United States Constitution* contained within *Black's Law Dictionary*

n.   *Black's Law Dictionary*

o.   Federal and State Postconviction Remedies and Relief – Habeas Corpus

p.   Shepard's Citations: Texas, Federal

q.   Texas Criminal and Traffic Law Manual

r.   Texas Legal Dictionary

s.   *TDCJ Disciplinary Rules and Procedures for Offenders,* English and Spanish

t.   *Offender Orientation Handbook*, English and Spanish

u.   SCFO *Legal Handbook*

v.   Law Libraries Serving Prisoners

w.   Court-provided forms

**DEFENDANTS' DISCLOSURE - 0329**

x.      Rules of the Texas Board of Pardons and Paroles, 37 Texas Administrative Code §141.150

*y.      Offender Health Services Plan*

z.      Correctional Managed Care Formulary

aa.     Consular Notification and Access

bb.     Directory of Foreign Consular Corps

cc.     Texas Session Laws (1989 – current)

dd.     Court Structure of Texas (flow chart)

ee.     Venue list for Texas state and federal courts

ff.     Intra-Law Library Loan Program Holdings List

Published volumes or equivalent of case decisions are maintained by copyright date.   Case decisions are maintained as follows: Federal Reporters for the previous 25 years; Federal Supplements for the previous 20 years; Supreme Court Reporters for the previous 30 years; and Southwestern Reporters for the previous 20 years.   Removed case law is made available for offender review through the Intra-Law Library Loan Program.

In lieu of the law library collection, units may provide legal reference materials through an electronic legal research database.

2.      Law Library Conditions

The room designated by the warden as the law library shall be of sufficient size to accommodate the law book collection and to provide adequate workspace for the number of offenders permitted to attend the law library at one time.

3.      Law Library Supplies

Each unit shall make available to offenders, including offenders in any form of segregation, writing instruments, paper, carbon paper, postage, and envelopes necessary and appropriate for the processing of legal matters through a commissary purchase or the indigent supply program.   Indigent offenders are provided supplies in accordance with AD-14.09, "Postage and Correspondence Supplies."

**B.      General Population Offender Access to the Law Library (Direct Access)**

1.      Schedule

Each unit shall have a posted schedule for law library attendance ensuring the opportunity for 10 hours of access per week.   The schedule shall take into account offenders' work assignments and other programmatic activities offered at the unit.   The schedule assures that at least one law library period occurs on the weekend.

**DEFENDANTS' DISCLOSURE - 0330**

2.      Extra Time for Law Library Use

Any offender who demonstrates the need for extra time for law library use should submit an I-60, Offender Request to an Official, to the unit ATC Supervisor. Except for good cause, such requests shall be granted for use of the law library during the period an offender is not involved in programmatic activities.

3.      Misconduct During Law Library Periods

An offender who has been found guilty of a major disciplinary offense under Code 18.0 of the *TDCJ Disciplinary Rules and Procedures for Offenders* related to stealing or damaging law library books or materials may be denied physical access to the law library for a period not to exceed 30 days. During such period, the offender shall be provided access to law books in accordance with the rules regarding segregated offenders.

4.      Strip Searches

At times it may be necessary to strip-search offenders to ensure staff and offender safety or detect the presence of contraband. However, an offender shall not be strip searched as a condition of entering or exiting the law library, unless the search is conducted for a specific security purpose. Strip-searches are only used when directed by specific unit post orders, unit departmental policy, or when a supervisor believes reasonable cause exists to warrant such a search.

**C.      Administrative Segregation, Lockdown, G5/J5/P5, Medical Isolation, Temporary Detention, Trusty Camp, Work Camp, and Death Row Offender Access to the Law Library (Indirect Access)**

1.      Legal Research Material

a.      Offenders in any of the above categories are not afforded direct access to the law library. They are allowed to request and receive up to three items of legal research materials per day, delivered on three alternating days per week, such as, M-W-F, from the unit's law library collection for in-cell use.

b.      Offenders who steal, damage, destroy, or refuse to return legal research material may be subject to formal disciplinary action under Code 18.0 of the *TDCJ Disciplinary Rules and Procedures for Offenders*. In addition, the agency's ATC manager, in accordance with the *Access to Courts Procedures Manual*, may temporarily suspend delivery of legal research materials to any offender in the above category for stealing, damaging, destroying, or refusing to return legal research materials.

2.      Legal Visits

Offenders may request a legal visit for the purpose of conferring with another offender on legal matters by sending an I-60, Offender Request to an Official, to the unit ATC Supervisor.

**DEFENDANTS' DISCLOSURE - 0331**

II.     **OFFENDER'S PERSONAL LEGAL MATERIAL**

   A.     **Storage and Access**

   Offenders may store legal materials in their cell or dormitories in accordance with AD-03.72, "Offender Property," and the *Access to Courts Policy Manual*.  Offenders have access to their legal material on a daily basis.

   B.     **Searches of Offender Legal Materials**

   1.     General Procedures

   Legal materials, including pleadings, transcripts, books, notes, drafts, and correspondence to and from attorneys, courts and public officials, belonging to an offender are confidential.  They may not be read by staff as part of a search; however, they may be physically inspected in accordance with AD-03.72, "Offender Property," to see that no physical contraband, such as weapons or drugs, is secreted in them.  During the course of any search, staff members shall not scatter, destroy or otherwise unduly disrupt the offender's legal material. Consistent with AD-03.02, "Impermissible Offender Conduct," no offender shall be allowed to participate in any manner in a search of another offender's legal material.

   2.     Search of Written Materials

   An offender's legal materials may only be searched for written contraband if there is a reasonable suspicion the offender is in possession of written contraband. This shall be documented in writing and approved by the warden or assistant warden prior to search, using the I-186, Authorization to Search Legal Material for Written Contraband.  Scanning shall be done in the presence of the offender in accordance with the *Access to Courts Procedures Manual*.

   3.     Written Notice

   If any written material is removed from an offender's legal material and confiscated by a staff member during the course of a search, the offender shall receive written notice of the confiscation within 48 hours using the I-185, Notice of Confiscation of Written or Printer Material During Search for Contraband, informing the offender of the property removed, the reason for the removal, and the offender's  right to file a grievance.

III.    **PERFORMANCE OF LEGAL WORK**

   A.     **Locations and Times**

   1.     Locations

   Offenders may perform legal work in the unit's law library, in their cells, or in other areas designated by the warden.  Offenders may not perform legal work in the dayroom, but may possess their legal documents in the dayroom while awaiting departure from or upon return to the housing area.

**DEFENDANTS' DISCLOSURE - 0332**

2.      Times

Offenders may perform legal work in their cells or in other areas designated by the unit during their off-work periods.  Offenders may perform legal work in the law library in accordance with the unit's law library schedule.

**B.      Offenders Assisting Other Offenders on Legal Matters**

1.      Assistance Permitted

Offenders are permitted to assist or advise each other on legal matters in accordance with this policy and other TDCJ rules and regulations.

2.      Misconduct Related to Legal Work

The direct or indirect offer, request, or receipt of a payment, benefit, or reward in exchange for legal assistance is a disciplinary violation.

3.      Law Library Periods

Offenders who wish to confer with each other in the unit law library shall obtain verbal permission from the officer in charge, unless unit policy permits such assistance without prior permission.  Offenders are required to confer quietly so as not to disturb other offenders.

4.      Legal Visits

Offenders who wish to confer with each other regarding legal matters, but are unable to do so without special arrangements, shall submit an I-60, Offender Request to an Official, to the unit ATC Supervisor.  A desk or table and chairs are provided when such legal visits are held.  The reason for any denial of a request to confer is provided in writing.

## IV.      NOTARY PUBLIC SERVICES

**A.      Documents**

Under both federal law (28 U.S.C. § 1746) and state law (Texas Civil Practice and Remedies Code §§ 132.001-132.003), offenders incarcerated in Texas may use an unsworn declaration under penalty of perjury in place of a written declaration, verification, certification, oath, or affidavit sworn before a notary public.  Documents for which notarization is requested by an attorney, documents specifically exempted from the laws on unsworn declarations, and documents destined for another state or country requiring notary public service shall continue to require notary public service.

**B.      Scheduling**

Offenders may request notary public service by submitting an I-60, Offender Request to an Official, to the unit ATC Supervisor.  Offenders requesting notary public service shall explain why an unsworn declaration shall not be legally sufficient.  Requests are acted upon, either denied or provided,  within 72 hours of the receipt of the request.

**DEFENDANTS' DISCLOSURE - 0333**

## V.   ATTORNEY VISITATION

### A.   Periods of Visitation

Except as limited by this policy, an offender may have a visit from an attorney or designated representative on business days for any length of time between 8:00 a.m. and 5:00 p.m., including lunch and dinner hours.   In cases where there is a compelling circumstance, the warden or designee may permit the visit to extend past 5:00 p.m.  On Saturdays, Sundays, and state and national holidays, attorneys or designated representatives may visit subject to the rules governing non-attorney visits.   At the warden's discretion, an attorney seeking to visit an offender on death row on a non-business day may be permitted to do so if the attorney offers a reasonable explanation, without violating the attorney-client or work product privileges, why the visit shall occur before the first business day following the date of the requested visit.

### B.   Notice

By 3:30 p.m. of the business day immediately preceding the date that an attorney or designated representative wishes to visit an offender, the attorney shall give the name and profession of each visitor, the name of each offender to be visited, and an estimated arrival time to the warden or designee of the offender's unit of assignment .  The attorney shall also give the estimated time at which the attorney or designated representative would like to visit each offender in the case of multiple offenders assigned to the same unit.  After the attorney or designated representative has arrived at the unit and provided proper identification, the warden or designee shall produce the offender for the visit without unreasonable delay.

### C.   Identification

This section does not apply to SCFO attorneys or employees of the Office of the Attorney General

#### 1.   Attorneys

Attorneys shall satisfactorily identify themselves to the warden or designee and complete and sign a copy of the I-163, Attorney Application to Visit TDCJ Offender.  An attorney bar card and either a driver's license, identification (ID) card issued by a governmental agency that includes a photograph, or United States passport are satisfactory ID.  Any other individuals accompanying an attorney shall have the attorney complete the I-166, Attorney Authorization for Approved Representative to Visit TDCJ Offender, before the visit is considered and official identification shall be required.

#### 2.   Designated Representatives

Once written authorization to serve as an attorney's designated representative has been filed with and approved by the TDCJ, upon arrival at the unit and before the visit, the representative shall present satisfactory ID, either a driver license, ID card issued by a governmental agency that includes a photograph, or a United States passport, to the warden or designee and provide a copy of the I-166, Attorney Authorization for Approved Representative to Visit TDCJ Offender. If the attorney has already provided the unit with the I-166 form, the representative need not provide an additional copy.

**DEFENDANTS' DISCLOSURE - 0334**

D.      **Designated Representative's Application to Visit**

For TDCJ approval to serve as an attorney's designated representative, the designated representative shall submit a completed and signed copy of the I-164, Application to Visit TDCJ Offender as Attorney's Representative to the ATC central office at least one week before the first requested visit to TDCJ as that attorney's representative.

The TDCJ shall maintain the confidentiality of all information provided on all completed applications.  If the answer to any question leads TDCJ to reasonably believe that a visit by the representative may pose a legitimate threat to security, TDCJ may ask such additional questions of the representative as are reasonably calculated to lead to the discovery of information that would prove the existence or extent of such security threat. If it is determined that such security threat exists, the application may be denied and a written response detailing the reason for denial shall be provided to the sponsoring attorney.

The I-164 form shall be resubmitted annually and the unit staff shall contact the ATC manager to verify the representative's eligibility.  If the attorney's designated representative has previously completed the I-164 form in the last 12-month period for the same attorney and it was approved (this form shall be re-submitted annually) and submitted it to any TDCJ unit for the same attorney, it need not be re-submitted before a visit to a unit.

E.      **Limits on Number, Persons, and Type of Visit**

Offenders are not limited in the number or length of visits by attorneys.  One or more attorneys may visit one or more offenders at the same time, subject to reasonable regulation of the time, place, and number of participants and subject to the warden or designee's determination whether such a visit would threaten security.  The attorney may visit with other offenders on the same day at the same unit, subject to the same considerations listed above.

Attorney visits shall be non-contact, unless the unit's configuration provides only contact visitation or in the case of an expert visiting as a designated representative.  Before the contact visit by an expert is granted, the expert and the expert's sponsoring attorney shall provide a completed I-165S, Attorney Initiated Contact Visit for Specialized Professional, to the warden or designee explaining that a contact visit is necessary for the validity of the examination or test and also provide a detailed list of the items the expert shall need to conduct the examination or test.   Only the expert, each party's attorney, and the offender may participate in an attorney-initiated expert contact visit.

F.      **Rejection by Offender of Visitation Request**

Immediately after an attorney who has been approved for a visit with an offender arrives at the unit of assignment and completes the I-163, Attorney Application to Visit TDCJ Offender, or when appropriate, the I-166, Attorney Authorization for Approved Representative to Visit, or the I-165S, Attorney Initiated Contact Visit for Specialized Professional, the warden or designee shall notify the offender of the requested visit.  If the offender objects to such a visit, the warden or designee shall deny the attorney or the designated representative the right to visit with the offender, provided that immediately after the offender's objection is communicated to the warden or designee, the offender, or two witnesses in case the offender refuses to sign, signs and swears to a completed copy of the I-167, Refusal to Visit Attorney or Attorney Representative, form.  Immediately after completion of the form, a copy of the completed and signed form shall be given to the offender refusing the visit and to the attorney whose visit was refused.

**DEFENDANTS' DISCLOSURE - 0335**

G.      **Procedures During Visit**

1.      Privacy

Unless requested to do otherwise by either the attorney or the offender, the warden or designee shall respect the privacy of the visit and maintain a sufficient distance from the visiting offender and attorney or designated representative to preserve the privacy of communications between them.  This rule does not limit the ability of the warden or designee to maintain visual surveillance during the visit or to terminate the visit in case of a threat to security.

2.      Items Permitted with Attorney or Designated Representative

Attorneys and designated representatives may bring briefcases, attaché cases, computer laptops, and personal digital assistants into the visiting area.  Attorneys or designated representatives may also bring a tape recorder into the visitation area to be used only for taking notes of the interview with the offender and for recording the conversation between the attorney or designated representative and the offender, but for no other purpose.

Cell phones, broadcast or transmission equipment, or wireless communication devices used to communicate with a third party are never permitted; however, with good cause the warden or designee may permit the use of certain electronic equipment, such as a video camera, stenotype machine, or polygraph equipment.  To request such consideration, an attorney shall provide the warden or designee with a justifiable reason for the allowance and attest that the use of the equipment is absolutely essential to facilitate the attorney-client relationship.

The warden or designee may open and inspect any item, such as briefcases, attaché cases, and tape recorders, but only in the attorney's or designated representative's presence and only for the purpose of detecting contraband.  The warden or designee may also search the attorney or designated representative for weapons and contraband.

3.      Items Permitted with Offender

Offenders may only bring pertinent legal documents, writing paper, and a writing utensil into the visiting area.  Those documents may be inspected by the warden, but only in the offender's presence and only for the purpose of detecting contraband.

4.      Exchange of Items

The area used for the attorney-offender visit shall have a pass-through slot available for the attorney or designated representative and the offender to directly and confidentially exchange documents.  The exchange of voluminous legal documents may require the assistance of staff.

**DEFENDANTS' DISCLOSURE - 0336**

5.        Rejection of Contraband Articles

If an item constituting contraband as defined in AD-03.72, "Offender Property, is found in an inspection, the warden or designee shall reject the contraband, immediately give each attorney and offender who participated in the exchange a written statement of the reason for the rejection, and may terminate the visit if such action is reasonable in relation to the seriousness of the violation as determined by the nature of the contraband.   The offender or attorney may appeal the rejection through the procedure outlined in this policy.

6.        Removal of Items

An attorney may remove from the unit any document received from an offender. An offender may remove from the visitation area any document received from an attorney unless the item is deemed contraband.

7.        Writing Utensils

If writing utensils and paper are not available in the visiting area for use by offenders, an attorney is permitted to transmit these items to the offender.  After completion of the visit, staff shall return the writing utensils and unused paper to the attorney, but the offender is permitted to choose whether to retain all paper used during the visit or to give it to the attorney.

8.        Depositions

Due to the limited space and availability of locations within a correctional setting in which depositions can be securely accommodated, attendees are limited to attorneys, designated representatives, court reporters, videographers, and the offender.   Depositions may be non-contact if security consideration requires it and the unit configuration permits it.   Requests shall be provided in writing at least one week in advance of the schedule event and include a list detailing the equipment that shall be used and the name and title of each person expected to attend.   Should video equipment be used to conduct a deposition, the video camera shall remain in a fixed place and shall be in operation only during the deposition.   Before, during, and after the deposition, a deposed offender shall adhere to the TDCJ clothing standards as outlined in the *Offender Orientation Handbook*.

## H.    Rejection of Visitation Request or Termination of Visit

The warden or designee may deny an attorney or designated representative the right to visit with any offender or terminate such a visit immediately if that visit would cause a legitimate threat to security, but only for as long as such a threat exists and only if no lesser action would alleviate the threat.   The attorney or designated representative may not waive any threat perceived by the warden or designee.   If a decision denying an attorney's request to visit an offender or an attorney's request to have a designated representative visit the offender is made later than 4:00 p.m. of the day preceding the date of the requested visit, the warden or designee shall immediately attempt to notify the attorney and offender of the denial.   Within 24 hours after denying an attorney's request to visit with an offender, a request by an attorney to have a designated representative visit the offender, or terminating such a visit, the warden or designee shall send the offender and the attorney a written explanation of all reasons for said denial or termination, notification of the right to appeal, and an explanation of the procedure for appeal.   The warden or designee shall also provide a copy of the denial documentation to the ATC manager.

**DEFENDANTS' DISCLOSURE - 0337**

I.    **Suspension of Visitation Privileges**

A regional director may prohibit any attorney or designated representative who commits a serious violation of visitation regulations from any further visits with any offender or impose restrictive conditions regarding future visits that are reasonably appropriate to the violation.   Within 72 hours after an attorney or designated representative is prohibited from or restricted in further visits, the warden or designee shall send the attorney and the offender being visited at the time of the violation a notice containing the following information:

1.    Notification of the visitation prohibition, its duration, any restrictions regarding future visits, and the reasons for the prohibition or restriction, and

2.    Notification that both the attorney and the offender have the right to appeal and an explanation of the procedure for appeal.  Attorney visitation rights shall not be suspended or restricted except as provided by this policy.

J.    **Attorney Visitation Review Procedure**

Any TDCJ visitation prohibition or restriction may be appealed either by an attorney whose visitation privileges have been suspended or restricted or by an offender with whom such an attorney either cannot visit or may visit under authorized restrictions.  If a TDCJ visitation prohibition or restriction has been imposed on a designated representative, the appeal shall be filed by the sponsoring attorney.  Any such person wishing to appeal shall send the Director's Review Committee (DRC) written notice of appeal within two weeks after receiving the notice or statement required by the rule pursuant to which the suspension or restriction was imposed.  Upon receipt of an appeal notice, the (DRC) shall obtain all documents and other tangible objects on which the prohibition or restrictions were based.  The (DRC) shall render its decision within one month after the notice of appeal and issue written notification of the decision to the parties involved within 48 hours of the decision.

K.    **Consular Officials**

Consular officials, to include the Consul General, Vice Consul, and Honorary Consul, are afforded the same rights and privileges as attorneys, except that consular officials may be permitted to meet with groups of their foreign national offenders with the permission of the appropriate regional director after consideration of security concerns.  A consular official requesting a visit shall complete and fax a copy of the I-163C, Consular Official Application to Visit TDCJ Offender, a legible copy of the United States Department of State issued identification card, and their driver license to the offender's unit of assignment no later than 3:30 p.m. on the business day before the requested visit.  The unit shall verify United States Department of State issued credentials by contacting the U.S. Department of State, Office of Protocol at 202-274-1217.   Any other individuals accompanying a consular official shall be approved as a representative by the ATC central office, which requires that a completed, signed I-164 form be filed.  Upon being approved as a representative, the consular is required to submit an I-166, Attorney Authorization for Approved Representative to Visit TDCJ Offender, form to the visiting unit. Upon arrival, official identification shall be required.

**DEFENDANTS' DISCLOSURE - 0338**

## VI.   ATTORNEY AND OFFENDER TELEPHONE CALLS

### A.   General Guidelines

1.   Attorneys are not permitted to use an attorney and offender telephone call to provide contact between the offender and any other person, other than the attorney's designated representatives.

2.   Attorneys may not send faxes to, nor receive faxes from, offenders.

3.   Offenders may place telephone calls to their attorney of record using the Offender Telephone System (OTS).  If the attorney is registered as the attorney of record with the OTS vendor, the call shall not be recorded or monitored.  OTS telephone calls shall be placed in accordance with this policy.

4.   All other requests for telephone contact shall be made in writing by the offender's attorney using the I-162, Attorney/Offender Telephone Call Application, and the attorney shall provide the unit with at least 24 hours notice, unless the need is preempted by a legal emergency.

5.   Consideration of requests by offenders for telephone contact with their attorneys should be predicated upon critical circumstances, such as the offender receives correspondence from the courts with a deadline necessitating immediate contact with the attorney or when a foreign national needs to place a telephone call to the general consulate.  Time/distance factors may also be considered in a request. In such circumstances, the offender shall submit an I-60, Offender Request to an Official, to the unit ATC supervisor with an explanation of the critical circumstance.  If the scheduled date for court appearance or hearing precludes a personal visit or correspondence, the request for telephone contact should be approved.   Telephone calls shall be arranged between 8:00 a.m. and 5:00 p.m. during business days unless there are compelling circumstances.

6.   Frequency and duration of attorney and offender telephone conversations shall be decided on a case-by-case basis determined by need.

7.   A specific time may be arranged for the telephone call either on the same day as the request or on a day that is convenient for all parties.

8.   The rules regarding attorney and offender Telephone calls do not apply to SCFO or OAG attorneys.

9.   Except as authorized by warrant or court order, telephone calls to attorneys pursuant to this policy shall not be monitored or recorded.

### B.   Telephone Call and Attorney of Record Approval

1.   Designation of Attorney of Record for OTS Purposes

Attorneys of record shall register with the OTS vendor by submitting, on the attorney's letterhead, a letter stating the attorney's name, phone number which shall be verified as matching the number registered with the Texas State Bar Association, attorney's state bar association number and state of registration, a list of TDCJ numbers and offender first and last names, and a statement that the attorney has an attorney-client relationship with the listed offenders.   If the attorney is not listed with the Texas State Bar Association, the phone number of the bar association where the attorney is licensed shall be included.

**DEFENDANTS' DISCLOSURE - 0339**

2.       Calls Placed on State-Owned Unit Telephone Equipment

Attorney requests for telephone contact with an offender shall be directed in writing on the I-162 form, Attorney/Offender Telephone Call Application, to the warden. The I-162 form shall contain the following:

a.       The name and TDCJ number of the offender;

b.       The attorney's full name, address, bar card number, telephone number, and fax number;

c.       An affirmation of an existing attorney-client relationship with the offender;

d.       An acknowledgment that the telephone call may not be used to accomplish any non-attorney-client communication;

e.       The general reason, such as impending court deadline the call could not be precluded by a personal visit or correspondence;

f.       Permission for the offender to return the call collect;

g.       A date and time for the return telephone call convenient to the TDCJ unit and the attorney; and

h.       The attorney's signature.

3.       The warden or designee receiving the request shall verify the attorney's identity by requesting a faxed copy of the attorney's bar card and driver's license. Upon verification of the attorney's identity, the State Bar Association shall be contacted by telephoning (800) 204-2222 or checking the Texas State Bar Association internet database at http://www.texasbar.com to ensure the attorney is in good standing and to verify that the telephone number that shall be called is that of the requesting attorney. The Texas State Bar website should note that the attorney is "Eligible to Practice in Texas." If an attorney is not licensed in Texas, the other state bar information site should indicate current eligibility to practice. When questions arise, inquiries should be coordinated with the ATC manager.

4.       Approvals for attorney and offender telephone calls shall be made by the warden or a designee, who shall be an employee with rank of major or higher.

5.       Denial of an attorney and offender telephone call shall be made by a warden. The reasons for denial shall be given to the attorney in writing with a copy sent to the ATC manager and the TDCJ Office of the General Counsel.

**DEFENDANTS' DISCLOSURE - 0340**

**VII.    COURT TELEPHONE CONFERENCE CALLS**

A judge may request that a court hearing be conducted via a telephone conference call or video conference rather than bench warrant the offender to the courtroom.  The TDCJ requires a court order or a letter signed by the judge, on official letterhead, requesting the offender participate in a telephone or video conference.  The court order or signed letter should be sent to the offender's unit of assignment. The court order or letter shall state the offender's name, number, date, time, and collect telephone number where the call can be facilitated in the case of a telephone conference call.   In the case of a video conference, the court order or letter shall provide appropriate information so that the video conference may be facilitated.  No collect telephone number need be provided if the court intends to initiate the telephone conference call.  The TDCJ shall verify the order or letter and facilitate the call using a speakerphone or a regular handset phone if a telephone conference has been requested.  Attorney-client confidentiality does not apply to court hearings.

**DEFENDANTS' DISCLOSURE - 0341**